page 1 of 92

To. The Respected ADX Warden:
    Mr. B. True

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 29 2020

JEFFREY P. COLWELL
CLERK

From: Inmate: Mostafa. Kamel. Mostafa
Reg. No. # 67495-054( Applicant)
Vs. Penitentiary Max. P.O. Box 8500
Florence. Co. 81226-8500.

Subject:          Application Request

Covid-19 Imminant Harm Based Application

For the Release Of Sick, Severily Disabled

In Solitary Confinment Applicant:

    Mostafa # 67495-054. As No Other

Resolution Would Be Workable To prevent The

Very High Probable Harm On The Applicant

Respectfully Submitted by Applicant:
Mostafa Kamel Mostafa # 67495-054

Signed:
You
Dated: July 15, 2020

— 1 —

# Table of Content

| | page |
|---|---|
| Declaration | 03 |
| Statement Of the Application | 17 |
| Statement of Facts | 18 |
| Aurgument: | 21 |
| Point One | 21 |
| point Two | 27 |
| Conclusion | 31 |
| List of Exhibits | 32 |
| Exhibits | 33-92 |
| Certificate Of Service | 93 |

2

# DECLARATION

1- I am the applicant in the above entitled application : Mostafa Kamel Mostafa, state and declare, in support to my application for release, to the warden of ADX Mr. B. True and/or whome it may concern:

2- I am 62 years old, in prison since 2004, more than 16 years : 8½ years in British jail Belmarsh awaiting extradition and extradited to U.S New York on Oct 6, 2012 after many assurances provided by US government to receive Daily Care, medication help and other assurances to secure my extradition from U.K and E.U Court including but not limited to: Not to be subjected to Death penalty and understandably what could lead to it (See Exhibit 01   us Embassy).

3- So for Most if not all assurances/undertakings and understanding given never materialized and many of which has even been reversed causing enormouse physical and psychological harm including but not limited very prolonged subjection to solitary of no daily help and special Administrative Measures (SAMs)

4- As The new warden is newly appointed I need to elaborate

3

page 4 of 92

● on some of the prolonged issues which I could not remove or ease their harm on me by remedies, attorneys requests to ADX or even Courts to follow up its own Sentencing or previous orders (see Exhibits 02: A & B) and only the issues directly or closely direct to their compounding and coupling effect on me as the Covid-19 pandemic raging U.S. now.

And to assist the Warden to reach an educated explained decision.

5- It is also, helpful to mention the Honourable Judge Michael Hegarty (from 10th Cir.)' opinion and some of his reccommendations at relevent places in this declaration to support my claim of the absence of any workable resolution to avoid the high probability of my infection of Covid-19 in my situation(1)

6 - According to imminient science, my physical impair-ments combined with my conditions of detention make me among the highest of all vulnerable to be infected by Covid-19 potentially causing death, brain damage, failure of organs and even amputation to more limbs.

——— Foot Note ————————————————

(1) Respected federal Judge Hegarty has been visiting our Unit H since 2017 as a part of settlement between Court, ADX and inmates. His honour always spends fair time to assist and mitigates inmate's psychological damage, his (Hon) saw my injuries and helped me.

4

page 5 of 92

7 - I am 62 of age, British, origonally from Alexandria Egypt, North Africa, Sustain sever injuries in 1993 in the after math of the Soviet Collapse in Afghanistan. I am Poorly Sighted, blind in left eye and poor in the right. Double Upper amputee (no hands to mid arms) with very Sore Stumps, regularly bleed and occasionally infected & swell prevent proper or any use of Prosthetics.

8 - I have most of the underlying health hazards to Covid-19 such as: Type 2 diabetes and high blood Pressure for the last 20 yrs. as well as psorises caus-ing dry skin cracking and bleedings. I have hyperhydrases (excessive overheating and sweetings) preventing wearing any sock under prosthetics, or working for long time or even wearing the prosthetics on my arm for more than 20 minutes a time in cold weather and 10-15 in warm, and need to rest at least 30-45 minutes. I also, have arthariaes in both knees and left shoulder. And in the last 13 years developed lack of Concentration, memory short span and related pto solitary psycholog-ical issues (all above Documented in medical and court files)

9 - I am in full solitary Confinement and under

5

SAMs since my extradition to US in 2012 which means I am not allowed any contacts with other than allowed by SAMs.

In COVID-19 time and place, it is a de facto of death sentence or other Covid-19 harm when coupled and compounded with my physical and psychological conditions as above.

10 - Furthermore, the above impairments are deeply worsened and excercebated by the lack of basic essential fittings for any meaningful self and hygiene and functionable daily tasks by an upper-double amputee both cells in unit H are only for wheel chair person; everything for lower level who have the use of fingers and good vision. And no disabled toilet for my type of disability to clean myself, or sink and shower with continuous water and lever tips to prevent further cuts to my stumps and infections.[(2)]

Also, no surfaces: Table free both sides and large and shelves to spread needed items and belonging for

—— foot note ———————————

(2) It is clear in my medical record that the absence in lever taps/faucets resulted in bone infection and further amputation to my left stump outside jail in 2007 and since it is ruled essential.

6

page 7 of 92

safe easy reach at the angle needed for the purpose. In Covid-19 it is even more life threatening not to have vast long shelves because it means that picking up any item from lower them chest closely stacked area need adjustment of position which I can only do by holding the item with both stumps at one end and using my mouth and teeth at the other end to move the stumps or the item to the right position.

Such is against the stressed on advice not to touch the face let alone the mouth & teeth by all sort of possibly contaminated items every day endlessly, (See remedies list Ex 02A11-12)

11- The deprivation of disability items also, COVID-19 hazard causes lack of safety and hygiene and causes repeated injuries such as:
(a) electric tooth brush (See Exhibit 02 A pages 5, 10, 12)
(b) Soap pump (confiscated after sentencing 2015 despite countorder)
(c) pouch/sachets opener means I have to open every food package and commissary by my already very corroded teeth and stumps with continuous on I can't clean them (See Exhibit 02 A page 8 & 4)
(d) Hair Brush and shower (confiscated after sentencing 2015) and only recently replaced by un usable for back of head one.

7

page 8 of 12

(e) Eating Utensils: plate, Tray Spork for upper amputee safe and hygiene use.

never provided since extradition, despite US government own occupational therapist recommendations in 2013 in MCC New York. She also recommended help in cell cleaning and beddings easy fit in her report a copy is also in medical records. And many other items

12 - Deprivation of any help in daily task, cell cleaning and durable cell cleaning when cell move since extradition 2012 causing many injuries, bleeding and anxiety daily especially and intensely in the move harmful cell 300 as it is dark and full of harmful sharp cutting edges.

The honourable judge Hegarty who visit regularly but suddenly has seen my injury and bleeding at least twice due to endeavoring to clean and another in cell move.

his honour recommended many mitigating things such as to stay in the less harmful cell 511, increase size of eating writing table from (18"), to a workable size and to get help in food & cleaning among other things but ADX not yet complied

and Certainly in COVID-19 now raging are not near enough safety measures.

13- To prevent and mitigate my injuries I repeatedly asked for help in all cleaning and to be provided with items attachment to my prosthetics so I can do some cleaning but both denied. (See Exhibit 03) Remedy 977505 A. Suggesting (without O.T) a sleeve to my prosthetics that I am not allowed to use because of the overheating problem.

14- When I am bleeding badly from many small cuts in my stumps in cleaning and/or all more I am denied medication or securing the injuries by proper white powders to be enabled to do my task without blood going to food, cloth and paper work, I am either ignored or bullied without help some hurtful comment such as "This is not a hospital" or even "Why did you cut your hands" by medical team (See Exhibit 04 Remedy 95891 ²)

15- I am always asked and even harangued to compete with other able fit inmate in cleaning or I do not deserve phase Three (See Exhibit 05 Remedy 1024696)

9

16- Kitchen problem with Covid-19 is also very hazardous because food is not provided in disability utensils isnt paper tray and fragile brittle plastic tray for the hot. all items handled by staff gloves touching many people and things then provided mostly un opened or partially opened means that I am compelled to put all that to my mouth to fully open to get food out as no opener provided or control on staff or any of my ability to clean items before using my mouth. Such are the most prohibited to do when avoiding Covid-19 infection (see Exhibit 06 pages 1,2,3)

17- I can not wear a mask or keep any distance from staff handling me or providing food, items with their contaminated used gloves nor clean my stumps or prosthetics. I can not avoid touching my face as I am always in need to open or adjust to position any items I need to use. All the Covid-19 hazards are unavoidable in my circumstances.

18- The issue of being assessed professionally by an impartial or jointly occupational

Therapist have never been approached honestly or transparantly by US Government and SAMs. As I have been assessed several times in UK and according to E·U Standards and Text book charts and the US Gov during the extradition procedures accepted all UK & EU assessments and gave assurances to comply accordingly without any hint or mentioning of further U.S. O.T assessment.

Even worse, when extradition took place, the Gov. tried its utmost to get O.T to overrule all the Twenty years European SBI assessments. And when its own O.T refuse to compromise their profession or agree with UK assessment Either their Report was rejected, ignored and the O.T treated badly like MCC 2013 Gov. OT who spent many hours and visits with me. OR Federal Medical Center Missouri Springfield O.T who only spent 8½ minutes with me in 8 months and even her report is Concealed to date by U.S Gov. (See Exhibit u2 B page i and foot notes).

The ADX Gov. O.T finally overruled

page 12 of 12

every previous U.K and E.U. and even MCC New York (so). OT and ruled that I have prosthetics so I need nothing else. No filling, items or help. He only spent 15 minutes standing with 12 people from ADX different departments: legal, Medical, SAMs SIS, Maintenance ... All surrounding me standing while I am chained and shackled in the most brutting and degraded open assessment.

19 - This unprofessional assessment also, overruled American Disability Act and all courts rules and citations regarding disabled inmates/people. Such as: 42 U.S.C § 12102 (4)(A)

It redefined "substantially limit" following:

... (E) (i). "Determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative of mitigating measures such as: (I) Medication, medical supplies, equipments, appliances, prosthetics including limbs and devices...

(II) Use of assistive Technology

(III) Reasonable accommodation ...

(IV) Learned behavioral ... )) Emphasis added

This particular O.T in 2016 Also, ignored and

12

by passed all Text book and step by step charts for assessing a double upper amputee and all my attorney's specific issues she asked ADX to make him address (See Exhibit 02 A pages 1,2,3,4 also pages 13,14)

Also, ADX continues to refuse any participation of any occupational therapist suggested by my attorney (See Exhibit 02 A page 6,7 9 (27)

20 - All Remedies denials and attorneys letter ignored regarding health, safety and hygiene have been based on and quoted from the ADX appointed O.T.'s unscientific assessment and report (See list of Remedies Exhibit 02A pages 11, 12). Court recommendations were also, overruled by ADX and assurances by ADX previous warden Wiley to UK and EU Court were also, over ruled and dishonoured And when my attorney appealed to Hon.Judge Forrest to follow up on her scientific based recomm -endation, The Gov. Prosecuter demanded her withdrawal from all prison issues. And she did. (See Exhibit 02 B pages 1, 2, 3)

21 - The Occupational Therapist issues, now in Covid-19

circumstances, which does not permit safe time or space for the previously ignored oppertunites to provide the agreed upon extradition condition of accommodating fittings, items and daily help for my disability, all prove that the existing conditions are but strong attractions to COVID-19 attack on me and matter of when not if.

Also, the impossibility of speedy effective and comperhensive sustainable measures to avoid COVID-19 harm on me according to scientific reccommendations and preventitive measures.
(See Exhibit 07 Sample of daily care nurse in U.K and Europe's highest security units as agreed upon as needed by all parties including U.S Litigators 'it also include full fittings, items and prosthetics. pages: 1, 2, 3, 4, 5)

22. Many other indirect issues: social legal, psychological and stressful matter excercebate COVID-19 underlying conditions such as: increased hypertension, psoriaso hyper hydroses and lack of needed concentration as all stress-related illness and symptoms, such as but not limited to : — never had a visit since extradited 2012 and the only approved visitors are the two who can not travel from U.K above (I have a wife, 9 children and 9 Grand children all in England) Four of my sons precluded from contacting

page 15 of 92

me by SAMs stipulation and all but one of my
grand children also banned despite all being under 8yrs.
letters and Call time ineffective for the large number
(also have three siblings)

Also, the lack of medical care for essential hygiene
and when provided is too late and infecting
pain and bleeding, such as ignoring the need of
toe-nails trimming for 9½ months and when
provided by non podiatrist and no proper equipment
Causes pain bleeding (see Remedy 1005234-F1/R1)
and other similar remedy for the same repeatedly.
all risking feet infection for a diabetic and
potential feet amputation. And now more risk
of that in Covid-19

23 - The stress and anxiety because of the last
3 month prison lock down to date,
And even worse, the worry about the high
probability for me to be infected by Covid-19 and
losing more limbs, brain damage or organ
failure is over whelming; something I can not
afford nor any prison as cruel, unjustified, predict-
able and easily avoidable. Also, ill reputable to ADX
and the unaware American nation whom
extradition documented assurances made on their behalf.

15

Page 16 of 92

24 - I Still have two more years to litigate new Trial application via Rule 33, now in appeal in 2nd Circut and if unsuccessful by 2255 Rule with strong chance to be granted as some of my Convictions already reversed and new points of law emerged. Thus a release a comperhensive solution to my Circumstancies in Covid 19.

25 - The foregoing factual reasons and blinking Covid-19 huzardous conditions Creat a genuine issue of material fect, and Should when Considered Carefully and scientifically support judgement in favour to my application request for release, and as explained in the brief Submitted with this declaration.

26 - I, Mustafa Kamel Mustafa # 67495-054 declare Under penalty of perjury, and it's rules and law, the Foregoing is True and Correct and Could be Varified by documents,

Date : July 05, 2020
Name : Mustafa Kamel Mustafa
Signed :
ADX Florence, CO. H-unit

16

# Statement of The Application

This is an application filed by Prisoner at the ADX Florence Colorado. Seeking the relief of Release from Prison based on The emergency situation from the raging in Usa and its prisons Covid-19 virus pandemic which is continuing to spread widely and deadly with no cure, treatment or Vaccination plausible in the near future.

And that The urgent need for the sought release is also, based on the Compounding impairments of the applicant conditions of: Covid-19 underlying Chronic health problems, together with his disability of no hands and poorly sighted also, Coupled with the applicant conditions of detention to place him on the top of the most highly likely segment of people to be victimized by the very infectious pandemic and Sustain an irreparable harm.

And that The release of the applicant would not pause or cause any risk to U.s as the applicant would not be released to Us soil nor to any of its adversary but to Britain, one of Usa Closest allies.

And that Such release, is fully Compatible and acceptable by all human rights, Prisoners right and more specifically with the Usa Gov. assurances and Undertakings to UK and E.U. Courts to secure the applicant extradition.

17

# Statement of Facts

On Feburary 2020 a virus pandemic Covid-19 Struck the globe, highly infectious and deadly un-Controlable unpredictable causing a lot of death and irrepairable damage to health and Community. And usa was and remain, The most badly hit by the pandemic including its Prisons

Prisoners in Solitary Confinements with limited Utilities are high risk Covid-19 recepients as they are handled and handed food and other items by staff wearing Gloves which touch every one and thing and potentially hazardus to inmates. The applicant as disabled with no hands who need to open and adjust to postion of use almost every item by his mouths and two stumps is the most Vulnerable among prisoners in Solitary.

World Health Organization made several guide-lines very essential to lower the risk of getting infected almost none of which the applicant Can do Such as: wearing a mask, distancing from guords, Continiuousely wash hands and cleaning tops, cleanse body etc. And to avoid Touching free where the applicant is Compelled to put potentially contiminated items direct to his mouth and open other with his teeth and such make him at the top again of this higher risk Criteria.

18

It is also, clear that the ADx does not follow the American Disability Act or the essential needed fitting for disable upper amputee with regard to health, safety and hygiene, which are essential now to lower the risk of covid-19 infection. ADX does not provide in any of his cells for disability: disable toilet with washing function for no hands or impaired hands, nor sink for the same with lever control outlet, or the same for shower or large surface shelfing and ready eating table to avoid adjusting/positioning needed items by the mouth or face

Scientish also, highly reccomended helping the old and disabled and children and any who can not or un- -able to help himself in hisself and surroundings cleanand hygiene. And such in avoided and denied to the applicant by ADx   (See Declaration and exhibit's remedies)

The fact That: certain age, gender, race, health under- -lying illness make some segments of society more vulnurable to Covid-19 than others. And the entire of the above mentioned criteria fit the conditions of the applicant. He is male, over 62, African British, diabetic, high blood pressure, excessive sweating over heated (hyperhyroses), with other stress-related illness could cause skin infection like psorises sore stumps , arthrises, Accordingly, again on top of this list too.

Page 20 of 72

And also in record that the applicant should have been seeing a doctor daily and gets help to apply some medication, But never The ADX complied

It is in record of ADX and remedy and as in This declaration, that essential items for hygiene and safety, directly now related to Covide-19 privention had been denied Such as: Electric tooth flossing brush, Soap pump, pouch opener, eating utensils easy helding functional hair-shower brush, Nail's Trimming personal (podiatist) and equipement, cleaning cell tools and others.

It is also, mathmatical and statistical fact that the above facts place the applicant on top of the all Segments of single, Combined or even Compounded Criteria of people With the highest risk of getting infected and unlikely to be scathed by its out come

It is a fact that neither the applicant nor the prison could afford the indifference of such high probability of infection, nor its possible out come of organ failure or further amputation or death or brain damage as the cost of compensation and ill repute are too high and easily avoidable, Not least when US Gov. and a previous Warden of ADX gave undertakings to prevent that.

(20)

# Argument
## point one

The Urgent and ~~Essential~~ Requirements To Avoid The Applicant Existing High Risk Of COVID-19 Infection And Potential Irrepairable Harm Are Not, And Can not, Be secured In A Prison, Much ~~less~~ In A Super Max ADX

1- Prison ~~rules~~ provide that prisoners are placed in a safe invironment and also, able and enabled to be safe in the provided invironment at all times.

Dillibrate indifference or Complaicency are against 8th Amendment and Could be punishable by Courts

2- Especially when the harmed is vulnerable, and even worse when there are red flags and/or undisputable potential deadly danger like the now raging in U.S. COVID-19 pandemic

3- As proven undisputed for decades, the applicant disability together with the recog- -nized to be underlying health condition illnesses

21

place him among the highest of all categories to be infected and harmed by Covid-19.

- 4 - And his conditions of prolonged solitary since extradited from England in 2012 had significan-ly reduced his little ability to do daily tasks unscathed. The injuries and abrasion certainly increase the risk of infection of the virus and as in records often causes swelling and infection long before Covid-19.

5 - the Honourable Judge Hegarty himself witness some of the applicant bleeding and arms abrasion. Also, in his last visit just before Covid-19 announced) in Feb 2020 asked the applicant to open his mouth and saw no back teeth in the lower Jaw and the apparent front teeth abrasion due to been forced to open pouches and food items by his mouth and teeth.

6- Such are extra red flags for the potential deadly covid infection. ADX can not deny any of that as the Applicant made several complaint over the years to no avail please (see Exhibit A Pages 1, 2, 3, 4, 5, 6, 7) showing the loss of teeth due to open pouches, inability to use dentures

because of no hands, The absence of proper teeth hygiene or electric brush. All harmful over the years but now deadly red flags as putting contimanated items handled by staff gloves direct to mouth is a forced death penalty on the disabled confined highly vulnerable prisoner Applicant, And condemed globally, but continuously allowed at ADX and fedrall Prisons under Covert of security.

7- It is also, well documented that the applicant and his attorneys continuously addressing and writing to the prison about many similar other red flags to stop or mitigate the harm the applicant subjected to but no relief what so ever.
     The remedy system proven indifferance ill informed, dismissive and much worse now in Covid-19 urgency increased the stress on applicant for experrancing the Mammouth useless dismissed remedy for seeking relief or even to investigate the hazardus conditions

8- The denial of timely medication refill including rubber for the applicant prosthetics to function Safely is prevalence including blood pressure Tablets (See Exhibit 9 pages 1, 2, 3 [Rubber] and page 4 [Refill].

page 24 of 92

(Also, Exhibit o9 pages 6,7,8 since 2016 Rubber)

9. And increasing the Covid-19 hazardous condit-
-ion is the discrimination against the prisoner
applicant Type of disability and treating him in
fittings of cell and items as a standard
" wheel-chair " disable diminished all his
ability for healthy hygienic invironment harm-
-full all the time but now Deadly in Covid-19
(See Discrimination Exhibit 10 pages 1, 2, 3)
With no contact with American Disability Act
or an independent occupational therapist allowed
under SAMs, the Discriminational harm-
persists. But as it is now highly deadly,"
and no time or solution other than release
this application should succeed.

10- The infection of feet due to prolonged ignored
need of timely and Safely toe nail trimming
is very high without Covid-19 and deadly with
it . If is either not done (sometimes for 9 1/2 months)
or done with pain and bleeding for lack of tools
or experienced Podiatrist; repeated in many records
though some had evasive answer but still persists
(See Exhibit 11A pages 1; 2  And Exhibit 11B pages
1, 2, 3, 4. 5   All ignoring the long and bleeding & pain )

24

page 25 of 92

11 - Applicant gram infection is often and ignored by medical, and told "this will happen often, as you are in solitary and getting abrasion and redness, medical can't/will not proscribe all time anti-biotics" (See Exhibit 12 page 1, 2)

But these infections now in Covid-19 are not about pain, bleeding, little fever or anxiety, but potential death or further disability.
The record is full with blinking red flags.

12 - When the applicant was told by unit manager Ms. Tuttoilmudo, that no relief would be provided as all remedies failed, and he asked for her discretion. She said "No, see you in court"
The applicant protested his condition peacefully by food striking to be heard and helped on Oct 19, 2019. But was abused, threatened and eventually Assaulted, bleeding by a LT. and Two C/os on Oct 28, 2019 during his long 7 weeks strike he was force fed several times. Now, most of those and the foregoing issues are in a civil case in Colorado Denver since Jan 10, 2020. please see (Exhibits 13 page 1, 2) and (Exhibit 14 page 1, 2

However, Covid 19 does not wait for litigation.
25

page 26 of 92

13 - For all the foregoing, it is evident to conclude the undouted fact that the physical condition of the applicant compounded by the limitation of any imprisonment, particulury fedral prisons, are all invitation for repeated injuries, abrision and all sort of infectiōns let alone the most and deadly infiitous covid-19.

And that the relief sought of release from prison is the only available civilized and correct measure particularily when the delay or deny of the relief sought can only to result in death or disability or organ failure or brain damage result in untimely unuseful release and liabilities of all kinds and illneputiön to USa and its Justice and prison system.

Case No. 1:20-cv-00694-PAB-MDB   Document 39-1   filed 09/29/20   USDC Colorado   pg 38 of 95

# Argument

## Point Two

The Release of Applicant from Prison is Consistant With US Goverment Assurances To UK and EU Courts. And Will Not Harm US Security OR Reputation.

1 - The Applicant prisoner has been more than 16 yrs in prison for the charges, and still have approximately two more years to end his litigation, with possible retrial or even acquittal. Such will make his harm by Covid-19 while litigating very unfair and unnecessirly cruel.

2 - An educated evaluation by human rights group including in USa estimated one day in ADX Solitary or other similar prisons to equal 35days in other prisons. And such evaluation was for an able healthy inmate not like the applicant conditions

page 28 of 92

which could double or even tripple the evaluation, meaning for an able healthy inmate 16 yrs equal or near 600 yrs served. Therefore, the release under Covid-19 after 16 yrs is the correct and most appropriate under the urgent circumstances in first world civilized countries

3 - The applicant is a British citizen and will not be then, released inside US land. Nor will be sent to an adverse to USA government but one of its closest ally, which agreed to extradite the applicant in 2012.

4 - The applicant was a free man in England for four years after the alleged US charges and six years after other US charges never disappeared or fail to present himself to court or police station when needed or ordered. and never committed any offence either till arrested in 2004 for the US indictment and spent 8½ yrs in Belmarsh prison London with all family and friends contacts to the day of his extradition. And again during the 8½ yrs in jail never posed any threat to any one or USA.

28

page 29 of 92

5- US Gov. provided assurances not to subject the applicant to any direct or indirect death penalty (as in Exhibit o1 and declaration) The urgency of Covid-19 Compounded with the Applicant health and disability conditions and coupled by the decaying to health, safety and hygiene in prison solitary under special Administ- -native measures, all that in the imminant Death penalty de-facto aiding and abating the virus against The applicant

6- The warden of ADX Mr. Wiley gave a written undertaking to UK and EU Courts of extradition to avoid harm, degradation or hazardas invironment or Conditions to the applicant if extraduated and expressed that it is highly unlikely with the applicant health and disability Condition ever to end in his ADX

7- Supreme Court (Hon) Judge Gorisuch justif- -ied the return of half Oklahoma to the indigenus by writing "America must Keep its Promises" So far, Such a noble principle never

page 30 of 92

materialized in the applicant case in any given undertaking or memorandum of understanding of the extradition treaty between USA and England. Therefore, places like Ireland and Scotland are now rejecting any extradition to US that could end or possibly end in ADX even when the indicted is a persistant hacker to US computer systems. (Fact in public domain and UK court record)

8- The extradition rule of speciality require compliance with human and disability rights and the merits of extradition goodfaith.
     The most basic and bottom-line of which is The assurance of no death penalty or complaisent back doors for its occurrance

9- The release, of this particular conditionally the most vulnerable to Covid-19 among all vulnerable criteria is The True Acid Test of the minimum level of compliance with the rule of speciality, not least when USA is chastizing other countries and imposing on them sanctions for their human rights abuse

10= Prisons and courts released many life sentences

30

Page 31 of 92

because of the Urgency of Covid-19, most if not all of them, in better healthy ability and Conditions than this applicant. And not in solitary too. And released right into US soil and Community.

The applicant is seeking equal justice and compliance with rule of specialty undertook by U.S Government during extradition litigation.

## ___ Conclusion ___

For all the foregoing the applicant

respectfully submits that the respected warden

of ADX Complex, Mr B. True to grant the

sought relief and allow the release

from prison

Respectfully submitted by
I/m : Mostafa Kamel Mostafa          signed: ___
Reg.No : 67495-054                   Dated : July 15, 2020

- 31 -

page 32 of 92

# List of Exhibits

page

1- US Assurance Re: Death penalty                                    33

2- Exhibit 02A page 1→17 :                                           33
   Letters to/from court, prison Re: Disability
   issues, items, fittings, Remedy list, hygiene      33 – 49

   Exhibit 02 B page 1→    3
   - Court Decline -                                                 50 – 52

3- Exhibit 03  Denied cell clean & tools                            53

4- Exhibit 04 Bulling & Denied bleed stop                           54

5- Exhibit 05 Denied phase III for incibility                       55A

6- Exhibit 06 COViD19 Kitchen                          55 – 57

7- Exhibit 07 Samples of Daily
   care 8:00 Am →8:00 PM in UK   58 – 62

8- Exhibit 08 Denial of Dental care/hygiene      63 – 69
   ( Teeth abrasion due to opening packing)

9- Exhibit 09 Denying for long Prosthetic parts
   and essential Refill medication        70 – 76

10- Exhibit 10 Discrimination against upper
    double amputee disability in fitting, items &help      77 – 79

11- Exhibit 11A No Toe-nail Trimming 9½ months
    and when doing it Pain, bleeding Covid-19 Risk    80 – 81
        Exhibit 11B Toe-nail trimming, no tools..bleeding    82 – 86

12- Exhibit 12 No treatment/help for regular arms infection    87 – 88

13- Exhibit 13 Attacked injured by staff in hunger strike    89 – 90

14- Exhibit 14 Civil Action complaint notice                91 – 92

Exhibit 01

Page 32/92

**EMBASSY OF THE**
**UNITED STATES OF AMERICA**

No. 057

The Embassy of the United States of America at London, England, presents its compliments to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs and has the honor to refer to Embassy's Note 028, dated May 21, 2004, requesting the extradition of Mustafa Kamel Mustafa, aka Abu Hamza. The Embassy also refers to letter dated 23 June 2004 from the Home Office to the U.S. Department of Justice requesting the assurance that a sentence of death will not be imposed or, if imposed, will not be carried out against Abu Hamza if he is extradited to the United States.

Pursuant to Article IV of the Extradition Treaty, Protocol of Signature and Exchange of Notes Between the United States and the United Kingdom of June 8, 1972, the Government of the United States hereby assures the Government of the United Kingdom that the United States will neither seek the death penalty against, nor will the death penalty be carried out against, Mustafa Kamel Mustafa, aka Abu Hamza, upon his extradition to the United States.

The Embassy avails itself of the opportunity to express to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs the renewed assurance of its highest consideration.

Embassy of the United States of America

London, England, July 20, 2004.

32

548

Exhibit 02

A page 1

Page 33/92

LAW OFFICES OF
## JOSHUA L. DRATEL, P.C.
A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK  10006
· · ·
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL
———
LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

STEVEN WRIGHT
*Office Manager*

April 20, 2016

## BY ELECTRONIC MAIL

Krista Klett, Esq.
CLC Attorney
Federal Bureau of Prisons
United States Penitentiary
Administrative Maximum
5880 State Highway 67 South
P.O. Box 8500
Florence, CO 81226

Re:   *Mostafa Kamel Mostafa*
      Register No. 67495-054

Dear Ms. Klett:

As per our discussion, this letter, submitted on behalf of Mostafa Kamel Mostafa (Reg. # 67495-054), whom I represent by CJA appointment along with Sam Schmidt, Esq., and Michael Bachrach, Esq., provides an itemized list of issues which the occupational therapist assigned to Mr. Mostafa's case should address when evaluating Mr. Mostafa's disability, accommodations and confinement conditions at ADX Florence.  I have also noted, where applicable, any prior limitations on the Bureau of Prisons's ability to make a recommended accommodation so that the occupational therapist is aware of the potential issue and can propose a suitable alternative if the preferred accommodation cannot be made for safety or security reasons.

Accordingly, the occupational therapist assigned to Mr. Mostafa's case should assess the following:

●   the suitability of Mr. Mostafa's prosthetic devices, including

(1)   the need to avoid infection in Mr. Mostafa's limbs, and whether the existing prosthetics, and the amount of time Mr. Mostafa must wear them is the cause of

32

(Ex 2 A page 2) page 34/92

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Krista Klett, Esq.
CLC Attorney
ADX Florence
April 20, 2016
Page 2 of 4

his current infection in his limbs;

(2)   whether there is some way to reduce the need for Mr. Mostafa to wear his prostheses, and which takes into account that he currently wears his prosthetics more frequently than he should because he suffers abrasions when he uses his limbs for daily tasks without the prosthetic devices.  Thus, the occupational therapist should recommend alternatives to use of a prosthetic device to accomplish tasks other than those such as writing, eating, picking up small items, and putting on and taking off his socks for which Mr. Mostafa should reasonably be required to use his prosthetics;

(3)   Mr. Mostafa's ability to clean his prostheses without assistance, and whether he should be provided assistance to do so as a necessary accommodation;

(4)   the fittings as to the left prosthetic, which slips when Mr. Mostafa wears it; and

(5)   whether any other changes to the prosthetics must be made to bring them in line with Mr. Mostafa's needs;

◉   the suitability of Mr. Mostafa's shower conditions, and accommodations should be made which provide

(1)   an appropriate soap pump, which can be permanently affixed to the wall in the shower;

(2)   an appropriate faucet with rubber surrounding the metal to avoid injury;

(3)   appropriate taps that provide a continuous water sauce (rather than requiring Mr. Mostafa to hold them down whilst showering);

(4)   a shower chair that is suited to someone with Mr. Mostafa's disabilities, such that it does not require him to push the chair up and down, leading to injury;  and

(5)   Mr. Mosafa the ability to dry himself after the shower;

◉   the suitability of the sink in Mr. Mostafa's cell to his disability, including

(1)   an assessment of the current faucet, which must be higher and at least several inches away from the edges of the sink so that Mr. Mostafa can use it to wash his arms and face given his disabilities;

*Exhibit 02   A page 3*

*page 35/98*

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Krista Klett, Esq.
CLC Attorney
ADX Florence
April 20, 2016
Page 3 of 4

(2)    an assessment of the sink basin, which must be larger to accommodate Mr. Mostafa's ability to clean himself and other items such as his eating utensils; and

(3)    appropriate taps that provide a continuous water sauce, and which mix hot and cold together rather than requiring separate taps for each, and also which are covered with rubber to avoid injury to Mr. Mostafa's limbs;

• the suitability of the toilet in Mr. Mostafa's cell to his disability and in regard to his personal hygiene.  While at MCC New York, a toileting aid was recommended but the BoP did not permit the accommodation. Accordingly, some other solution, such as the installation of a bidet or other permanent toilet should be considered;

• the suitability of the bedding and a recommendation as to bedding that will not slip off the bed;

• the suitability of the physical space for a double lower arm amputee, as opposed to an individual in a wheelchair (which Mr. Mostafa is not), including but not limited to

(1)    the placement of the table (which at present is not near the sink and therefore is of limited usefulness to Mr. Mostafa);

(2)    the size of the table (which is too small to accommodate Mr. Mostafa given his disability, and also limits his ability to review paperwork relevant to his case, amongst other things);

(3)    the lack of any place to hang clothes; and

(4)    the low lighting in the cell, in particular in light of the fact that Mr. Mostafa is partially sighted;

• Mr. Mostafa's ability to eat, drink, and carry food, including

(1)    Mr. Mostafa's ability to carry hot food and to do so safely;

(2)    the need for a hard plate, tray, and hard cup to accommodate Mr. Mostafa's disability (and an assessment of what alternatives would be acceptable if these are not available for safety or security reasons, as was the case at MCC New York); and

(4)    the need for eating utensils, such as a spork, that are consistent with Mr.

*(Exhibit O2 — A, pages 4)   page 36*

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Krista Klett, Esq.
CLC Attorney
ADX Florence
April 20, 2016
Page 4 of 4

Mostafa's disability;

- Mr. Mostafa's ability to clean his cell given his disabilities, as well as an assessment of the injuries he would suffer without assistance in cleaning his cell;

- Mr. Mostafa's ability to brush his teeth, and his request for an electronic toothbrush and/or "water flosser;"

- Mr. Mostafa's ability to cut his nails without assistance;

- Mr. Mostafa's need for a hairbrush that meets his requirements and ADX's safety concerns including his need for a hairbrush to stand in for a hand to clean himself in the shower;

- Mr. Mostafa's need and ability to clean his eyeglasses;

- a reasonable accommodation to permit Mr. Mostafa to put on and take off socks when he is not using his prostheses;

- the suitability of the current organizational tools (such as paper clips, etc.) that are available to Mr. Mostafa to organize his legal papers, in light of his disabilities; and

- the suitability of the computer setup currently available to Mr. Mostafa in light of his disabilities.

In addition, please have the occupational therapist take into account when evaluating Mr. Mostafa any items not on this list, but which Mr. Mostafa raised in letters to you and the unit manager in the months of December, January, and, March, as well as those issues Mr. Mostafa will raise with the occupational therapist upon his or her visit. Ideally, I would also like to speak with the occupational therapist before he or she meet with Mr. Mostafa.

Please contact me if you have any questions or concerns regarding this list, and please notify me after the occupational therapist has assessed Mr. Mostafa so we can discuss the conclusions he or she has reached and discuss any issues with the implementation of his or her suggestions.

Very truly yours,

Lindsay Lewis

LAL/

36

*Exhibit 02 A, page 6)* Page 38/72

LAW OFFICES OF
# DRATEL & LEWIS

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
—
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: llewis@dratellewis.com

JOSHUA L. DRATEL
LINDSAY A. LEWIS
—
WHITNEY G. SCHLIMBACH

December 6, 2019

**BY ELECTRONIC MAIL**

Chris Synsvoll, Esq.
Legal Department
Federal Bureau of Prisons
United States Penitentiary
Administrative Maximum
5880 State Highway 67 South
P.O. Box 8500
Florence, Colorado 81226

   Re: *Mostafa Kamel Mostafa*
     <u>Register No. 67495-054</u>

Dear Mr Synsvoll:

  I am writing to you on behalf of my client Mostafa Kamel Mostafa (Reg. # 67495-054), whom I represent by CJA appointment along with Sam Schmidt, Esq., and Michael Bachrach, Esq., to request certain accommodations for my client, and to provide you with two letters containing prior requests to the ADX legal department for other accommodations, in light of the fact that I communicated those requests to Krista Klett by email, April 18, 2019, and December 3 2019, and it has come to my attention that she is no longer an attorney in the legal department at ADX Florence, and may never have received or conveyed those requests to the appropriate authorities.[1] As with previous requests, the accommodations requested herein are necessary, given Mr. Mostafa's severe disabilities, and/or to secure his right to counsel and ability to assist in his own defense.

  Accordingly, in addition to those items discussed in the letters attached, Mr. Mostafa requires the following:

---

 [1] The April 18, 2019, and December 3, 2019, letters are attached to the email containing this letter.



*(Exhibit D2   A page 7)* *page 39/92*

(1)     full access to his lawyers by legal mail, including both the ability to send mail and to receive it. As per my client, Mr. Mostafa has been informed by ADX Florence staff that in light of his hunger strike he will not be afforded the ability to send or receive legal mail, in addition to restrictions on his ability to communicate with cleared family members by phone or mail. To that end, Mr. Mostafa confirmed on December 4, 2019, that he did not receive time sensitive legal mail that I I sent to him November 12, 2019. I am also concerned that he will be denied an important and time sensitive piece of legal mail that I mailed to him on December 3, 2019. Indeed, regardless of Mr. Mostafa's disciplinary status within the facility, restrictions on his access to his attorneys and ability to participate in his defense, violate his Sixth Amendment right to counsel. Please ensure and confirm that such restrictions are lifted to the extent that they have been imposed. I am also including as attachments to the email containing this letter, three forms which I sent to Mr. Mostafa by legal mail but that he has not received, and which directly impact his access to counsel of his choosing, to be provided to him directly to sign and send back to me; and

(2)     the ability to be seen by an occupational therapist of his legal team's choosing, to evaluate Mr. Mostafa along with any occupational therapist to be provided by the Bureau of Prisons. While we strongly endorse any determination that Mr. Mostafa's ongoing issues with the inadequacy of his cell and accommodation to satisfy his needs as a disabled person, require additional assessment by an occupational therapist, the occupational therapists previously appointed by the Bureau of Prisons have failed to properly assess Mr. Mostafa's needs as a double upper arm amputee, and/or they have not been qualified to do so, and therefore we would like to bring in an occupational therapist with the required knowledge and expertise to accompany anyone appointed by the Bureau of Prisons. If we have been misinformed that the Bureau of Prisons intends to have Mr. Mostafa re-evaluated by an occupational therapist, or there is any impediment to the arrangement we have suggested, we nonetheless request permission to have Mr. Mostafa seen by an occupational therapist of his choosing, and ask that this request, in its entirety, be conveyed to ADX Florence medical department, including Ms. Follows and. Dr. Resto.

    Please contact me if you have any questions regarding these requests, those referenced in the attached April 18, 2019, and December 3, 2019, letters, and/or the forms for Mr. Mostafa to sign, and please also confirm that these requests will be honored.

Very truly yours,

Lindsay Lewis

LAL/

*39*

(Exhibit O2   A page 8) Page 40

### LAW OFFICES OF
# DRATEL & LEWIS

### 29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
—
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: llewis@dratellewis.com

JOSHUA L. DRATEL
LINDSAY A. LEWIS
—
WHITNEY G. SCHLIMBACH

December 3, 2019

**BY ELECTRONIC MAIL**

Krista Klett, Esq.
CLC Attorney
Federal Bureau of Prisons
United States Penitentiary
Administrative Maximum
5880 State Highway 67 South
P.O. Box 8500
Florence, Colorado 81226

Re:   *Mostafa Kamel Mostafa*
        Register No. 67495-054

Dear Ms. Klett:

I am writing to you on behalf of my client Mostafa Kamel Mostafa (Reg. # 67495-054), whom I represent by CJA appointment along with Sam Schmidt, Esq., and Michael Bachrach, Esq., to request on my client's behalf certain accommodations necessary to his ability to communicate with his lawyers and assist in his own defense and/or to prevent injury in light of his disabilities.

Accordingly, Mr. Mostafa requires the following:

(1)    permission to create a compact disc to send to his attorneys, as listed above;

(2)    permission to print documents to send to his attorneys, as listed above;

(3)    the installation of Microsoft Office on Mr. Mostafa's computer; and

(4)    the provision of a "pouch opener" to prevent further injury to Mr. Mostafa's teeth, given that to date he has been forced to open pouches with his teeth and his has


40

(Exhibit 02   A   page 9)   page 41

LAW OFFICES OF
**DRATEL & LEWIS**

Krista Klett, Esq.
CLC Attorney
ADX Florence
December 3, 2019
Page 2 of 2

resulted in the loss of several teeth.

Please contact me if you have any questions regarding these requests, and please also confirm that these requests will be honored.

Very truly yours,

Lindsay Lewis

LAL/

41

*(Exhibit 02 A - page 10)!*  *page 42*

*Hygiene*



## UTILIZATION REVIEW COMMITTEE
## INMATE NOTIFICATION LETTER
## FCC FLORENCE
## Camp/FCI/USP/ADX

Name: **Mostafa, Kamel**        Date: **'31.1.17**
Reg. Number : **67495-054**        Housing Unit: **H05-511**

## Requested Consult/Procedure

☐ General Surgery    ☐ Orthopedics    ☐ Gastroenterology    ☐ Ear, Nose, and Throat
☐ Ophthalmology    ☐ Prosthetics    ☐ Colonoscopy and/or EGD    ☐ Oral Surgery
☐ MRI    ☐ CT Scan    ☐ Cardiology    ☐ Urology
☐ Radiology    ☐ Nephrology    ☒ Other: _ electric toothbrush / hole punch

## Utilization Review Committee Decision

☐    The committee has referred your case to the Regional Office for final approval.
      You should be notified of your status within the next two months.

☐    The committee has APPROVED this request without modification.

☐    The committee has DENIED this request.
      ☐    You will be scheduled for further evaluation by a staff physician.
      ☐    You will be scheduled for further evaluation by a mid-level provider.
      ☐    You need to follow-up in sick call with any further issues.
      ☐    You will be referred to a specialty consultant.
      ☐    Your procedure is contraindicated due to unacceptable risk.
      ☐    You have been placed on the waiting list for: _____.
      ☒    Other: _Not approved for electric tooth brush_.
**Re-submission of the request will be considered if medically indicated.

Physician _____

MAR 01 2017

Copy Sent or Issued to Inmate On: _____          Form Last Updated: 11.19.10.TM
Copy Scanned Into BEMR

42

(Exhibit 02 A page 11) 43/92

"Remedy List ADX (page Two)

| NO# | Remedy ID | Subject & Short Comment |
|---|---|---|
| #31 | 887652-A1 | Prosthetics Repairs see Also. 879482-A1 #17 |
| 32 | 845889-A1 | Toe Nails Lack tools/pain bleeding see Also 861243 #1014 |
| 33 | 890762-A1 | Renewal S.A.M 2017 |
| 34 | 879409-A1 | SAM Modification Denying one more Item new |
| 35 | 964462-A1 | SAM 2019 a Denying one More Sam surface(?) |
| 36 | 876153-A1 | Denying contacting sons Imran & Ahmad |
| 37 | 912005-A1 | Denying eating/writing Jabb 3rd Time see Also 882104A |
| 38 | 851171-A1 | Access to Computer/Discovery imped. s of from |
| 39 | 958912-A1 | Bullying and denied medications bleeding Nurse P. Williams |
| 40 | 877974-A1 | Discrimination against my type of disability Denied |
| 41 | 915978-A1 | Fragments - dangerous from hot tray injured |
| 42 | 924535-A1 | Sleep Deprivation Also. 952272 A |
| 43 | 972428-A1 | Denying skin prescription every months 1/2 only. |
| 44 | 977565-A | Denying any help for cell cleaning |
| 45 | 893368-A1 | Denying Diabetic Snack Also. 974282 |
| 46 | 887652-A1 | Prosthetic returned unrepaired yrs Denied |
| 47 | 977381-A1 | Foot care Also Foot wear denied see |
| 48 | 997005-R1 | Denying feet regularly Current time Feb 20 |
| 49 | 931952-A1 | Denying Diabetic Socks & Damaged once |
| 50 | 999324-off | Staff Assult injuring Mustafa During foul stuff |
| 51 | 1002348 A,R2 | Denying Toe-Nail Trimming over 9 months |
| 52 | 991488-A | Bullying & Discrimination by C/O Also. 987316 |

(1) Misuse of SAM: Using one yr old Grandson Ahmed as "Third party to Renew SAM

48



→ (Exhibit 02 A pg 12)    44/92

Remedy list (ADX) ← Exhibit    Oct 2015 → Aug 2017
(See the back of Remedy papers for More (comments))

| No | Remedy No. | Subject | Comments & Status |
|----|------------|---------|-------------------|
| 01 | 839647 FA-cats | Designation to ADX | Considered Denied |
| 02 | 8239 (40-R) | Urinal Test | Considered Denied |
| 03 | 862521-A1 | Iman & Religious mi | Considered Denied |
| 04 | 877173-A1 | Disability Items list | Denied |
| 05 | 879473A1 | Denying prescription | Denied (For chronic condition) |
| 06 | 864128-A1 | Ignoring Infection | Denied |
| 07 | 854866-A1 | Maintenance hepatitis | Denied |
| 08 | 866623-A1 | Pen & tooth brush | Denied (Re: Timely exchange) |
| 09 | 854865A1 | Hair Brush | Denied (Trashed mine!) |
| 10 | 882104-A | Table | Denied |
| 11 | 858911-A1 | Tee Shirt - Clothing | Denied |
| 12 | 877295A1 | Broken Tooth & Decay | Denied any relief! |
| 13 | 88736-A1 | Nail Cutting torture | Denied |
| 14 | 861248A1 | To Nail & Buffing | Denied |
| 15 | 876246A | Charging Money | Denied (For chronic condition) |
| 16 | 882106-A1 | Misconduct | During Blood pressure (Denied) |
| 17 | 844737A1 | Disable Toilet | Denied |
| 18 | 879482A1 | Prosthetics | Denied |
| 19 | 861035A1 | Salad | Denied |
| 20 | 862522A1 | SAM (2016) | Denied |
| 21 | 876153-A1 | Denying family contacts | Denied |
| 22 | 879409A1 | Banning Two sons | Denied |
| 23 | 877975-A1 | SAM trickery! | Denied |
| 24 | 877976A1 | Missing visiting form | Denied |
| 25 | 875413-A1 | Legal & Human rights | Contact    Denied |
| 27 | 858903A1 | Contacting Consulate | Denied |
| 28 | 864527A1 | Access to Computer | Denied |
| 29 | 876895A1 | Bullying & Discrimination | Denied |
| 30 | 718626A2 | Electric tooth brush | Considered denied N/a |

✳ Date of the listed items Aug 12, 2017
✳ There are still some pending Remedies ....

(Exhibit 02 A page 13,)

## Lindsay Lewis

| | |
|---|---|
| **From:** | Lindsay Lewis |
| **Sent:** | Tuesday, September 08, 2015 5:36 PM |
| **To:** | 'kklett@bop.gov' |
| **Subject:** | Mostafa Kamel Mostafa-- Reg #67495-054 |
| **Attachments:** | #463Judgment.1-12-2015.pdf; MKM SentencingMemo_FINAL.pdf; ExD_Dr.BenjaminKliglerReport.pdf |

Ms. Klett,

Thank you so much for taking the time to speak with me today and for your willingness to follow up with FMC Springfield to see what steps they have taken to evaluate my client, Mr. Mostafa, including inquiry into whether Mr. Mostafa has been seen by an occupational therapist with experience dealing with double arm amputees, and whether she has prepared a report as to Mr. Mostafa's needs.  To my knowledge, Mr. Mostafa has only ever been seen by an occupational therapist for a few minutes on one occasion where she failed to delve into any of his issues (but rather told him they would do so on subsequent visits) and then during a second chance meeting she declined to evaluate him at all.  I have heard conflicting accounts as to whether she prepared a report based on this cursory review of Mr. Mostafa's needs, and would be very curious to see any report that has been prepared.  I am also  available any time to discuss next steps in terms of evaluating Mr. Mostafa for designation purposes.

As stated on the phone, attached here are:

(1) The judgement in Mr. Mostafa's case in which the sentencing judge, the Hon. Katherine B. Forrest, recommended that the BoP review the report of Dr. Benjamin Kligler and have Mr. Mostafa evaluated by an occupationsl therapist with experience dealing with double arm amputees;
(2) The sentencing submission on Mr. Mostafa's behalf with recounts many of the extradition and sentencing issues surrounding Mr. Mostafa's disabilities;  and
(3) The Report of Dr. Benjamin Kligler, attached as exhibit D to the Defendant's Sentencing Submission.

Please let me know if you need any additional documentation or if there is anything else I can do.

I look forward to hearing from you.

Thanks,

Lindsay Lewis
Attorney
Joshua L. Dratel, P.C.
29 Broadway, Suite 1412
New York, New York 10006
TEL (212) 732-0707
FAX (212) 571-3792
llewis@joshuadratel.com



(Exhibit 02   A   page 14)   Page 46

**Lindsay Lewis**

| | |
|---|---|
| **From:** | Lindsay Lewis |
| **Sent:** | Friday, August 19, 2016 10:22 AM |
| **To:** | Krista Klett |
| **Cc:** | Michael Bachrach; lawschmidt@aol.com |
| **Subject:** | Mostafa Kamel Mostafa-- 67495-054 |

Hi Krista,

I hope you're having a good summer.

When I last spoke with my client, Mr. Mostafa, he advised me that the modifications and accommodations necessary to his ability to review discovery and prepare for his appeal have not been met.  Setting aside all of the cell accommodation issues for the moment (though they are equally pressing) and just focusing on discovery review, I am told that Mr. Mostafa still has not been provided a keyboard which is critical to his ability to review process.  The computer screen remains too far away and needs to be placed directly in front of him (not off to the side).  He needs a flat surface on which to navigate the mouse, and the mouse itself needs a flat top.  The wiring for the mouse has to be on the right side.  My understanding is that the occupational therapist did not address any of these issues.  I will be addressing the various other issues that the OT failed to resolve, but given the current time frame for the appeal, I'd like to know when these accommodations can be made.

Thanks,

Lindsay

Lindsay Lewis
Attorney
Joshua L. Dratel, P.C.
29 Broadway, Suite 1412
New York, New York 10006
TEL (212) 732-0707
FAX (212) 571-3792
llewis@joshuadratel.com

*(Exhibit 02   A page 15)*

page 47/92

*(Toe Nails injuries)*



## UTILIZATION REVIEW COMMITTEE
## INMATE NOTIFICATION LETTER
## FCC FLORENCE
## ADX

OCT 28 2015

Name: Mustafa, Kamel          Date: _____
Reg. Number: 67495-054        Housing Unit: 1403-302

## Requested Consult/Procedure

| | | | |
|---|---|---|---|
| General Surgery | Orthopedics | Gastroenterology | Ear, Nose, and Throat |
| Ophthalmology | Prosthetics | Colonoscopy and/or EGD | Oral Surgery |
| MRI | CT Scan | Cardiology | Urology |
| Radiology | Nephrology | Other: Podiatry | |

## Utilization Review Committee Decision

The committee has referred your case to the Regional Office for final approval.
You should be notified of your status within the next two months.

The committee has APPROVED this request without modification.

√ The committee has DENIED this request.
    You will be scheduled for further evaluation by a staff physician.
    You will be scheduled for further evaluation by a mid-level provider.
    You need to follow-up in sick call with any further issues.
    You will be referred to a specialty consultant.
    Your procedure is contraindicated due to unacceptable risk.
    You have been placed on the waiting list for: _____
    √ Other: To be reevaluated by provider
**Re-submission of the request will be considered if medically indicated.

_____          G. Santini, MD
Physician                Clinical Director
                         FCC Florence, CO

Copy Sent or Issued to Inmate On: OCT 28 2015 _____

Copy Scanned Into BEMR          Form Last Updated: 11.19.10.TM

47

Chief Dentist Dr. Robert.    Mon 12:01  50, 2015

Mostofa Kamel    67485.    Page 48

Unit H

Could you kindly do a follow-up to the dental work you done is't work.    ( If not

United States Penitentiary
Administrative Maximum (ADX)
Health Services Department
5880 State Highway 67 South
Florence, CO 81226

Response: 10/27/15

I discussed your problem of having an adequate toothbrush with Mr. Hanson (AHSA) and the AW (Health). The HSA will follow up with you to ensure a good working toothbrush. Thanks

Nixon Roberts, DDS
FCC Chief Dental Officer
FCC Florence, CO

Dr. N. Robert, DDS  ADX

→ (Exhibit 02 A page 16)

-48-

*page 49/92*

*Exhibit 02 A page 17*



## UTILIZATION REVIEW COMMITTEE
## INMATE NOTIFICATION LETTER
## FCC FLORENCE
## Camp/FCI/USP/ADX

**Name:** Mostafa, Kamel   **Date:** 3/1/17
**Reg. Number :** 67495-054   Housing Unit: H05-511

## Requested Consult/Procedure

☐ General Surgery   ☐ Orthopedics   ☐ Gastroenterology   ☐ Ear, Nose, and Throat
☐ Ophthalmology   ☐ Prosthetics   ☐ Colonoscopy and/or EGD   ☐ Oral Surgery
☐ MRI   ☐ CT Scan   ☐ Cardiology   ☐ Urology
☐ Radiology   ☐ Nephrology   ☑ Other: _electric toothbrush / hole punch_

## Utilization Review Committee Decision

☐   The committee has referred your case to the Regional Office for final approval.
  You should be notified of your status within the next two months.

☐   The committee has APPROVED this request without modification.

☐   The committee has DENIED this request.
   ☐   You will be scheduled for further evaluation by a staff physician.
   ☐   You will be scheduled for further evaluation by a mid-level provider.
   ☐   You need to follow-up in sick call with any further issues.
   ☐   You will be referred to a specialty consultant.
   ☐   Your procedure is contraindicated due to unacceptable risk.
   ☐   You have been placed on the waiting list for: _____
   ☑   Other: _Not approved for electric tooth brush_
**\*\*Re-submission of the request will be considered if medically indicated.**

_____
Physician

MAR 0 1 2017

Copy Sent or Issued to Inmate On: _____
Copy Scanned Into BEMR      Form Last Updated: 11.19.10.TM

Page 50/92

Exhibit: 02 B page 1

LAW OFFICES OF
## JOSHUA L. DRATEL, P.C.
A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
—
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL                                            STEVEN WRIGHT
—                                                          *Office Manager*
LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

October 7, 2015

**BY ECF**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *United States v. Abu Hamza al-Masri (Mostafa Kamel Mostafa),*
           04 Cr. 356 (KBF); 15-211

Dear Judge Forrest:

This letter is submitted on behalf of defendant Mostafa Kamel Mostafa, whom Sam Schmidt, Esq., Michael Bachrach, Esq., and I represent in the above-entitled case, respectfully requesting that the Court (1) obtain an update from the Bureau of Prisons (hereinafter "BoP") as to the status of Mr. Mostafa's now eight-month long post-sentencing evaluation at FMC Springfield to determine his medical and prison needs, as well as the appropriate accommodations and designation facility to meet those needs;[1] and (2) Order the BoP to release to counsel a copy of any Occupational Therapist Report that has been prepared in regard to Mr. Mostafa.[2]

---

[1] The update should include information as to whether the BoP has adopted the Court's recommendations that it take Dr. Benjamin Kligler's Report into consideration, and that Mr. Mostafa's medical team include an Occupational Therapist with experience treating double arm amputees. The update should also include a time frame, if one exists, for the completion of the evaluation and transfer to the designation facility.

[2] I previously requested of FMC legal counsel a copy of any Occupational Therapist's Report as to Mr. Mostafa from FMC Springfield directly, but have been informed by legal counsel as well as the Warden there that in order to receive the Report I must either go through the FOIA request process (which can take months, and may not produce any results) or seek a

50

Case 1:04-cr-00356-KBF   Document 506   Filed 10/14/15   Page 1 of 2   *Page 51/92*

 *Exhibit 02 - B Page 2*

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 14, 2015

BY ECF AND ELECTRONIC MAIL
The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007
ForrestNYSDChambers@nysd.uscourts.gov

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: OCT 14 2015

Re:   United States v. Mustafa Kamel Mustafa, a/k/a "Abu Hamza"
      04 Cr. 356 (KBF)

Dear Judge Forrest:

The Government writes in response to defense counsel's letter to the Court dated October 7, 2015, requesting that the Court order the Bureau of Prisons ("BOP") to provide an update on the status of the BOP's post-sentencing evaluation of the appropriate prison designation for the defendant, and to provide a copy to defense counsel of any occupational therapist report prepared in regard to the defendant's prison designation.

The Court has already sentenced the defendant, and the Court's post-sentencing role is closely circumscribed. With respect to prison designations, courts "have long recognized that the classification and designation of inmates is a matter within BOP's sole discretion." *United States v. Jones*, 869 F.Supp.2d 373, 377 (E.D.N.Y. 2012); *see United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995) ("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons."); *Pugliese v. Nelson*, 617 F.2d 916, 925 (2d Cir. 1980) ("[J]udicial intervention into the classification of prisoners for monitoring and control purposes would almost inevitably involve the federal courts in the day-to-day operations of our prison system, which are better left to the expertise of prison administration authorities."). "That recognition reflects the reality [that] the judicial review of a classification decision is, if not completely unavailable, severely curtailed." *Id.*; *see also United States v. Huss*, 520 F.2d 598, 602 (2d Cir. 1975) ("[E]xcept where specific statutory authority exists, the place and conditions of confinement are in the first instance, matters of executive rather than judicial branch authority").

*page 52/92*

Exhibit 02 B *page 3*

Hon. Katherine B. Forrest
October 14, 2015
Page 2

Here, the defendant invites the Court to involve itself in the BOP's classification and designation process. Under the above principles, the Government respectfully requests that the Court reject this invitation. Such involvement is outside of the Court's post-sentencing jurisdiction, and, in any event, the defendant fails to identify with any particularity any defect in the BOP's process. To the extent the defendant desires to challenge the conditions of his confinement or the BOP's conduct, he must do so collaterally in the district in which he is incarcerated, not before this Court. *See Jiminian* v. *Nash*, 245 F.3d 144, 146 (2d Cir. 2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as . . . computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." (internal citation omitted)); *see also Rumsfeld* v. *Padilla*, 542 U.S. 426, 447 (2004) (noting that a federal prisoner seeking to challenge his custody must "name his warden as respondent and file the petition in the district of confinement").

As to the unrelated issue of the defendant's access to discovery in preparation for his appeal, the Government has conferred with defense counsel about this issue. The Government will work with defense counsel to ensure that the defendant has access to his discovery at his permanent prison facility.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:   /s/ Ian McGinley
John P. Cronan / Edward Y. Kim
Ian McGinley
Assistant United States Attorneys
Tel.: (212) 637-2779 / -2401 / -2257

cc:   Michael Keith Bachrach, Esq.; Sam A. Schmidt, Esq.
Lindsey Lewis, Esq.
By e-mail

**Order**

For principally the reasons cited by the Government herein, the Court declines to involve itself in the issues raised by the defendant's Letter of Oct. 7, 2015.

10/14/15   K.B. For
(USDJ)

**Administrative Remedy No. 977505-A1**
**Part B - Response**

*Exhibit 03* page 53/92

This is in response to your Central Office Administrative Remedy
Appeal wherein you allege deliberate indifference against a
disabled person with no hands.  You contend you have been in a
secured housing unit since 2012 and suffer injuries on a weekly
basis trying to clean your cell.  You further contend your
current prosthetics are not conducive for cleaning without
special attachments and special cleaning tools.  For relief, you
request special attachments and special cleaning tools for your
prosthetics.

We have reviewed documentation relevant to your appeal and,
based on our findings, concur with the manner in which the
Warden and Regional Director responded to your concerns at the
time of your Request for Administrative Remedy and subsequent
appeal.  Our succeeding review reveals on September 12, 2019,
you were evaluated and measured by Prosthetics for protective
sleeves to assist with rubberized or textured friction to
protect the bilateral stumps.  Once the protective sleeves are
completed, they will be issued to you by Health Services.  If
you are having issues, you need to request sick call for your
complaints.  Your primary care team will continue to make
recommendations as needed.  As recommendations are made, a
course of treatment will be determined.  Given this, we shall
defer diagnostic testing and treatment interventions to the
Health Services staff at the local level.

Based on this information, there is no evidence to substantiate
your claim of deliberate indifference on the part of medical
staff; therefore, we find no rationale warranting further review
of your claim.

The record reflects you have received medical care and treatment
in accordance with evidence based standard of care and within
the scope of services of the Federal Bureau of Prisons.  You are
encouraged to comply with proposed medical treatment so Health
Services can continue to provide essential care and to contact
medical personnel through routine sick call procedures should
your condition change.

RECEIVED

Considering the foregoing, this response is provided for
informational purposes only.

NOV 06 2019

ADX AW Office

_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

*Exhibit 04*

*page 54/92*

**BP-229 RESPONSE**                                    **Case Number:  958912-F1**

Your Request for Administrative Remedy dated October 26, 2018, and received in the Administrative Remedy office on October 31, 2018, has been reviewed.  Specifically, you allege on October 20, 2018, you suffered deep razor like cuts, with heavy bleeding, to your amputated arm stumps, due to using an abrasive pad to clean your assigned cell. You further allege, responding medical staff refused to clean your wounds or apply a bandage, and mocked you by asking, "Why did you lose/cut your hands?"  Lastly, you allege responding medical staff refused to document the incident.

A review of the issue raised in your Request for Administrative Remedy has been conducted.  The results of the review revealed all staff are held to a high standard of treating inmates fairly, impartially, and humanely.  Mistreatment of inmates is not tolerated.  Therefore, the information presented in your Administrative Remedy will be forwarded to the appropriate Bureau of Prisons component for review.  However, inmates are not entitled to receive information regarding the outcome of an investigation.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only.  In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_____                    12/19/18
Andre Matevousian, Complex Warden                  Date

54

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Pg 55 COVID19 Kitchen (Exhibit 06 page 1)*

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **Mostafa. K. Mostafa**   **67495-054**   **H**   **ADX Co**
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

**Part A– INMATE REQUEST** This No answer to avoid liability while still exposing me to the harm of Covid-19. As in the BP9 and the cop out attached, I am severely disabled (no hands) and poor vision I have most of the underlying endangering sickness and I'm complete solitary confinement 24-7.

Despite kitchen manger assurances to open all pouches and plastics fully, including this staff now, I am provided still with only some items of food open, other not open or only partially open, and do not have opener but my teeth to get the food out. This is very dangerous in Covid-19 time; all food items and Kosher trays, are repeatedly handled by staff gloves while touching every body, and things. please empty the food in disability items?

**7-5-2020**
DATE                                   SIGNATURE OF REQUESTER

**Part B– RESPONSE**

*Page 55/*

DATE                                   WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

                                               CASE NUMBER: _____

**Part C– RECEIPT**
Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

_____   *55*   _____
DATE                                   RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

*Exhibit 05*                                    *page 55A*
                                                      *72*

**BP-229 Response**                        Case Number:  1024696-F1

Your Request for Administrative Remedy dated May 29, 2020, and received in the Administrative Remedy office on June 4, 2020, has been reviewed.  Specifically, you are appealing the denial of your placement into Phase III.

A review of the issue raised in your Request for Administrative Remedy has been conducted.  The results of the review revealed that outside law enforcement agencies did not consent with approving your Phase III placement.  You were denied placement into Phase III because additional time is needed to determine whether you can function with additional privileges without posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates, or others, including yourself; and/or posing a risk to public safety.  We encourage you to continue to participate in and complete all programs recommended by Unit Team; demonstrate positive behavior, including respectful and appropriate conduct towards staff and other inmates; and demonstrate an overall positive institutional adjustment to include, but not limited to, personal hygiene, and cell sanitation.  You will be reviewed for placement in the next phase, ordinarily six months from your current review, providing you continue to meet the eligibility requirements identified in Institution Supplement 5321.07(3)K, <u>Special Security Unit</u>.

Accordingly, your Request for Administrative Remedy is denied.  In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas  66101-2492.

_____                    7/2/2020
B. True, Complex Warden                       Date

55A

*(Urgent Please!)*   *(Exhibit 06 page 2)*

*See attached*

FEDERAL CORRECTIONAL COMPLEX
FLORENCE, COLORADO
INFORMAL RESOLUTION FORM

*page 56/92*

**Notice to inmate:** *Inmates have the responsibility to use this Program in Good Faith and in an Honest and Straightforward manner.*

Inmate Name: Mostafa K. Mostafa     Reg. No.: 67495-054

Unit: _____     Date: Wed 6-24-20

NOTICE TO INMATE: Be advised, normally prior to filing a Request for Administrative Remedy, BP-229(13), you must attempt to informally resolve your complaint through your Correctional Counselor. Please follow the steps listed below: COVID 19, Kitchen Persistant Misconduct endangering my Life!

1.  State your complaint (single complaint or a reasonable number of closely related issues): I am severely disabled, no hands and very abraded front teeth forced persistantly to open food items (un opened or partially opened) by using my front teeth for many years to date. Kitchen refusal to open properly food items is now in COVID 19 Time is illegal but further (If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also MISCON submit one copy of supporting exhibits, as exhibits will not be returned with the BP-229(13) response.)

2.  State what resolution you expect: As recommended by regional office in Theraputic Diet Please, provide all food out of any pouches, plastic, or closed Containers and stop using my inability & disability to endanger/harm me

Inmate's Signature: _____     Date: 6-24-20

Counselor's Signature: _____     Date: 6/24/2020

Department Involved: _____     Date Assigned: _____   Due Date: _____

Department's Response regarding Complaint: No response _____
_____
_____

Department Head Signature: _____     Date: _____
Unit Manager's Review: _____     Date: _____
Informally Resolved: _____     Date: _____

|  | BP-8 ISSUED to Inmate | BP-8 RETURNED to Counselor | BP-9 ISSUED to Inmate | BP-9 RETURNED to Counselor | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 6/22/2020 | 6/24/2020 | 7/2/2020 |  |  |
| TIME |  |  |  |  |  |
| COUNSELOR | # | # | # |  |  |

FCC 1330.18C          Administrative Remedy Program          Attachment 1

56

S/S please scan, return and send to Medical Dept, Kitchen

57/92

To: 2nd : Whom it May Concern    5/4/2020
including Medical Dept, Kitchen, dietion and Warden

From: I/M Mustafa # 67195-054    Unit H - Cell 511

Subject: Unmanageable Safety & Hygien issues in present
Food Trays

1= I am Severely disabled (no hands and vision impaired) and
recently in Feb 2020 was assigned the c/ Therapy Diet
and Signed permission to open in Kitchen, my KOSHE
Food items.

2- However, since then Multiple unmanageable Safety an
Hygiene developed make it very difficult, unsafe to
handle or reach the food or consume it.

3- For example (but not limited to): (a) Some items are not alwa
opened and I still have to use my stumps and Teeth
(b) even worse Most opened items are only partially
opened and fluids, oil and content all mixed in
the Styr tray, make everything Untouchable
without dirtting/clothn, cell, body and destroying
the food itself.
(c) over heated hot trays (at least 3x weekly) fragments
parts of the tray to all size sharp razor parts,
I can feel some in my mouth but not all
(this issue is persistant i need many remedey"
(d) when I ask for safer tray many times (I don't)
and have to go without food.

Request: As all above, and I am now in "Therapy diet"
could you please get me my disability plates
and tray and put the food in from Kitchen!

And as for now, Temporary Measure to open all the
food and place it inside a standard Kitchen Hard tray
(no plastic or papers) until a decision is made about
my disability. I am again becoming fearful and phobic
of such dangerous difficult issues. Respectfully.

Page 58/72   (Exhibit 07 — page 1)

Early Days of Belmarsh 2004

| 06/11/04 | nurse assaulted by other inmate | |

**04/11/04 to 13/11/04**

Nurse attends 5 times a day:
o shower and cream maximum once a day and sometimes not (see below)
o client fasting so assistance with food once a day but appears more assistance (not just collecting food as previously – "given his meal")
o assistance with cleaning cell, changing bed sheets and laundry/ironing maintained to daily or every other day
o some nursing amounts to asking client whether wants anything

On 09/11/04: in addition, client helped re legal papers

**Days on which no shower and cream:** 08/11/04, 11/11/04 (legal visit), 12/11/04 (video link), 13/11/04

**Nursing care reduced:** 05/11/04 (no reason), 06/11/04 (nurse assaulted by other inmate)

| 13/11/04: | end of Ramadan | |

**14/11/04 to 16/11/04**

Nursing attendance between 5 to 6 times daily:
o meals given 3 times a day
o shower and cream once a day
o bed sheets changed, room cleaned and plates washed daily
o laundry done

| 17/11/04 | client assisted to change cell – | on 18/11/04, he complains that setting of new cell not allowing him to feed himself. |

**17/11/04 to 19/11/04**

Nursing attendance 5 to 6 times a day:
o no shower or cream applied
o assistance re meals changes from "meal given" to "assisted with meals" or "food collected"
o assistance re bed sheets, cell cleaned and laundry maintained

| 20/11/04, | client complains of swollen right arm – cannot put it in hook. | |

**20/11/04 to 23/11/04**

Nursing attendance 4 to 6 times daily:
o Nivea cream applied daily to arms and legs
o collecting food, occasionally helping with food (can opened on 20/11/04)
o cleaning cell and bed sheets and laundry

**Nursing care not documented** on 21/11/04.

**24/11/04 to 18/12/04**

58

( Exhibit 07 ~ page 2)  page 59/92

Nursing attendance 3 to 6 times a day:
o food collected and often other form of assistance (often arranging eating position)
o help with "hygiene" and getting dressed
o help with shower and cream once a day but not consistent
o cleaning cell, changing bed sheets, washing plates and doing laundry

**Days on which no shower / cream:** 24/11/04; 25/11/04 and 26/11/04 (cream on arms and legs); 28/11/04; 01/12/04; 04/12/04; 09/12/04 (spur locked); 13/12/04 (cream applied); 14/12/04 (cell locked); 16/12/04 (legal visit all day);

**Nursing care reduced because spur locked:** 26/11/04; 06/12/04; 09/12/04; 14/12/04;

**Nursing care not documented:** 29/11/04;

**Complaint:** 07/12/04, 12/12/04 (asked to see dr) re toe nails not cut – remains outstanding.

| 18/12/04 | client changes cell | |
|---|---|---|

**18/12/04 to 03/01/05**

Nursing attendance at least 4 times a day: twice am then lunch and dinner:
o shower and cream once a day on average
o assistance re meals limited to collecting food
o cell cleaned, bed sheets changed, plates washed, laundry made and clothes ironed (generally am)
o more nursing attendance when visits as client assisted re strip searches.

**No shower and cream:** 18/12/04 (legal visit); 19/12/04; 22/12/04; 23/12/04 (visits am and pm); 30/12/04 (legal visit all day); 31/12/04

**Nursing care not documented:** 20/12/04; 24/12/04;

**Occasions when further assistance:** 29/12/04 (socks)

**Complaint:** 29/12/04 re toe nails not cut;

**04/01/05 to 27/01/05**

Nursing attendance between 4 and 6 times a day:
o Nivea cream applied on specific parts of body once every other day
o Showers: unclear whether assisted but notes say whether taken or not
o Food collected lunch and dinner
o Cell, bed sheets and laundry assistance maintained
o Also cleaning "utensils" on daily basis
o Escorted for visits to assist with strip searches
o Sometimes extra assistance re opening cans and dressing

**Days on which no cream:** 04/01/05; 10/01/05 to 14/01/05; 20/01/05; 24/01/05; 25/01/05;

**Days on which no shower (unclear whether assisted):** 14/01/05 (refused by client for phone call instead); 15/09/11; 16/01/05 (offered but client declined – only feet washed); 19/01/05; 21/01/05; 23/01/05 (client refused);

( Exhibit 07    page 3 )  page 60/
72

**Complaint:** 04/01/05 re toe nails (SO made aware that outstanding for one month); 09/01/05 re foot hurting; 19/01/05 client asked nurse to sew clothes and told could not sew anything; 26/01/ (ear painful)

**Reduced nursing care:** 11/01/05 (alarm); 16/01/05 (spur locked)

**Cell changed on 14/01/05 and 18/01/05 (client assisted in packing and unpacking)**

**28/01/05 to 04/07/05**

Nursing attendance 4 to 6 times a day:
- Food collected lunch and dinner; hot drinks made for him am, lunch and dinner at least.
- Personal hygiene: assistance re getting dressed; unclear from notes whether assistance re shower (but noted when he has a shower); assistance re applying cream:
- Assistance re domestic matters: cell cleaned, bed sheets changed and utensils washed daily (although unclear whether done or whether client just assisted → see entry on 03/03/05 "helped"); laundry and ironing done (no consistent reference in frequency but roughly weekly)
- Escorted for visits to assist with strip searches
- Assistance re shower and cream: not when visits or cell search / change ; roughly every 2 to 3 days ; unclear when assisted re shower and when only cream applied as notes often read, "HAMSA HAD SHOWER CREAM APPLIED" and generally no punctuation throughout nursing notes
- Occasionally incense lighted, can opened, ear lobe cleaned, etc...
- Assistance re changing cells: 16/02/05; 17/03/05; 18/04/05

**Reduced nursing care** (because spur locked unless other reason specified ; spur often locked because of shortage in prison staff): 30/01/05; 06/02/05; 19 and 20/02/05; 24 and 25/02/05; 29/03/05; 02/04/05; 06/04/05; 18/04/05; 23/04/05; 06/05/05; 07/05/05 (spur locked because of staff shortage); 08/05/05; 15 and 18/05/05; 21/05/05; 23/05/05 (search); 29 and 30/05/05; 04 and 05/06/05; 11/06/05; 17/06/05; 18/06/05 (no staff); 19/06/05;

**Complaint:** 15/03/05 nurse tells client not their role to carry legal papers (although they have to help with daily activities) but does it anyway; 26/04/05 (toe nails not cut and toilet paper); 01/05/05 (toe nails still not cut; chiropodist on leave); 01/06/05 (thumb infection ; still not seen by doctor); 18/06/05 (DST going through his legal papers);

**Days on which no shower but cream:** 17/02/05; 23/02/05; 10/03/05; 05/05/05;

**Days on which no shower or cream:** 31/01/05; 01/02/05; 07/02/05 (legal visit); 08 and 09/02/05 (legal visit); 14 and 15/02/05 (legal visit); 19/02/05 (social visit); 20 and 21/02/05 (legal visit); 28/02/05 and 01/03/05 (legal visit); 03/03/05 (video link); 07 and 09/03/05 (legal visit); 11/03/05 (no reason); 14 to 17/03/05 (legal visit then cell change); 21/03/05 (legal visit); 24/03/05 (no reason); 26/03/05 (client refused because thumb infection); 28/03/05; 30/03/02 (legal visit); 04/04/05; 05/04/05 (legal visit); 09/04/05 (social visit); 11 and 13/04/05 (legal visit); 18/04/05 (cell change); 23/04/05 (social visit); 25 and 28/04/05 (legal visit); 04/05/05 (legal visit); 06/05/05 (infection in thumb); 06 and 07/05/05; 09/05/05 (legal visit); 11/05/05; 15 and 17/05/05 (legal visit); 20/05/05; 23/05/05 (search); 25/05/05 (legal visit); 31/05/ (legal visit); 05 and 06/06/05 (legal visit); 08/06/05 (legal visit); 11/06/05 (social visit and

EVEN AT COURT   (Exhibit 07 page 4) page 61/72

spur locked); 14/06/05; 15/06/05 (legal visit); 17/06/05 (Muslim prayer); 18/06/05; 22/06/05 (legal visit); 27/06/05 (legal visit); 30/06/05 (visits);

**Days on which cream to certain parties of body:** 10/02/05 (hands and feet); Notes to suggest that care plans in place (03/02/05)

**Days on which nursing care not documented:** 19/05/05; 02/06/05

**Missing notes:** 27/05/05;

**Other:** 14/05/05 doctor advises brown bread re diabetes; 27/06/05 (altercation between prison officer and nurse where nurse felt intimidated; incident reported to SO Sergeant on duty);

| 30/05/05 | Nurse raises with SO that doctor advised 2 showers (spur locked on that day so nursing care reduced) but told that not enough staff to offer 2 showers and should speak to police officer or Governor | |
|---|---|---|
| 08/06/05 | doctor again says 2 showers a day and that will write to Governor | |
| 05/07/05: | start of client's trial in Old Bailey | |

**05/07/05 to 13/07/05**

Nursing attendance:
o  Help with dressing
o  Shower and cream every morning
o  Escorting to and from Court
o  Making hot drinks and assisting with meals during court attendance
o  No cleaning of room / changing of sheets

**Days on which cell cleaned and bed sheets changed:** 07/07/05; 10/07/05 (not attending court);

**Days on which nursing care reduced as spur locked:** 12/07/05

**Missing nursing notes:** 08 and 09/07/05;

**Other:** 11/07/05 cell infected with ants – client assisted in cleaning

**14/07/05 to 28/09/05**

Nursing attendance: 5 times a day + escorting to and from visits:
o  Food collected lunch and dinner; hot drinks made for him am, lunch and dinner at least.
o  Assistance re domestic matters: cell cleaned, bed sheets changed and utensils washed daily; laundry and ironing done roughly weekly
o  Escorted for visits to assist with strip searches
o  Shower and cream daily; dressing (not always mentioned)
o  Assistance re changing cells on 19/07/05; 26/08/05
o  Assistance re cell searches: 07/09/05; 27/09/05;
o  Other:

(To near Extradition 2012) (Exhibit 07 page 5)
page 62 pg2
75 of 98

Printed by Carol Cullen                          HWP Belmarsh
Physis

**20 Jul 2012 11:19** | Surgery: Mr Boniface Onyema (Health Care Support Worker)
Consultation (Xa1qL) - Mr Mostafa presented fine this morning when he was seen in the HSU segregation unit. He had his shower and his cream were applied as directed. His segregation cell room was cleaned and mopped, his plates, cups, jug and spoons washed, his toilet and washing hand basin cleaned, his bed made.

**22 Jul 2012 11:32** | Surgery: Harris Carroll (Staff Nurse)
Consultation (Xa1qL) - Seen this A.M. on the nurse's rounds. He stated that he saw the psychiatrist when he was in the H.S.U. about a month ago, and they promised to see him again in the near future, but he expressed his wishes to-day, see them as soon as possible.

**22 Jul 2012 11:39** | Surgery: Harris Carroll (Staff Nurse)

**23 Jul 2012 10:13** | Surgery: Shamin Akhtar (Staff Nurse)

**23 Jul 2012 10:38** | Surgery: Mr Boniface Onyema (Health Care Support Worker)
Consultation (Xa1qL) - Mr Mostafa had his shower this morning, his cream were applied as directed.  His bed made, his plates, jugs, cups and spoons were washed, his toilet and wahing hand basin cleanob. His segregation cell room cleaned and mopped. His thermo flask filled with boiled water and five sweeteners were emptied into a jug for him to use later.

**23 Jul 2012 12:05** | Surgery: Shamin Akhtar (Staff Nurse)
Prescription collected by patient (XakSX) - Issued Yellow soft paraffin X 15g tube

**23 Jul 2012 16:49** | Surgery: Shamin Akhtar (Staff Nurse)
Actions (XaiUi) - GP tasked for Mouthwash and soft yellow paraffin but a tub - 900g so that Mr Mostafa can get the paraffin from the tub with his stump as he cannot squeeze the tube as he is an amputee.
Consultation (Xa1qL) - Seen this morning for nurses rounds in the HSU - Segregation - No problems had been voiced except that he requested some medications - which GP has been tasked for and in the afternoon attended GOOD review to be reviewed again in one weeks time.

**24 Jul 2012 11:42** | Surgery: Ms Dawn Grice (Other Community Health Service)
Consultation (Xa1qL) - Seen in nurses HSU round, no concerns voiced, is still waiting for his tub of vaseline instead of the tube, which we are still awaiting the GP to prescribe.

**24 Jul 2012 11:50** | Surgery: Mr Boniface Onyema (Health Care Support Worker)
Consultation (Xa1qL) - Mr Mostafa presented fine, had his personal hygiene needs including shower, his cream were applied as directed. He requested for his weight to be checked, he weighed ninety eigit (98KG) kilograms. His bed was made, his segregation cell room was cleaned and mopped, his plates, cups, jugs and spoons washed, his toilet and washing hand basin cleaned. His thermo flask filled with boiled water and five sweeteners emptied into a jug for him to use.

**24 Jul 2012 11:57** | Surgery: Mr Boniface Onyema (Health Care Support Worker)
O/E - weight (22A...) 98.0 Kg (15 st 6 lb)

**24 Jul 2012 12:21** | Surgery: Dr Ekpo Ekpo (Doctor)
Chlorhexidine gluconate 0.2% mouthwest - 300 millilitres - use twice daily
Yellow soft paraffin solid - 500 grams - apply as needed

**24 Jul 2012 15:23** | Surgery: Miss Jennifer Campbell (Mental Health Act Administrator)
tif: OT Self Assessment-Mostafa.tif
tif: OT Functional Assessment Review July 12.tif - by Gillian Crawshaw

**24 Jul 2012 16:06** | Surgery: Miss Jennifer Campbell (Mental Health Act Administrator)
Patient reviewed (6A...) - DR CUMMING TO REVIEW
Yes (Y0427)
Yes (Y0427)
Yes (Y0427)
Yes (Y0427)
Yes (Y0427)
Yes (Y0427)

**25 Jul 2012 11:18** | Surgery: Mr Boniface Onyema (Health Care Support Worker)
Consultation (Xa1qL) - Mr Mostafa had his personal hygiene needs, his cream were applied as directed. His room was searched, his bed made, his segregation cell room cleaned and mopped, his plates, cups, jugs and spoons washed, his toilet and washing hand basin cleaned. His thermo flask filled with boiled water and five sweeteners emptied for him to use later.

**26 Jul 2012 11:07** | Surgery: Mr Boniface Onyema (Health Care Support Worker)
Consultation (Xa1qL) - Mr Mostafa presented fine this morning, he attended to his personal hygiene needs, his cream were applied as directed. His segregation cell room was cleaned and mopped, his bed made, his plates, cups, jugs and spoons washed, his toilet and washing hand basin cleaned. His thermo flask filled with boiled water and five

Thu 26 Jul 2012 12:16
NHS Confidental: Personal Data about a Patient                Mr.Mostafa Kamel Mostafa (A99962AQ)
                                                                             15 Apr 1958

62
(62)

*(Exhibit 08   page 1)*
*Denial of Dental Care*

Page 63/92

**BP-229 Response**                              Case Number: 1007348-F1

Your Request for Administrative Remedy dated February 14, 2020, and received in the Administrative Remedy office February 20, 2020, has been reviewed. Specifically, you claim that you have been denied essential dental work.

A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review revealed you were evaluated in Dental Services on January 31, 2020, for severe abrasion of your lower front teeth. The dentist explained the best option would be to seek assistance from your counselor to acquire sensitivity reducing toothpaste from the commissary as a palliative treatment as there is no other treatment available within Program Statement 6400.03, Dental Services, to properly treat your issue.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response. You will need to submit a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_____                          3/11/2020
B. True, Complex Warden                           Date



**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

*Exhibit 48 Reject            Page 64*
*Denied essential Dental Work & Relief     #2*

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Mostafa. K. Mostafa__  __67495-054__  __H__  __ADX Colorado__
 LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A– INMATE REQUEST**

Due to severe pain in my worn and front teeth I was taken to the Dentist on Fri Jan 31-20 but I was not provided with any relief or pain killer or solution to the main cause of the problem.

I am severely disabled (no hands) in solitary under S.A.M and thus have to use my teeth to do many of my daily tasks thus I lost many back teeth and can't use my back jaws; all my front teeth are worn out and very painful sensitive + the Dentist said (as all dentist before him) that I need crowns and other dental work bu—

__2-11-20__  that he can not do that because of ADX S.A.M
 DATE                    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

To Mr. Holbrook (Counselor)

Could you please provide me with a BP10 as this request has been Completely ignored by the institution and it is illegal (please write and resubmit the complaint Number)

_____  _____
 DATE            WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE            CASE NUMBER: _____

**Part C– RECEIPT**            CASE NUMBER: _____

Return to: _____  __-64-__  _____  _____
 LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

_____
 DATE            RECIPIENT'S SIGNATURE (STAFF MEMBER)

Page 65/92

(Exhibit 08   page 3)

KAMEL MOSTAFA MOSTAFA, 67495-054
FLORENCE ADMAX USP     UNT: H     QTR: H05-511L
PO BOX 8500
FLORENCE,  CO 81226

Lose of teeth & No prevention

877295-A

RECEIVED

MAR 14 2017

ADX AW Office

65

*(Exhibit 08 page 4)* *page 66 92*

**Administrative Remedy No. 877295-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal wherein you assert your teeth have decayed as a result of using them to open food packaging. You contend Bureau of Prisons dentists are limited in the treatment they provide and oral hygiene items are unavailable. You request no specific relief.

We have reviewed documentation relevant to your appeal and, based on our findings, concur with the manner in which the Warden and Regional Director responded to your concerns at the time of your Request for Administrative Remedy and subsequent appeal. Our succeeding review of your medical record reveals on November 21, 2016, you were seen for a treatment plan examination. The dentist indicated you had five teeth that required fillings and four other teeth that were recommended for extraction. You have had routine dental treatment appointments on December 23, 2016, and January 6, 2017, to address the diagnosed problems. On January 6, 2017, you requested not to have the four teeth extracted.

Should you re-consider the extractions, you are encouraged to contact the dentist to continue your care. At that time, you also may discuss the limitations of different tooth replacement treatments, your nutritional concerns, and functional limitations due to your disability.

The record reflects you have received dental/medical care and treatment in accordance with evidence based standard of care and within the scope of services of the Federal Bureau of Prisons. You are encouraged to comply with proposed medical/dental treatment so Health Services staff can continue to provide essential care and to contact dental/medical personnel through normal sick call procedures should your health condition change.

Considering the foregoing, this response is provided for informational purposes only.

3|6|17
_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals



page 67 of 72

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Loss of teeth & no prevention or relief 877295 R1    877296 R1

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Mostafa + K. Mostafa    67995-054    H03    ADX Florence Colorado

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL** This answer doesn't provide any prevention for the loss my teeth while trying to open food pouches to eat, nor does it provide any relief!

Lost 4 teeth since my extradition to US 2012 and all dental work I had because I am coeared to use my teeth to open food pouches as I am disabled (NO hands) and in complete isolation since 2012 with no help to open food sealed packages. dentists are not allowed to do any dental work such as: Crown bridges, Caps, implants or provide essential items such as: electric tooth brush, water flossing and all their recommendations are trashed or offered. denture can not be for me us, I have no hands! I can't put it on or off or clean it or clean the gum!

DATE 2-31-16 You are using the SAM to destroy my health and coearse me to harm my teeth!    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

→ ( Exhibit 08 page 5 )

RECEIVED

JAN 1 9 2017

Administrative Remedy Section
Federal Bureau of Prisons

Exhibit 08 page 5

DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: 877295

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

DATE    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

*Exhibit 08 Page 6*

*page 68/92*

**BP-229 RESPONSE**                              **Case Number:  877295-F1**

Your Request for Administrative Remedy dated September 22, 2016, and received in this office on September 23, 2016, has been reviewed.  You allege medical staff have offered no solution for your broken teeth.  You further allege you have requested implants rather than dentures, but have been disapproved.  For relief, you request dental work including implants, bridges, or crowns.

A review of the issue raised in your Request for Administrative Remedy has been conducted.  The results of the review revealed you were evaluated by the dentist on September 16, 2016, for your dental complaints.  You made the medical decision to refuse any dental work at that time and wanted to keep your teeth as long as possible.  The dentist addressed your concerns regarding your disability and dentures.  You were informed that your case would be further discussed with the Chief Dental Officer.  The dentist has developed a treatment plan, which has been sent to the Regional Dental Officer for review and recommendations.  Once a treatment plan is approved, you will be notified by dental staff of your options and treatment plans.  If you have further concerns prior to this determination, please submit a Request to Staff Member to further address your concerns with the dentist.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only.   In the event you are not satisfied with the response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(10) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_____                    _____10/20/16_____
Jack Fox, Complex Warden                     Date

68

**U.S. DEPARTMENT OF JUSTICE**   ~~Exhibit 08~~   ~~Page 4~~   page 69/92
Federal Bureau of Prisons   Re: Broken tooth and no prevention of similar future injuries.

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Mostefa, K. Mostefa   67495-054 #   ADX Florence Colorado

LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

**Part A– INMATE REQUEST** The answer ignores many facts and provides no solution to the on-going problem. Such as the broken tooth had split to 2 halves as I was opening a Bean bottle food item using my teeth as I do since I was extradited Oct 2012. I lost 3 teeth since and all my dental work done in England without any replacement or plan to do so. And that I am facing similar item nearly every day as I am severely disable with hands and in complete solitary with no help because of the S.A.Ms. there is no plan to avoid more broken teeth as Bop refusing to allow me help or replacement; I was told by the dentist on 7-16-16 there are two more loose back teeth and and two could be fixed if you was not in Bop; as Bop policy doesn't allow dental work Such as; implant, bridges, crowns, capping etc which I would have no problem to do out's even when I offered to pay it was not allowed. the only solution would be offered in an plan is to yet remove many more teeth to do a "Denture" which I can't ever use as I have no hands and its dangerous and excepted in England to prevent chocking and infection. I was told the same by dentists in MCC New York and medical center in Missouri Springfield. I am now No. 99 on the list and since Oct 2015; and even if I was taken tomorrow the above are the only options; which are increasing my disabilities and worsening. Post 9-22-16 my conditions; please allow me help in replacing my teeth and avoid me dental work including implant, bridges crowns... etc   **SIGNATURE OF REQUESTER** (Mostefa)

**Part B– RESPONSE**

RECEIVED

SEP 23 2016

ADX AW Office

Exhibit 08   Page 7

---

DATE   WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE   CASE NUMBER: 877295-F1

CASE NUMBER: _____

**Part C– RECEIPT**   69

Return to: _____   69
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

(Exhibit 09 page 1)

page 7 of 92

KAMEL MOSTAFA MOSTAFA, 67495-054
FLORENCE ADMAX USP    UNT: H    QTR: H03-300L
PO BOX 8500
FLORENCE,  CO 81226

Prosthetic - Rubber Maintenance
854 866-A1

Delivered
11-28-16

**RECEIVED**

NOV 23 2016

ADX AW Office

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

(Prosthetic Maintenance / Rubber  854866 R 2) page 71/92

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Mostafa K. Mostafa          67495-054     H03     ADX Florence Colorado
　　　　LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL** The answer provided is a rubber-stamping the clean naked lies of the ADX Dept. As I had written 2 BP8 after many ignored cop outs regarding the same issue even my attorney wrote about it, not only that I have repeatedly been promised by unit-manager Gomez that some one will come soon to provide the needed rubber to maintain the needed grip and replace the worn out ones. Also, twice I spoke to A·W Mr. CARR urging him to send some help, on until now. This remedy itself is a clear prove that I am repeatedly and persistently pursuing the issue for no success. 7-27-16 if the regional office had done any enquiry the Dept. would have come but they lie and still lost the count. 10%

DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

( Exhibit 09    page 2 )

RECEIVED

SEP 6 2016

Administrative Remedy Section
Federal Bureau of Prisons

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

71

Return to: _____
　　　　LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

*page 72*

**Administrative Remedy No. 854866-A1**
**Part B - Response**

*(Exhibit 9 page 3)*

This is in response to your Central Office Administrative Remedy Appeal wherein you allege you were given a rubber stamped answer regarding receiving the needed rubber to maintain the grip on your prosthetics. For relief, you request to be provided the equipment for your prosthetics.

Our review reveals the Warden and Regional Director correctly summarized your concerns and provided an appropriate answer in their response. Our succeeding review reveals on September 7, 2016, your clinician noted you requested a special rubber attachment for your prosthesis. Your clinician noted it would be reviewed for availability. You are encouraged to speak with your clinician on the availability of the rubber attachment. Given this, we shall defer diagnostic testing and treatment interventions to the Health Services staff at the local level.

Based on this information, there is no evidence to substantiate your claim of being denied appropriate medical care.

Considering the foregoing, this response is provided for informational purposes only.

_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

#72

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

*[handwritten: Denied essential Refill Risking Covid 19 ( Exhibit 39 page 4)]*

**REQUEST FOR ADMINISTRATIVE REMEDY**

From: Mostafa .K. Mostafa     67495-054    H     ADX. CO

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A– INMATE REQUEST** I am disabled and diabetic with high blood pressure and most of the COVID-19 underlying hazards.

I wrote Two Refill notes Tue 6/23/20 and 6/25/30. My refill should be provided on 6/25/20 (as written on Blood pressure bottle) and my prosthetics rubber rings fallen off (now no grip) and I am in solitary without help!

Because of Denial of refills now for 13 days I feel dizzy, difficult to breath and can't sleep.

Dr. Conroy came to day and my blood pressure shot up to 155/96 but time (with medication) was 157/87 + my 7-7-20 diabetic tablet also not provided since Nov. 2019 Why should ADX keeps endangering my life?

DATE        SIGNATURE OF REQUESTER

**Part B– RESPONSE**

*[handwritten: Exhibit 39 page 4]*

*[handwritten: Not Answered yet!]*

*[handwritten: No Rubber but Two rings on 7/10/20 provided Need 6 more No Tool to fit them!]*

DATE        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE       CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

*[handwritten: 73]*

DATE        RECIPIENT'S SIGNATURE (STAFF MEMBER)

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

*(handwritten: ① Rubber for 854866F1 Exhibit 09 Page 06)*

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Mostafa. K. Mostafa   67495-054   H   ADX Florence Colorado

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL** This Matter is not addressed accurately or workebly. I apply for some maintenance for my prosthetics many times since 1 Dec 2015. You can see the answer came now end of May 2016. Also, six weeks ago I was told by unit manager Mrs. Jones that if it is not very urgent to change the rubbers then, he prefers that I wait a little more and as soon as the rubbers or maintenance arrives will be done. Now I am told differently; inaccurate relative to the reality and that I need to apply to medical Dept. for maintenance again, as if I did not apply earlier! My experience since arrived that denial of receiving or acknowledging requests or dealing with health issues is the norm especially with disability matters! and although I will request as suggested I am anticipating the long day and the usual ignoring of requests. If the promise was to do the maintenance as soon as the material available because I am in solitary i.e. help me and [...]!

05-31-16    under SAM and no one is able or authorized [...] Sorry, thanks.

DATE                                                       SIGNATURE OF REQUESTER

**Part B - RESPONSE**

*(stamp: RECEIVED JUN 10 2016 REGIONAL DIRECTOR'S OFFICE NORTH CENTRAL REGION)*

*(handwritten: Exhibit 09 Page 06)*

DATE                                                       REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 854866 F1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

DATE                                                       SIGNATURE, RECIPIENT OF REGIONAL APPEAL

**BP-229 RESPONSE** (Exhibit 09 Page 07)

~Page 75

**Case Number: 854866-F1**

Your Request for Administrative Remedy, dated March 3, 2016, and received in this office on March 9, 2016, has been reviewed. Specifically, you request the rubber on your prosthetic be replaced.

A review of the issue raised in your Request for Administrative Remedy has been conducted. During the review of the issue, staff interviewed you in an effort to determine the current condition of your prosthetics. You stated they were functioning properly. You also stated you filed the Administrative Remedy to ensure the supplies were available to replace the rubber on your prosthetics on a periodic basis. Maintenance to your prosthetics is completed as needed. In the event that you feel additional maintenance to your prosthetic is required, you are to submit a request to the Health Services Department requesting the required maintenance.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_____
Jack Fox, Complex Warden

5/26/16
Date

75

U.S. DEPARTMENT OF JUSTICE (Ex 09 page 08) **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

Page 76/92

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: [illegible] | [illegible] | [illegible] | [illegible]
---|---|---|---
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A- INMATE REQUEST** I [illegible] repeatedly requesting for rubbers & tools to change the rubbers for my prosthetic since Oct. 2015. I was repeatedly I was told to wait till they "locate" them. Then I wrote a BP8, answered by Counselor Padilla, on Feb 2nd 2016 regarding the issue and explained that the tool & rubbers were provided and kept in my property by Springfield Missouri Medical Center, from the prosthetic Dept. [illegible] Keith. I asked staff [illegible] to get the tool & rubbers from Springfield if they cannot find them, but nothing is happening till now! [illegible] I need to wait & wait, [illegible] are not [illegible] to date. The rubbers on my prosthetic are getting dirty & cracking, they can snap at any time & need replacement.

3/3/16 [signature]

DATE | SIGNATURE OF REQUESTER

**Part B- RESPONSE**

Exhibit 09 page 08

DATE | WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

CASE NUMBER: ______

**THIRD COPY: RETURN TO INMATE**

CASE NUMBER: ______

**Part C- RECEIPT**

Return to: ______

LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: ______

DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER)

76

BP-229(13)

page ++/92        ( Exhibit 10# page 1)

Administrative Remedy Number 877974-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal where you claim you are being discriminated against at the
ADX based on your type of disability.  You state you have no hands
and need disability accommodations, fittings and items to assist you
with daily functions.  You feel the Occupational Therapist failed
to conduct a proper assessment of your needs.  It appears you request
assistance with this matter and adequate accommodations.

The Warden and Regional Director adequately addressed your complaint
and we concur with the responses provided.  This office confirmed that
that an Occupational Therapist conducted a thorough evaluation of
your living area on April 26, 2016.  Several recommendations were
made and changes have since been implemented.  We find the
institution is working diligently to accommodate your needs and will
continue to work with you for your specific concerns as they arise.
You also have access to the Health and Psychology Services
Departments for your medical and mental health needs.

This response is provided for informational purposes.

_8(14(17_
Date

Ian Connors, Administrator
National Inmate Appeals

77

U.S. DEPARTMENT OF JUSTICE (Exhibit 10 page 2)   **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons   Re: Discrimination against any type of Disability & Filling that

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.* ADX Florence

From: Mostafa K. Mostafa    67495-054    H03    Colorado
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST** The answer in the BP 8 & 9 has been repeated for the past 11 months, say always that management is on the process of providing me with Items that do not interfere with the safty of ADX. However, this answer is wrong and unconstitutional Because: ① this BP 8 & 9 is about the fittings, the hardware not the items. ② The fittings in the cell now are all for a wheelchair person and at level of a wheelchair person not a person of 6'3". ③ all fitting are made for a person with full use of his hands but i am a disabled with no hands and blind in one eye with poor vision in the other, and for one full year now in ADX I am in great pain, risk, continuous injuries and anxiety for the discrimination against my disability in the fittings and design and arrangement as well as the previous 3½ since I was reported to ADX ④ I am in solitary and S.A.M is used to degrade and use my disability against me to allow me to defend my self or doing my daily task safely and reasonably depriving me of any type of disability. Toilet, shower, eating etc. ⑤ I was asked to provide the need fittings. On 8th Nov 2015 and i did, but nothing till now ⑥ this is but cruel treatment against the law as you are not allow any one to help me ⑦ you know my condition since 2001 (...) 9-29-16 and provided all the ... DATE

SIGNATURE OF REQUESTER

**Part B– RESPONSE**

Exhibit 10 page 2

RECEIVED
SEP 30 2016
ADX AW Office

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

DATE          WARDEN OR REGIONAL DIRECTOR

**ORIGINAL: RETURN TO INMATE**    CASE NUMBER: 877474-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____ (7-8) _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

(Exhibit 10   page 3)   page #9/92

**BP-229 RESPONSE**                              **Case Number: 877974-F1**

Your Request for Administrative Remedy dated September 29, 2016, and received in this office on September 30, 2016, has been reviewed. You allege you are being discriminated against due to your disability and further discriminated again by being placed under SAM. You further allege your cell is not appropriate to your condition. For relief, you request proper fittings for your cell.

A review of the issue(s) raised in your Request for Administrative Remedy has been conducted. The results of the review revealed your cell was designed to meet all Architectural Barrier Act (ABA) Standards. In addition, on April 26, 2016, you and your living space were evaluated by an occupational therapist to ensure appropriate conditions are being met. Based on the evaluation and your requests, slight modifications have been made such as an extension to the amount of time your water runs and the Facilities Department will be providing a larger desk space. You have also been provided extra items to assist with activities of daily living with your prosthetics. Based on the above, there is no evidence to support discrimination. Your cell is appropriate to your medical needs at this time. If you have further concerns, you are encouraged to submit a Request to Staff Member to address your concerns.

Accordingly, your Request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with the response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(10) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_____                          _10/27/16_____
Jack Fox, Complex Warden                          Date

Delivered
11-4-16

79

(Exhibit 11ᴬ   page 1)   Page 80/92

**BP-229 Response**   No Toe Nail Trimming   Case Number: 1005234-F1
9½ month and doing if with pain & bleeding

Your Request for Administrative Remedy dated January 29, 2020, and received in the Administrative Remedy office January 31, 2020, has been reviewed. Specifically, you claim that your toenail trimmings need to be done more frequently.

A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review revealed an order was placed on January 13, 2020, for toenail care to occur every four weeks. Records note that you refused your nail care March 12, 2020, received nail care on April 9, 2020, and no nail care was needed May 7, 2020. You are scheduled for nail care again in four weeks.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response. You will need to submit a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_____                    5/13/2020
B. True, Complex Warden                     Date

Undone for 9½ Month
Since March 2019!

80

**U.S. DEPARTMENT OF JUSTICE** ~~EXHIBIT 11~~ *Toe Nails Repeated injury and neglect ↓*   **REQUEST FOR ADMINISTRATIVE REMEDY**   31/92

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

**From:** Mostafa K. Mostafa    67495-054    #    ADX Colorado

LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.        UNIT       INSTITUTION

**Part A– INMATE REQUEST**  With all respect Ms Follows, health manager seems to forget the following:

1– She herself saw my very long toenails in Nov 2019 and said she will arrange trimming them but "she can't find tools"

2– My toenails trimming issue is chronic because I am severely disable (No hands – Diabetic and half blind) and thus already been assessed and no need for sick call note.

3– The Regional Office ruled in 2013 that my toe-nails should be done even 6-7 weeks and by podiatrist (i.e equipped)

4– I waited this time more than ~~6~~ 5 months since

1-29-20   March 2019 my nails became distorted and nurse involved hurt but never had equipment bleeding me

DATE                                    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

→ (Exhibit 11A page 2)     (Received JAN 31 2020 Admin Remedy office)

_____          _____
DATE                             WARDEN OR REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

**ORIGINAL: RETURN TO INMATE**         CASE NUMBER: 1005234–F1

                                       CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

                                       RECIPIENT'S SIGNATURE (STAFF MEMBER)

(Exhibit 11 B page L)

page 82/92

```
KAMEL MOSTAFA MOSTAFA, 67495-054
FLORENCE ADMAX USP    UNT: H    QTR: H03-302L
PO BOX 8500
FLORENCE,  CO 81226
```

845889 - A1 - - - -

Toe Nails Trimming unprofessionly
& painfully, Blood & infection

(plus Bullying)

RECEIVED

AUG 01 2016

ADX Warden's Office

Delivered
8-3-16

82

*(Exhibit 11B page 2)* ˇ 01/92

**Administrative Remedy No. 845889-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal wherein you allege medical staff at your parent facility
do not have the appropriate tools or knowledge to properly trim
your toenails, resulting in undue pain and the possibility for
infection.  For relief, you request to have your toenails
trimmed by a podiatrist.

We have reviewed documentation relevant to your appeal and,
based on the information gathered, concur with the manner in
which the Warden and Regional Director addressed your concerns
at the time of your Request for Administrative Remedy and
subsequent appeal.  Our succeeding review reveals insufficient
diagnostic data to make a clinical determination of the need for
a podiatrist to trim your toenails at this time.

The record reflects you are receiving medical care and treatment
in accordance with evidence based standard of care and within
the scope of services of the Federal Bureau of Prisons.  You are
encouraged to comply with proposed medical treatment so Health
Services can continue to provide essential care and to contact
medical personnel through routine sick call procedures should
your toenail condition worsen.

Accordingly, your appeal is denied.

6/22/16
Date

Ian Connors, Administrator
National Inmate Appeals

Received 8-3-16 !
from Counselor Hazelbrook as on Cover

83

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

*BP10 response Memo from legal dept.*

*(Exhibit 11 B page 3)* 84/

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Mostafa, Kamel Nashat MKM 67495-054 H-B ADX Florence Colorado
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

**Part A - REASON FOR APPEAL** The answer by regional office shows that they are not well informed about my situation. As a diabetic, severely disabled and partially sighted. It is not that I am not getting the toes nail cutting but it is about the pain and danger of infection and accumulating fungus that I am complaining about. Also the very sharp points left un trimmed, uneven which cutting through my socks and sometimes stop my blood circulation on one or more of my toes. even on 4-15-16 when I had my recent toes nail trimming I was cut and hurt by the person who did it. He was not even equipped with any other than the unit cutter, no sharp edges were trimmed, and he had to use my own Commissary [?] nail clipper to stop the blood. When I asked about the fungus behind the toes and the sharp edges he said he does not have the tools. I am therefore subjected to un necessary edges and risk every time I need toes trimming plus the pain & anxiety of non professionals treatment and risk of tools. I need relief please. Please Note I received only 2 pages of the regional office reply and two pages of the BP10 form NO BP8 or BP9 or their reply were were offered and I have to get this to avoid delay tactics always played. Not on and I shall send legal dept here or counselor gave them soon I will enclose them and ignore their disagreement. (see reverse)

5-11-16
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

*Exhibit 11 page 3*

**RECEIVED**

MAY 2 3 2016

Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE   CASE NUMBER: 845889-A1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL (814)   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

_____
DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

(Exhibit 11B  page 4) 85/92

U.S. Department of Justice
Federal Bureau of Prisons
North Central Regional Office

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Administrative Remedy Number:**  845889-R1

This is in response to your Regional Administrative Remedy Appeal received in this office on April 25, 2016.   You allege you have not been provided appropriate medical care in regard to the trimming and maintenance of your toenails.   For relief, you request to have your toes nails trimmed by a podiatrist.

A review of the information presented in your Regional Administrative Remedy Appeal and the Warden's response dated January 13, 2016, has been completed.   Based on a review of your electronic medical record, it has been determined that you have your toenails trimmed by the institutional health services staff.   Your toenails were last trimmed on April 15, 2016.   Therefore, we have determined that you have been provided requisite medical care in accordance with Program Statement 6031.04, Patient Care.

Based on the above information, this response to your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

5.3.16
_____
Date

_____
Sara M. Revell, Regional Director

I/m Received on 5/12/16
From Counselor Boehm

85

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

*(Exhibit 11 B)*

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Mostafa Kamel Mostafa MKM       57495-054       A03       ADX Florence
LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

Part A - REASON FOR APPEAL   The answer which I just received today, does not address the main issue which is the lack of profession and equipment when my poor toe nails had been conducted; I sustained pain and bleeding and finished with sharp pointed edges which hooks the threads of my diabetic socks and restrains my big toe when twisted around it and disturbing the blood circulation and all that is dangerous et hazardous for a disable diabetic person who can not reach, or see well his toes.. please provide a qualified podiatrist and the proper tools & equipment to carry out the task safely and record any injuries (thanks)

1/21/16
DATE                                        SIGNATURE OF REQUESTER

Part B - RESPONSE

RECEIVED
APR 25 2016

DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

REGIONAL DIRECTOR

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 845889-R1

Part C - RECEIPT

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

DATE                                        SIGNATURE, RECIPIENT OF REGIONAL APPEAL

*F 904/92*

Administrative Remedy No. 864128-A1   *(Exhibit 12 pg 91)*
Part B - Response

*( No Treatment/Medication for regular arms)*
*swett, abrasion or infection*

This is in response to your Central Office Administrative Remedy Appeal wherein you allege medical negligence with regard to your disability. Specifically, you assert medical staff have delayed treatment of an infection in your amputated arms and are using your solitary confinement status and disability to harm and torture you. For relief, you request proper fitting disability items.

We have reviewed documentation relevant to your appeal and, based on our findings, concur with the manner in which the Warden and Regional Director responded to your concerns at the time of your Request for Administrative Remedy and subsequent appeal. There is no evidence to suggest medical treatment was delayed or negligent.

Your request for proper fitting disability items was not raised in the previous levels of this administrative remedy; therefore, it will not be addressed in this response. You must first present this concern at the institution level and then may appeal the response thereto if you are not satisfied with the response.

Lastly, we note your allegations of medical staff using your solitary confinement status and disability to harm and torture you; however, you did not support this contention by offering any credible evidence. Rather, you provided a general statement not substantiated by facts. Therefore, we find no rationale warranting further review of your claim.

The record reflects you have received medical care and treatment in accordance with evidence based standard of care and within the scope of services of the Federal Bureau of Prisons. You are encouraged to comply with proposed medical treatment so Health Services can continue to provide essential care and to contact medical personnel through routine sick call procedures should your condition change.

Considering the foregoing, this response is provided for informational purposes only.

10/11/16
Date

Ian Connors, Administrator
National Inmate Appeals   (ICB)

87

U.S. Department of Justice

Federal Bureau of Prisons

Re: Infection negligence · 864128 A1

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Mostafa K. Mostafa    67495-54 H    ADX Florence Colorado.

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL** Again, the regional office answer ignores the wide gap between my sick note and the PA very late show up time and that I had to beg and finish a whole tube of anti-biotic from commissary till I got + beg and finish a whole tube of anti-biotic from commissary till i got + beg and he showed up! and only to tell me that this will happen better, then he showed up! and only to tell me that this will happen more often because I am in solitary confinement and continuous dirty tank work and abrasion will cause it. Also, refusing to give me his analogy or + ? ! the answer also + ... but ask me to "rest" and how can I ? ! the answer also ignored my repeated request to the female nurse on duty to help and that he said of I can't write prescriptions, you should eat protein and rest." if these behaviour are not using my solitary & disability to harm me and torture me then I have no other name or discription for it. the rubber-stamp answers are only incouraging more negligence in full impunity. It is clear even from PA behaviour that I need help and proper fitting and disability items. So plese ...

8/16/16
DATE     SIGNATURE OF REQUESTER

**Part B - RESPONSE**

(Exhibit 12 page 2)

RECEIVED

AUG 23 2016

Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: 864128

**Part C - RECEIPT**

28

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

28

_____
DATE     SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Attacked & injured   (Exhibit 13   Page 1)*

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: **Mostafa, K. Mostafa**     **67495-054**     **H**     **ADX Florence**
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A– INMATE REQUEST** An investigation is urgently need for the attack on me, abuse, threat and left arm strong injured on monday oct 28, 2019 by Lt Carnado, C/o Parry and C/o Averette the 3 staff come to my cell threatening me, used fowl Language to scare me to go off my protest Food strike to be treated as disable and sick.

They said "they are going to strap me down" very tight to the Force Feeding chair and don't care "if you defecate". I felt unsafe and told them I need the Team as I am worry that they may break the needle in to my arm or causing me heart attack. But the three said No and each jumped on one of my limbs. I am 61 yrs old sick and severly disabled (no hands to my arm) and at the time did not eat for 10 days, very weak and exhausted. My left stump was greased and taken heavy. The bandage stayed on for more than 3 weeks to be removed on Tue, Nov 19 See Force Feeding Video then. When I wrote my BP8 C/o Parry became more abusive very provocative and confrontational and even throw Food trays on my cell floor. then gave me two shots For keep saying I do not feel safe with you I need the team when blood samples taken, please, investigate, report

**Nov. 25, 2019**     the incident and remove the injustice against me (Thanks)
DATE                                                          SIGNATURE OF REQUESTER

**Part B– RESPONSE**

*Exhibit 13   page 1*

Received
DEC 05 2019
Admin Remedy Office

DATE                    WARDEN OR REGIONAL DIRECTOR
If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.
CASE NUMBER: 990324-F1
ORIGINAL: RETURN TO INMATE
CASE NUMBER: _____

**Part C– RECEIPT**
Return to: _____ LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION
SUBJECT: _____
DATE                    RECIPIENT'S SIGNATURE (STAFF MEMBER)     BP–229(13)

(Exhibit 13 Page 2)

Page 90/92

**BP-229 Response** (Assulted & injured during hunger strike) **Case Number: 999324-F1**

Your request for Administrative Remedy dated November 25, 2019, and received in the Administrative Remedy office on December 05, 2019, has been reviewed. In your request, you claim you were assaulted by staff as retaliation for being on hunger strike. Specifically, you claim on October 28, 2019, staff entered your cell and threatened you using foul language. Additionally, you claim staff assaulted you causing a cut to your arm. As relief, you request an investigation be conducted and staff be held accountable for their actions.

A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review revealed all staff are expected to adhere to policies regarding the safety and fair treatment of inmates. Staff are expected to ensure all inmates are safe and not subject to any form of threat or assault. Officers are expected to understand these policies and ensure they are enforced when conducting daily operations. Additionally, staff are expected to act in a professional manner when carrying out daily tasks. Therefore, the information you have presented in your Administrative Remedy will be forwarded to the appropriate Bureau of Prisons component for review. However, inmates are not entitled to receive information regarding the outcome of an investigation.

Accordingly, this response to your request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response. You will need to submit a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas  66101-2492.

B. True, Complex Warden

2/6/2020

Date

2/13/20

90

(Exhibit 14  page 1)  page 91/92

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00694-PAB-NYW

MOSTAFA KAMEL MOSTAFA,

      Plaintiff,

v.

WILLIAM BARR, U.S. Attorney General,
CHRISTOPHER WRAY, FBI Director,
KATHLEEN H. SAWYER, BOP Director,
B. TRUE, ADX Florence Warden,
MS. TUTTOILMUNDO, H-Unit Manager,
JOHN AND JANE DOES, ET AL,

      Defendants.

---

### CERTIFICATE OF SERVICE

---

    I certify that I have mailed a copy of this Certificate of Service to the named individuals below, and the following forms to William Barr, Christopher Wray, Kathleen H. Sawyer, B. True, Ms. Tuttoilmundo, John and Jane Does, the United States Attorney General, and the United States Attorney's Office: AMENDED PRISONER COMPLAINT FILED 05/18/2020, SUMMONS, WAIVER*, and CONSENT/NON-CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE on June 11, 2020.

Mostafa Kamel Mostafa
#67495-054
FLORENCE ADMAX
U.S. PENITENTIARY
Inmate Mail/Parcels
PO BOX 8500
FLORENCE, CO 81226

Kathleen H. Sawyer, B. True, Ms. Tuttoilmundo, and John and Jane Does - **Waiver***
Federal Bureau of Prisons
c/o Colorado Consolidated Legal Center
**DELIVERED ELECTRONICALLY VIA EMAIL**

United States Attorney's Office
District of Colorado
**DELIVERED ELECTRONICALLY VIA EMAIL**

CM/ECF - U.S. District Court:cod

*(Exhibit 14 page 2)*

Page 1 of 1

92/92

## Service :

1:20-cv-00694-PAB-NYW
Mostafa v. Barr et al

ALLMTN,JD4

### U.S. District Court - District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 6/23/2020 at 9:41 AM MDT and filed on 6/22/2020
**Case Name:** Mostafa v. Barr et al
**Case Number:** 1:20-cv-00694-PAB-NYW
**Filer:**
**Document Number:** 16

**Docket Text:**
**USPS Return Receipt regarding [13] Certificate of Service. (rvill, )**

**1:20-cv-00694-PAB-NYW Notice has been electronically mailed to:**

**1:20-cv-00694-PAB-NYW Notice has been mailed by the filer to:**

Mostafa Kamel Mostafa
#67495-054
FLORENCE ADMAX
U.S. PENITENTIARY
Inmate Mail/Parcels
PO BOX 8500
FLORENCE, CO 81226

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1071006659 [Date=6/23/2020] [FileNumber=7626692-0
] [287ea290544625b7c03af09619adffe5e63c39e8cd9edcbcc726e8b52f00c09ca61
f4c53020221b0ff751b52cfe26d5b153f6098bcb7b1715aebe678cb273cb8]]

92   *End of Application & Exhibit*

6/23/2020