# Exhibit 1
# Declaration of R. Turner

*Mostafa v. Garland, et al.*,
No. 20-cv-00694-PAB-NYW (D. Colo.)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00694-PAB-NYW

MOSTAFA KAMEL MOSTAFA,

      Plaintiff,

v.

MERRICK B. GARLAND, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
UNKNOWN SAMs OPERATIVES, in their official capacities,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her official capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
LOWE, ADX officer, in his official capacity,
NORJANO, ADX Officer, in his official capacity, and
WILLIAM, ADX Nurse, in his official capacity,

      Defendants.

---

**DECLARATION OF R. TURNER**

---

      I, R. Turner, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby declare as follows relating to the above-titled matter:

      1.      I am employed as a Technician in the Special Investigative Services (SIS) Department at the United States Department of Justice, Federal Bureau of Prisons (Bureau) facility known as the United States Penitentiary, Administrative Maximum (ADX Florence).  I have been employed by the Bureau, in positions of increasing responsibility, since September

1997.  I have held the position of SIS Technician at ADX Florence since April 2013.  Since approximately August 2013, I have been assigned to H Unit, the housing unit at ADX Florence which houses inmates who are subject to Special Administrative Measures, or "SAMs."

2.     The attachments to this declaration are true and accurate copies of Bureau records maintained in the ordinary course of business.

3.     As an SIS Technician, my job duties include processing and monitoring mail for SAMs inmates, including inmate Mostafa Kamel Mostafa, register number 67495-054, the plaintiff in this case.  I am aware that inmate Mostafa contends that a mailing from the United States District Court in Colorado was improperly withheld from him.  Inmate Mostafa is incorrect.

4.     On March 2, 2021, incoming mail from the Office of the Clerk for the United States District Court for the District of Colorado, addressed to inmate Mostafa, arrived in H Unit for processing.  *See* Mail Tracking Form for Mostafa, Attachment A.  In accordance with the numbering system for tracking inmate mail for SAMs inmates, that mail item was labeled "CM 0302-MI-007."  *See id.*; *see also* Attachment B (mail labeled "CM 0302-MI-007").  CM refers to "court mail," and "MI" refers to "mail incoming."

5.     Attachment B, which is postmarked February 26, 2021, *id.* at 1, contains a 36-page document entitled "Order and Recommendation of United States Magistrate Judge."  *Id.* at 5-36.  This incoming mail from the Court was promptly given to inmate Mostafa on March 2, 2021.  *See* Attachment A.[1]

---

[1] The stamp on page 1 of Attachment B (stating "opened inadvertently[,] contents not read nor inspected" was added by mailroom staff.  Pursuant to inmate Mostafa's SAMs, mail otherwise defined under Bureau policy as "special mail," including mail to and from courts, is processed as non-legal mail and is opened and reviewed.

6.      Another piece of incoming mail from the Office of the Clerk for the United States District Court for the District of Colorado, also postmarked February 26, 2021, was reviewed and provided to inmate Mostafa on March 2, 2021.  That mail item was labeled "CM 0301-MI-005."  *See* Attachment C (mail labeled "CM 0301-MI-005"); *see also* Attachment A.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on March 18, 2021, in Florence, Colorado.


*s/ R. Turner*
R. Turner
SIS Technician
ADX Florence
Federal Bureau of Prisons

**Attachments:**

Attachment A:  Mail Tracking Form for Mostafa
Attachment B:  Incoming court mail for Mostafa labeled CM 0302-MI-007
Attachment C:  Incoming court mail for Mostafa labeled CM 0301-MI-005

# Attachment A
# Declaration of R. Turner

*Mostafa v. Garland, et al.*,
No. 20-cv-00694-PAB-NYW (D. Colo.)

# Mail Tracking Form

Inmate: K. Mostafa          Reg. No. 67495-054

| Tracking numbers | Mail number | Mail to/From | | Date Cleared | Comments |
|---|---|---|---|---|---|
| 21-67495054 | Cm 0114-ml-001 | USDC-Clerk | Denver, Co | 01/14/21 | |
| 21-67495054 | Cm 0114-ml-002 | USDC-Clerk | Denver, CO | 01/14/21 | |
| 21-67495054 | Cm 0201-ml-003 | USDC-Clerk | Denver, CO | 02/02/21 | |
| 21-67495054 | cm 0201-ml-004 | USDC-Clerk | Denver, CO | 02/02/21 | |
| 21-67495054 | CM 0301-ML-005 | USDC Clerk | Denver, CO | 03/02/21 | |
| 21-67495054 | CM 0302-MD-006 | USDC Clerk | Denver, CO | 03/02/21 | |
| 21-67495054 | CM 0302-MI-007 | USDC Clerk | Denver CO | 03/2/21 | |
| 21-67495054 | Cm 0304-ml-008 | USDC Clerk | Denver, Co | 03/04/21 | |
| 21-67495054 | cm 0304-ml-009 | USDC Clerk | Denver, CO | 03/04/21 | |
| 21-67495054 | cm 0304-ml-010 | USDC Clerk | Denver, Co | 03/04/21 | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |
| 21-67495054 | | | | | |

# Attachment B
# Declaration of R. Turner

*Mostafa v. Garland, et al.*,
No. 20-cv-00694-PAB-NYW (D. Colo.)

OFFICE OF THE CLERK
United States District Court
901-19th Street, Room A105
Denver, CO 80294-3589
OFFICIAL BUSINESS

SPECIAL MAIL
OPEN ONLY IN THE
PRESENCE OF THE
INMATE



neopost
02/26/202
US POST



CM 21-67495054-0302-MI-007

H05

3/2/21

OPENED INADVERTENLY
CONTENTS NOT READ
NOR INSPECTED

Mostafa Kamel Mostafa #67495-054
FLORENCE ADMAX
U.S. PENITENTIARY
Inmate Mail/Parcels
PO BOX 8500
FLORENCE, CO 81226

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Jane Elizabeth Bobet (caseview.ecf@usdoj.gov, haley.hodgkins@usdoj.gov,
jane.bobet@usdoj.gov, usaco.ecfcivil@usdoj.gov), Susan Begesse Prose (bwillms@bop.gov,
caseview.ecf@usdoj.gov, iguy@bop.gov, joann.stark@usdoj.gov, susan.prose@usdoj.gov,
usaco.ecfcivil@usdoj.gov, violet.konopka@usdoj.gov), Chief Judge Philip A. Brimmer
(brimmer_chambers@cod.uscourts.gov), Magistrate Judge Nina Y. Wang
(wang_chambers@cod.uscourts.gov)
--Non Case Participants: Nicole Brianne Godfrey (ngodfrey@law.du.edu), Laura Lee Rovner
(lrovner@law.du.edu)
--No Notice Sent:

Message-Id:<7953479@cod.uscourts.gov>
Subject:Activity in Case 1:20-cv-00694-PAB-NYW Mostafa v. Barr et al Order on Motion for
Leave
Content-Type: text/html
```

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.**

### U.S. District Court - District of Colorado

### District of Colorado

#### Notice of Electronic Filing

The following transaction was entered on 1/30/2021 at 8:01 PM MST and filed on 1/30/2021
**Case Name:**       Mostafa v. Barr et al
**Case Number:**     1:20-cv-00694-PAB-NYW
**Filer:**
**Document Number:** 60

**Docket Text:**
**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE by Magistrate Judge Nina Y. Wang on 1/30/2021. This court CONSTRUES Plaintiff Mostafa Kamel Mostafa's [43] Pro Se Letter Motion as a stipulated Motion to Amend pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local Rule 15.1 (a), and respectfully RECOMMENDS that Defendants' [25] Motion for More Definite Statement be DENIED as moot. In addition, upon completion of initial review of Plaintiff's Second Amended Prisoner Complaint [#43-1] pursuant to 28 U.S.C. ◆ 1915(e)(2)(B), this court respectfully RECOMMENDS that Plaintiff's Second Amended Prisoner Complaint be DISMISSED in part. IT IS ORDERED that a copy of this Order and Recommendation, marked as legal mail, be sent to the following: Mostafa Kamel Mostafa #67495-054, FLORENCE ADMAX, U.S. PENITENTIARY, Inmate Mail/Parcels, PO BOX 8500, FLORENCE, CO 81226. Text Only Entry(nywlc1, )**

**1:20-cv-00694-PAB-NYW Notice has been electronically mailed to:**

Susan Begesse Prose     susan.prose@usdoj.gov, , CaseView.ECF@usdoj.gov, bwillms@bop.gov, iguy@bop.gov,
joann.stark@usdoj.gov, usaco.ecfcivil@usdoj.gov, violet.konopka@usdoj.gov

Jane Elizabeth Bobet (Terminated)     jane.bobet@usdoj.gov, CaseView.ECF@usdoj.gov, Haley.Hodgkins@usdoj.gov,
usaco.ecfcivil@usdoj.gov

**1:20-cv-00694-PAB-NYW Notice has been mailed by the filer to:**

Mostafa Kamel Mostafa

#67495-054
FLORENCE ADMAX
U.S. PENITENTIARY
Inmate Mail/Parcels
PO BOX 8500
FLORENCE, CO 81226

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1071006659 [Date=1/30/2021] [FileNumber=7953478-0
] [374383dc7e269181d70832d2d737fa686c23da8f411963ec61d513f927f0c24e014
b97e106c68d92d660fa96afa29e8ac2ac6fa6a3012a20cc3a807c1d912603]]

Case No. 1:20-cv-00694-PAB-MDB    Document 71-1    filed 03/18/21    USDC Colorado    pg 12
of 50
Case 1:20-cv-00694-PAB-NYW    Document 60    Filed 01/30/21    USDC Colorado    Page 1 of 36

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00694-PAB-NYW

MOSTAFA KAMEL MOSTAFA,

      Plaintiff,

v.

WILLIAM BARR, U.S. Attorney General, in his individual and official capacities,[1]
CHRISTOPHER WRAY, FBI Director, in his individual and official capacities,
KATHLEEN H. SAWYER, BOP Director,
B. TRUE, ADX Warden,
MS. TUTTOILMUNDO, H Unit Manager, and
JOHN AND JANE DOES, ET AL,

      Defendants.

---

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

      This civil action comes before the court on Defendants William Barr, Christopher Wray,

Kathleen H. Sawyer, B. True, and Tuttoilmundo's (collectively, "Defendants") Motion for More

Definite Statement Pursuant to Rule 12(e) ("Motion for More Definite Statement") [#25, filed

August 10, 2020]; and Plaintiff Mostafa Kamel Mostafa's ("Plaintiff" or "Mr. Mostafa") "Pro Se

Letter Motion" [#43, filed November 2, 2020].

      The undersigned considers the Motions pursuant to 28 U.S.C. § 636(b), the Order Referring

Case dated June 10, 2020 [#12], and the Memoranda dated August 10 and November 3, 2020,

---

[1] This court notes that William Barr and Kathleen H. Sawyer no longer serve as United States
Attorney General and Director of the Federal Bureau of Prisons, respectively. This court expects
that if these individuals continue to be defendants in their official capacities in this action, an
appropriate motion will be filed by Defendants to substitute the current designees pursuant to Rule
25 of the Federal Rules of Civil Procedure.

Case No. 1:20-cv-00694-PAB-MDB   Document 71-1   filed 03/18/21   USDC Colorado   pg 13
of 50
Case 1:20-cv-00694-PAB-NYW   Document 60   Filed 01/30/21   USDC Colorado   Page 2 of 36

respectively [#26, #43].  This court concludes that oral argument will not materially assist in the resolution of these matters.  Accordingly, having carefully reviewed the Motions and associated briefing [#48], the docket, and applicable law, this court **CONSTRUES** Plaintiff's Pro Se Letter Motion as a stipulated Motion to Amend pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local Rule 15.1(a), and respectfully **RECOMMENDS** that Defendants' Motion for More Definite Statement be **DENIED as moot**.

In addition, upon completion of initial review of Plaintiff's Second Amended Prisoner Complaint (or "Second Amended Complaint") [#43-1] pursuant to 28 U.S.C. § 1915(e)(2)(B), this court respectfully **RECOMMENDS** that Plaintiff's Second Amended Prisoner Complaint be **DISMISSED in part**.

## BACKGROUND

Mr. Mostafa is currently incarcerated at the United States Penitentiary, Administrative Maximum Facility ("ADX") in Florence, Colorado.  *See* [#1].  He initiated this action on March 12, 2020, by filing a pro se Prisoner Complaint asserting ten claims against six defendants related, generally, to the administrative measures imposed on him at ADX, the conditions of his confinement, and his treatment by prison staff.[2]  *See generally* [*id.*].  That day, Mr. Mostafa also

---

[2] Because Plaintiff appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  Consistent with this principle, at times, the court will quote from Mr. Mostafa's filings without the use of [sic] or the correction of spelling or syntax.  However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[The court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("The court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.") (internal citation omitted).  Moreover, the court applies the same procedural rules and substantive law to Plaintiff as to a represented party.  *See Murray v. City of Tahlequah*, 312

filed a Motion Seeking Leave to Be Helped with Attorney. [#3]. The Honorable Gordon P. Gallagher denied as premature Plaintiff's motion seeking appointment of pro bono counsel because the case was in initial review under Local Rule of Civil Practice 8.1. [#5]. On April 6, 2020, Judge Gallagher ordered Plaintiff to file an Amended Prisoner Complaint to address various deficiencies identified by the court. [#6].

Mr. Mostafa filed the operative Amended Prisoner Complaint ("Amended Complaint") on May 18, 2020, asserting three claims against Defendants for "[i]njuries, [d]iscrimination against [d]isability, cruel and unusual conditions in prolonged continuous dangerous solitary confinement in violation of several amendments such as: one, four, five, six, eight, and fourteen." *See generally* [#9]; [*id.* at 3]. This case was then reassigned to the Honorable Philip A. Brimmer and drawn to the undersigned Magistrate Judge. [#10]. On August 10, 2020, Defendants filed the instant Motion for More Definite Statement directed at the Amended Complaint. [#25]. Therein, Defendants contend that the Amended Complaint is "so ambiguous" that they cannot reasonably prepare a response, and ask that Plaintiff be required to submit a Second Amended Complaint "(1) indicating which claim(s) he is asserting against which Defendant(s), and identifying the alleged basis for asserting each claim against each Defendant; and (2) clarifying for each claim whether it is asserted against the Defendant in his or her official capacity, individual capacity, or both, as well as the relief he seeks." [*Id.* at 2]. Two days later, the undersigned ordered Plaintiff to respond to the Motion for More Definite Statement by no later than September 14, 2020. [#27].

At a Status Conference held before the undersigned on August 25, 2020, the Parties discussed concerns expressed by Plaintiff regarding the processing of his legal mail. [#31]. This

---

F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

3

court ordered Defendants to file a Status Report by September 8, 2020 regarding the process applied to Plaintiff's mail and, in particular, his mail to and from the court. [*Id.*]. *See also* [#32 (discussing the August 25, 2020 Status Conference and Plaintiff's concerns regarding his correspondence with the court)].

On September 8, 2020, Defendants filed their Status Report. [#37]. Therein, Defendants explain that Mr. Mostafa, as a convicted terrorist, is subject to Special Administrative Measures ("SAMs"). [*Id.* at 1]. As part of the SAMs applied to Mr. Mostafa, only properly marked correspondence to and from his attorneys is treated as "Legal Mail." [*Id.* at 1–2 (citing [#37-1 (Notification of Extension of Special Administrative Measures for Kamel Mostafa), at 2–4, 9 n.6, 16–17])]. All other mail, including mail to and from this court, is considered "non-legal mail." [*Id.* (citing [#37-1 at 9 n.6, 12])]. Pursuant to the SAMs, Special Investigative Services Technicians at ADX review correspondence between Mr. Mostafa and the court, and the SAMs provide a 14-business-day review period for all non-legal mail. [*Id.* at 2 (citing [#37-1 at 13])].

That same day, this court granted Plaintiff's request for an extension of his deadline to respond to Defendants' Motion for More Definite Statement. [#34, #36]. His deadline to respond was extended to October 14, 2020. [#36]. No response was filed by that date. However, on November 2, 2020, Plaintiff filed his Pro Se Letter Motion. [#43]. Attached to Mr. Mostafa's Pro Se Letter Motion is a proposed Second Amended Prisoner Complaint. *See* [#43-1].[3]

I turn now to consider Plaintiff's Pro Se Letter Motion and Defendants' Motion for More Definite Statement, in turn.

---

[3] The court notes the delay in the processing of Plaintiff's filings in this matter, and recognizes that the filing date of Plaintiff's Pro Se Letter Motion (or "Motion to Amend"), November 2, 2020, is likely due to the SAMs applied to Mr. Mostafa. *See* [#37]. Indeed, his Motion to Amend is signed and dated September 24, 2020, *see* [#43 at 6], and his accompanying Proposed Second Amended Complaint is signed and dated October 13, 2020, *see* [#43-1 at 49].

## PRO SE LETTER MOTION

Plaintiff's Pro Se Letter Motion seeks a variety of relief, including (1) a "clearer and/or more accurate Status Report [37] and correcting mistakes therein," (2) "consider[ation] [of] preventative measures for ADX mail loophole(s)," and (3) an "extension of time . . . for Plaintiff to file his required amended claim as in [25], [36]," to include a new deadline of November 10, 2020, "because necessary writing materials have not been provided . . . ." [#43 at 1]. Attached to Mr. Mostafa's Pro Se Letter Motion is a proposed Second Amended Prisoner Complaint. *See* [#43-1]. The proposed Second Amended Complaint names 15 new defendants, 10 of whom are sued in both their official and individual capacities. *See generally* [#43-1]. Defendants filed a Response on November 20, 2020. [#48]. Defendants do not object to Plaintiff's requested amendment, but "note that [it] should be subject to screening as required by 28 U.S.C. § 1915A and D.C.COLO.LCivR 8.1(b)." [*Id.* at 1].

Accordingly, this court **CONSTRUES** Plaintiff's filing [#43] as a stipulated Motion to Amend pursuant to Federal Rule of Civil Procedure 15(a)(2) and D.C.COLO.LCivR 15.1(a). Accordingly, the Clerk of the Court is **DIRECTED** to accept for filing the tendered Second Amended Complaint [#43-1]. Insofar as Mr. Mostafa seeks court-ordered modification of the issues identified by the Defendants' Status Report [#37] or preventative measures for ADX mail loopholes, his requests are **DENIED**.

## MOTION FOR MORE DEFINITE STATEMENT

Because the Parties have stipulated to the filing of Plaintiff's Second Amended Complaint [#43-1], the Second Amended Complaint is the operative pleading in this case. Defendants' Motion for More Definite Statement [#25] is directed at Plaintiff's Amended Complaint [#9], an inoperative pleading. This court therefore concludes that Defendants' Motion for More Definite

Statement [#25] is moot. *See Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006) (a superseding complaint moots any motion(s) directed at an earlier, inoperative complaint). Accordingly, this court respectfully **RECOMMENDS** that Defendants' Motion for More Definite Statement [#25], and any request for an extension of time to respond to such Motion contained in Plaintiff's Pro Se Letter Motion [#43], be **DENIED as moot.**

**SECOND AMENDED COMPLAINT**

This court now turns to considering the Second Amended Complaint, and Defendants' request that the court conduct a screening pursuant to 28 U.S.C. § 1915A(a).

**I.     Defendants' Request for Review Pursuant to § 1915A(a)**

Pursuant to 28 U.S.C. § 1915A(a), the court must review, before docketing if feasible or as soon as practicable after docketing, "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The statute directs courts to identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A corollary to § 1915A is § 1915(e)(2)(B), that directs "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (emphasis added).

These statutes implicate separate but related concepts. One concept pertains to the manner in which a plaintiff's claims are communicated. Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a complaint "must contain (1) a short and plain statement of the grounds for the court's

6

jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). In other words, Rule 8 underscores the Federal Rules of Civil Procedure's emphasis on clarity and brevity. To satisfy the requirements of Rule 8, a plaintiff must allege in a clear, concise, and organized manner, what each named defendant did to him, when the defendant did it, how the defendant's actions harmed him, what specific legal right he believes the defendant violated, and what specific relief he requests. *See Nasious v. Two Unknown B.I.C.E Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (citations omitted). A plaintiff's vague and conclusory allegations that his rights have been violated do not entitle him to a day in court, regardless of how liberally the court construes a pro se plaintiff's pleadings. *See Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991), *aff'd*, 961 F.2d 916 (10th Cir. 1992).

Another concept is whether a complaint, however clearly articulated, lacks an arguable basis in law or fact. *Aguilar v. Colo. State Penitentiary*, 656 F. App'x 400, 402 (10th Cir. 2016) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *See Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989). For instance, even if clearly and unambiguously stated, a prisoner's constitutional rights would not be violated if the penal institution refused to fly him to the moon. Courts may dismiss legally frivolous claims brought by IFP prisoners pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) "at any time."

A third concept is whether a complaint pleads sufficient facts, when taken as true, to state a cognizable claim under Federal Rule of Civil Procedure 12(b)(6). In this context, the plaintiff

has identified an arguable claim, but the court considers whether the plaintiff includes enough facts to state a claim to relief that is plausible on its face. *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (quotations omitted). A panel of the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") recently distinguished frivolous claims from those that fail to state a claim:

> the frivolousness standard is intended to apply to "claim[s] based on an indisputably meritless legal theory" or "claims describing fantastic or delusional scenarios," not claims that merely fail to state a claim upon which relief can be granted. Thus, a complaint that fails to state a claim is not automatically frivolous within the meaning of § 1915(e)(2)(B)(i). . . . In these circumstances, dismissal under § 1915(e)(2)(B) remains appropriate—but under subsection (e)(2)(B)(ii), which calls for dismissal for failure to state a claim upon which relief can be granted.

*Pittmann v. Holcomb*, -- F. App'x -- , 2020 WL 7238271, *2-3 (10th Cir. Dec. 9, 2020) (citations omitted). *See also id.* at *3 n.1 ("[W]e have emphasized the distinction between the frivolousness standard in subsection (e)(2)(B)(i) and the 'fails to state a claim on which relief may be granted' standard in subsection (e)(2)(B)(ii).") (collecting cases). In other words, if an IFP prisoner's complaint fails to state a claim on which relief may be granted, "at any time," it is properly dismissed pursuant to § 1915(e)(2)(B)(ii).

Finally, the second prong of the § 1915(A)(b) standard for initial review directs courts to dismiss claims that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(2). Pursuant to § 1915(e)(2)(B)(iii), a court must dismiss a claim brought by an IFP prisoner, like Mr. Mostafa, if it seeks monetary damages against a defendant who is immune from such relief.

Defendants cite no authority that requires this court to engage in an additional § 1915A(a) analysis when a pro se inmate amends an existing complaint, rather than initiates a new action. *See* [#48 at 1]. But the Second Amended Complaint spans 70 pages and names at least twenty-two Defendants, including (1) William Barr, U.S. Attorney General ("Defendant Barr"); (2)

Christopher Wray, Director of the Federal Bureau of Investigation ("FBI") ("Director Wray"); (3) Michael Carvajal, Director of the Federal Bureau of Prisons ("BOP") ("Director Carvajal"); (4) B. True, ADX Warden ("Warden True"); (5) Tuttoilmundo, H-Unit Manager at ADX ("Defendant Tuttoilmundo"); (6) MacMillan, ADX Facilities Department ("Defendant MacMillan"); (7) Guy, ADX Legal Department ("Defendant Guy"); (8) Follows, ADX Medical Department Manager ("Defendant Follows"); (9) Kunduf, ADX Kitchen Manager ("Defendant Kunduf"); (10) "Unknown[] SAMs Operatives, Managers/Workers" ("Unknown SAMs Operatives"); (11) Dr. Sterett, ADX Medical Department; (12) Parry, ADX Officer ("Officer Parry"); (13) Averit, ADX Officer ("Officer Averit"); (14) Garduno, ADX Lieutenant ("Lt. Garduno"); (15) Loewe, ADX Officer ("Officer Loewe"); (16) Norjano, ADX Officer ("Officer Norjano"); (17) Osage, ADX Medical PA ("PA Osage"); (18) Hudelston, ADX Nurse ("Nurse Hudelston"); (19) "John and Jane Does et al, ADX Co." ("Defendants John and Jane Does"); (20) Armejo, ADX Lieutenant ("Lt. Armejo"); (21) William, ADX Nurse ("Nurse William"); and (22) Hensen, ADX Officer ("Officer Hensen" and collectively, "Defendants"). [#43-1 at 2, 5 ¶ 10]. Defendants Barr, Director Wray, Director Carvajal, Guy, Unknown SAMs Operatives, Lt. Armejo, and Officer Hensen are sued in their official capacities only. *See* [*id.* at 3–6]. Defendants Tuttoilmundo,[4] MacMillan, Follows, Kunduf, Warden True, Dr. Sterett, Officer Parry, Officer Averit, Lt. Garduno, Officer Loewe, Officer Norjano, PA Osage, Nurse Hudelston, and Nurse William are sued in both their individual and official capacities. *See* [*id.*]. Though Plaintiff enumerates five claims, Mr. Mostafa does not articulate either distinct causes of action, or the legal bases for each of his claims, but instead, under the section entitled "Jurisdiction," generally identifies potential legal bases for his

---

[4] Defendants note that while Mr. Mostafa previously sued Defendant Tuttoilmundo in her individual capacity, claims against her in her official capacity are new. [#48 at 1].

complaints of "COVID-19 urgency, discrimination against my type of disability, cruel and unusal conditions in prolonged confined solitary confinement where no help, fittings, items, intimidations, physical assual, sleep deprivation, lack of medical, dental care in violation of several Amendment such as: 1, 4, 5, 6, 8, 14 ... and other rules of Disability Act AND COVID Perventn." [*Id.* at 4].

Mr. Mostafa appears to request injunctive relief in the form of a court order requiring Defendants to (a) terminate Mr. Mostafa's SAMs [*id.* at 38 ¶ 2]; (b) discontinue and prevent future deprivations of his requested disability accommodations, and accept Plaintiff's preferred medical specialists' evaluations and recommendations of his needs [*id.* at 38 ¶ 5]; (c) provide him his "medical diet," unspecified medical care, and dental care including "implants and work and electric toothbrush/floss and pouch opener and other preventative measures," [*id.* at 39 ¶ 6]; and (d) transfer him from ADX permanently [*id.* at 39 ¶ 3]. *See generally* [*id.* at 38-39]. Mr. Mostafa also requests "punishement and resolution(s) against the Assailant defendants in Claim Three," and "compensation from the nonofficially sued defendants in all accounts, claims, violations and malpractice mentioned in the entire case." [*Id.* at 39 ¶ 4].

Given the prolix and imprecise nature of the Second Amended Complaint, this court finds that it does not comply, in large part, with Rule 8 of the Federal Rules of Civil Procedure. But this court is also mindful of Rule 1's admonition that the Federal Rules of Civil Procedure should be interpreted and applied in a manner to secure the just, speedy, and inexpensive resolution of actions. Thus, instead of simply striking the Second Amended Complaint or pressing Mr. Mostafa to clarify his claims, this court respectfully **RECOMMENDS** that the Second Amended Complaint be **CONSTRUED** to include the following causes of action, that certain claims be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B), and that any other unidentified or unspecified claim within the Second Amended Complaint be **DISMISSED** without prejudice pursuant to Rule

8 of the Federal Rules of Civil Procedure. In so recommending, this court expressly does not pass on whether any surviving cause of action is subject to any dispositive motion, reserving those issues to be raised, if appropriate, by any Defendants properly served.

## II.    Claims Sufficiently Identified for Rule 8 Purposes

Mr. Mostafa invokes *Bivens v. v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971),[5] and the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and various rules associated with a "Disability Act." *See* [#43-1 at 4]. In liberally construing his Second Amended Complaint, the court discerns the following causes of action.

### A.    Claim One

Though containing a litany of alleged wrongs, the core of Claim One, asserted against Defendants Barr, Director Wray, Director Carvajal, Warden True, and the Unknown SAMs Operatives, in their official capacities only, pertains to the application of SAMs to Plaintiff and their resulting consequences. For instance, Mr. Mostafa claims that his background "does not support the [SAMs]" applied to him and contends that his SAMs are disproportionate to his crimes [*id.* at 8 ¶ 5] and unlawful [*id.* at 10]. He alleges that the restrictions applied to him fail to mention or consider his disability or poor health, and instead "stress[] and order[] the full harsh strict isolation," amounting to the denial of any care or help provided to Plaintiff and—in light of COVID-19—amount to a "defacto . . . death penalty" because the Plaintiff "is compelled to use his own stumps to clean and mouths to open unsteralized objects from food, commissary, etc." [*Id.* at 9 ¶ 8].

---

[5] A *Bivens* action is, by definition, a damages action for a constitutional violation against a federal officer in his or her individual capacity. *Matthews v. Wiley*, 744 F. Supp. 2d 1159 (D. Colo. 2010) (citations omitted).

Case No. 1:20-cv-00694-PAB-MDB   Document 71-1   filed 03/18/21   USDC Colorado   pg 23
of 50
Case 1:20-cv-00694-PAB-NYW   Document 60   Filed 01/30/21   USDC Colorado   Page 12 of 36

According to Mr. Mostafa, his ability to mount a legal defense in his "criminal case" has been compromised by the mail restrictions imposed by his SAMs, whereby he is prevented from contacting, *inter alia*, "legal human rights/Disability Act attorneys" and "British lawyers to follow up on broken assurances." [*Id.* at 10 ¶ 10]. Additionally, restrictions on communication with his family yield "very little" contact, and are "causing family problems" because he is not permitted to contact three of his sons or his stepson, and may only contact one of his eight grandchildren. [*Id.* at 10 ¶ 11]. He avers that Unknown SAMs Operatives' findings of mail violations by Plaintiff "are too many, repeated and ha[ve] nothing to do with security, just bullying plaintiff and his family." [*Id.* at 11 ¶ 11].[6]

He also appears to assert that due to these restrictions imposed by the SAMs, he cannot cleanse "after toilet to pray his minimum 5 times" and "always soil[s] his cloths and area in trying," [*id.* at 11 ¶ 12]; cannot comb his hair or keep a long beard and is provided no suitable hairbrush [*id.*]; cannot safely shave [*id.*]; is unable to cut his own hair during times that haircuts are unavailable in the facility for extended periods of time, and is thus denied haircuts for months on end [*id.*]; has been denied an Imam while at ADX, except for three to five minute visits monthly

---

[6] Mr. Mostafa then directs the court to review a variety of exhibits "for other misuse of SAMs." [#43-1 at 11 ¶ 11 (citing "Ex-A items 15 and items 12-18")]. Exhibit A attached to Plaintiff's pleading is a "Remedy List" provided by Plaintiff which appears to be a handwritten summary of various administrative grievances filed by Plaintiff. [*Id.* at 48-52]. However, the information provided in Exhibit A for each numbered "remedy" (i.e., grievance) is an "ID" number, the status of the grievance (e.g., open or closed), and vague descriptions of the subject matter asserted therein (e.g., "family visit forms missing," "access to Muslim chapel," "rejecting mail to my son," etc.). The 83 grievances listed are grouped by category (e.g., "Access to Computer & Law Lib," "Religious Issues," "Request for COVID19 Based Release"). [*Id.*]. But Exhibit A otherwise provides no additional information, such as dates of incidents, prison officials implicated, or specific bases for the grievances. As such, Exhibit A offers little factual support for Plaintiff's claims. The general rule that *pro se* pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Case No. 1:20-cv-00694-PAB-MDB   Document 71-1   filed 03/18/21   USDC Colorado   pg 24
of 50
Case 1:20-cv-00694-PAB-NYW   Document 60   Filed 01/30/21   USDC Colorado   Page 13 of 36

until March 2020, when visits were denied altogether [*id.*]; is denied communal prayer altogether [*id.*]; and is denied feast meals related to his Islamic faith [*id.*].

Plaintiff asserts that Warden True and "all his subordinates in all ADX departments, in coordination with H-Unit Manager [Tuttoilmundo], are the government officials tasked by the U.S. [Attorney General] and FBI to enforce all SAMs provisions." [*Id.* at 13 ¶ 3]. Plaintiff describes Defendant Barr and the FBI as "the Generals" and Warden True and ADX staff "the soldiers, . . . executing the General's orders." [*Id.*]. According to Plaintiff, "neither party can operate without the other." [*Id.* (internal quotation marks omitted)].

Given these allegations, this court respectfully **RECOMMENDS** that Claim One be construed as asserting that the SAMs applicable to Mr. Mostafa violate his rights to free exercise and familial association under the First and Fourteenth Amendments against Defendants Barr, Director Wray, Director Carvajal and Warden True in their official capacities for injunctive relief, not subject to summary dismissal. *See Reid v. Wiley*, No. 07-cv-01855-PAB-KMT, 2009 WL 1537879, at *6-7 (D. Colo. May 29, 2009) (denying motion to dismiss inmate's claim that SAMs violated his free exercise of religion in prison); *Mohammed v. Holder*, No. 07-cv-02697-MSK-BNB, 2011 WL 4501959, at *10 (D. Colo. Sept. 29, 2011) (denying summary judgment on inmate's First Amendment claim premised on SAMs limiting his communications).[7]

---

[7] Numerous other allegations, such as his contention that an unidentified federal government official threatened to make Plaintiff's "life in prison very difficult" if Plaintiff continued—in his "campaign for the truth"—to discuss an investigation into the collapse of the World Trade Center twin towers on September 11, 2001 during his sentencing [#43-1 at 46 ¶ 14] do not have a discernable basis in fact or law as they are currently set forth. Other theories, such as asserting Claim One under *Bivens*, are not legally cognizable, as *Bivens* claims can be brought only against federal officials in their individual capacities. *See Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001). *Bivens* claims cannot be asserted directly against the United States or federal officials in their official capacities. *Id.* Still others, like vague and conclusory allegations that various Defendants have failed to apply "checks and balances" to his restrictions and have not provided

### B.     Claim Two

In Claim Two, Mr. Mostafa challenges his designation to and conditions of confinement at ADX. According to Mr. Mostafa, Defendants Barr, Director Wray, and Director Carvajal, in their official capacities, are responsible "for reasoning the designation" [#43-1 at 17 ¶ 15], and the only reason given to justify his designation to ADX is his SAMs status. [*Id.* at 13 ¶ 2]. Plaintiff avers that prior to his transfer to ADX, Defendant MacMillan traveled to Plaintiff's "pre-designation place" in "Springfield Federal Health Center Prison" in Missouri, with promises to replicate the disabled cell provided to Plaintiff at the time at ADX. [*Id.* at 14 ¶ 5]. But according to Mr. Mostafa, Defendant MacMillan's promises were illusory, designed only to secure the ADX designation— and his cell at ADX provides "the opposite of the Plaintiff's essential needs." [*Id.*].

Mr. Mostafa also asserts Claim Two against Defendants Warden True and MacMillan in their official capacities, "for accepting the designation before/without thorough occupational therapist and medical assessment for fittings and care." [*Id.* at 17 ¶ 15]. He alleges that his current cell fails to meet his needs in part due to "missing fittings, unnatural lights, water supplied, toilets, [and] safety rail . . . ." [*id.* at 14 ¶ 6]. In addition, ADX officials' failure to provide Mr. Mostafa with help, fittings, and items essential to his health, safety, and hygiene have led to Mr. Mostafa's injuries and inability to participate in inmate life. [*Id.* at 15 ¶ 7]. According to Mr. Mostafa, ADX is unable to accommodate "extremely disabled/special-needs inmate[s]" like Plaintiff and lacks trained healthcare professionals (including occupational therapists) to appropriately care for Plaintiff and his needs on a daily basis. [*Id.* at 16 ¶ 10]. Thus, he also asserts Claim Two against Defendant Follows "for not doing any introductory admission assessment or risk health hygiene

---

him "due process," are not associated with any particular constitutional rights and thus fail to satisfy Rule 8's mandate.

Case No. 1:20-cv-00694-PAB-MDB   Document 71-1   filed 03/18/21   USDC Colorado   pg 26
of 50
Case 1:20-cv-00694-PAB-NYW   Document 60   Filed 01/30/21   USDC Colorado   Page 15 of 36

evaluation" and failing to follow Plaintiff's "documented daily care in record," [*Id.* at 17 ¶ 15]. As relief, Mr. Mostafa seeks a permanent transfer from ADX.  [*Id.* at 39 ¶ 3].

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citations and internal quotation marks omitted).   Conditions of confinement that "deprive inmates of the minimal civilized measure of life's necessities" may be cruel and unusual. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). An Eighth Amendment claim requires both a showing that the challenged conditions are sufficiently and objectively severe and a showing that the defendant prison officials were subjectively aware of "a substantial risk of serious harm to an inmate" and yet voluntarily acted, or failed to act, despite that awareness. *Farmer*, 511 U.S. at 828, 842. And "while an inmate does not have a federal constitutional right to rehabilitation, he is entitled to be confined in an environment which does not result in his degeneration or which threatens his mental and physical well-being." *Battle v. Anderson*, 564 F.2d 388, 403 (10th Cir. 1977).

Because Claim Two is asserted against the Defendants in their official capacities only,[8] in order to establish his entitlement to the prospective injunctive relief he seeks, Plaintiff "must

---

[8] Courts have construed inmates' challenges in seeking transfers from one BOP facility to another as a challenge to the conditions of confinement. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1036 (10th Cir. 2012) (inmate's challenge seeking transfer from one BOP detention facility to another properly construed as a challenge to conditions of confinement and must be brought under *Bivens*); *Stine v. Berkebile*, No. 13-cv-03107-BNB, 2014 WL 11878141, at *2 (D. Colo. Jan. 8, 2014) ("The Tenth Circuit has confirmed that a conditions of confinement claim filed by a prisoner in this Circuit must be filed through a civil rights action." (citing *Palma-Salazar*, 677 F.3d at 1035)).  But as discussed above, *Bivens* claims may only be brought against defendants in their individual

Case No. 1:20-cv-00694-PAB-MDB   Document 71-1   filed 03/18/21   USDC Colorado   pg 27
of 50
Case 1:20-cv-00694-PAB-NYW   Document 60   Filed 01/30/21   USDC Colorado   Page 16 of 36

include sufficient factual allegations to state a claim for an Eighth Amendment violation." *Abu-Fakher v. Bode*, 175 F. App'x 179, 181 (10th Cir. 2006). *See also Farmer*, 511 U.S. at 845-46 ("An inmate seeking an injunction on the ground that there is 'a contemporary violation of a nature likely to continue,' must adequately plead such a violation.'" (quoting *United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333, 72 S. Ct. 690, 695, 96 L. Ed. 978 (1952))). In other words, Plaintiff must allege facts from which it can be inferred that the defendant-officials were "knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." *Farmer*, 511 U.S. at 846.

While courts have repeatedly held that the conditions of confinement at ADX generally do not rise to the level of cruel and unusual punishment, *see, e.g., Ajaj v. U.S.*, 293 F. App'x 575, 583 (10th Cir. 2008) (finding conditions of confinement at ADX do not rise to the level of cruel and unusual punishment), some of Plaintiff's allegations go beyond a general challenge. For instance, he alleges that his disability renders the conditions of his confinement at ADX unconstitutional.[9] [#43-1 at 16 ¶ 10 ("The ADX . . . is not: prepared, designed or fitted with the necessary living or detention environment to house an extremely disabled/special-needs inmate."); *id.* at 16 ¶ 11 ("Accordingly, . . . his continuous placement at ADX amounts to nonless than cruel and unusual punishment.")]. He also contends that ADX officials' failure to provide Mr. Mostafa with help,

capacity, and the Second Amended Complaint clearly identifies that Defendants Barr, Director Wray, Director Carvajal, Warden True, and MacMillan are sued in their <u>official</u> capacities. [#43-1 at 17 ¶ 15 (emphasis in original)]

[9] The court construes Mr. Mostafa's allegations about his disability as reasons why he is not properly designated at ADX, instead of a separate legal claim. Indeed, though at times he characterizes the purported actions as "discrimination," [#43-1 at 15 ¶ 7], Mr. Mostafa does not identify any other legal basis for his allegations other than references to an unidentified "Disability Act" at the beginning of the Second Amended Complaint. *See [id.* at 4]. Without more, this court declines to fashion causes of action on Mr. Mostafa's behalf. *See Drake v. Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (stating that the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

Case No. 1:20-cv-00694-PAB-MDB   Document 71-1   filed 03/18/21   USDC Colorado   pg 28
of 50
Case 1:20-cv-00694-PAB-NYW   Document 60   Filed 01/30/21   USDC Colorado   Page 17 of 36

fittings, and items essential to his health, safety, and hygiene as a disabled individual have led to further injuries and inability to participate in inmate life. [*Id.* at 15 ¶ 7]. And these failures have allegedly put Mr. Mostafa at greater risk for COVID-19, the disease caused by the novel coronavirus. [*Id.* at 17 ¶ ¶ 14]. With these averments, Plaintiff appears to assert that his disability—coupled with the condition of confinement at ADX, which is not "prepared, designed or fitted" for handicapped inmates like himself—gives rise to a substantial risk of harm. Based on these allegations, this court respectfully **RECOMMENDS** that Claim Two be **CONSTRUED** as asserting an Eighth Amendment conditions of confinement claim related to Plaintiff's placement at ADX, not subject to summary dismissal.

### C.   Claim Three

In Claim Three, Plaintiff asserts that he was the victim of an alleged assault by particular ADX staff members, Dr. Sterett failed to intervene and subsequently failed to provide medical care to Plaintiff, and Defendant Guy and Warden True failed to appropriately respond to Plaintiff's requests for an investigation into the incident. [#43-1 at 18-22]. Specifically, Mr. Mostafa contends that, on October 19, 2019, he engaged in a hunger strike in a "peaceful and legal protest" after he was moved from one cell to "the more harmful Cell 300." [*Id.* at 18]. Three days later, at approximately 5:00 p.m., Lt. Armejo and Officer Edwards[10] forcefully entered his cell and "confiscated all of his legal, personal and religious property," in violation of BOP "hunger strike policy." [*Id.*].

On October 28, 2019, Lt. Garduno, Officers Parry and Averit, and Nurse Hudelston purportedly forcefully entered his cell to perform a medical assessment. [*Id.* at 19]. When Mr.

---

[10] Despite many allegations about conduct by "Officer Edwards," *see, e.g.,* [#43-1 at 21], Mr. Mostafa does not name Officer Edwards as a Defendant in this action, *see* [*id.* at 2-6].

Mostafa refused the assessment, these Defendants threatened him with promises to return with force. [*Id.*]. They[11] did return, and Lt. Garduno and Officers Parry and Averit, while shouting, pushed the Plaintiff from the cell door to his bed. [*Id.*]. No "assigned team" or "camera" were present. [*Id.*]. Lt. Garduno then told Plaintiff, "'we are gonna tie you up to this chair very hard, don't care if you defecate.'" [*Id.*]. In response, Mr. Mostafa stated that Lt. Garduno was not acting professionally and would likely cause serious harm to the inmate's health, and further refused to comply with an assessment unless a "team" and camera were provided. [*Id.*].

Lt. Garduno and Officers Parry and Averit proceeded to physically assault Plaintiff for more than seven minutes, leaving him bleeding, dizzy, and disoriented, and left Plaintiff's cell without asking Dr. Sterett (who was standing outside of the cell) to help Plaintiff. [*Id.* at 19]. Mr. Mostafa was bleeding from his arm stump and "blood was everywhere," but—despite pressing the "duress button" to get medical help—no help was provided for approximately five more hours. [*Id.*]. When help did arrive, the "team came with cameras and different staff" and a proper hunger strike medical assessment took place. [*Id.*].

During this assessment, which was conducted somewhere other than Plaintiff's cell, Lt. Armejo and Officer Edwards ordered another inmate to clean the blood from Plaintiff's cell. [*Id.* at 19-20]. When the inmate declined, Lt. Armejo and Officer Edwards entered Plaintiff's cell and cleaned Plaintiff's blood from the floor, walls, and ceiling and refused to document the injuries or the assault. [*Id.* at 20]. Plaintiff's subsequent administrative grievances concerning the October 28, 2019 assault yielded responses that were "all vague" and a "cover up" of the incident. [*Id.*].

---

[11] It is not clear based on the allegations in the Second Amended Complaint whether Nurse Hudelston also returned.

18

*Official Capacity Claims.* Mr. Mostafa asserts Claim Three against Officers Parry and Averit and Lt. Garduno based on their alleged assault; Nurse Hudelston for "inciting [Officers Parry and Averit and Lt. Garduno] to strain the plaintiff," [*id.*]; Dr. Sterett "for not trying to stop the assault or examine [Plaintiff] after," [*id.*]; Lt. Armejo "for refusing to make incident report and ordering [another officer] to clean the blood and destroy evidence," [*id.*]; Defendant Guy for "ignoring [his] request to investigate and report the incident and ignoring [his] attorney's letters regarding the same and the force feeding videos to date," [*id.*]; and Warden True for ignoring Plaintiff's requests for investigation and for providing "unsafe vague general" responses to Plaintiff's grievances filed concerning the assault [*id.*], in their respective official capacities.

While in principle, Mr. Mostafa could pursue prospective injunctive relief through an official capacity claim, the only relief Mr. Mostafa seeks applicable to the alleged violations set forth in Claim Three is "punishement" for his assailants and "compensation from the nonofficially sued defendants in all accounts." [#43-1 at 39 ¶ 4]. But monetary damages and declaratory judgments for past conduct, as asserted against a federal official in his or her official capacity, are barred by sovereign immunity. *See Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002). And none of the prospective injunctive relief sought by Mr. Mostafa relates to hunger strikes, hunger strike assessments, the presence of a "team" and video camera for the same, or even assaults by prison staff. *See generally* [#43-1 at 38-39].

Indeed, even if Mr. Mostafa did request such prospective injunctive relief, he "cannot maintain a[n] . . . injunctive action unless he . . . can demonstrate a good chance of being likewise injured in the future," *Barney v. Pulsipher*, 143 F.3d 1299, 1306 (10th Cir. 1998), and nothing in his Second Amended Complaint supports such an inference. Mr. Mostafa's allegations are focused solely on past conduct of the various Defendants and fail to support an inference that this conduct

is consistent with a policy or custom,[12] or that there is any likelihood that the same conduct is likely to recur in the future. *See id.*; *Farmer*, 511 U.S. at 845-46 ("An inmate seeking an injunction on the ground that there is 'a contemporary violation of a nature likely to continue,' must adequately plead such a violation.'" (citation omitted) (emphasis added)).[13]

*Individual Capacity Claims.* Mr. Mostafa asserts Claim Three against Officers Parry and Averit and Lt. Garduno in their individual and official capacities. [#43-1 at 21]. Plaintiff's allegations are most akin to an Eighth Amendment excessive force claim. To the extent that Plaintiff proceeds against these Defendants in their individual capacities, injunctive relief is not available. *See Bridges v. Fed. Bureau of Prisons,* No. 18-CV-00494-GPG, 2018 WL 9458261, *3 (D. Colo. May 4, 2018) (citing *Matthews*, 744 F. Supp. 2d at 1167); *Matthews*, 744 F. Supp. 2d at 1167 ("The injunctive relief [Plaintiff] seeks is not within the authority of the Defendants in their individual capacities. Such relief is only available in an official capacity suit.").

To the extent that Mr. Mostafa seeks "compensation from the nonofficially sued defendants in all accounts" [#43-1 at 39] from Officers Parry and Averit and Lt. Garduno, this court respectfully **RECOMMENDS** Claim Three be **CONSTRUED** as a claim for excessive force in violation of the Eighth Amendment pursuant to *Bivens*, not subject to summary dismissal. In so finding, this court expressly does not pass on the issue of whether an Eighth Amendment excessive

---

[12] Indeed, he appears to suggest the opposite. *See, e.g.*, [#43-1 at 18 ("FBOP Hunger Strike Policy does not allow such arbitrary behavior.")].

[13] Even if Plaintiff included in his request for relief an injunction related to the alleged assault, absent additional allegations non-contingent on speculation or conjecture, his official capacity claim would still fail for lack of standing. *See Redmond v. Crowther*, 882 F.3d 927 (10th Cir. 2018) (dismissing inmate's claim for injunctive relief for lack of standing).

Case No. 1:20-cv-00694-PAB-MDB   Document 71-1   filed 03/18/21   USDC Colorado   pg 32
of 50
Case 1:20-cv-00694-PAB-NYW   Document 60   Filed 01/30/21   USDC Colorado   Page 21 of 36

force claim is cognizable under *Bivens*.[14]  In addition, this court respectfully **RECOMMENDS**

dismissal of any official capacity claim encompassed by Claim Three pursuant to 28 U.S.C. §

1915(e)(2)(B)(iii).

### D.    Claim Four

In Claim Four, Mr. Mostafa claims various deficiencies with his care.  He contends that, in

2012 and in response to his attorney's requests to provide Plaintiff with the essentials of daily care,

an evaluating Occupational Therapist, "Ms. Deats," visited Plaintiff in 2013 and "made

malpractice assumptions still harming plaintiff to date," including assumptions that Plaintiff could

make his own bed, open condiment packages, required no assistance in opening or drinking fluids

safely, and required no additional help or items for cleaning assistance. [#43-1 at 22 ¶ 4].  In

contrast to the Occupational Therapist's assumptions, Mr. Mostafa alleges that he has to use his

bare stumps to collect garbage from and clean his cell, which takes hours to accomplish and results

in injuries, abrasions, sweating, and fatigue to such an extent that it takes him 45 days to clean his

entire cell. [*Id.* at 22 ¶ 5].  Similarly, Plaintiff can change his bed only once every two months. [*Id.*

---

[14] The Supreme Court has recognized an implied cause of action for damages in three contexts
only—i.e., a Fourth Amendment unreasonable search and seizure claim (*Bivens*), a Fifth
Amendment equal protection claim (*Davis v. Passman*, 442 U.S. 228 (1979)), and an Eighth
Amendment failure to provide adequate medical care claim (*Carlson v. Green*, 446 U.S. 14
(1980)).  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017).  The *Ziglar* Court made
clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857
(citation omitted).  Courts in this District have declined to recognize a *Bivens* claim arising from a
claim for excessive force in violation of the Eighth Amendment.  *See, e.g., Silva v. United States*,
No. 19-cv-02563-CMA-MEH, 2020 WL 7706785, at *5-6 (D. Colo. Dec. 29, 2020) (declining to
extend Bivens to Eighth Amendment excessive force claim and dismissing the claim for lack of a
Bivens remedy).  But absent authority from the Supreme Court or the Tenth Circuit on the precise
issue of whether a *Bivens* action may be implied in the context of excessive force in violation of
the Eighth Amendment, this court declines to recommend dismissal of Claim Three on that basis
of Mr. Mostafa's Second Amended Complaint in the context of review pursuant to §
1915(e)(2)(B), reserving that issue to be raised if appropriate by Defendants, and ruled upon by
Chief Judge Brimmer in the context of a dispositive motion.

at 22 ¶ 5, 24 ¶ 5]. However, his "medical chart" "is clear . . . that his cell and bed must be cleaned and changed daily" because of his skin problems and hyperhidrosis, and because abrasion causes his stumps to bleed. [*Id.* at 24 ¶ 5]. Mr. Mostafa has also lost of all his lower back teeth, two of his top back teeth, and suffered severe abrasions to his front teeth and gums because he is only able to open packets by using his stumps to hold the item and his teeth to rip it open. [*Id.*].

Although the Occupational Therapist acknowledged relatively few of Mr. Mostafa's injuries and ailments during her visit, she nevertheless recommended that adaptive equipment, shower grab bars, and a disability-friendly food tray, plastic plate, and fabricated utensils, be provided indefinitely; and other personal grooming items be provided to Mr. Mostafa until his criminal trial has finished. [*Id.* at 24 ¶ 7]. None of the foregoing items have ever been provided to Mr. Mostafa. [*Id.*].

In February 2015, Mr. Mostafa was assessed by another Occupational Therapist at the Federal Medical Center in Missouri. [*Id.* at 25 ¶ 10]. This assessment lasted less than ten minutes and, despite numerous requests, Mr. Mostafa has never been provided with a copy of her report. [*Id.*]. He was never seen or assessed by the Occupational Therapist again. [*Id.*].

On April 15, 2016, while housed at ADX, another Occupational Therapist assessment was conducted. [*Id.* at 25 at ¶ 11]. This assessment was only twenty-two minutes in duration and included "bullying, degradation," and "malpractices." [*Id.*]. Fourteen other ADX officials from various departments, including the legal, medical, and food departments, were present for the assessment. [*Id.*]. That Occupational Therapist concluded that "because [Plaintiff] has prosthetics and can open a peanut butter jar he does not need anything from the list of fitting and items he requested from ADX." [*Id.*]. According to Plaintiff and unbeknownst to the Occupational Therapist, an ADX officer had loosened the peanut butter jar for Plaintiff. [*Id.*].

Letters sent on behalf of Mr. Mostafa to Defendant Guy, including two letters sent December 3 and December 6, 2019, respectively, requesting certain items to accommodate Plaintiff's disability and mitigate his injuries, have gone unanswered. [*Id.* at 26 ¶ 12]. *See also* [*id.* at 26 ¶ 14]. Similarly, requests for certain items lobbied to Defendant Follows have gone unanswered. [*Id.* at 27 ¶ 15].

Claim Four is asserted against the following Defendants in their official capacities: Warden True "for refusing to provide remedy," [*id.* at 27 ¶ 17]; Defendant MacMillan "for wrong fittings for upper amputee," [*id.*]; Defendant Guy for "wrong legal advice to Warden and ignoring requests, relief, attorney's letters," [*id.*]; Defendant Follows for refusing Plaintiff's specific occupational therapist requests and request that his assessment be video recorded, [*id.* at 27 ¶¶ 16, 17]; and the Unknown SAMs Operatives for "denying items, fittings help under the pretext of security and for interfering with medical necessities," [*id.* at 27 ¶ 17]. Although, again, the cause of action asserted is not clearly identified by Plaintiff, it appears best characterized as an Eighth Amendment deliberate indifference claim for failure to provide adequate medical care.

"Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs." *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). To establish a prison official's constitutional liability, a plaintiff must satisfy both the objective and subjective components of the deliberate indifference test. *See Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component requires Mr. Mostafa to allege objective facts that demonstrate that the deprivation is "sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Farmer*, 511 U.S. at 834). The subjective component requires the plaintiff to produce evidence of the defendant's culpable state of mind, i.e., to establish that the defendant(s)

Case No. 1:20-cv-00694-PAB-MDB   Document 71-1   filed 03/18/21   USDC Colorado   pg 35
of 50
Case 1:20-cv-00694-PAB-NYW   Document 60   Filed 01/30/21   USDC Colorado   Page 24 of 36

knew the plaintiff faced a substantial risk of harm, yet disregarded that risk. *Estelle*, 429 U.S. at 106; *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotations and citation omitted).

To satisfy this element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires more than mere negligence." *Sealock*, 218 F.3d at 1211; *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1227 (D. Colo. 2016) (comparing the subjective component to recklessness in criminal law, where, to act recklessly, a person must "consciously disregard a substantial risk of serious harm").

*Allegations of Disagreement with Treatment and Malpractice.* Prisoners do not have a constitutional right to a particular course of medical treatment, and an inmate's disagreement with prison officials' decisions regarding his medical care fails to satisfy the subjective element of a deliberate indifference claim. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). The law is clear that even medical malpractice does not rise to the level required for a cognizable Eighth Amendment claim. *See, e.g., Estelle*, 429 U.S. at 106 (medical negligence does not violate the Eighth Amendment). In other words, "the Constitution is only implicated in situations in which prison officials act purposefully to impose unnecessary pain on an inmate; 'inadvertent' denials of care or negligent diagnosis or treatment does not rise to the level of an 8th Amendment violation." *Ajaj v. Fed. Bureau of Prisons*, No. 08-cv-02006-MSK-MJW, 2011 WL 902440, at *16 (D. Colo. Mar. 10, 2011). *See also Estelle*, 429 U.S. at 107 (noting that a medical decision to forego one form of treatment may be negligence but is not a constitutional violation); *Callahan*, 471 F.3d at 1160 (prisoner's "contention that he had a right to a particular course of treatment" was insufficient to show deliberate indifference); *Jones v. Simmons*, No. 96–3059, 89 F.3d 850 (Table), 1996 WL 343617, at *1 (10th Cir. June 24, 1996) (affirming district court's conclusion "that plaintiff had

merely challenge[d] a matter of medical judgment concerning the restrictions necessary to accommodate his diagnosis, and, therefore, he failed to state a deliberate indifference claim").

This court finds that Mr. Mostafa alleges sufficient facts to demonstrate the alleged harm is sufficiently serious. But with respect to his evaluation by occupational therapists, Plaintiff pleads nothing more than disagreement with the course of treatment or self-described malpractice in Claim Four. With respect to Defendants MacMillan, Follows, and Unknown SAMs Operatives, Plaintiff avers that these Defendants' actions were all taken in reliance on the Occupational Therapist's medical assessment and report. The non-medical prison officials can reasonably rely on the judgment of prison medical professionals regarding Mr. Mostafa's medical needs. *See, e.g., Key v. McLaughlin*, No. 10-cv-00103-WJM-CBS, 2013 WL 1507950, at *4 (D. Colo. Mar. 19, 2013); *Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006) (prison officials may rely on a medical professional's judgment unless the prisoner is obviously receiving inadequate care); *Williams v. Cearlock*, 993 F. Supp. 1192, 1197 (C.D. Ill. 1998) ("[P]rison administrators, having no medical expertise, must rely on health care professionals to assess the needs of prisoners and initiate treatment."); *Al–Turki v. Ballard*, No. 10–cv–02404–WJM–CBS, 2013 WL 589174, at *14 (D. Colo. Feb. 14, 2013) ("[R]egarding a prison official's deference to a medical professional's decision not to assess a prisoner, the Court must defer to Tenth Circuit precedent establishing the more general proposition that reliance upon the judgment of a medical professional is permissible."). Accordingly, this court respectfully **RECOMMENDS** that Claim Four be **CONSTRUED** as an Eighth Amendment deliberate indifference claim and be **DISMISSED without prejudice** in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

E.    **Claim Five**

This court construes Claim Five to include four categories of complaints: (1) the denial of

Mr. Mostafa's medical diet[15] against Officers Loewe and Norjano in their individual and official

capacities, [#43-1 at 31 ¶ 11], and Warden True, Defendant Guy, Defendant Follows, Dr. Sterett,

and Defendant Kunduf in their respective official capacities, [*id.* at 31 ¶ 10]; (2) denial of adequate

medical care, (3) denial of dental care; and (4) "medical malpractices . . . causing friction and

misconducts against the plaintiff by various ADX departments/or staff," [*id.* at 28].

1.    **Denial of Medical Diet**

Plaintiff contends that from 2005 until his admission to ADX in 2015, he was able to

control some of his medical conditions without medication through a specific diet.

[*Id.* at 28 ¶¶ 1-2].  Upon his entry at ADX, he has been denied this medical diet, despite repeated

and renewed requests for the same, *see* [*id.* at 29 ¶ 4], leading to deteriorating health and—since

2017—dependence on pharmaceutical medications to treat his symptoms, [*id.* at 28 ¶ 3].  His blood

pressure is now very high, his skin cracked and bleeding, and he is plagued with constipation,

blood sugar fluctuations, and excessive sweating. [*Id.* at 29 ¶ 3].

Notes on Plaintiff's cell door by the ADX Medical and Kitchen Departments state that

Plaintiff "need[s] help with food and all food provided should be taken out of plastics and placed

on another container for safe easy eat[ing]." [*Id.* at 59 ¶ 2].  Despite representations to the Regional

Office and a "note on the diet," Defendant Kunduf has failed to provide food in a manner that

Plaintiff can safely or hygienically access or consume. [*Id.* at 30 ¶¶ 7-8].  Plaintiff's requests for

assistance from Warden True, Defendant Kunduf, and Defendant Follows have gone unanswered,

---

[15] Plaintiff appears to refer to his "medical diet" both in terms of a "therapeutic diet" and the presentation of his food. *See generally* [#43-1 at 28-31].

Case No. 1:20-cv-00694-PAB-MDB   Document 71-1   filed 03/18/21   USDC Colorado   pg 38
of 50
Case 1:20-cv-00694-PAB-NYW   Document 60   Filed 01/30/21   USDC Colorado   Page 27 of 36

his food fails to adhere to his medical diet, and its presentation fails to accommodate for his disability. [*Id.*]

Defendant Officers Loewe and Norjano "continuously persist to deprive [Plaintiff] of evening meals" by providing meals on a hot tray and still wrapped in plastic. [*Id.* at 59 ¶ 3]. On one such occasion on September 20, 2020, upon discovering that his meal did not comply with the note on his cell door, Plaintiff called the two officers and they "ignored [him]" so he "pushed the duress button [and] told controller about the dangerous food and officers need to comply with the Medical notes on [his] door." [*Id.* at 59 ¶¶ 4-5]. The controller "did not reply and cut [Plaintiff] off." [*Id.* at ¶ 5]. Plaintiff "remind[ed] them to comply with the notes" on his cell, showed them his tray, and "reminded them again that they will make [him] lose [his] meal if" compliance with the note on his cell was "not done or not done timely." [*Id.* at 59 ¶ 6].

***Therapeutic Diet.*** To the extent Plaintiff claims that the denial of a specific medical diet he received prior to admission to ADX constitutes deliberate indifference to his medical needs, this court finds the facts alleged insufficient to form an arguable basis for his claim. Here, Plaintiff alleges that he has been denied his requested "therapeutic diet," which since "entry to ADX Oct 2015 . . . has not ever been approved," despite "direct talks with medicals," and alleges that his "Main Diet" has been "denied, Because of malpractices of O.T.s," [#43-1 at 29 ¶¶ 4, 5]. As discussed in this court's analysis of Claim Four, *supra*, neither medical malpractice nor Mr. Mostafa's disagreement with medical decisions give rise to a constitutional claim under the Eighth Amendment. "Defendants' refusal to provide a particular course of treatment sought by the plaintiff does not constitute deliberate indifference." *Womack v. Foster*, No. 13-cv-1866-WJM-MJW, 2014 WL 3543706, at *7 (D. Colo. July 16, 2014) (citing *Perkins v. Kansas Dep't of Corrs.*, 163 F.3d 803, 811 (10th Cir. 1999) ("A prisoner who merely disagrees with a diagnosis or

27

prescribed course of treatment does not state a constitutional violation.")); *Sherman v. Klenke*, 653 F. App'x 580, 587 (10th Cir. 2016) (a medical personnel's negligence in proscribing medical treatment, even if constituting medical malpractice, "does not give rise to a constitutional violation"). *See also Smith v. Tharp*, 97 F. App'x 815, 818 (10th Cir. 2004) (concluding that Mr. Smith failed to plead a claim for deliberate indifference, because the defendant-doctors' failure to proscribe physical therapy, despite a specialists instructions to do so, was, at best, "a disagreement with medical personnel as to the care he [was] receiving"). Indeed, Plaintiff's requested relief is an order requiring that he be provided his "proper diet: salad, tomatoes." [#43-1 at 39 ¶ 6]. This court concludes that Plaintiff has failed to allege facts to support an arguable claim to such relief.[16]

*Presentation of Food.* However, Plaintiff's claims related to the presentation of his meals allege facts arguably sufficient to support the inference that prison officials, including Officers Loewe and Norjano, were deliberately indifferent to a substantial risk of harm to Plaintiff. Allegations that Officers Loewe and Norjano repeatedly provided a visibly disabled inmate food wrapped in layers of plastic and on a "fragmented, disintegrated hot food tray," [#43-1 at 57], despite notes on his cell door by the ADX Medical and Kitchen Departments stating that Plaintiff "need[s] help with food and all food provided should be taken out of plastics and placed on another container for safe easy eat[ing]," [*id.* at 59 ¶ 2], and that this presentation has led to an increased risk of the potentially deadly disease of COVID-19 [*id.* at 31 ¶ 9], sufficiently state potential Eighth Amendment deliberate indifference claims against the Officers.

---

[16] There are no facts alleged to suggest that either Officer Loewe or Norjano personally participated in the denial of Plaintiff's requested therapeutic diet, as required to establish *Bivens* liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[E]ach Government official . . . is only liable for his or her own misconduct."); *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003) ("[D]irect, personal participation [is] required to establish *Bivens* liability."), *abrog. on other grounds by Jones v. Bock*, 546 U.S. 199 (2007).

Plaintiff further alleges that the Officers' behavior was supported by "warden approval," suggesting, at least implicitly, that the alleged constitutional violation is likely to continue. But any such claims must be limited to official capacity claims, as there is no request for monetary relief for retrospective harm against Officers Loewe and Gorjano and this court declines to redraft Claim Five to circumvent dismissal. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"). Thus, the court respectfully **RECOMMENDS** that this portion of Claim Five be **CONSTRUED** as an Eighth Amendment deliberate indifference claim limited to allegations of an unsafe presentation of his food, as asserted against Officers Loewe and Gorjano and Warden True in their official capacities, and **DISMISSED** in all other respects pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 2.      Denial of Medical Care

Claim Five also includes allegations that deprivation of medical care is a "relentless ADX Med Practice against the Plaintiff" and examples of prison officials' failure to wrap a bandage over Plaintiff's bleeding wounds, denial of toenail trimmings at six-week intervals, and two examples of "Medical Malpractices . . . still causing other ADX staff to do their own malpractices." [#43-1 at 32 ¶ 12].[17] Mr. Mostafa also alleges "Dental Care Deprivation and Malpractices" in this portion of his claim. [*Id.* at 34 ¶ 18].

---

[17] To the extent Plaintiff also asserts a claim for denial of medical care against Officers Loewe and Norjano in their individual and official capacities for punishing and threatening Plaintiff on April 12, April 24, May 24, and September 20, 2020, for using his "duress button" in response to their refusals to comply with the notes on his cell door [#43-1 at 32 ¶ 14], and against Warden True in his official capacity for approving Officers Loewe and Norjano's threats and behavior [*id.* at 32 ¶ 15] and telling Plaintiff "not to use duress help button even when meals are not provided according to his diet," [*id.* at 44 ¶ 12], this court can discern no legal basis for relief from the alleged conduct.

*Refusal to Wrap Bandages.* During a cell rotation on October 20, 2018, Plaintiff's stumps were injured and bleeding badly due to his attempts to pack, unpack, and clean during the transition. [*Id.* at 32 ¶ 13]. Nurse William was called to stop the bleeding but refused to secure a bandage over Plaintiff's wounds, instead bullying Plaintiff and leaving him bleeding. [*Id.*]. Based on these allegations, the court concludes that Plaintiff's potential deliberate indifference claim regarding Nurse William's refusal to wrap a bandage over Plaintiff's badly bleeding wound is not subject to summary dismissal.

*Denial of Toenail Trimmings.* He further alleges that he has been repeatedly denied regular toenail trimmings by a podiatrist to prevent injuries, pain, bleeding, infection, or more amputation related to his diabetes and disability. [*Id.* at 33 ¶ 15]. ADX has refused to provide more than a handful of trimmings (at least insofar as the trimmings are conducted by a podiatrist), and those that are provided are marked by prolonged intervals of time between trimmings. [*Id.* at 33 ¶ 16]. "[A]s retaliation for [an unspecified] food strike," [*id.*],[18] Plaintiff did not receive any trimmings after March 2019 until January 13, 2020, when Nurse Hudelston used a "crude tool in his pocket" and "caused pain and bleedings." [*Id.*]. At times, Defendant PA Osage conducted trimmings for Plaintiff, including on November 15, 2015 and November 30, 2016, until 2018 when an "even . . . lower rank Nurse Hudelston" assumed the task. [*Id.* at 33 ¶ 17].

Relative to Plaintiff's toenail trimmings allegations, Nurse Hudelston is sued in her official capacity and Defendant Follows and Dr. Sterett in their individual and official capacities, respectively, "for refusing to facilitate the trimming timely and safely." [*Id.* at 33 ¶ 16]. And Mr.

---

[18] The only "food strike" specifically identified in the Second Amended Complaint, insofar as this court can discern, is Mr. Mostafa's hunger strike in October 2019. *See* [#43-1 at 18 (alleging that Plaintiff protested his conditions of confinement via hunger strike on October 19, 2019 and noting that this strike was "Plaintiff first ever strike since put in jail in 2004")].

Mostafa sues PA Osage in his individual and official capacities for "the relentless noncompliance, pain, bleedings, and bull[ying]," Mr. Mostafa has endured. [*Id.* at 34 ¶ 17].

Based upon the allegations in the Second Amended Complaint, Plaintiff fails to allege that Nurse Hudelston, Defendant Follows, Dr. Sterett, or PA Osage's failure to provide satisfactory toe trimmings to Plaintiff every six weeks was intentional or reckless. *See Boyett v. Cty. of Washington*, 282 F. App'x 667, 673 (10th Cir. 2008) ("[N]o constitutional violation occurs unless medical care is intentionally or recklessly denied."). Plaintiff's allegations that "diabetic/toenail trimmings should be done regularly and by a podiatrist," and that he was provided a podiatrist every six weeks until he was admitted to ADX, [#43-1 at 33 ¶ 15] do not suggest that the medical prison officials at ADX intentionally or recklessly denied him medical care by providing trimmings by non-podiatrist medical professionals at intervals longer than six weeks. *See Smith*, 97 F. App'x at 818 (concluding that Mr. Smith failed to plead a claim for deliberate indifference, because the defendant-doctors' failure to proscribe physical therapy, despite a specialists instructions to do so, was, at best, "a disagreement with medical personnel as to the care he [was] receiving").

### 3.    Inadequate Dental Care

Mr. Mostafa also claims that he has been provided inadequate dental care. He asserts his dental care claims against Warden True in his individual and official capacities for "the ADX policy of deprivation of relief to plaintiff and his general, inaccurate, un-useful reply" to Plaintiff's administrative grievances and the "torturous non-stop teeth pain and damage for years and on," [*id.* at 35 ¶ 19]; Defendant Follows in her individual and official capacities for "dental care indifference and refusing to provide pouch opener to mitigate the rate and magnitude of teeth and

gum abrasion," [*id.*]; and Defendant Guy in his official capacity only "for wrong legal advice to warden" and ignoring laws related to torture, malpractice, and deliberate indifference, [*id.*].

Plaintiff must allege facts showing a serious dental need. The Tenth Circuit has recognized that "considerable pain" may qualify as a substantial harm under the Eighth Amendment. *Mata*, 427 F.3d at 751. And "'a cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to lack of treatment, or the inability to engage in normal activities.'" *Conley v. McKune*, 529 F. App'x 914, 919 (10th Cir. 2013) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)) (brackets omitted).

Here, Mr. Mostafa alleges that he is fully dependent on his teeth to open commissary and food packages, and even to position items to facilitate use of his stumps. [*Id.* at 34 ¶ 18]. He has not been provided an electric toothbrush; floss; any extra dental cleaning time; dental implants, repairs, or replacement of broken teeth; or pain medication to alleviate pain caused by the foregoing deprivations. [*Id.*].

Assuming that Mr. Mostafa has met the objective component of his Eighth Amendment claim for inadequate dental care, he has failed to allege facts sufficient to establish the subjective component of his claim. Under the subjective component, Mr. Mostafa "must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009). This court cannot discern any facts from the face of the Second Amended Complaint from which the inference could be drawn that any of the Defendants knew or should have known of Plaintiff's

serious dental needs.[19]   As such, Plaintiff's allegations fail to trigger Eighth Amendment protections.

### 4.   "Medical Malpractices"

Mr. Mostafa asserts the third "portion" of his claim, *see* [#43-1 at 31 ¶ 10 (identifying "Defendants responsible for the A portion of this claim"), 32 ¶ 12 (identifying part "B" of Claim Five), 35 ¶ 20 (identifying paragraphs 20-22 and subparagraphs as part "C" of Claim Five)], against Defendant Tuttoilmundo in her official capacity for "confiscating/denying cloths, legal papers, religious books, items as retaliation for food strike," and "not considering medical need for cloth and legal need for paper work, . . . mismanaging the unit recreation, . . . and causing friction between inmates and resulting that plaintiff most of the time goes to Rec once a week," [*id.* at 36 ¶¶ 22(i)-(ii)]; and Officer Hensen in his official capacity for "discriminating denial of haircut to plaintiff in [September] 2019 . . . [and] retaliat[ing] for the complaint by peeling off the paint to expose plaintiff toilet area," [*id.* at ¶ 22(iv)-(v)].

Although it is unclear to this court what legal basis Mr. Mostafa intends to invoke related to the allegations in Paragraphs 20 through 22, to the extent he asserts an Eighth Amendment deliberate indifference claim for the "Medical Malpractices . . . still causing other ADX staff to do their own malpractices," [*id.* at 35 ¶ 20], this claim fails for substantially the same reasons his inadequate dental care claim fails. *See supra.* Indeed, Mr. Mostafa explains that unidentified staff members "become abusive and in retaliatory mood and malpractice whatever in their capacity," because when Plaintiff asks staff members "to comply or ask other departments to comply with their own records and paperwork, . . . staff feels as if the Plaintiff is trying to get what he is not

---

[19] Indeed, Mr. Mostafa characterizes Defendants' alleged denials of dental tools and care as "Dental Care Deprivation and Malpractices," [*id.* at 34 ¶ 18], and "persistent malpractices" [*id.* at 35 ¶ 19].

Case No. 1:20-cv-00694-PAB-MDB   Document 71-1   filed 03/18/21   USDC Colorado   pg 45
of 50
Case 1:20-cv-00694-PAB-NYW   Document 60   Filed 01/30/21   USDC Colorado   Page 34 of 36

allowed and/or to make their work harder." [*Id.*]. This falls far short of the pleading requirements of Rule 8 and Plaintiff fails to state an arguable claim for Eighth Amendment deliberate indifference premised on these vague, conclusory, unsupported allegations about "medical malpractices."

In sum, this court respectfully **RECOMMENDS** that Claim Five be **CONSTRUED** as limited to an Eighth Amendment deliberate indifference claim against (1) Nurse William for refusing to bandage his badly bleeding wound, not subject to summary dismissal; and (2) Officers Loewe and Gorjano and Warden True in their official capacities limited to allegations of an unsafe presentation of his food. This court further **RECOMMENDS** that the remainder of Claim Five be **DISMISSED without prejudice** for Plaintiff's failure to comply with Rule 8 of the Federal Rules of Civil Procedure and/or 28 U.S.C. § 1915(e)(2)(B).

CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     Plaintiff's Motion to Amend [#43] is **CONSTRUED** as a stipulation pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local Rule 15.1(a); and

(2)     The Clerk of the Court is **DIRECTED** to accept for filing the tendered Second Amended Prisoner Complaint [#43-1].

Additionally, this court respectfully **RECOMMENDS** that:

(1)     Defendants' Motion for More Definite Statement [#25] be **DENIED as moot;**

(2)     The following claims asserted by Plaintiff Mostafa Kamel Mostafa in his Second Amended Prisoner Complaint [#43-1] be **CONSTRUED**, and not subject to summary dismissal:

34

Case No. 1:20-cv-00694-PAB-MDB    Document 71-1    filed 03/18/21    USDC Colorado    pg 46
of 50
Case 1:20-cv-00694-PAB-NYW    Document 60    Filed 01/30/21    USDC Colorado    Page 35 of 36

(a) First Amendment familial association and free exercise claims asserted in Claim One against Defendants Barr, Director Wray, Director Carvajal, Warden True, and the Unknown SAMs Operatives in their official capacities;

(b) Eighth Amendment conditions of confinement claims asserted in Claim Two against Defendants Barr, Director Wray, Director Carvajal, Warden True, Defendant MacMillan, and Defendant Follows in their official capacities;

(c) Eighth Amendment excessive force claims asserted in Claim Three against Defendants Lt. Garduno, Officer Parry, and Officer Averit in their individual capacities;

(d) Eighth Amendment deliberate indifference claims based on presentation of Plaintiff's food as asserted in Claim Five against Defendants Officer Loewe, Officer Gorjano, and Warden True in their official capacities; and

(e) an Eighth Amendment deliberate indifference claim based on refusal to dress wounds as asserted in Claim Five against Nurse William in his official capacity; and

(3)    To the extent that any claims remain after the presiding judge, the Honorable Philip A. Brimmer, rules on this Recommendation, the United States Marshals be **DIRECTED to SERVE** Defendants Barr, Director Wray, Director Carvajal, Warden True, the Unknown SAMs Operatives, Defendant MacMillan, Defendant Follows,

Lt. Garduno, Officer Parry, Officer Averit, Officer Loewe, Officer Gorjano, and

Nurse William.[20]

**IT IS FURTHER ORDERED** that a copy of this Order and Recommendation, marked as

legal mail, be sent to the following:

> Mostafa Kamel Mostafa #67495-054
> FLORENCE ADMAX
> U.S. PENITENTIARY
> Inmate Mail/Parcels
> PO BOX 8500
> FLORENCE, CO 81226

DATED: January 30, 2021                BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[20] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).

# Attachment C
# Declaration of R. Turner

*Mostafa v. Garland, et al.*,
No. 20-cv-00694-PAB-NYW (D. Colo.)



OFFICE OF THE CLERK
**UNITED STATES DISTRICT COURT**
ALFRED A. ARRAJ COURTHOUSE
901-19TH ST., ROOM A105
DENVER, CO 80294-3589

OFFICIAL BUSINESS

CM- 21- 67495054. 0301- MI- 005

DENVER CO 802
SPECIAL MAIL
26 FEB 2021 PM 9 L
OPEN ONLY IN THE
PRESENCE OF THE
INMATE

neopost
02/26/2021
**US POSTAGE** $00.51⁰

ZIP 80294
041L11245087

Mostafa Kamel Mostafa
#67495-054
FLORENCE ADMAX
U.S. PENITENTIARY
Inmate Mail/Parcels
PO BOX 8500
FLORENCE. CO 81226

H-05
3/1/21

81226-850000

## Complaints and Other Initiating Documents

1:20-cv-00694-PAB-NYW Mostafa v. Barr et al

ALLMTN,JD4

### U.S. District Court - District of Colorado

#### District of Colorado

#### Notice of Electronic Filing

The following transaction was entered on 2/26/2021 at 11:53 AM MST and filed on 2/26/2021
| | |
|---|---|
| **Case Name:** | Mostafa v. Barr et al |
| **Case Number:** | 1:20-cv-00694-PAB-NYW |
| **Filer:** | Mostafa Kamel Mostafa |
| **Document Number:** | 61 |

**Docket Text:**
**AMENDED PRISONER COMPLAINT against Armejo, Averet, William Barr, Carvajal, Follows,
Garduno, Guy, Hensen, Hudelston, Kunduf, Loewe, MaccMillan, Norjano, Osage, Parry, Sterett, B.
True, Tutoilmundo, William, Christopher Wray, filed by Mostafa Kamel Mostafa.(agarc, )**


**1:20-cv-00694-PAB-NYW Notice has been electronically mailed to:**

Susan Begesse Prose    susan.prose@usdoj.gov, , CaseView.ECF@usdoj.gov, bwillms@bop.gov, iguy@bop.gov,
joann.stark@usdoj.gov, usaco.ecfcivil@usdoj.gov, violet.konopka@usdoj.gov

Jane Elizabeth Bobet (Terminated)    jane.bobet@usdoj.gov, CaseView.ECF@usdoj.gov,
Haley.Hodgkins@usdoj.gov, usaco.ecfcivil@usdoj.gov

**1:20-cv-00694-PAB-NYW Notice has been mailed by the filer to:**

Mostafa Kamel Mostafa
#67495-054
FLORENCE ADMAX
U.S. PENITENTIARY
Inmate Mail/Parcels
PO BOX 8500
FLORENCE, CO 81226

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1071006659 [Date=2/26/2021] [FileNumber=7996058-0
] [2806008d95f67f1bf2ff6ec129bd68071d9751249fa774b700185d2841a315df7ad
c5b06b3fcdba5da7ffe7f4763be8318b7162b3c0e7a24e638b689a7925548]]