# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00694-PAB-NYW

MOSTAFA KAMEL MOSTAFA,

     Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
UNKNOWN SAMs OPERATIVES, in their official capacities,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her official capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
LOWE, ADX officer, in his official capacity,
NORJANO, ADX Officer, in his official capacity, and
WILLIAM, ADX Nurse, in his official capacity,

     Defendants.

---

## RESPONSE IN OPPOSITION TO MOTION FOR RECONSIDERATION (ECF No. 98)

Mostafa fails to identify any manifest error of law or fact in the Court's order adopting an exhaustive Recommendation that thoroughly parsed the prolix allegations in Mostafa's proposed Second Amended Complaint and carefully defined the claims that were sufficiently pled to survive screening. ECF Nos. 60 (Rec.), 62 (Order). Instead, Mostafa's motion for reconsideration, ECF No. 98, improperly attempts to rewrite the complaint yet again to include claims neither the Court nor the government had a prior opportunity to assess—and which should not proceed in any event. The Court should deny his meritless motion.

## BACKGROUND

On November 2, 2020, Mostafa submitted a complaint that "span[ned] 70 pages and name[d] at least twenty-two" Department of Justice officials as Defendants. Rec. at 8-9 (evaluating proposed Second Amended Complaint). Although Mostafa's complaint was "prolix and imprecise," *id.* at 10, the Magistrate Judge reviewed it pursuant to 28 U.S.C. § 1915(e)(2)(B),[1] *id.* at 7-8, and recommended that it be construed to include multiple causes of action. *Id.* at 34-35 (summarizing claims not subject to summary dismissal). No party objected, and the Court adopted the Recommendation on February 26, 2021. ECF No. 62.

The Court set several deadlines for Mostafa to seek reconsideration of that order, the latest being May 21, 2021. ECF No. 88 at 1-2 (noting that further extensions would be granted only under "extraordinary circumstances"). Mostafa did not comply and finally submitted the pending motion on June 3, 2021.[2] Meantime, Defendants moved to dismiss all remaining claims and for summary judgment on the unexhausted claims. ECF Nos. 96, 102.

The chief purpose of Mostafa's rambling motion is to have the Court "apply an extraordinary approach of liberally construed outcome," Mot. at 18,[3] and construe his complaint to include claims he did not plead—in particular, claims under the Americans with Disabilities Act ("ADA") and its "anti-retaliatory" provision. *Id.* at 4, 9, 19-24, 26-28, 30-32, 34, 36-38 & *passim* (arguing that ADA claims should be made part of the complaint). But Mostafa has no valid claim under that statute, and there is no manifest error in the decision not to include such claims among

---

[1] That statute mandates that a court "dismiss the case at any time if the court determines that … the action … is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

[2] In the interest of efficiency, Defendants did not move to strike the late-filed motion.

[3] Mostafa's spelling errors are corrected here.

the generous number of claims the Court has allowed him to pursue.

**ARGUMENT**

A motion to reconsider "is an extreme remedy to be granted in rare circumstances." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995). "A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). Mostafa falls far short of meeting the rigorous standards required to show entitlement to this extreme remedy.

Mostafa has presented no "facts or law of a strongly convincing nature" that would demonstrate the Court made a "manifest error of law or fact" in its exhaustive analysis of the claims in his Second Amended Complaint. *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000), *aff'd*, 16 F. App'x 959 (10th Cir. 2001). Neither has he shown "(1) an intervening change in the law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (describing "[g]rounds warranting a motion to reconsider"). His failure to meet these standards is discussed below in connection with each claim he raised, or did not raise.

I.    **There is no manifest error in the Court's not countenancing unpled claims.**

A.    **Mostafa's desire to add an ADA claim is not grounds for reconsideration.**

The primary thrust of Mostafa's motion is to persuade the Court to construe his complaint to include claims under the ADA. Mot. *passim* (myriad references to ADA/retaliation under the ADA). There is no legal support for this position.

3

In the Recommendation, the United States Magistrate Judge expressly refused to construct such a claim for Mostafa, where he did not raise such a claim in his voluminous complaint:

> The court construes Mr. Mostafa's allegations about his disability as reasons why he is not properly designated at ADX, instead of a separate legal claim. Indeed, though at times he characterizes the purported actions as "discrimination," [#43-1 at 15 ¶ 7], Mr. Mostafa does not identify any other legal basis for his allegations other than references to an unidentified "Disability Act" at the beginning of the Second Amended Complaint. *See* [*id.* at 4]. Without more, this court declines to fashion causes of action on Mr. Mostafa's behalf. *See Drake v. Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (stating that the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

Rec. at 16 n.9.

Mostafa identifies no manifest legal error in the Court's refusal to construct an ADA claim for him, and there is none. Indeed, Mostafa cannot bring an ADA claim because the federal government is excluded from coverage under the ADA. *See, e.g.*, *Brown v. Cantrell*, No. 11-cv-00200-PAB-MEH, 2012 WL 4050300, at *1 (D. Colo. Sept. 14, 2012); *Phillips v. Tiona*, 508 F. App'x 737, 752 (10th Cir. 2013) (holding ADA not applicable to federal prisoners for claims against the federal government); *United States v. Wishart*, 146 Fed. App'x 171, 173 (9th Cir. 2005) ("By definition, the ADA does not apply to the federal government."); *Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir. 2000) ("Title II of the ADA is not applicable to the federal government.").[4] In sum, all of Mostafa's efforts to convert his vague "Disability Act" claim into a claim for damages under the ADA are for naught because the federal government is excluded from the coverage of the ADA. *See* Mot. at 19 (asserting that "anti-retaliatory provision of ADA allows

---

[4] Title II is the subchapter that applies to governmental entities. But the federal government is excluded because the definition section, 42 U.S.C. § 12131(1), includes coverage only to state and local governments, and not the federal government, in defining a "public entity." Title I applies to employees, but Mostafa is not a federal employee, and, in any event, the federal government is again excluded from coverage. 42 U.S.C. § 12111(5)(B)(i).

4

compensation also against Defendants"); *see also id.* at 4, 19-22, 24, 32 & *passim*.

Nor is there any basis for the Court to construct a claim for Mostafa under the Rehabilitation Act of 1973. At the outset, Mostafa has never claimed to be bringing such a claim, nor would such a claim be viable.

*First*, Section 504 of the Rehabilitation Act does not contain any express cause of action for prisoners to bring claims against the federal government, nor is there a basis to imply a cause of action under the statute. *See, e.g.*, *Mathis v. GEO Grp., Inc.*, No. 2:08-CT-21-D, 2009 WL 10736631, at *7 (E.D.N.C. Nov. 9, 2009); *see also generally Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855-56 (2017) (discussing the limitations on implying causes of action). Indeed, as the Tenth Circuit has long held, Section 504 of the Rehabilitation Act "does not give plaintiff any substantive rights since the Federal Bureau of Prisons does not fit the definition of 'programs or activities' governed by that section." *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).

*Second*, in any event, there is no applicable waiver of sovereign immunity under the Rehabilitation Act.[5] *See Lane v. Pena*, 518 U.S. 187, 193 (1996). There is likewise no cause of action that may be brought against federal employees under the Rehabilitation Act. Section 504 of the Rehabilitation Act does not provide for individual liability. *Moore v. Cooksey*, 242 F.3d 389, 2000 WL 1838274, at *1 (10th Cir. 2000) (unpublished); *Montez v. Romer*, 32 F. Supp. 2d 1235, 1240 (D. Colo. 1999).

*Third*, the remedies that Congress created with respect to the federal government are largely administrative. 29 U.S.C. § 794(a) (providing for each agency to promulgate regulations to

---

[5] The relevant waiver of sovereign immunity in 29 U.S.C. § 794a(a)(2) applies only to the funding activities of federal providers of financial assistance. *Lane*, 518 U.S. at 195. The BOP is certainly not acting as a provider of financial assistance when it runs prisons.

5

carry out Section 504). Accordingly, the Department of Justice created regulations for individuals who believe that they have been discriminated against by the agency on the basis of disability. *See* 28 C.F.R. § 39.170. At the end of the process, if still aggrieved, an individual may be able to obtain judicial review of the agency action under the Administrative Procedure Act, which contains the only potential waiver of the statute of limitations.[6] 5 U.S.C. §§ 702, 704; *Cousins v. Sec'y of the U.S. Dep't of Transportation*, 880 F.2d 603, 605-06 (1st Cir. 1989) (en banc) (Breyer, J.) (claim properly brought as a challenge to a final agency action under the APA, not as an implied action under the Rehabilitation Act). Here, there is no indication that Mostafa has filed a claim under the Department of Justice regulations, let alone that he is seeking APA review of such action.[7]

*Fourth*, the vague assertions of "Disability Claim" do not establish the specific elements of a Section 504 Rehabilitation Act claim.

At bottom, the Court made no manifest error of law or fact in declining to construe Mostafa's complaint to include an ADA claim that does not exist. What's more, to countenance such a claim—and then to go one step further by converting it to one arising under the Rehabilitation Act, with all of its limitations described above—would "introduce more confusion into his already muddy pleadings." *See Seina v. Center-Honolulu*, No. 16-00051, 2016 WL

---

[6] The waiver is strictly limited to those "aggrieved by agency action" and seeking non-money damages. 5 U.S.C. § 702. Agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

[7] In fact, it does not appear that Mostafa has filed any such complaint, which would make any unstated claim subject to immediate summary judgment for failure to exhaust all available remedies under the Prison Litigation Reform Act. *Brown*, 2012 WL 4050300, at *3 ("The Court concludes that the [Prison Litigation Reform Act's] requirement that plaintiff exhaust all 'available' remedies requires federal inmates alleging disability discrimination to take advantage of § 39.170, which is 'available.'").

6775633, at *3 (D. Haw. Nov. 15, 2016). As the Court correctly noted, a court is not to construct legal arguments and theories and fashion causes of action that do not appear in the complaint. These are not the "rare circumstances" that warrant the "extreme remedy" of reconsideration. *Brumark*, 57 F.3d at 944. Mostafa has shown no justification to add to his complaint an unpled, non-viable ADA claim.

### B.    Mostafa's desire to add an equal protection claim is not grounds for reconsideration.

Like his strategy with the unpled ADA claim, Mostafa makes multiple references to alleged "equal protection" violations. Mot. at 4, 9, 15, 17. Such a claim is also not found in his complaint, and any regret he may have about not raising that claim demonstrates no error in the Court's analysis justifying reconsideration. Nor is it manifestly unjust for the Court to decline to write such a claim into Mostafa's complaint now—particularly where his allegations do not plausibly suggest the existence of a specific inmate similar to him "in *every relevant respect*" who has been treated differently. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (emphasis added).[8]

## II.    Mostafa points to no manifest error in the Court's construction of any claim.

Mostafa's baseline demand is for the Court to restore every claim in his complaint against every Defendant he named. Mot. at 5 (Mostafa "moving for restoring the connected integrated claims and reinstating Defendants to prevent further paper work and/or future confusion or dismissals"). But his repetitive, vague assertions, adorned with self-serving hyperbole about alleged "danger," *see id.* at 7 & *passim*, do not come close to meeting his burden to show any

---

[8] Mostafa makes one reference to an alleged "violation" of the Administrative Procedure Act, Mot. at 10, another claim he did not plead and that is not grounds for the Court to reconsider its order defining the operative claims.

error—let alone a manifest error—in any specific decision concerning any claim.

**A.      Mostafa identifies no error concerning the Court's construction of the SAMs claims (Claim One).**

The Court allowed to go forward the plethora of official-capacity First Amendment claims challenging Mostafa's Special Administrative Measures ("SAMs")—claims encompassing a challenge to the SAMs overall and to many specific provisions within the SAMs. *See* Rec. at 11-13, 35. The government carefully followed the Court's order and addressed each of Mostafa's many subclaims in its motion to dismiss this claim. ECF No. 96 at 5-17.

It is unclear where Mostafa's disagreement about the Court's generous construction of Claim One lies. He claims to have no "meaningful" contact with family members, Mot. at 17, but that is among the claims he is allowed to litigate. He contends that SAMs violations are so "endemic" that they "do not really need specifics"—he points to the access-to-imam and religious cleansing issues, *id.* at 20—but those subclaims, too, have been approved for inclusion in his complaint. He points to no SAMs-related claim he tried to bring that the Court rejected. In short, he identifies no errors that warrant reconsideration of the Court's analysis of Claim One.

**B.      Mostafa identifies no error concerning the Court's construction of his conditions-of-confinement claim (Claim Two).**

Here, again, the Court generously construed Mostafa's allegations and defined this claim as an official-capacity Eighth Amendment challenge to his conditions of confinement at ADX. Rec. at 14-17, 35. All of his allegations concerning the government's allegedly inadequate response to his disability are encompassed in this claim—including his complaints about his "fittings" and the alleged inadequacies of his cell at ADX. *Id.* at 14-15, 17.

Mostafa identifies no error whatsoever in the Court's analysis. Instead, he now seems to

demand that the Court proclaim this claim as brought under the ADA so that he can get "compensatory/damages" against two ADX officials. Mot. at 22 (asserting that the claim is brought against Fellows and McMullen "in both capacities subject to *Bivens*[9] and/or the above ADA anti-retaliative provisions"). There is no error in the Court not inventing a claim for Mostafa that he did not plead and that is not tenable. *Supra* § I.A. Nor is there any manifest injustice associated with the Court's well-reasoned construction that allows him to litigate about alleged deficiencies in conditions related to his disability.

Mostafa has failed to show any "facts or law of a strongly convincing nature" that would justify the Court implementing the "extreme remedy" of reconsideration. *Brumark*, 57 F.3d at 944; *Nat'l Bus. Brokers*, 115 F. Supp. 2d at 1256. There is no justification for the Court to reconsider its decision concerning Claim Two.

**C.      Mostafa identifies no error concerning the Court's construction of an alleged assault by ADX staff members (Claim Three).**

The Court did not summarily dismiss Mostafa's *Bivens* claim based on an alleged assault by three ADX officers. Rec. at 20. It did, however, decline to countenance Mostafa's related official-capacity claims against the three officers and other ADX officials. *Id.* at 19-21.[10]

The Court correctly rejected the official-capacity claims. The only relief Mostafa sought for this claim was "punishment" and "compensation from the nonofficially sued defendants[.]" *Id.* at 19 (emphasis added); *see also* ECF No. 61 at 39 ¶ 4. And as the Court properly concluded, even if

---

[9] In the claim as pleaded, Mostafa explicitly stated that Fellows and McMullen were sued in their official capacities. ECF No. 61 ¶ 15.

[10] The other officials—Huddleston, Sterett, Armijo, Guy, and True—were sued in their official capacities only. ECF No. 61 at 21. Though not entirely clear, it appears that Mostafa now demands that be allowed to bring claims against Dr. Sterett in both his official and individual capacities. Mot. at 24. The Court should reject Mostafa's ploy to pursue a new *Bivens* claim.

Mostafa had requested prospective injunctive relief against any Defendant, he could not pursue that remedy because he did not allege that he faced "a good chance of being likewise injured in the future." Rec. at 19 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1306 (10th Cir. 1998) (litigant cannot maintain an injunctive action absent this showing)). Mostafa's claim was "focused solely on past conduct of the various Defendants and fail[s] to support an inference that this conduct is consistent with policy or custom, or that there is any likelihood that the same conduct is likely to recur in the future." *Id.* at 19-20 (citing *Farmer v. Brennan*, 511 U.S. 825, 845-46 (1996)). Furthermore, as the Court rightly observed, any official-capacity claim based on allegations about speculative, conjectural future conduct would still fail for lack of standing. *Id.* at 20 n.13 (citing *Redmond v. Crowther*, 882 F.3d 927 (10th Cir. 2018)); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (to confer standing for prospective relief, alleged injury must be "concrete, particularized, and actual or imminent," meaning "*certainly impending*") (emphasis in original).

The Court correctly concluded there was no scenario pursuant to which Mostafa could bring a viable official-capacity injunctive-relief claim based on the alleged assault. Mostafa identifies no error in this analysis, but merely reiterates the allegations—focused solely on the alleged assault and the officials' response to that incident—that in no way demonstrate a likelihood of *future* injury. *Compare* Rec. at 19 (describing allegations concerning Huddleston, Sterett, Armijo, Guy, and True), *with* Mot. at 23-26 (reiterating these allegations). And he again wrongly urges the Court to apply the "anti-retaliatory ADA provision" here—presumably to open the door to his obtaining "compensation/damages." *Id.* at 24.

There is no legal basis for the Court to take that action, nor has Mostafa pointed to any facts or law that would repair the defects (including jurisdictional defects) in his official-capacity

claims. He has failed to show that the Court should reconsider its decision to summarily dismiss those claims.

> **D.     Mostafa identifies no error in the Court's dismissal of a medical care claim based on BOP officials' following the recommendation of an occupational therapist (Claim Four).**

Claim Four is premised on Mostafa's disagreement with BOP officials' decision to follow the advice of an occupational therapist who evaluated Mostafa in April 2016 and concluded that he did "not need anything from the list of fitting and items [Mostafa] requested[.]" Rec. at 21-22. That evaluation, Mostafa contends, was characterized by "malpractices." *Id.* at 22.

The Court correctly construed Claim Four as a deliberate indifference claim alleging failure to provide Mostafa medical care, *id.* at 23, and concluded that the claim reduced to Mostafa's mere "disagreement with the course of treatment or self-described malpractice[.]" *Id.* at 25. But because "non-medical prison officials can reasonably rely on the judgment of prison medical professionals regarding Mr. Mostafa's medical needs," his deliberate indifference claim was not viable. *Id.* at 25 (discussing cases).

Mostafa points to no manifest error of law or fact in the Court's analysis. He contends that ADX officials were "shopping around" for an occupational therapist, Mot. at 26, but that point only serves to support the Court's conclusion: prison officials in fact relied on an occupational therapist who informed them that Mostafa "does not need anything from the list of fitting and items he requested from ADX." ECF No. 61 at 25 ¶ 11. And their reliance on that occupational therapist—even if Mostafa thinks he committed a "chain of malpractices," *id.*—does not rise to the level of a constitutional violation, as a matter of law. Rec. at 25.

Mostafa makes no other substantive argument regarding this claim, save to reiterate that the

11

Court ought to construe the claim as "incorporating the disability statute its anti-retaliatory provision[.]" Mot. at 30; *see also id.* at 26-28. The Court should not do that because such a claim is not viable. *Supra* § I.A. Mostafa has failed to demonstrate the rare circumstances that would compel the Court to adopt the extreme remedy of revising its order concerning Claim Four.

### E.    Mostafa identifies no error in the Court's analysis of claims about his food (Claim Five).

The Court correctly disposed of the diet-related aspects of Claim Five.

*First*, the Court correctly concluded that the "therapeutic diet" component of this claim—based on a few cursory allegations that Mostafa must have a "salad and single tomato diet every lunch and dinner," ECF No. 61 at 28 ¶ 1-A—reflected nothing more than Mostafa's disagreement with the treatment decisions of BOP medical providers. Rec. at 27; *see also* ECF No. 61 at 39 ¶ 6 (seeking relief of "proper diet: salad, tomatoes"). As Mostafa alleged, BOP medical providers disagreed that he needed this supposed medical diet, a decision he attributes to the "malpractices of [Occupational Therapists]." Rec. at 27; *see also* ECF No. 61 at 29 ¶ 5. But "neither medical malpractice nor Mr. Mostafa's disagreement with medical decisions give rise to a constitutional claim under the Eighth Amendment"—and sheer disagreement is the only plausible inference to be drawn from Mostafa's allegations here. Rec. at 27-28 (discussing cases).

There is no error in the Court's conclusion that Mostafa "failed to allege facts to support an arguable claim" for relief about his "salad, tomatoes" diet, *id.* at 28, and Mostafa points to none. He purports to rely on "records" from "Qualified Specialists and proven beneficials." Mot. at 30. But whoever those unidentified persons are, it is plain that BOP officials saw the situation differently. And Mostafa has not shown that the Court committed manifest factual or legal error in relying on well-established law holding that prisons officials' refusal to provide a particular course

of treatment, even if rising to the level of medical malpractice, does not establish a constitutional violation. Rec. at 27-28.

*Second*, Mostafa continues to make arguments about the presentation of his food, Mot. at 31, even though the Court has allowed that claim to proceed. Rec. at 28-29. His purpose seems to be to expand the number of named Defendants so that he can seek "compensation" from them under the ADA. Mot. at 31 (referencing adding legal, medical and Food Services personnel as Defendants); *see also id.* at 32 (confirming that he seeks "punishment" in the form of "compensation and/or damages and/or monetary relief from all defendants under ADA"). But an ADA claim is not viable, as discussed at length above.

The Court did not err in its construction of either component of Mostafa's diet claims. His flawed bid to have the Court revise its order should be denied.

F.      **Mostafa identifies no error in the Court's analysis of claims regarding the alleged denial of medical care (Claim Five).**

Plaintiff seeks to overturn the Court's carefully-reasoned assessment that the portions of Claim Five in which Mostafa complains about toenail trimmings and dental care should not proceed. *See* Rec. at 30-33. He again falls well short of meeting his burden to show that the Court made any manifest error of law or fact.

*No error in the Court's evaluation of the toenail-trimming subclaim.* Here, Mostafa does nothing more than restate his allegations which, in essence, merely reflect his disagreement with the course of treatment he received—including his view that he required trimmings at "6 weeks intervals[.]" Mot. at 33. But as the Court correctly found, Mostafa did not allege that any failure to provide trimmings in a manner that *he* deemed appropriate was done intentionally or recklessly. Rec. at 31 (citing *Boyett v. Cty. of Washington*, 282 F. App'x 667, 673 (10th Cir. 2008) ("[N]o

13

constitutional violation occurs unless medical care is intentionally or recklessly denied.")); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (discussing prison guards "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed").

Mostafa points to no allegations that refute this analysis. He mentions a notation to a remedy log that references "medical care—delay or access to," Mot. at 32 & 121, but that document reflects no mandate to clip his nails every six weeks, nor was it appended to his complaint. Mr. Osagie's asking Mostafa about why he was incarcerated at the ADX, *id.* at 33, also evinces no intentional or reckless denial of care. And Mostafa's assertion that he could "hardly walk" for lack of trimmings also is not found in his complaint. *See generally* ECF No. 61 at 33-34. Here, yet again, Mostafa's core goal is to transform the claim into one under arising the ADA, which is indisputably not viable. Mot. at 33-34. As with each of his other claims, that tactic fails.

***No error in the Court's evaluation of the dental-care subclaim.*** The Court succinctly described the core deficiency in this claim when it observed that it "cannot discern any facts from the face of the Second Amended Complaint from which the inference could be drawn that any of the Defendants knew or should have known of Plaintiff's serious dental needs." Rec. at 32-33 (finding failure to allege the subjective component of a deliberate indifference claim). The Court is correct: there are no such facts. Mostafa's allegations merely describe what he thinks he should have received, but didn't. ECF No. 61 at 34 ¶ 18.[11] And even less would these contentions permit the Court to infer that any BOP official possessed a criminally reckless state of mind animated by a

---

[11] Indeed, Mostafa does not rely on these allegations, but points to a series of new exhibits attached to the reconsideration motion but not the complaint. Mot. at 35 (discussing new exhibits). No manifest error emerges from documents the Court has never seen, nor should Mostafa be allowed to amend his claim in this improper manner.

desire to punish him. *See Farmer*, 511 U.S at 839 (adopting "subjective recklessness as used in the criminal law … as the test for 'deliberate indifference' under the Eighth Amendment").

Mostafa again would have the Court preserve this claim by construing it "according to ADA statute & provision for a claim allowing damages," Mot. at 36, but that tactic will not salvage this claim or any other—including any claim based on his vague allegations concerning "medical malpractices." ECF No. 61 at 35 ¶ 20; Mot. at 38 (suggesting that court should construe the "malpractices" claim as "invoked" under "ADA anti-retaliatory provision"). The Court correctly rejected Mostafa's "vague, conclusory, unsupported allegations about 'medical malpractices,'" finding that they fall "far short of the pleading requirements of Rule 34." Rec. at 34.

Because Mostafa identifies no manifest error of law or fact, the Court's analysis of the nail-trimming, dental care, and "medical malpractices" aspects of Claim Five should not be altered.

\*       \*       \*

In the end, Mostafa simply wants it his way: for the Second Amended Complaint to be adopted exactly as he brought it, without eliminating demonstrably unsupportable claims. He has failed to show that he is entitled to that extreme remedy.

## CONCLUSION

The Court should deny the motion for reconsideration. ECF No. 98

Respectfully submitted on June 24, 2021.        MATTHEW T. KIRSCH
                                                Acting United States Attorney

                                                s/ *Susan Prose*
                                                Susan Prose, Assistant United States Attorney
                                                1801 California Street, Suite 1600
                                                Denver, Colorado 80202
                                                Tel: (303) 454-0100
                                                Email: susan.prose@usdoj.gov
                                                Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on June 24, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

B. Willms
Senior Attorney
Federal Bureau of Prisons

and I hereby certify that I have directed personnel in the U.S. Attorney's office to mail the foregoing to the following non-CM/ECF participant by U.S. Mail:

Mostafa Kamel Mostafa
#67495-054
Florence Admax
U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 8500
Florence, CO 81226

s/ *Susan Prose*
U.S. Attorney's Office