IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00694-PAB-NYW

MOSTAFA KAMEL MOSTAFA,

    Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
UNKNOWN SAMs OPERATIVES, in their official capacities,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her official capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
LOWE, ADX officer, in his official capacity,
NORJANO, ADX Officer, in his official capacity, and
WILLIAM, ADX Nurse, in his official capacity,

    Defendants.

**MOTION FOR MODIFICATION AND CLARIFICATION OF MINUTE ORDER TO ALLOW FOR COMPLETION OF SAMs ATTORNEY VETTING PROCESS**

Defendants respectfully ask the Court to modify its Minute Order dated December 17, 2021, ECF No. 160, to clarify that, before Mr. Mostafa is allowed to engage in privileged communications with an attorney, the attorney must be vetted in accordance with protocols required by Mr. Mostafa's Special Administrative Measures ("SAMs"). There is good cause for the Court to allow the United States to implement those standard attorney-vetting protocols, which are designed to protect national security by preventing Mr. Mostafa's communications from

inciting more acts of violence and terrorism. *See* 28 C.F.R. § 501.3(c) (authorizing Attorney General to direct the implementation of SAMs upon finding "a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury").

### CERTIFICATE OF CONFERRAL

Undersigned counsel has sought Mr. Wolf's position on this motion, who represented as follows: Attorney Wolf opposes the motion, but would consent if the 60 day period to meet with the Plaintiff and decide whether to represent him were tolled, and the pending motion to dismiss (ECF #96) and motion for summary judgment (ECF #102) aren't decided by the Court until this has occurred.

### ARGUMENT

**A.  Mr. Mostafa's history of terrorism and inspiring other terrorists.**

Mr. Mostafa's SAMs detail his history as a terrorist whose footprint spans the globe, from Yemen to Oregon to al Qaeda and Taliban enclaves in Afghanistan. ECF No. 96-3 at 8-9. Mr. Mostafa—the jihadist former imam of London's Finsbury Park mosque—is serving a life sentence for convictions for conspiracy to take hostages in connection with a plot to kidnap non-Muslim tourists in Yemen, in which four hostages were killed; providing material support for terrorism; providing material support for al Qaeda; and supplying goods and services to the Taliban. *See id.* at 7-8; *see also United States v. Mustafa*, 753 F. App'x 22, 26-27 (2d Cir. 2018). Mr. Mostafa sought to foment terrorism on United States soil by sending his followers to a small town in Oregon to set up a jihad training camp. ECF No. 96-3 at 8; *Mustafa*, 753 F. App'x at 42-43. He has inspired other terrorists, several of whom are incarcerated at the ADX. ECF No. 96-3 at 2-3 (describing Mostafa's influence over "Shoe Bomber" Richard Reid, "20th hijacker" Zacarious Moussaoui, and

2

others).

In deciding that Mr. Mostafa's SAMs are reasonably necessary to defuse the risk of his communications triggering new acts of violence and terrorism, the Attorney General took into account the voluminous information about Mr. Mostafa's history of terrorism and his demonstrated ability to motivate other terrorists. As Mr. Mostafa was notified in his SAMs:

> Based upon information provided of your proclivity for violence, particularly your ties to terrorist leaders; your leadership of thousands of followers; your past advocacy of violence; your willingness and ability to motivate your followers to engage in acts of violence, terrorism, and murder; your continued following by extremists; and your demonstrated sophistication in communicating internationally, there is substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons. Accordingly, we will continue to implement SAM to restrict your access to the mail, the media, the telephone, and visitors.

ECF No. 96-3 at 10.

B. **The Court's orders.**

On December 16, 2021, the Court issued a Notice of Appointment for Mr. Paul Wolf to serve as pro bono counsel for Mr. Mostafa. ECF No. 159. The next day, this Court sua sponte issued a Minute Order in which it stated that "[t]he Bureau of Prisons staff shall **TREAT** Mr. Wolf's communications to the Plaintiff **as attorney-client communications**, until otherwise ordered by the court." ECF No. 160 at 1 (emphasis in original).

However, Mr. Wolf has not yet been vetted in accordance with the requirements of Mr. Mostafa's SAMs. This Court's order, as currently written, does not allow government officials to ensure the completion of these important requirements before confidential communications commence.

### C. The SAMs vetting and attorney-affirmation process.

The SAMs require that an attorney who wishes to communicate confidentially with Mr. Mostafa execute an affirmation acknowledging the attorney has received a copy of the SAMs, is aware of and understands the requirements in the SAMs, and agrees to abide by the SAMs provisions. *See* January 2021 SAMs for Mostafa, ECF No. 96-3 at 12. As the SAMs provide, "in signing the affirmation, [Mostafa's] attorney and precleared staff acknowledge the restriction that they will not forward third-party messages to or from [Mostafa]." *Id.* This provision, which is found in the SAMs of every terrorist incarcerated at the ADX, applies to each and every attorney who wishes to communicate with a SAMs inmate.

Before the attorney affirmation can be executed, FBI officials conduct a background check of the attorney—another requirement that applies to every attorney who wishes to communicate with a SAMs inmate.[1] The purpose of this background check is to verify that there is no information indicating that the attorney's contact with the inmate could pose security concerns. Confirming that no such information exists is particularly important where an attorney proposes to have confidential communications with an inmate like Mr. Mostafa who is a convicted terrorist who is known to have inspired like-minded persons.

Following completion of the background check, if no security concerns have been identified and privileged communications are approved, the United States Attorney's Office that prosecuted the inmate and is familiar with his background (in Mr. Mostafa's case, the United States Attorney's Office for the Southern District of New York) forwards the SAMs and the

---

[1] In approximately 2012, a separate background check of Mr. Wolf was conducted in connection with his representation of another SAMs inmate. With the passage of a decade, a new background check is required.

4

attorney affirmation to the attorney. Upon execution of the affirmation by the attorney, confidential communications with the SAMs inmate may commence.

Many courts, including judges on this Court, have recognized that these protocols are reasonable measures to protect national security. *See*, *e.g.*, *Salim v. Holder*, No. 13-cv-03175-RM-CBS, 2015 WL 13849468, at *8 (D. Colo. Mar. 4, 2015) (convicted terrorist alleged "no facts plausibly showing the absence of a rational basis for recognizing that attorney-client communications create risks of SAMs violations, and ensuring that attorneys who communicate with him have undergone an appropriate background check, understand the provisions in the SAMs, and agree to abide by those provisions"), *adopted*, 2017 WL 11487131 (D. Colo. May 2, 2017); *Al-Owhali v. Holder*, No. 07-cv-02214-LTB-BNB, 2011 WL 288523, at *4 (D. Colo. Jan. 27, 2011) (holding that convicted terrorist failed to plead "facts showing that the attorney affirmation provision as to the SAMs does not rationally further a legitimate governmental interest"), *reconsideration denied*, 2011 WL 1833104 (D. Colo. May 13, 2011), *aff'd*, 687 F.3d 1236 (10th Cir. 2012); *United States v. Hashmi*, 621 F. Supp. 2d 76, 87 (S.D.N.Y. 2008) (holding that the SAMs attorney-affirmation requirement "passes muster under *Turner* [*v. Safley*, 482 U.S. 78 (1986)]").

The SAMs' attorney-communication protocols, including the vetting and affirmation process, enable national-security officials to ensure, to the greatest extent possible, that no SAMs inmate will use an attorney as a conduit for transmitting communications to others in a manner that could jeopardize national-security interests. Indeed, at least one incarcerated terrorist has used an attorney to circumvent his SAMs to transmit messages to foreign terrorists. *See United States v. Stewart*, 590 F.3d 93, 101-08 (2d Cir. 2009). The Court should allow national-security officials to

apply those standard rules in this case.

### D. The vetting process here can be completely promptly.

National-security officials involved in the attorney vetting process have been informed of this Court's order and of Mr. Wolf's desire to communicate confidentially with Mr. Mostafa. Recognizing that the issue is time-sensitive, the officials have commenced the vetting process for Mr. Wolf and anticipate that it can be completed in approximately three-weeks' time, taking into account the fact that many officials involved in this process are away from work on pre-planned leave at this time of year.

### E. The Court's order should be modified and clarified to allow the vetting/affirmation process to be completed before confidential communications are allowed.

To avoid disrupting the ordinary operation of these important national-security procedures in Mr. Mostafa's case, Defendants respectfully request that the Court modify its order to clarify that, before confidential communications between Mr. Wolf and Mr. Mostafa occur, (1) the FBI will be permitted to complete the necessary background check of Mr. Wolf and, if that process identifies no security concerns, (2) Mr. Wolf must execute an affirmation agreeing to abide by the terms of the SAMs.

Upon completion of the vetting/affirmation process, Defendants will provide a status report to the Court.

\*   \*   \*

For the foregoing reasons, Defendants respectfully request that the Court modify its December 17, 2021 Minute Order to clarify that no privileged communications between Mr. Wolf and Mr. Mostafa may occur until the vetting and affirmation process required by Mr. Mostafa's SAMs have been completed.

Respectfully submitted on December 23, 2021.

    COLE FINEGAN
    United States Attorney

    s/ *Susan Prose*
    Susan Prose
    Assistant United States Attorney
    1801 California Street, Suite 1600
    Denver, Colorado 80202
    Tel: (303) 454-0100
    Email: susan.prose@usdoj.gov

    Counsel for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on December 23, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

   B. Willms
   Senior Attorney
   Federal Bureau of Prisons

I hereby certify that on December 23, 2021, I emailed a copy of the foregoing to:

   Paul David Wolf, Esq.

I hereby certify that on December 23, 2021, I directed personnel in the U.S. Attorney's office to mail the foregoing, with copies of the unpublished cases cited therein, to the following non-CM/ECF participant by U.S. Mail:

   Mostafa Kamel Mostafa
   #67495-054
   Florence Admax
   U.S. Penitentiary
   Inmate Mail/Parcels
   P.O. Box 8500
   Florence, CO 81226

                                            s/ *Susan Prose*
                                            U.S. Attorney's Office