**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00694-PAB-NYW

MOSTAFA KAMEL MOSTAFA,

Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
UNKNOWN SAMs OPERATIVES, in their official capacities,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her official capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
LOWE, ADX officer, in his official capacity,
NORJANO, ADX Officer, in his official capacity, and
WILLIAM, ADX Nurse, in his official capacity,

Defendants.

**Opposition to Defendants' Motion for Modification and Clarification of
Minute Order to Allow for Completion of SAMs Attorney Vetting Process [Doc. 166]**

On December 17, 2021, this Court ordered that "The Bureau of Prisons staff shall TREAT Mr. Wolf's communications to the Plaintiff as attorney-client communications, until otherwise ordered by the court; …" Minute Order [Doc. 160]. Nevertheless, the Defendants will not allow the undersigned to communicate with the Plaintiff, or even provide him with a copy of the Plaintiff's SAMs and SAMs Affirmation Form, which are prerequisites for communicating with him. The Court should order the Defendants to SHOW CAUSE why they shouldn't be sanctioned for every day they're in violaton of this Order. Among other things, the Plaintiff is suing for the restrictions placed on his ability to consult with an attorney.

1

The Court should DENY the Motion for Modification and Clarification of the Minute Order, because there is no valid legal basis for it, or good cause to support it. It is vague, and allows the government an unlimited amount of time to decide whether to change its position. In another SAMs case, the undersigned was thoroughly investigated by the Defendants, placed on an airport "SSSS" watch list for the duration of the representation, and detained and interrogated on two occasions by Transportation Security Adminstration agents, who took and copied privileged attorney work product, including work product related to that litigation. See § 1 of Argument, infra. Counsel should not have to go through this again.

The Court should refrain from deciding the pending Motions to Dismiss [Doc. 96] and for Summary Judgment [Doc. 102], which are based on the Court's own constructions of the Plaintiff's claims. Section 3 infra, explains why, after appointing counsel, the Court should grant leave to amend the complaint. Mr. Mostafa's claims for restrictions on access to an attorney weren't included. He also complained that the Defendants took away his prosthetics, forcing him to eat his meals with no hands, in order to punish and humiliate him. The Plaintiff cited the "Disabilities Act" which might have referred to the well-known Americans with Disabilities Act. 42 U.S.C. § 12131, et seq. However, it should have been construed as a claim under § 504 of the Rehabilitation Act of 1973, which is the law that applies to disabled prisoners in federal facilities.[1] There are larger issues as well, since Mr. Mostafa's extradition was only granted after the Defendants provided assurances to the European Court of Human Rights ("ECHR") that it would be "impossible" for Mr. Mostafa to be held in the ADX because of his disability. See

---

[1] There are two statutes protecting the rights of disabled prisoners: Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq. In the prison context, the Rehabilitation Act applies to facilities run by federal agencies, including the Bureau of Prisons and other agencies receiving federal funding. The more familiar ADA regulates facilities run by state and local agencies.

2

Exhibit 1, attached hereto.  A pro se Plaintiff only has to state the facts of a claim, without necessarily having to set forth a correct legal basis, as long as the nature of his complaint can be understood.

## FACTUAL SUMMARY

On May 27, 2004, the Plaintiff was detained on remand by British authorities and appeared before magistrates pursuant to a request for extradition by the United States.  The indictment charged the Plaintiff with hostage taking and conspiracy to take hostages in connection with an attack in Yemen in December of 1998; for providing material support to al Qaeda, by allegedly attempting to set up a terrorist training camp in Bly, Oregon, from October 1999 to early 2000; for providing material support to al Qaeda and the Taliban; and for facilitating violent jihad in Afghanistan.[2]

On July 8, 2010, the ECHR blocked the Plaintiff's extradition to the United States until it could be satisfied that he would not be treated inhumanely.[3]  The Human Rights Act requires UK courts, including the Supreme Court, to take account of decisions of the European Court of Human Rights, although they are not strictly bound by them.  Signatories to the ECHR, including the UK, are prohibited from transferring anyone to a place where they would be subject to inhumane or degrading treatment.[4]

After considering the statements of officials at the ADX Florence prison, and of the Defendant Department of Justice, on April 10, 2012, the ECHR approved the extradition of the Plaintiff and four others, relying on representations that the Plaintiff wouldn't be held in the

---

[2] See "Abu Hamza Arrested in London on Terrorism Charges Filed in the United States," May 27, 2004, online at https://www.justice.gov/archive/opa/pr/2004/May/04_crm_371.htm
[3] See Dodd, Vikram, "Abu Hamza extradition to US blocked by European court," The Guardian (8 July 2010).  https://www.theguardian.com/uk/2010/jul/08/abu-hamza-human-rights-ruling
[4] This standard doesn't exist in American law, and is a lower standard than cruel and unusual punishment, which also exists in international law.

3

ADX.  See Exhibit 1, attached hereto, Press Release of the ECHR, *Detention conditions and length of sentences of five alleged terrorists would not amount to ill-treatment if they were extradited to the USA*, ECHR 146 (2012).[5]  "The Court also refused [the Plaintiff] Abu Hamza's request for reconsideration of its decision to declare his complaint concerning ADX inadmissible.  The Court observed that the United States authorities would consider Abu Hamza's detention at ADX impossible because of his disabilities (particularly the amputation of his forearms)."  Id. at 3.  After another appeal, on October 5, 2012, the High Court granted the UK's government's request to extradite the Plaintiff to the U.S.[6]

After the Plaintiff was extradited, he was prosecuted and then housed in the ADX.  This was despite the assurances made by the Defendants to the ECHR, and its finding that U.S. authorities would consider the Plaintiff's detention at the ADX "impossible."  Exhibit 1 at 3.  The Plaintiff exhausted his administrative remedies - a process reviewable under the standards in 5 USC § 706 of the Administrative Procedure Act - and is now in Federal court to argue his claims.

## ARGUMENT

**1. The Defendants haven't shown good cause to modify the order because the statute authorizing the SAMs doesn't apply to attorney-client communications.**

The authority of the Executive Branch to impose Special Administrative Measures on a prisoner doesn't extend to having a say in which attorney is appointed by the Court to represent him.  The undersigned is well-known to the Defendants and their counsel,[7] having won a bench trial against them in Mohammed v. Holder, Case No. 07-cv-2697-MSK, which had similar

---

[5]  Online at https://hudoc.echr.coe.int/app/conversion/pdf/?library=ECHR&id=003-3906939-4510631&filename=003-3906939-4510631.pdf

[6]  See Casciani, Dominic, "Abu Hamza to be extradited to US," BBC News (5 October 2012). https://www.bbc.co.uk/news/uk-19842941

[7] Defense counsel Susan Prose represented the defendants in the Mohammed case as well.

4

issues.  Exhibit 3, attached hereto, are the Findings of Fact, Conclusions of Law, and Order in that case.  As explained by the former Chief Judge of this Court:

> SAMs are imposed pursuant to 28 C.F.R.. § 501.3(a), which provides that the Attorney General of the United States may direct the BOP to "implement special administrative measures" upon the Attorney General's conclusion "that there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury" to others. These special measures "may include ... limiting certain privileges, including, but not limited to, correspondence, visiting, ... and use of the telephone." Id.

Exhibit 3 at 2.  A review of the statute shows that the parts omitted by Judge Krieger refer to contacts with the news media, and do not refer to contacts with attorneys.  No good cause exists for the motion, because there is no statutory basis for the Defendant's argument that the Plaintiff's contacts with an attorney require their approval.

In the Mohammed case, the government took nearly a year to investigate the undersigned.  Exhibit 4, attached hereto, is a composite of status reports filed by the defendants in that case.  The most difficult part of this investigation was being placed on the "SSSS" airport watch list.  See Exhibit 5 at 1, an example of a boarding pass issued to me during this period.  On two occasions, upon returning from Colombia, South America, I was detained in jail-like conditions and interrogated for period of six and eight hours; my laptop, phone and USB were seized and presumably copied; and printed materials marked Attorney Work Product were also seized and presumably copied, over my objections.  My laptop contained privileged work product from Mr. Mohammed's case.  Id.  I have traveled to Colombia on a regular basis since 2007, and still do, to work on a mass tort case involving victims of paramilitary groups finance by the Chiquita banana company.  On one of those occasions, I filed a Notice of Probable Violation of Protective Order, [Doc 269] on October 31, 2012.  See Exhibit 5, attached hereto. After filing this, I was detained and interrogated for about 8 hours on my next return to the US,

but didn't file anything else in court.[8]  Once my representation of Mr. Mohammed ended, my problems re-entering the United States did as well.  Since prisoners rarely win these kinds of cases, I was invited to help teach the CLE Course in Prisoners' Rights of the Faculty of Federal Advocates, on December 17, 2015, entitled "Pro Bono Prisoners' Rights Representation: Getting Creative and What to do When it Gets Personal."[9]  The title wasn't selected by me, but by the CLE organizer, who also felt personally threatened after taking one of these cases.  The fact that I was placed on a watchlist, and detained and interrogated about the case twice, was of great interest to other attorneys considering taking cases from the pro bono program.

    The restrictions on Mr. Mostafa go beyond those imposed on Mr. Mohammed, insofar as they regulate his communications with the court.  The Defendants didn't try to oversee the Chief Judge's communications with him.  However, "Mr. Mostafa - as a convicted terrorist - is subject to Special Administrative Measures ("SAMs"), pursuant to which Special Investigative Services Technicians at ADX are permitted a 14-business-day period to review correspondence between Mr. Mostafa and the court."  Order Granting Motion to Stay, DE 156 at 3.  This is the first we've heard of officers in any U.S, prison having the power to decide whether or not to allow a prisoner to communicate with the court in an ongoing, case - or the power to restrict a judge's communications with a prisoner held under SAMs.  If the Special Investigative Services

---

[8]  The Transportation Security Administration is a different agency of the government, and not a party to either of these cases.  I cannot prove whether Mr. Mohammed was harmed by the theft of his privileged materials, and shouldn't bring my own claims against the defendant while representing another party, and there was no obvious remedy.

[9]  Online at https://www.scribd.com/presentation/293566564/Getting-Creative-and-What-to-do-When-it-Gets-Personal

Technicians didn't have this power, they wouldn't need 14 days to approve the correspondence, because there would be nothing they could do except transmit it.[10]

**2.     The proposed relief puts no time limit on compliance with the Court's Order, and would effectively stay the case until the government changes its position on whether to allow the undersigned to communicate with the Plaintiff.**

The Defendants put no time limit on how long it will take to obey the Court's order. The Defendants vaguely allude to an internal procedure that has to be followed. Whatever reference Mr. Mostafa's SAMs may make with respect to attorney communications (which we don't know), the statute itself, 28 C.F.R.. § 501.3(a), doesn't mention attorney-client communications, or apply to them. The Defendant's position, that providing the undersigned with the SAMs and SAMs Affirmation Form poses a risk to national security, has no reasonable basis, and is only the first in what will inevitably be a lengthy series of tactical delays.[11]

In the Mohammed case, the Defendants invoked the State Secrets Privilege to obtain a three month stay of proceedings to investigate the undersigned. See Doc. 245 in that case. Other agencies became involved, and then used as reasons why the stay had to extend indefinitely, until the defendants heard back from these un-named third parties. The plaintiff in that case put together a detailed recounting of our efforts to meet, and of the government's reasons for delays. See Exhibit 4, Plaintiffs Response in Opposition to Defendants' Fourth Status

---

[10] Mr. Mostafa is apparently having a similar problem contacting an attorney in his criminal case in the SDNY. See Exhibit 2, attached hereto. The undersigned tried to contact this attorney, but hasn't been successful yet, and doesn't know what the recent activity in that case is about.

[11] The appointment of counsel in this case was already delayed by almost a year, apparently due to staffing issues in the pro bono program. See Exhibit 6, attached hereto, in which Ed Butler explains that although the appointment order was issued in January of this year, it wasn't listed among the available cases until a few weeks ago. In another email, Mr. Butler explained to me that the Court had to make Recommendations on the Defendants' Motion to Dismiss and Motion for Summary Judgment by the end of January in order to comply with the the federal judiciary's Congressionally-imposed deadlines in the Civil Justice Reform Act (CJRA). Although the undersigned is unable to speak for Mr. Mostafa at this time, the motions should be denied as moot, and Mr. Mostafa granted leave to amend the complaint.

7

Report, Doc. 255 in <u>Mohammed v. Holder</u>, attached herteto.  After nearly a year, the Defendants had to admit they could find no derogatory information about the undersigned that could be used to disqualify him.  Once again, the Defendants' focus is on finding a way to discredit the attorney volunteering to help the Court by representing an indigent prisoner with a meritorious case.

3. **Instead of ruling on its own constructions of Mr. Mostafa's claims, the Court should allow appointed counsel to amend his complaint.**

Although the Plaintiff complained of many things, including the removal of his protethetics, his solitary confinement and restricted communications, and particular incidents of violence against him, the court construed his claims as (1) First Amendment familial association and free exercise claims asserted against individuals in their official capacities; (2) Eighth Amendment conditions of confinement claims asserted against individuals in their official capacities; (3) Eighth Amendment excessive force claims asserted against three corrections officers in their individual capacities; (4) Eighth Amendment deliberate indifference claims based on presentation of Plaintiff's food, asserted against individuals in their official capacities; and (5) an Eighth Amendment deliberate indifference claim based on refusal to dress wounds against an individual in his official capacity.  <u>See</u> Order Granting Motion to Stay at 5 [Doc. 156], citing Recommendation and Order of January 30, 2021 at 35.

Rule 15(a)(2) states that leave to amend should be "freely given."  Because the text of Rule 15(a)(2) unequivocally requires the court to grant leave to amend liberally, a court faces limits on its ability to deny leave to amend, which is reviewed for abuse of discretion.  <u>Cohen v. Longshore,</u> 621 F.3d 1311, 1313 (10th Cir. 2010).  The presumption is that a district judge should grant leave to amend absent a substantial reason to deny.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  The <u>Foman</u> case listed the following factors to be considered in determining whether to grant leave to amend: undue delay, bad faith or dilatory motive on the part of the

8

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. 371 U.S. at 182.

In the exercise of its discretion, the court should be guided by the underlying purpose of allowing amendments to facilitate a decision on the merits. Johnson v. City of Shelby, 135 S.Ct. 346 (2014) (the federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted ... petitioners, on remand, should be accorded an opportunity to add to their complaint ...") The case is even stronger here, where the imprisoned, pro se Plaintiff has no legal training, and the Court is trying to find counsel to represent him. The Supreme Court has held that allegations of pro se litigants are held to a less stringent standard than pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The undersigned doesn't represent Mr. Mostafa, and can't file a motion for leave to amend. The most obvious issues are mentioned here for the purpose of showing why it would be a mistake for the Court to rule on the pending Motions to Dismiss [Doc. 96] and for Summary Judgment. [Doc. 102].

Aside from his claims for taking away his prosthetics, and for the deprivation of his right to counsel, which do not appear in the Court's construction, there is the more basic issue that the Plaintiff's extradition to the United States was expressedly conditioned on his not being housed in the ADX, which it found to be "impossible" based on assurances of Department of Justice and ADX officials. The European Court of Human Rights didn't approve the extradition until these assurances were made. This Court should also find that the Plaintiff's incarceration in the ADX is "impossible" and that housing him in the ADX violates America's agreement with the ECHR, and with the UK, which relied on this to extradite the Plaintiff, and provide the court with the jurisdiction to prosecute him.

There is another legal issue in all of these claims that isn't mentioned in the complaints or in any other filings so far in this case. That is, any claims that were exhausted using the Bureau of Prisons' Administrative Remedy Program are reviewable under APA standards. While the Plaintiff may be entitled to money damages for some claims (as limited by Prison Litigation Reform Act), these claims are for injunctive relief. For example, an order to transfer the Plaintiff to a prison more suitable for disabled prisoners, or an order to provide him with prosethetic devices, or other reasonable accomodations of his disability, are types of injunctive relief.

In <u>Mohammed v. Holder</u>, the plaintiff had initially filed claims against officials in their personal capacities, pursuant to <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), which recognizes "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." <u>Correctional Serv's. Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001). <u>See</u> Exhibit 3 at 3, Findings of Fact, Conclusions of Law, and Order, in <u>Mohammed v. Holder</u>, Case No. 07-cv-2697-MSK, attached hereto. This document could serve as a roadmap for this case. Mr. Mohammed never pled any of his claims under the Administrative Procedure Act ("APA"), despite the fact that he was required to exhaust his administrative remedies before filing them in Federal court. As such, his claims are reviewable not only on their merits, but on how the Defendants processed his claims administratively, as required by the APA. The claimant is entitled to Due Process, Equal Protection, and so on, in the processing of his claim, apart from the merits of it.

In <u>Mohammed</u>, the Court found several of the Defendants' decisions to be arbitrary and capricious, remanding it back to the Department of Justice, which includes the Bureau of Prisons, Federal Bureau of Investigation, and Office of Enforcement Operations as components. This should have resulted in a review of whether the Defendants have robust, Constitutionally-

10

sound administrative procedures in place to protect the prisoners' rights. The exhaustion of administrative remedies, under the aptly-named Administrative Remedy Program, is a prerequisite to filing a claim in Federal court. This is not unlike what a person would have to do with a disability claim in the Social Security Administration. They have to exhaust the administrative procedures in the agency before filing a claim in Federal court. If the Court finds that the agency analyzed the case incorrectly, it can remand it, much like a court of appeals does with a trial court. In Mohammed's case, the government decided to remove the SAMs in order to moot the issue, and avoid institutional reform.

Of course, the Court has the power to grant relief, without trying to reform the prison system. It could, for example, return the Plaintiff to the United Kingdom, to serve his sentence in a prison that doesn't raise alarms in European Court of Human Rights, and respects the assurances made by the Defendants to that court. However, none of this really matters, if the Defendants are going to take the position that they don't have to obey the Court's orders.

### Conclusion

The Defendants' Motion has no basis in the law, and is no more than a statement that the Defendant doesn't intend to obey the Court's order. The Court should DENY the Motion. In addition, the Court should ORDER the Defendants to SHOW CAUSE why they shouldn't be held in contempt of court, and sanctioned based on the number of days that the order is defied.

    Respectfully submitted

    /s/ Paul Wolf
    _____

    Paul Wolf
    CO Bar #42107

December 26, 2021

**Certificate of Service**

I hereby certify that on this day, the 26th of December, 2021, I filed a copy of the foregoing document, and six exhibits, with the Clerk of the Court using the Court's Electronic Case Filing (ECF) system, which will send electronic notices to all persons entitled to receive them. I further certify that tomorrow, I will send this document and its exhibits to the Plaintiff, although I do not expect the prison to deliver it.

/s/ Paul Wolf
_____

Paul Wolf