# Exhibit 1



Press Release
issued by the Registrar of the Court

ECHR 146 (2012)
10.04.2012

# Detention conditions and length of sentences of five alleged terrorists would not amount to ill-treatment if they were extradited to the USA

The case **Babar Ahmad and Others v. the United Kingdom** (application nos. 24027/07, 11949/08, 36742/08, 66911/09 and 67354/09) concerned six alleged international terrorists – Babar Ahmad, Haroon Rashid Aswat, Syed Tahla Ahsan, Mustafa Kamal Mustafa (known more commonly as Abu Hamza), Adel Abdul Bary and Khaled Al-Fawwaz – who have been detained in the United Kingdom pending extradition to the United States of America.

In today's Chamber judgment in the case, which is not final[1], the European Court of Human Rights held, unanimously, that there would be:

**no violation of Article 3 (prohibition of inhuman and degrading treatment)** of the European Convention on Human Rights as a result of conditions of detention at ADX Florence (a "supermax" prison in the United States) – if Mr Ahmad, Mr Ahsan, Mr Abu Hamza, Mr Bary and Mr Al-Fawwaz were extradited to the USA; and,

**no violation of Article 3** of the Convention as a result of the length of their possible sentences if Mr Ahmad, Mr Ahsan, Abu Hamza, Mr Bary and Mr Al-Fawwaz were extradited.

The Court **adjourned its examination of Mr Aswat's application** as it required further submissions from the parties, on the relevance of his schizophrenia and detention at Broadmoor Hospital to his complaint concerning detention at ADX (see below "future procedure").

**Continuation of interim measures**
The Court also, decided to continue its indication to the United Kingdom Government (made under Rule 39 of the Rules of Court) that the applicants should not be extradited until this judgment became final or until the case was referred to the Grand Chamber at the request of one or both of the parties[2].

## Principal facts

Between 1999 and 2006 all six applicants were indicted on various terrorism charges in the United States of America. Mr Ahmad and Mr Ahsan are accused of various felonies including providing support to terrorists and conspiracy to kill, kidnap, maim or injure persons or damage property in a foreign country. Abu Hamza has been charged with 11 different counts of criminal conduct related to the taking of 16 hostages in Yemen in

---

[1] Under Articles 43 and 44 of the Convention, this Chamber judgment is not final. During the three-month period following its delivery, any party may request that the case be referred to the Grand Chamber of the Court. If such a request is made, a panel of five judges considers whether the case deserves further examination. In that event, the Grand Chamber will hear the case and deliver a final judgment. If the referral request is refused, the Chamber judgment will become final on that day.
Once a judgment becomes final, it is transmitted to the Committee of Ministers of the Council of Europe for supervision of its execution. Further information about the execution process can be found here: www.coe.int/t/dghl/monitoring/execution
[2] In which case the President of the Grand Chamber would decide whether interim measures should continue to remain in force.



1998, advocating violent jihad in Afghanistan in 2001 and conspiring to establish a jihad training camp in Bly, Oregon (the USA) between June 2000 and December 2001. Mr Aswat was indicted as Abu Hamza's co-conspirator in respect of the latter charges. Mr Bary and Mr Al-Fawwaz were indicted, along with Osama bin Laden and 20 others, for their alleged involvement in, or support for, the bombing of US embassies in Nairobi and Dar es Salaam in 1998. Mr Al-Fawwaz has notably been charged with more than 269 counts of murder.

On the basis of those indictments, the US Government requested each applicant's extradition from the United Kingdom. As a result, all six applicants were arrested in the UK and placed in detention pending extradition. They then contested their extradition in separate proceedings in the English courts, without success, their requests for leave to appeal to the House of Lords and the Supreme Court ultimately being rejected between 2007 and 2009.

## Procedure, complaints and composition of the Court

The present cases concern applications lodged by the six applicants between 2007 and 2009. The Court decided to deal with the applications together since they raised similar issues.

On 6 July 2010 the Court delivered its decision on the admissibility of the complaints lodged by the first four applicants (Mr Ahmad, Mr Aswat, Mr Ahsan and Abu Hamza). The Court found that, given assurances provided by the United States, there was no real risk that these four applicants, if extradited to the USA, would either be designated as enemy combatants (with the consequences that that entailed, such as the death penalty) or subjected to extraordinary rendition. Nor did it consider that any of the applicants' claims in respect of their trials in the US Federal Courts would amount to a flagrant denial of justice. Therefore those parts of the applicants' complaints were declared inadmissible.

Following the admissibility decision, the Court put further questions to the parties and, after several extensions of the time-limit to allow for information to be obtained from the United States, the applicants submitted their final observations on 31 May 2011 and the Government on 24 October 2011.

The remaining part of the first four applicants' complaints concerning conditions of detention at ADX Florence and the length of their possible sentences, if extradited and convicted in the USA, was declared admissible and is the subject of the judgment delivery today. The judgment also concerns the identical complaints brought by the fifth and sixth applicants, Mr Bary and Mr Al Fawwaz.

Third-party comments were received from the non-governmental organisations the American Civil Liberties Union, the National Litigation Project at Yale Law School, Interights and Reprieve.

Judgment was given by a Chamber of seven, composed as follows:

Lech **Garlicki** (Poland), *President*,
David Thór **Björgvinsson** (Iceland),
Nicolas **Bratza** (the United Kingdom),
Päivi **Hirvelä** (Finland),
George **Nicolaou** (Cyprus),
Ledi **Bianku** (Albania),
Nebojša **Vučinić** (Montenegro), *Judges*,
and also Lawrence **Early**, *Section Registrar.*

Press Release

## Decision of the Court

### Conditions of detention

Having fully considered all the evidence from both parties, including specifically prepared statements by officials at ADX Florence as well as letters provided by the US Department of Justice, the Court held that conditions at ADX would not amount to ill-treatment.

In particular, not all inmates convicted of international terrorism were housed at ADX and, even if they were, sufficient procedural safeguards were in place, such as holding a hearing before deciding on such a transfer. Furthermore, if the transfer process had been unsatisfactory, there was the possibility of bringing a claim to both the Federal Bureau of Prisons' administrative remedy programme and the US federal courts.

As concerned ADX's restrictive conditions and lack of human contact, the Court found that, if the applicants were convicted as charged, the US authorities would be justified in considering them a significant security risk and in imposing strict limitations on their ability to communicate with the outside world. Besides, ADX inmates – although confined to their cells for the vast majority of the time – were provided with services and activities (television, radio, newspapers, books, hobby and craft items, telephone calls, social visits, correspondence with families, group prayer) which went beyond what was provided in most prisons in Europe. Furthermore, according to the US Department of Justice in one of its letters, out of the 252 inmates in ADX, 89 were in the prison's "step-down programme". This showed that the applicants, if convicted and transferred to ADX, would have a real possibility under such a programme of moving through different levels of contact with others until being suitable for transfer to a normal prison. Lastly, as concerned mental health problems, the Court noted that this had not prevented Mr Ahmad, Mr Ahsan and Mr Bary from being detained in high-security prisons in the United Kingdom and, in any case, psychiatric services would be available to treat them at ADX.

Accordingly, the Court found that there would be no violation of Article 3 as concerned the possible detention at ADX supermax prison of Mr Ahmad, Mr Ahsan, Mr Bary and Mr Al-Fawwaz.

The Court also refused Abu Hamza's request for reconsideration of its decision to declare his complaint concerning ADX inadmissible. The Court observed that the United States authorities would consider Abu Hamza's detention at ADX impossible because of his disabilities (particularly the amputation of his forearms).

### Length of sentences

Mr Bary faces 269 mandatory sentences of life imprisonment without the possibility of parole. Mr Ahmad, Mr Ahsan, Abu Hamza and Mr Al Fawwaz face discretionary life sentences.

Having regard to the seriousness of the offences in question, the Court did not consider that these sentences were grossly disproportionate or amounted to inhuman or degrading treatment. There would therefore be no violation of Article 3 in the case of any of these five applicants if they were extradited, convicted and given life sentences.

### Future procedure concerning Aswat v. the United Kingdom (no. 17299/12)

The Court decided to adjourn examination of Mr Aswat's complaints, which it will consider under a new application number (no. 17299/12). It invited the parties to submit further written observations on the three questions below.

1. What relevance is there, if any, of Mr Aswat's transfer from HMP Long Lartin to Broadmoor Hospital on account of his mental health?

2. Prior to Mr Aswat's surrender to the USA, would details of his mental health condition be provided to the US' authorities?

3. After surrender, what steps would be taken by the US authorities: to assess whether Mr Aswat would be fit to stand trial; and, to ensure that, if convicted, his mental health condition would properly be taken into account in determining where he would be detained?

The British Government have been asked to submit their observations on these questions by **9 May 2012**. The applicant will then be given four weeks to respond to those observations after which the Government will be invited to submit its final observations in reply within two weeks. The Court will then give its judgment in Mr Aswat's case as soon as practicably possible.

*The judgment is available only in English.*

This press release is a document produced by the Registry. It does not bind the Court. Decisions, judgments and further information about the Court can be found on www.echr.coe.int. To receive the Court's press releases, please subscribe to the Court's RSS feeds.

**Press contacts**
echrpress@echr.coe.int | tel: +33 3 90 21 42 08

**Tracey Turner-Tretz (tel: + 33 3 88 41 35 30)**
Kristina Pencheva-Malinowski (tel: + 33 3 88 41 35 70)
Céline Menu-Lange (tel: + 33 3 90 21 58 77)
Nina Salomon (tel: + 33 3 90 21 49 79)
Denis Lambert (tel: + 33 3 90 21 41 09)

**The European Court of Human Rights** was set up in Strasbourg by the Council of Europe Member States in 1959 to deal with alleged violations of the 1950 European Convention on Human Rights.