# Exhibit 1



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
☑ *Administrative Maximum Security Institution*
☐ *High Security Institution*
☐ *Medium Security Institution*
☐ *Minimum Security Institution*

---

January 6, 2022

NOTICE TO:   KAMEL MOSTAFA, REG. NO. 67495-054

FROM:   C. Carter, Warden

SUBJECT:   **Notification of Extension of Special Administrative Measures (SAM)**

### SUMMARY

The United States Attorney for the Southern District of New York (USA/SDNY) and the Federal Bureau of Investigation (FBI) request that the SAM be renewed.  You were convicted of various terrorism-related crimes, including the Islamic Army of Aden's hostage-taking of 16 tourists in Yemen, two of whom were American citizens, which ended with the deaths of four hostages.  Based upon the information provided by the USA/SDNY and the FBI, pursuant to 28 C.F.R. § 501.3, there continues to be a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons.  Therefore, we will continue to implement the SAM to restrict your access to the mail, the telephone, visitors, other inmates, and the media.  The SAM will commence immediately upon expiration of the prior SAM authorization period and will be in effect for a period of one year, subject to further direction.

### PROCEDURAL HISTORY

On May 19, 2014, a jury in the Southern District of New York convicted you of conspiring to take hostages and taking hostages; conspiring, providing, and attempting to provide material support to terrorists; conspiring, providing and attempting to provide material support to al Qaeda, a designated foreign terrorist organization; and conspiring to provide goods and services to the Taliban.  On January 9, 2015, the court sentenced you to imprisonment of Life.  The United States Court of Appeals for the Second Circuit affirmed all but two of the convictions and left the Life sentence undisturbed.  *United States v. Mustafa,* 752 Fed. Appx. 22 (2d Cir. 2019).  Because of your proclivity for violence, the Attorney General placed you under SAM.  Previously housed at the Metropolitan Correctional Center (MCC) in New York, you were transferred to the United

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 2


States Penitentiary, Administrative Maximum, Florence, Colorado (ADX), on October 8, 2015.

## FACTUAL BACKGROUND

### A.    Mostafa's Criminal Conduct

You, an Egyptian-born citizen of the United Kingdom, were held in custody in the United Kingdom for several years while you contested extradition to the United States. According to the USA/SDNY, you supported acts of terrorism for many years. While you were Imam of the Finsbury Park Mosque in London, you used your position to radicalize your impressionable young followers and encourage them to join the jihad. Your followers included convicted "shoe bomber" Richard Reid (under SAM from 2002 to 2008) and convicted 9/11 co-conspirator Zacarias Moussaoui (currently under SAM).

You were convicted of four courses of criminal conduct, each of which demonstrated your ability and willingness to incite others to commit violence, terrorism, and murder. First, in December 1998, while operating in London, you participated in a plot whereby the Islamic Army of Aden took 16 tourists, including two American citizens, as hostages in Yemen. The hostage-taking was undertaken to induce the Yemeni government to release various individuals who had recently been arrested, including your stepson and other followers. To support the hostage-taking, you supplied the hostage-takers with a satellite telephone, provided advice to the terrorists on how to conduct the hostage-taking, arranged for additional airtime to be added to the satellite telephone while the hostage-taking was underway, and maintained contact with the terrorists throughout the event. During a rescue attempt, four of the hostages were killed, and several others were wounded.

Second, in 1999, you sent two of your followers, Oussama Kassir and Haroon Aswat, to the United States to establish a terrorist training camp at a ranch in rural Oregon. You believed that weapons could be secretly stockpiled at the camp and that numerous followers could gather there for hands-on terrorist training. Your ultimate goal was for Kassir to train young men to wage jihad in Afghanistan and elsewhere, in support of al Qaeda. Under your direction, Kassir provided weapons training to young men. In addition, Kassir procured numerous firearms; extolled the virtues of suicide bombing; and distributed information on how to manufacture various types of bombs and a range of lethal poisons. When instructing his trainees, Kassir made it clear that he was training them to become martyrs. On May 12, 2009, Kassir was convicted of 11 terrorism-related charges, including two counts of providing material support to al Qaeda and two counts of conspiracy to kill. Because of Kassir's proclivity for violence, the Attorney General placed him under SAM, effective October 29, 2007, and most recently renewed in October 2018. Kassir's SAM subsequently expired without renewal in October 2019.


**"Sensitive But Unclassified"**

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 3

Third, in late 2000, you directed one of your followers, James Ujaama, to escort Feroz Abbasi, another of your followers, from London to Afghanistan, to meet with Ibn Sheikh al-Libi.  Al-Libi, a leader of a terrorist training camp in Afghanistan, was described by you as a "front line commander."  Abbasi was observed in Afghanistan in early 2001 with al-Libi and received training at an al Qaeda training camp while in Afghanistan. Abbasi was captured on the battlefield in Afghanistan in December 2001.  Al-Libi was also captured while fleeing Afghanistan in late 2001 and died in a Libyan prison in 2009.

Fourth, from in or around 2000 to 2001, you, working with Ujaama, conspired to provide goods and services to the Taliban, including by sending money and other items to Taliban-controlled regions of Afghanistan.  You gave Ujaama money to be delivered to Abu Khabab, an al Qaeda explosives expert who ran an explosives training camp in Afghanistan.  Ujaama, who also conspired with Kassir at the above-described training camp in Oregon, pled guilty to multiple terrorism offenses and was subject to SAM from October 3, 2002, through April 15, 2003.

### B.   Basis for Special Administrative Measures

In addition to your involvement in the criminal conduct described above, you are an avowed proponent of terrorist attacks against non-Muslims, have repeatedly made public comments supporting terrorist attacks, and have demonstrated your willingness to utilize technology to further your aims and expand your influence.  Specifically, while Imam of the Finsbury Park Mosque in London, you utilized a website for your pro-jihad organization, the Supporters of Sharia, to communicate with supporters.  As detailed above, you have long held ties to senior-level terrorist leaders.  In addition, the USA/SDNY reports that since the SAM were imposed on January 3, 2013, and continuing through 2015, you have committed multiple violations of the restrictions.  For example, on June 15, 2013, while housed at the MCC, you violated the SAM by talking to another SAM inmate.  As a result, the MCC issued an incident report and suspended your telephone privileges for 30 days.  On another occasion during the first year of the SAM restrictions, a telephone call with your family was terminated after your family put the telephone call on speaker phone, despite notification at the onset of the call that speaker phone use was not permitted during the call.  You again violated the SAM in August 2014, when you communicated with another SAM inmate in Arabic.  As a result, you received another incident report from the MCC for refusing to obey an order.  This violation also resulted in suspension of your telephone privileges for a period of thirty days.

In 2018, you again sought to circumvent the SAM.  On or about August 13, 2018, you attempted to send mail containing an unapproved third party communication.  You wrote, "[D]on't tell him [the third party] that I love and miss him . . . because it's against the rules."  Interpreting this letter as an exhortation to the recipient to forward the quoted language to the third party, in violation of the SAM, the ADX returned the letter to you.

**"Sensitive But Unclassified"**

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 4

A July 25, 2019, modification of the SAM prohibited contact with your son, Sufyan Mostafa, after you commented in a monitored telephone call with your wife that Sufyan Mostafa was involved in fighting with Syria, which the FBI was able to confirm through open source reporting.

In 2021, the FBI approved the following additional contacts you requested and those contacts are accordingly incorporated in the SAM.  Your request to add one son, Imran Mostafa Kamel Mostafa, was approved for non-legal mail, telephone, and visitation contact, and this is set forth in the SAM by deletion of this son, an immediate family member, as a prohibited contact.  Your request to add your grandson, Mosab Asim, was approved for non-legal mail and visitation with his mother Mariam Mostafa, who is an approved contact.  Your request to add your grandson, Ahmed Othman Mostafa, was approved for non-legal mail and visitation with his father Othman Mostafa, who is an approved contact.

You request to add three grandsons, Yahya Mohamed Mostafa, Yassin Mostafa, and Omar Sufyan Mostafa, was approved for visitation only with an approved contact. Yahya Mohamed Mostafa and Yassin Mostafa reside with their father, Mohammed Mostafa Kamel, who is a non-approved contact due to derogatory information.  Omar Sufyan Mostafa resided with his father Sufyan Mostafa, who is a non-approved contact due to derogatory information. Your contact requests to add your stepson Mohsin Gailan, your son Mohammed Mostafa Kamel, and your son Sufyan Mostafa Kamel are not authorized in this SAM.  There is a wealth of information providing a continuing basis to deny you access to these three relatives.

Critically, Mohammed Mostafa Kamel was part of the criminal enterprise in Yemen (the case prosecuted against you), and he now is imprisoned in a Turkish prison for drug dealing.  Allowing you to send letters to that Turkish prison was denied, especially because of the possibility Mohammed Mostafa Kamel might disseminate such letters to the other Turkish inmates, including like-minded jihadists.

You conspired with Mohsin Ghailan, your stepson, to carry out a kidnapping plot in Yemen.  You aided and abetted that group in kidnapping 16 non-Muslim tourists in Yemen, including two Americans, to attempt to compel the Yemeni government to release your followers from custody.  Four hostages died in the kidnapping.  Your son, Mohammed Mostafa Kamel, was also in Yemen at the time of the kidnapping, wanted by the authorities and seeking to avoid capture.

Sufyan Mostafa has been stripped of his British passport and has called for the death of Bashar al Assad.  Further, he has an extremely active presence on social media, on which he shares jihadist propaganda.  Sufyan Mustafa is a well known jihadi fighter and remains free to use social media to spread his hate against the west.

"Sensitive But Unclassified"

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 5

Given your convictions for terrorism-related offenses, as well as the substantial number of your followers who have been convicted of terrorism offenses, including Richard Reid, Oussama Kassir, James Ujaama, Haroon Aswat, and Zacarias Moussaoui, communications made or received by you could pose an operational threat, even though you are incarcerated.

## CONCLUSION

Based upon information provided of your proclivity for violence, particularly your ties to terrorist leaders; your leadership of thousands of followers; your past advocacy for violence; your willingness and ability to motivate your followers to engage in acts of violence, terror, and murder; your continued following by extremists; and your demonstrated sophistication in communicating internationally, there is substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons.  Accordingly, we will continue to implement SAM to restrict your access to the mail, the media, the telephone, and visitors.

1) **General Provisions**

   a) **Adherence to Usual United States Marshals Service (USMS), BOP, and Detention Facility (DF) Policy Requirements** – In addition to the below-listed SAM, you must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc.  If there is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM are more restrictive than usual USMS/BOP/DF policies, then the SAM shall control.  If usual USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF policies shall control.

   b) **Interim SAM Modification Authority** – During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify your SAM as long as any SAM modification authorized by the OEO:

      i) Does not create a more restrictive SAM;

      ii) Is not in conflict with the request of the USA/SDNY, FBI, USMS/BOP/DF, or applicable regulations; and

      iii) Is not objected to by the USA/SDNY, FBI, or USMS/BOP/DF.

   c) **Inmate Communication Prohibitions** –

**"Sensitive But Unclassified"**

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 6

    i)    You are limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written, or recorded communications) with any other inmate, visitor, attorney, or anyone else, except as outlined and allowed by this document, that could reasonably foreseeably result in you communicating (sending or receiving) information that could circumvent the SAM's intent of significantly limiting your ability to communicate (send or receive) threatening or other terrorism-related information.

    ii)    The USMS/BOP/DF may permit you to communicate with other SAM inmates orally only during certain predesignated times, the place and duration to be set by the USMS/BOP/DF. You shall not have any physical contact with other inmates during this predesignated time and all such predesignated sessions may be monitored and/or recorded. Upon request of the FBI, a copy of the recordings will be provided by the USMS/BOP/DF to the FBI to be analyzed for indications that you are attempting to pass messages soliciting or encouraging acts of terrorism, violence, or other crimes.

d)    **Use of Interpreters/Translators by the USMS/BOP/DF** – Interpreter/ translator approval requirement:

    i)    The USMS/BOP/DF may use Department of Justice (DOJ) approved interpreters/translators as necessary for the purpose of facilitating communication with you.

    ii)    No person shall act as an interpreter/translator without prior written clearance/approval from the USMS/BOP/DF, which shall only be granted after consultation with the FBI and USA/SDNY.

    iii)    Interpreters/translators utilized by the USMS/BOP/DF shall not be allowed to engage in, or overhear, unmonitored conversations with you. Interpreters/translators shall not be alone with you, either in a room or on a telephone or other communications medium.

2)    <u>**Attorney-Client Provisions**</u>

a)    **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document** – Your attorney (or counsel) – individually by each if more than one – must sign

---

[1] The term "attorney" refers to the inmate's attorney of record, who has been verified and documented by the USA/SDNY, and who has received and acknowledged receipt of the SAM restrictions document. As used in this document, "attorney" also refers to more than one attorney

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 7

an affirmation acknowledging receipt of the SAM restrictions document. By signing the affirmation, the attorney acknowledges his or her awareness and understanding of the SAM provisions and his or her agreement to abide by these provisions, particularly those that relate to contact between you and your attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM. However, in signing the affirmation, your attorney and precleared staff,[2] acknowledge the restriction that they will not forward third-party messages to or from you.

i) The USA/SDNY shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to your attorney.

ii) After initiation of the SAM and prior to your attorney being permitted to have attorney-client privileged contact with you, your attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/SDNY.

iii) The USA/SDNY shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to OEO in Washington, D.C., and the USMS/BOP/DF.

b) **Attorney Use of Interpreters/Translators** –

i) **Necessity Requirement** – No interpreter/translator shall be utilized unless absolutely necessary where you do not speak a common language with the attorney. Any interpreter/translator shall be precleared.[3]

---

where the inmate is represented by two or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his or her individual capacity.

[2] "Precleared," when used with regard to an attorney's staff, or "precleared staff member," refers to a co-counsel, paralegal, or investigator who is actively assisting the inmate's attorney with the inmate's post-sentencing proceedings, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his or her signature – to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one staff member, and the provisions of this document shall be fully applicable to each such staff member in his or her individual capacity. A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

[3] "Precleared," when used with regard to an interpreter/translator, refers to an interpreter/translator who is actively assisting the inmate's attorney with the inmate's defense, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed –

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 8

    ii)    **Attorney Immediate Presence Requirement** – Any use of an interpreter/translator by the attorney shall be in the physical and immediate presence of the attorney – i.e., in the same room.  The attorney shall not patch through telephone calls, or any other communications, to or from you.

    iii)   **Translation of Inmate's Correspondence** – An attorney of record may only allow a precleared interpreter/translator to translate your correspondence as necessary for attorney-client privileged communication.

c)    **Attorney-Client Privileged Visits** – Attorney-client privileged visits may be contact or non-contact, at the discretion of the USMS/BOP/DF.

d)    **Attorney May Disseminate Inmate Conversations** – Your attorney may disseminate the contents of your communications to third parties for the sole purpose of preparing your defense – and not for any other reason – on the understanding that any such dissemination shall be made solely by your attorney, and not by the attorney's staff.

e)    **Unaccompanied Attorney's Precleared Paralegal(s) May Meet With Client** – Your attorney's precleared paralegal(s) may meet with you without the need for your attorney to be present.  These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

f)    **Simultaneous Multiple Legal Visitors** –You may have multiple legal visitors provided that at least one of the multiple legal visitors is your attorney or precleared paralegal.  These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.  An investigator or interpreter/translator may not meet alone with you.

g)    **Legally Privileged Telephone Calls** – The following rules refer to all legally privileged telephone calls or communications:

    i)    **Inmate's Attorney's Precleared Staff May Participate in Inmate Telephone Calls** – Your attorney's precleared staff are permitted to communicate directly with you by telephone, provided that your attorney is physically present and participating in the legal call as well.

---

as evidenced by his or her signature – to adhere to the SAM restrictions and requirements.

**"Sensitive But Unclassified"**

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 9

ii)    **Inmate's Initiation of Legally Privileged Telephone Calls** – Your initiated telephone communications with your attorney or precleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to you only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is your attorney.  This privilege is contingent upon the following additional restrictions:

(1)    Your attorney will not allow any non-precleared person to communicate with you, or to take part in and/or listen to or overhear any communications with you.

(2)    Your attorney must instruct his or her staff that:

(a)    Your attorney and precleared staff are the only persons allowed to engage in communications with you.

(b)    Your attorney's staff (including the attorney) are not to patch through, forward, transmit, or send your calls, or any other communications, to third parties.

(3)    No telephone call/communication, or portion thereof, except as specifically authorized by this document:

(a)    Is to be overheard by a third party.[4]

(b)    Will be patched through, or in any manner forwarded or transmitted, to a third party.

(c)    Shall be divulged in any manner to a third party, except as otherwise provided in Section 2.d. above.

(d)    Shall be in any manner recorded or preserved.[5]  Your attorney may make written notes of attorney-client privileged communications.

(4)    If the USMS/BOP/DF, FBI, or USA/SDNY determines that you have used or are using the opportunity to make a legal call to speak with

---

[4] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities when acting in connection with their official duties.  This section does not allow monitoring of attorney-client privileged communications.
[5] Except by the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities.  This section does not allow monitoring of attorney-client privileged communications.

**"Sensitive But Unclassified"**

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 10

another inmate or for any other non-legal reason that would circumvent the intent of the SAM, your ability to contact your attorney by telephone may be suspended or eliminated.

h) **Documents Provided by Attorney to Inmate** – During a visit, your attorney may provide you with, or review with you, documents related to your defense, including discovery materials, court papers (including indictments, court orders, motions etc.), and/or material prepared by your attorney related to such proceedings, so long as any of the foregoing documents are translated, if translation is necessary, by a precleared interpreter/translator. Any documents not related to your defense must be sent to you via general correspondence and will be subject to the mail provisions of subparagraphs 2.i. and 3.g. Documents previously reviewed and cleared for receipt by you, and already in your possession at the outset of the visit, may be discussed or reviewed by you and your attorney during the visit.

   i) None of the materials provided may include inflammatory materials, materials inciting violence, military training materials, or materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USA/SDNY and FBI.

   ii) The USA/SDNY may authorize additional documents to be presented to you. If any document not listed or described above needs to be transmitted to you, consent for the transmission of the document may be obtained from the USA/SDNY without the need to formally seek approval for an amendment to the SAM.

i) **Legal Mail**[6] – Your attorney may not send, communicate, distribute, or divulge your mail, or any portion of its contents (legal or otherwise), to third parties, except when disclosure of the contents is necessary for the sole purpose of providing necessary legal services related to your post-sentencing proceedings – and not for any other reason. In signing the SAM acknowledgment document, your attorney and precleared staff will acknowledge the restriction that only your case-related documents will be presented to you, and that your attorney and his or her staff are strictly prohibited from forwarding third-party mail to or from you.

---

[6] "Legal Mail" is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney. All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail."

**"Sensitive But Unclassified"**

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 11

3)   **Inmate's Non-legal Contacts**

   a)   **Non-legally Privileged Telephone Contacts –**

      i)   You are only authorized to have non-legally privileged telephone calls with your immediate family members, as well as with Belal Mostafa and Stephen Coles.[7]  However, you shall not be permitted to have telephone contact with your two sons, Mohammed Mostafa Kamel, and Sufyan Mostafa.

      ii)   The quantity and duration of your non-legally privileged telephone calls with your immediate family members (except Mohammed Mostafa Kamel and Sufyan Mostafa), Belal Mostafa, and Stephen Coles, shall be set by the USMS/BOP/DF, with a minimum of one call per month.

   b)   **Rules for Telephone Calls** – For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

      i)   Is to be overheard by a third party.

      ii)   Is to be patched through, or in any manner forwarded or transmitted, to a third party.

      iii)   Shall be divulged in any manner to a third party.

      iv)   Shall be in any manner recorded or preserved.[8]

      All telephone calls shall be in English unless a fluent USMS/BOP/DF- or FBI-approved interpreter/translator is available to contemporaneously monitor the telephone call.  Arranging for an interpreter/translator may require at least fourteen (14) days' advance notice.

   c)   **Telephone SAM Restriction Notifications** – For all non-legally privileged telephone calls to your immediate family member(s) (except Mohammed Mostafa Kamel and Sufyan Mostafa), Belal Mostafa, and Stephen Coles:

      i)   The USMS/BOP/DF shall inform you of the telephone SAM restrictions prior to each telephone call.

---

[7] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF- or FBI-verifiable) spouse, children, parents, and siblings.  Requests for additional non-legal contacts may be submitted and will be considered on a case-by-case basis.
[8] Except by the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities.

**"Sensitive But Unclassified"**

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 12

    ii)    The USMS/BOP/DF shall verbally inform your immediate family member(s) (except Mohammed Mostafa Kamel and Sufyan Mostafa), Belal Mostafa, and Stephen Coles on the opposite end of your telephone communication of the SAM restrictions. The USMS/ BOP/DF is only required to notify your communication recipient in English.

    iii)    The USMS/BOP/DF shall document each such telephone notification.

d)    **Family Call Monitoring** – All calls with your immediate family member(s) (except Mohammed Mostafa Kamel and Sufyan Mostafa), Belal Mostafa, and Stephen Coles may be:

    i)    Contemporaneously monitored by the FBI.

    ii)    Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

    iii)    A copy of each telephone call recording involving an inmate/immediate family member/authorized contact shall be provided to the FBI by the USMS/BOP/DF. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

e)    **Improper Communications** – If telephone call monitoring or analysis reveals that any call or portion of a call involving you contains any indication of a discussion of illegal activity, the soliciting of or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, you shall not be permitted any further calls to your authorized immediate family members, Belal Mostafa, or Stephen Coles for a period of time to be determined by the USMS/BOP/DF. If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

f)    **Non-legal Visits –**

    i)    **Limited Visitors** – You shall be permitted to visit only with your immediate family members, Belal Mostafa, Stephen Coles, grandson Mosab Asim accompanied by his mother Mariam Mostafa, grandson Ahmed Othman Mostafa accompanied by his father Othman Mostafa, grandson Yahya Mohamed Mostafa accompanied by an authorized contact, grandson Yassin Mostafa accompanied by an authorized contact, and grandson Omar Sufyan Mostafa accompanied by an authorized

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 13

> contact. However, you will not be permitted to visit with your sons, Mohammed Mostafa Kamel and Sufyan Mostafa. The visitor's identity and family member relationship to you will be confirmed by the USMS/BOP/DF and FBI in advance.

ii) **English Requirement** – All communications during non-legal inmate visits will be in English unless a fluent USMS/BOP/DF- or FBI-approved interpreter/translator is readily available to contemporaneously monitor the communication/visit. Arranging for an interpreter/translator may require at least fourteen (14) days' advance notice.

iii) **Visit Criteria** – All non-legal visits shall be:

   (1) Contemporaneously monitored by the USMS/BOP/DF and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

   (2) Permitted only with a minimum of fourteen (14) calendar days' advance written notice to the USMS/BOP/DF facility where you are housed.

   (3) Without any physical contact. All such meetings shall be non-contact to protect against harm to visitors or staff.

   (4) Limited to one adult visitor at a time. However, your FBI-verified children (except Mohammed Mostafa Kamel and Sufyan Mostafa) may visit with a pre-approved adult visitor.

g) **Non-legal Mail** – Non-legal mail is any mail not clearly and properly addressed to/from your attorney and marked "Legal Mail" (incoming or outgoing). In addition to non-legal mail from your attorney, as discussed in subparagraph 2.h. above, non-legal mail is only authorized with your immediate family members (except Mohammed Mostafa Kamel and Sufyan Mostafa), Belal Mostafa, Yosab Asim, Ahmed Othman Mostafa, Stephen Coles, U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, or other federal law enforcement entities.

   i) **General correspondence with limitations** – Correspondence is only authorized with immediate family members (except Mohammed Mostafa Kamel and Sufyan Mostafa), Belal Mostafa, Yosab Asim, Ahmed Othman Mostafa and Stephen Coles. The volume and frequency of outgoing

**"Sensitive But Unclassified"**

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 14

       general correspondence with immediate family members (except Mohammed Mostafa Kamel and Sufyan Mostafa), Belal Mostafa, Yosab Asim, Ahmed Othman Mostafa, and Stephen Coles may be limited to three pieces of paper (not larger than 8 ½" by 11"), double-sided, once per calendar week to a single recipient, at the discretion of the USMS/BOP/DF. The identity and family member relationship to you will be confirmed by the USMS/BOP/DF and FBI.

ii)    **General correspondence without limitations** – There is no volume or frequency limitation on correspondence to/from U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, and other federal law enforcement entities, unless there is evidence of abuse of these privileges, threatening correspondence is detected, circumvention of the SAM is detected, or the quantity to be processed becomes unreasonable to the extent that efficient processing to protect the security, good order, or discipline of the institution, the public, or national security may be jeopardized.

iii)    All non-legal mail shall be –

    (1)    **Copied** – Shall be copied (including the surface of the envelope) by the warden, or his or her designee, of the facility in which you are housed.

    (2)    **Forwarded** – Shall be forwarded, in copy form, to the location designated by the FBI.

    (3)    **Analyzed** – After government analysis and approval, if appropriate, your incoming/outgoing non-legal mail shall be forwarded to the USMS/BOP/DF for delivery to you (incoming), or directly to the addressee (outgoing).

iv)    The federal government shall forward your non-legal mail to the USMS/BOP/DF for delivery to you or directly to the addressee after a review and analysis period of:

    (1)    A reasonable time not to exceed fourteen (14) business days for mail that is written entirely in the English language.

    (2)    A reasonable time not to exceed sixty (60) business days for any mail that includes writing in any language other than English, to allow for translation.

**"Sensitive But Unclassified"**

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 15

      (3)   A reasonable time not to exceed sixty (60) business days for any mail where the federal government has reasonable suspicion to believe that a code was used, to allow for decoding.

   v)   **Mail Seizure** – If outgoing/incoming mail is determined by the USMS/ BOP/DF or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to the FBI for appropriate action.  You shall be notified in writing of the seizure of any mail.

4)   **<u>Communication with News Media</u>** – You shall not be permitted to speak, meet, correspond, or otherwise communicate with any member or representative of the news media in person; by telephone; by furnishing a recorded message; through the mail, your attorney, or a third party; or otherwise.

5)   **<u>Religious Visitation</u>**

   a)   If a USMS/BOP/DF- and/or FBI-approved religious representative is to be present for prayer with you, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the USMS/BOP/DF.

6)   **<u>No Communal Cells and No Communication Between Cells</u>**

   a)   You shall not be allowed to share a cell with another inmate.

   b)   You shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate by making statements audible to other inmates or by sending notes to other inmates, except as permitted in Section 1.c., above.

7)   **<u>Cellblock Procedures</u>**

   a)   You shall be kept separated from other inmates as much as possible while in the cellblock area.

   b)   You shall be limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 16

8)   **Access to Mass Communications** – To prevent you from receiving and acting upon critically timed information or information coded in a potentially undetectable manner, your access to materials of mass communication is restricted as follows:

a)   **Publications/Newspapers –**

   i)   You may have access to publications determined not to facilitate criminal activity or be detrimental to national security; the security, good order, or discipline of the institution; or the protection of the public.  This determination is to be made by the USMS/BOP, in consultation with the USA/SDNY.  You may correspond with the publishing company regarding technical aspects of the publication, i.e., availability of particular volumes, billing questions, etc.  The review of this correspondence will be in accordance with section 8(a)(iii), below.

   ii)   Sections of any publication/newspaper that offer a forum for information to be passed by unknown and/or unverified individuals, including but not limited to classified advertisements and letters to the editor, should be removed from the publications/newspapers prior to distribution to you.

   iii)   If restricted by the USMS/BOP/DF rules, access to a publication will be denied.  If acceptable, upon delivery, the USMS/BOP/DF will review the publication and make the initial determination.  If the FBI's expertise is required, the publication will be forwarded to the FBI for review.  The USMS/BOP/DF will also forward the publication to the FBI if translations are needed to make that determination.  (In these cases, the FBI shall respond to the USMS/BOP/DF within fourteen (14) business days.)  You shall then have access to the remaining portions of the publications/ newspapers deemed acceptable, in accordance with USMS/BOP/DF policy.

   iv)   In order to avoid passing messages/information from inmate to inmate, you shall be allowed to share institutionally purchased publications/ newspapers with other SAM inmates only after each publication/ newspaper is physically screened by staff to ensure that messages cannot be passed between the SAM inmates.  Publications/newspapers individually purchased by you may not be shared with any other inmate.

b)   **Television and Radio –** You are authorized to have television and radio viewing and listening privileges, in accordance with standard and applicable USMS/BOP/DF policies and procedures.

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 17

    c)   **Termination or Limitation** -- If the USMS/BOP/DF determines that mass communications are being used as a vehicle to send messages to you relating to the furtherance of terrorist or criminal activities, your access may be limited or terminated for a period of time to be determined by the USMS/ BOP/DF.

9)   **Access to Books**

    a)   You may have access to all books that do not facilitate criminal activity or present a substantial threat to national security or the security, discipline, or good order of the institution. This initial determination is to be made by the USMS/BOP/DF and, if the USMS/BOP/DF determines that the FBI's expertise is required, the book(s) will be forwarded to the FBI for review. In conducting its analysis, the FBI will determine whether the book advocates or promotes acts of terrorism or violence and/or whether access to the book by you would pose a substantial threat to national security.

    b)   In order to avoid passing messages/information from inmate to inmate, you shall be allowed to share institutionally purchased books with other SAM inmates only after each book is physically screened by staff to ensure that messages cannot be passed between the SAM inmates. Books individually purchased by you may not be shared with any other inmate.

10)  **Transfer of Custody**

   In the event that you are transferred to or from the custody of the USMS, BOP, or any other DF, the SAM provisions authorized for you shall continue in effect, without need for any additional DOJ authorization.

11)  **Inmate's Consular Contacts**

   You, a citizen of a foreign country, shall be allowed Consular communications and visits, consistent with USMS/BOP/DF policy. The Consular contacts shall comply with the U.S. Department of State (DOS) Consular notification and access requirements.[9] Prior to permitting any Consular contact, the FBI will verify the Consular representative's credentials with the DOS.

---

[9] *See* Consular Notification and Access, Instructions for Federal, State, and Local Law Enforcement and Other Officials Regarding Foreign Nationals in the United States and the Rights of Consular Officials to Assist Them, DOS. The DOS contact is the Consular Notification and Access (CAN), DOS, telephone (202) 485-7703 or http://www.travel.state.gov/CNA.

**"Sensitive But Unclassified"**

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 18

**CONCLUSION**

The SAM set forth herein, especially as they relate to attorney-client privileged communications and family contact, are reasonably necessary to prevent you from committing, soliciting, or conspiring to engage in additional criminal activity.  Moreover, these measures are the least restrictive that can be tolerated in light of your ability to aid, knowingly or inadvertently, in plans that create a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons.

With respect to telephone privileges, the SAM are reasonably necessary because of the high probability of calls to co-conspirators to arrange terrorist or criminal activities.

With respect to mail privileges, the SAM are necessary to prevent you from receiving or passing along critically timed messages.  Accordingly, your interest in the timely receipt and/or submission of mail, with the possible danger the contents of the mail may pose to others has been weighed.  It has been determined that delaying mail delivery to allow authorized personnel to examine a copy of the mail is the least restrictive means available to ensure that the mail is not being used to deliver requests for, or to assist in, violent threats, and/or criminal acts against government witnesses or others.

To the extent that the use of an interpreter/translator is necessary, the government has the right to ensure that the interpreter/translator given access to you is worthy of trust.

The SAM's prohibition of contact with the media is reasonably necessary. Communication with the media could pose a substantial risk to public safety if you advocate terrorist, criminal, and/or violent offenses, or if you make statements designed to incite such acts.  Based upon your past behavior, it would be unwise to wait until after you solicit or attempt to arrange a violent or terrorist act to justify such media restrictions.

The SAM's limitations on access to mass communications are reasonably necessary to prevent you from receiving and acting upon critically timed messages. Such messages may be placed in advertisements or communicated through other means, such as the television and/or radio.  It is believed that limiting and/or delaying media access may interrupt communication patterns you may develop with the outside world, and ensure that the media is not used to communicate information that furthers terrorist, violent, and/or criminal activities.

Notification of Extension of Special Administrative Measures (SAM)
Kamel Mostafa, Reg. No. 67495-054
January 6, 2022
Page 19


These conditions are imposed by the USMS/BOP/DF at the request of the Attorney General, through his designated agent, the Deputy Assistant Attorney General.


Received: January  06 , 2022
       (18 pages)

Kamel Mostafa
Reg. No. 67495-054

**"Sensitive But Unclassified"**

**Affirmation**

By signing below, I acknowledge receipt of the SAM restrictions document for <u>Federal inmate Kamel Mostafa, Reg. No. 67495-054</u>, dated <u>January 3, 2022</u>. By signing the affirmation, I acknowledge my awareness and understanding of the SAM provisions and my agreement to abide by these provisions, particularly those that relate to contact between the inmate and his attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM. However, in signing the affirmation, I acknowledge the restriction that neither I nor my staff will forward third-party messages to or from the inmate.

[signature]

Paul Wolf

[printed name]

January 9, 2022

[date]