# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00694-PAB-NYW

MOSTAFA KAMEL MOSTAFA,

Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
TUTOILUMUNDO, ADX Unit Manager, in his official capacity,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her official capacity,
LOEWE, ADX officer, in his official capacity,
NORJANO, ADX Officer, in his official capacity,
CHOROSEVIC, ADX Occupational Therapist, in his individual capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
WILLIAM, ADX Nurse, in his individual capacity,
HUDELSTON, ADX Nurse, in his individual capacity,
STERETT, ADX Doctor, in his individual capacity,
ARMIJO, ADX Lieutenant, in his individual capacity, and
EDWARDS, ADX Officer, in his individual capacity.

Defendants.

## Memorandum of Points and Authorities in Support of
## Plaintiff's Motion for Leave to Amend Complaint

Paul Wolf, CO Bar #42107
*Attorney for Mostafa Kamel Mostafa*
P.O. Box 21840
Washington, D.C  20009
(202) 431-6986
paulwolf@yahoo.com
fax: n/a

May 16, 2022

# TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………………….. i.

TABLE OF AUTHORITIES ………………………………………………………… ii.

FACTUAL SUMMARY ……………………………………………………………….. 1.

ARGUMENT ……………………………………………………………………………… 3.

I.     The Court should exercise its discretion in granting leave to amend. …………….. 3.

        A.     The Plaintiff will be unfairly prejudiced if his arguments are limited by the Court's constructions of his claims. …………………………..…. 4.

                1.     The Plaintiff has stated claims under the Rehabilitation Act, a disability law that applies to Federal prisoners. ………………… 5.

                2.     The Plaintiff has stated claims under the Administrative Procedure Act for Constitutional claims for injunctive relief. ……. 6.

                3.     The Plaintiff has stated claims under the Religious Freedom Restoration Act, which holds the Defendants to a higher standard than would be required by First Amendment Free Exercise claims. ………………………………………………….. 7.

        B.     Permitting the amendment wouldn't unfairly prejudice the Defendants. 9.

        C.     The Plaintiff's Motion is not untimely. ………………………………… 10.

CONCLUSION ……………………………………………………………………… 11.

# TABLE OF AUTHORITIES

**Cases**

Barnes v. Gorman, 536 U.S. 181 (2002) ……………………………………….………..   5.

Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) ………………....…   4, 6, 10.

Brown v. Chapman, 814 F.3d 436 (6th Cir. 2016) ………………………….………..   10.

Bylin v. Billings, 568 F.3d 1224 (10th Cir. 2009) ……………………………….….   9-10.

Carty v. Farrelly, 957 F.Supp. 727 (D.V.I. 1997) ………………………………….……   6.

Cohen v. Longshore, 621 F.3d 1311 (10th Cir. 2010) …………………….……………   3.

Correctional Serv's. Corp. v. Malesko, 534 U.S. 61  (2001) ………………….…..….…   6.

Cutter v. Wilkinson, 544 U.S. 709 (2005) ………………………………………….…...   8.

Employment Division v. Smith, 494 U.S. 872 (1990) …………...……………………..   7.

Fahim v. Marriott Hotel Servs., Inc., 551 F.3d 344 (5th Cir. 2008) ………………………   10.

Foman v. Davis, 371 U.S. 178 (1962) ……………………………………….……………   3.

Greene v. Solano County Jail, 513 F.3d 982 (9th Cir. 2008) ………………………….…..   8.

Haines v. Kerner, 404 U.S. 519 (1972) …………………………………………………...   4.

Hall v. Spencer County, 583 F.3d 930 (6th Cir. 2009) ………………………………………   11.

Herndon v. Johnson, 970 F.Supp. 703 (E.D. Ark. 1997) ……………………………………   6.

Johnson v. City of Shelby, 135 S.Ct. 346 (2014) ………………….……………………..   3.

Kaufman v. Carter, 952 F.Supp. 520 (W.D. Mich. 1996) …………………………………   5.

Koger v. Bryan, 523 F.3d 789 (7th Cir. 2008) ……………………………………………..   8.

Lindh v. Warden, Fed. Corr. Inst., 2:09-cv-00215-JMS-MJD (S.D. Ind. Jan. 11, 2013) ….   9.

McKinley v. Maddox, 2012 WL 3292389 (10th Cir. Aug. 14, 2012) ………………..……   8.

McKnight v. Kimberly Clark Corp., 149 F.3d 1125 (10th Cir. 1998) ……………………   9.

Meyer v. Teslik, 411 F. Supp. 2d 983 (W.D. Wis. 2006) ………………………………   8-9.

Minter v. Prime Equip. Co., 451 F.3d 1196 (10th Cir. 2006) ……………..…………   9-10.

Mohammed v. Holder, 47 F.Supp.3d 1236 (D. Colo. 2014) …………….………....   4, 6-7.

Morris v. Rumsfeld, 420 F.3d 287 (3d Cir. 2005) ………………….……………………   5.

O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987) …………………………….……   7.

Saunders v. Horn, 960 F. Supp. 893 (E.D. Pa. 1997) …………………………………...   6.

Shariff v. Coombe, 655 F. Supp. 2d 274 (S.D.N.Y. 2009) ………………………………..   5.

Sherbert v. Verner, 374 U.S. 398 (1963) …………………..……………………… 7.

Thomas v. Review Bd., 450 U.S. 707 (1981) ………………………………………….. 8.

Wagoner v. Lemmon, 778 F.3d 586 (7th Cir. 2015) ………………………………………… 5.

Washington v. Ind. High Sch. Athletic Ass'n, Inc., 181 F.3d 840 (7th Cir.1999) ….……... 5.

Whitfield v. Illinois Dep't of Corr., 237 Fed. Appx. 93 (7th Cir. 2007) ………..……...… 9.

Wisconsin v. Yoder, 406 U.S. 205 (1972) …………………………….…………….. 7.

**Statutes**

5 U.S.C. § 500 et seq. (The Administrative Procedure Act) …………………..…….. 5, 6-7.

1829 U.S.C. § 794(a) (§ 504 of the Rehabilitation Act of 1973) ……………………….. 4.

42 U.S.C. § 2000e–5 ……………………………………………………………... 5-8.

42 U.S.C. § 2000bb et seq. (The Religious Freedom Restoration Act of 1993) ….….... 5-8.

42 U.S.C. § 2000cc (The Religious Land Use and Institutionalized Persons Act) …… 8-9.

42 U.S.C. § 12101 et seq. (The Americans with Disabilities Act) ……..…….……... 4.

**Constitution**

U.S. Const. amend. I …………………………………………………………… 4, 7-9.

U.S. Const. amend. V ……………………………………………………………….. 6.

U.S. Const. amend. VIII ……………………………………………………………. 5.

**Rules**

Federal Rule of Civil Procedure 15(a)(2) ……………………………………………. 3.

Federal Rule of Civil Procedure 15(c) …………………………………………… 11.

**Other**

S. Rep. 103-11, 1993 U.S.C.C.A.N 1892 ……………………….…………………..… 7.

## FACTUAL SUMMARY

The Plaintiff initiated this action on March 12, 2020 by filing a pro se Prisoner Complaint asserting ten claims against six defendants, generally related to a lack of medical care and accomodation of his disabilities, the conditions of his confinement, the special administrative measures imposed on his communications, and an incident of excessive force during a hunger strike. [Doc. 6]. On April 6, 2020, the Honorable Judge Gallagher ordered the Plaintiff to file an Amended Prisoner Complaint to address various deficiencies identified by the court. [Doc. 6]. The Plaintiff filed an Amended Prisoner Complaint ("First Amended Complaint") on May 18, 2020, asserting claims for "[i]njuries, [d]iscrimination against [d]isability, cruel and unusual conditions in prolonged continuous dangerous solitary confinement in violation of several amendments such as: one, four, five, six, eight, and fourteen." Id.

On September 29, 2020, the Plaintiff filed a Motion for Temporary Restraining Order, with 14 Exhibits. [Doc 39.] The Plaintiff asked the Court to order the Defendants to provide him with accomodations for his disabilties, including prosthetic devices and changes to his cell. Id. These concerned a prosthetic electric toothbrush, and modifications to the toilet, shower and table in his cell. Id.

On November 2, 2020, Plaintiff filed a Pro Se Letter Motion (or "Motion to Amend"). [Doc. 43]. Attached to Plaintiff's Motion to Amend was a proposed Second Amended Prisoner Complaint. See [Doc. 43-1]. The Plaintiff enumerated five claims, for his complaints of "COVID-19 urgency, discrimination against my type of disability, cruel and unusual conditions in prolonged confined solitary confinement where no help, fittings, items, intimidations, physical assault, sleep deprivation, lack of medical, dental care in violation of several Amendments such as: 1, 4, 5, 6, 8, 14 … and other rules of Disability Act and COVID Prevention." [Doc 61 at 4].

1

In ruling on a Motion to Dismiss, Court construed the Second Amended Complaint as setting forth the following claims not subject to summary dismissal: (1) First Amendment familial association and free exercise claims asserted in Claim One against Defendants Garland, Director Wray, Director Carvajal, Warden True, and the Unknown SAMs Operatives in their official capacities; (2) Eighth Amendment conditions of confinement claims asserted in Claim Two against Defendants Garland, Director Wray, Director Carvajal, Warden True, Defendant MacMillan, and Defendant Follows in their official capacities; (3) Eighth Amendment excessive force claims asserted in Claim Three against Defendants Lt. Garduno, Officer Parry, and Officer Averit in their individual capacities; (4) Eighth Amendment deliberate indifference claims based on presentation of Plaintiff's food as asserted in Claim Five against Defendants Loewe, Gorjano, and True in their official capacities; and (5) an Eighth Amendment deliberate indifference claim based on refusal to dress wounds as asserted in Claim Five against Defendant William in his official capacity.  See  [Doc. 60] at 35.[1]  The Court didn't dismiss any of the Plaintiff's claims.

On January 27, 2021, the Court ordered that counsel be appointed through the pro bono program of the Court.  [Doc. 59]  On December 10, 2021, the Pro Bono Program of the Court listed the instant case among its available cases, and sent a description to attorneys participating in the program.  On the same day, the undersigned wrote to Ashley Sheehan of the Pro Bono Program, expressing interest in the case.  See [Doc. 168-6]  On December 16, 2021, the Court issued an Order of Appointment, a letter to the Plaintiff, and another Order requiring the

---

[1] The fictitious defendants "Unknown SAMs Operatives," who were listed as parties sued in their official capacities, have been removed from this complaint, since they are superfluous.  Suing the Attorney General in his official capacity is sufficient for any claims against the Department of Justice, including the Bureau of Prisons, Federal Bureau of Investigation, and Office of Enforcement Operations.  The DOJ also includes the Executive Office for U.S. Attorneys, encompassing the conduct of prosecutors involved in this case.

Defendants to treat communications between the undersigned and the Plaintiff as attorney client communications.

On January 26, 2022, the Court ordered the case be administratively closed, pursuant to D.C.COLO.LCivR 41.2, for ninety (90) days. See Recommendation and Order of United States Magistrate Judge at 7. [Doc. 177]  The case was reopened on April 27, 2022 by Minute Order. [Doc. 184].  The Court further ordered that the "Plaintiff shall file an amended complaint on or before 5/16/2022. Further, a Scheduling Conference is SET for 6/30/2022 at 10:00 AM before Magistrate Judge Nina Y. Wang, to be held in Courtroom A-502, 5th Floor, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado. The Proposed Scheduling Order is due 6/23/2022." Id.

## ARGUMENT

**I.     The Court should exercise its discretion in granting leave to amend.**

Federal Rule of Civil Procedure 15(a)(2) states that leave to amend should be "freely given."  Because the text of Rule 15(a)(2) unequivocally requires the court to grant leave to amend liberally, a court faces limits on its ability to deny leave to amend, which is reviewed for abuse of discretion.  Cohen v. Longshore, 621 F.3d 1311, 1313 (10th Cir. 2010).  The presumption is that a district judge should grant leave to amend absent a substantial reason to deny.  Foman v. Davis, 371 U.S. 178, 182 (1962).  The Foman case listed the following factors to be considered in determining whether to grant leave to amend: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment.  371 U.S. at 182.  In the exercise of its discretion, the court should be guided by the underlying purpose of allowing amendments to facilitate a decision on the merits.  Johnson v. City of

3

Shelby, 135 S.Ct. 346 (2014) (the federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted ... petitioners, on remand, should be accorded an opportunity to add to their complaint ...").

In the instant case, the imprisoned, pro se Plaintiff has no legal training, and has spread his allegations across various legal documents. See, e.g. Plaintiff's Motion for Temporary Restraining Order [Doc. 39] and Exhibits [Doc. 39-1], of 69 and 95 pages, respectively. The allegations and injuctive relief requested in this motion should have been incorporated into the complaint, which brings not only claims under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) ("Bivens") in the Prisoner Complaint Form, but also states claims under various other laws. The Supreme Court has held that allegations of pro se litigants are held to a less stringent standard than pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

### A. The Plaintiff will be unfairly prejudiced if his arguments are limited by the Court's constructions of his claims.

The Plaintiff's claims aren't limited to Bivens -type claims. In his Second Amended Complaint, the Plaintiff cited the "Disability Act," which is all of the legal knowledge a pro se ligitant needs to have to state a disability claim. See [Doc 61 at 4]. There are two statutes protecting the rights of disabled prisoners: Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq. In the prison context, the Rehabilitation Act applies to facilities run by federal agencies, including the Bureau of Prisons and other agencies receiving federal funding. The more familiar ADA regulates facilities run by state and local agencies. The Court's construction of the Plaintiff's claims didn't include any kind of disability claim. The Plaintiff also complained about his isolation, citing various provisions of the U.S. Constitution, including the First Amendment. These aren't Bivens type claims either. As the Court explained in Mohammed v.

4

Holder, 47 F.Supp.3d 1236 (D. Colo. 2014), Bivens the court hasn't extended Bivens to First Amendment claims. Nevertheless, constititional claims of any sort may be litigated under the Administative Procedure Act, 5 U.S.C. § 500 et seq., ("APA") which provides injunctive relief, but not money damages. Finally, insofar as the Plaintiff's isolation limits his practice of religion, he also has claims under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq.

### 1.  The Plaintiff has stated claims under the Rehabilitation Act, a disability law that applies to Federal prisoners.

The Plaintiff sued for disability claims, citing the "Disability Act." Nevertheless, the Court construed all of the Plaintiffs' claims as Bivens type claims. The Rehabilitation Act, rather than the Americans with Disabilitities Act, applies in this case, because the Plaintiff is incarcerated in a federal, rather than state facility. Like the Americans with Disabilities Act, the Rehabilitation Act incorporates 42 U.S.C. § 2000e–5 to create a private right of action. Barnes v. Gorman, 536 U.S. 181, 189 & n. 3 (2002); Morris v. Rumsfeld, 420 F.3d 287, 290 (3d Cir.2005); Washington v. Ind. High Sch. Athletic Ass'n, Inc., 181 F.3d 840, 845 n. 6 (7th Cir.1999). The Rehabilitation Act and ADA have been held to be "functionally identical." Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015).

Disabled prisoners often combine disability claims with arguments that prison officials have violated the Eighth Amendment of the U.S. Constitution by being deliberately indifferent to their medical needs. However, they are not interchangeable. Prisoners have sued to be able to use prison showers and toilets, and to be protected from injury or the risk of injury. Shariff v. Coombe, 655 F. Supp. 2d 274, 298-99 (S.D.N.Y. 2009) (inability of wheelchair-bound prisoners to access restrooms amounted to Eighth Amendment violation); Kaufman v. Carter, 952 F.Supp. 520, 523-24 (W.D. Mich. 1996) (failure to provide access to bathrooms and showers). Disabled prisoners have challenged inadequate medical care and prison officials' failure to provide them

5

with medical supplies or devices such as canes. <u>Saunders v. Horn</u>, 960 F. Supp. 893 (E.D. Pa. 1997) (failure to provide orthopedic shoes and cane); <u>Herndon v. Johnson</u>, 970 F.Supp. 703 (E.D. Ark. 1997). Disabled prisoners have also challenged their confinement in isolation and segregation units under the ADA and the Rehabilitation Act. <u>Carty v. Farrelly</u>, 957 F.Supp. 727, 741 (D.V.I. 1997) (prison officials violated ADA by housing inmate not suffering from mental illness with mentally ill prisoners because his cane was considered security threat).

### 2. The Plaintiff has stated claims under the Administrative Procedure Act for Constitutional claims for injunctive relief.

The Plaintiff's claims for incidents in which he was physically assaulted or left untreated are based on <u>Bivens.</u> The Defendants aren't entitled to qualified immunity because physically assaulting a prisoner, or refusing to treat a prisoner as a method of punishment, go beyond the official duties of a corrections officer or nurse. Importantly, the Court didn't dismiss any of the Plaintiff's <u>Bivens</u> claims as set forth in his <u>pro se</u> amended complaint. However, as the Court recognized in <u>Mohammed</u>, <u>Bivens</u> type claims have been recognized in alleged violations of the 5th Amendment's Due Process clause and the 8th Amendment's Cruel and Unusual Punishments clause to "provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer's unconstitutional conduct," and cautioned that "we have consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants." 47 F.Supp.3d at 1240, <u>quoting</u> <u>Correctional Serv's. Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001).

As the <u>Mohammed</u> case shows, the Administrative Procedure Act ("APA") fills the gaps, providing a remedy for agency action which is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or

6

immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; unsupported by substantial evidence; or unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. See 5 U.S. Code § 706 (2). This includes every constitutional right, including due process rights in how the Plaintiff's Administrative Remedy Program requests and appeals were processed. The APA is limited, though, because it can only lead to injuntive, or non-monetary relief. But it's the appropriate theory when an agency and its policies are responsible, rather than an an "individual officer's unconstitutional conduct." 47 F.Supp.3d at 1240.

> **3. The Plaintiff has stated claims under the Religious Freedom Restoration Act, which holds the Defendants to a higher standard than would be required by First Amendment Free Exercise claims.**

The Religious Freedom Restoration Act of 1993 ("RFRA") was enacted "to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). The statute reflects Congressional concern over the Supreme Court's holdings in Employment Division v. Smith, 494 U.S. 872 (1990), and O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), both of which, in Congress' view, weakened traditional First Amendment protections. See S. Rep. 103-11, 1993 U.S.C.C.A.N 1892, 1895-1901. Congress thought that Smith and Lone gave prison wardens a level of discretion that was too restrictive on prisoners' rights, and sought to hold the Warden to a higher standard than would be required by a constitutional claim.

The RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of 'general applicability'" unless it demonstrates that "the application of the burden to the person (1) is in furtherance of a

7

compelling governmental interest; and (2) is the least restrictive means of furthering that interest." 42 U.S.C. § 2000bb-1. The RFRA states that "the term 'exercise of religion' means "religious exercise, as defined in section 2000cc-5 of this title," 42 U.S.C. § 2000bb-2(4), RLUIPA. The term "religious exercise" means "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). The term refers not only to belief and profession but also "the performance of ... physical acts [such as] assembling with others for a worship service." Cutter v. Wilkinson, 544 U.S. 709, 720 (2005).

In the context of the Free Exercise Clause, the Supreme Court has held that a government imposes a substantial burden when it "puts substantial pressure on an adherent to modify his behavior and violate his beliefs." Thomas v. Review Bd., 450 U.S. 707, 718 (1981). The Seventh Circuit defined a substantial burden as "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." Koger v. Bryan, 523 F.3d 789, 799 (7th Cir. 2008) (internal citation omitted) "We have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise," and, therefore, prohibiting the plaintiff "from attending religious worship services substantially burden[s] his ability to exercise his religion." Greene v. Solano County Jail, 513 F.3d 982, 988 (9th Cir. 2008); McKinley v. Maddox, No. 11-6263, 2012 WL 3292389, at *5 (10th Cir. Aug. 14, 2012) (refusal to permit inmate to attend church services constitutes a substantial burden on his religious exercise).

"[P]laintiff's ability to practice his faith by means other than group prayer is irrelevant to the question whether his ability to freely exercise his beliefs was substantially burdened." Meyer v. Teslik, 411 F. Supp. 2d 983, 989 (W.D. Wis. 2006). "Unlike the First Amendment, RLUIPA protects more than the right to practice one's faith; it protects the right to engage in specific,

8

meaningful acts of religious expression in the absence of a compelling reason to limit expression." Id.; see Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.  This applies under the RFRA as well, because the RFRA and RLUIPA are "substantively identical with respect to prisoners' entitlements." Whitfield v. Illinois Dep't of Corr., 237 Fed. Appx. 93, 94 (7th Cir. 2007)   Group prayer isn't allowed in the H Unit, even though Muslim prisoners are segregated there.  The right to group prayer was upheld by the Southern District of Indiana in Lindh v. Warden, Fed. Corr. Inst., 2:09-cv-00215-JMS-MJD (S.D. Ind. Jan. 11, 2013).  This claim is of a different nature than Plaintiff's First Amendment claims that his SAMs prohibit him from contacting his grandchildren.

**B.      Permitting the amendment wouldn't unfairly prejudice the Defendants.**

Typically, prejudice is found only when an amendment unfairly affects the nonmovant in terms of preparing a response to the amendment.  Bylin v. Billings, 568 F.3d 1224, 1229-1231 (10th Cir. 2009); McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1130 (10th Cir. 1998) (defendant would be prejudiced when many key individuals would have had to be deposed again if complaint were amended, and plaintiff was aware of information on which proposed amendment was based prior to filing original complaint); Minter v. Prime Equip. Co., 451 F.3d 1196, 1204-1211 (10th Cir. 2006) (courts typically find prejudice only when amendment would unfairly affect defendants in terms of preparing defense, which occurs most often when amended claims arise out of different subject matter from existing claims or raise new factual issues).

Here, there is no prejudice because the Plaintiff alleged most of the facts in the Proposed Third Amended Complaint in several court filings, particularly in Motion for Temporary Restraining Order, which attached 14 Exhibits.  [Doc 39.]  The Defendants have been on notice of the nature of the Plaintiffs' claims, even if they weren't framed in terms of the applicable laws.

9

See e.g. Brown v. Chapman, 814 F.3d 436, 442-443 (6th Cir. 2016) (plaintiff had not included formal claim that police had acted with conscious indifference to safety of her son, but included accusation in factual portion of pleading; defendants were sufficiently on notice of potential claim).  Finally, the Defendants' work already spent on briefing the Bivens claims won't go to waste, since those claims remain in the Proposed Third Amended Complaint, along with the Plaintiffs' new claims.

### C. The Plaintiff's Motion is not untimely.

Courts may grant motions for leave to amend at any stage of the proceedings.  Bylin, 568 F.3d at 1229-1231 (10th Cir. 2009) (district court did not err by granting leave to amend to add limitations defense on eve of trial, resulting in dismissal of all claims, when late amendment did not prejudice plaintiffs because they had adequate notice of motion to amend and had been allowed ample time to respond); cf. Minter, 451 F.3d at 1204-1211 (Tenth Circuit focuses on reasons for delay, so that denial of leave to amend may be proper when party seeking amendment has no adequate explanation for delay, even if prejudice is not shown).  The Plaintiff has been diligent and didn't miss any deadline to amend his complaint.  However, even in that circumstance, a court should permit amendment after the time allowed if it is in the interest of justice and sound judicial administration, particularly where there is no substantial injury to the opposing party, and refusal of leave to amend might result in injustice to the movant.  Fahim v. Marriott Hotel Servs., Inc., 551 F.3d 344, 348 (5th Cir. 2008) (factors relevant to good cause in this situation may include (1) explanation for failure to timely move for leave to amend, (2) importance of the amendment, (3) potential prejudice to allowing amendment and (4) availability of continuance to cure any prejudice).  The Plaintiff isn't to blame for the delay between this

Court's appointment order in January, 2021, and publication by the Pro Bono program of the Court. See [Doc. 168-6].

Finally, the new claims relate back to the times that the Plaintiff made factual allegations in his earlier complaints, and are not barred by statutes of limitations. See Hall v. Spencer County, 583 F.3d 930, 934 (6th Cir. 2009) ("While the amended complaint is substantially more sophisticated than the original complaint and asserts a new motivation for the reduction pursuant to a different constitutional claim, it merely asserts a new legal theory arising out of the same occurrance as asserted in the original complaint. It thus satisfies our test for relation back under the liberal standard required by Rule 15(c).").

## Conclusion

For the foregoing reasons, the Court should GRANT Plaintiff's Motion for Leave to Amend, and Order Plaintiff to refile his Proposed Third Amended Complaint as his Third Amended Complaint. Further, the Court should DENY Defendants' Motion to Dismiss and Motion for Summary Judgment [Doc. 96, 102] as MOOT.

Respectfully submitted,

/s/ Paul Wolf

_____
Paul Wolf, CO Bar #42107
*Attorney for Plaintiff*
PO Box 21840
Washington, D.C. 20009
Tel. (202) 431-6986
paulwolf@yahoo.com

May 16, 2022