IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00694-PAB-SKC

MOSTAFA KAMEL MOSTAFA,

      Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
TUTOILUMUNDO, ADX Unit Manager, in his official capacity,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her individual capacity,
LOEWE, ADX officer, in his individual capacity,
NORJANO, ADX Officer, in his individual capacity,
CHOROSEVIC, ADX Occupational Therapist, in his individual capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
WILLIAM, ADX Nurse, in his individual capacity,
HUDELSTON, ADX Nurse, in his individual capacity,
STERETT, ADX Doctor, in his individual capacity,
ARMIJO, ADX Lieutenant, in his individual capacity, and
EDWARDS, ADX Officer, in his individual capacity,

      Defendants.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS (ECF No. 222)**

---

Nothing in Mostafa's response to the motion to dismiss, ECF No. 230, salvages his claims.

**I.     The official-capacity claims fail.**

    **A.     The freedom of association claims fail (Claims 4, 11). Mot. 5-14.**

These claims challenge SAMs rules governing (1) contact with Mostafa's stepson and two

of his seven biological sons, (2) contact with his grandchildren, and (3) contact with prospective

attorneys, including an access-to-courts claim. The motion to dismiss explained that Mostafa has

failed to plead factual allegations, accepted as true, which show that there is no connection between these rules and the Attorney General's justifications for them. *Al-Owhali v. Holder*, 687 F.3d 1236, 1241 (10th Cir. 2012) (dismissing where SAMs inmate did "not rebut in his pleadings" the "coherent explanation" that communications with his contacts could result in death or serious bodily injury); Mot. 7-11. Mostafa's response confirms that he has failed to meet his burden to demonstrate no legitimate, rational basis for the Attorney General's justifications. *Al-Owhali*, 67 F.3d at 1241. Mostafa also has not overcome some jurisdictional defects.

***Sons/stepson.*** Mostafa does not mention, let alone attempt to refute, the basis for the SAMs prohibition on communications with his sons and stepson: Mohammed and Ghailan were Mostafa's partners in the deadly Yemen terrorist attack, and Sufyan is known to United States national security officials as a jihadist fighter who spews jihadist rhetoric on social media and who has called for the death of the Syrian president. Mot. 6-7. In this context, Mostafa's assertion that his "children" are "harmless," Rsp. 8, is wholly insufficient to show the absence of a rational basis for severing communications with known jihadists—including jihadists who happen to be his sons.

Mostafa claims that he is not required to allege the absence of a rational connection between the rules and the Attorney General's justifications for them, Rsp. at 7 n.3, but the Tenth Circuit explicitly said otherwise in *Al-Owhali*. *See* 687 F.3d at 1241; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (inmate must disprove validity of challenged restrictions). And he contends that an order issued by another judge in a case involving another SAMs inmate means that, as a matter of law, the restrictions in *his* SAMs are illegal. Rsp. 7-8 (citing *Mohammed v. Holder*, 47 F. Supp. 3d 1236 (D. Colo. 2014)). But that order did not mandate a categorical approach for all SAMs inmates—national security risks can only be evaluated on an individualized basis—nor is this Court under any obligation to take a similar approach. In fact, other judges have

routinely dismissed claims challenging SAMs rules limiting communications among family members, and the Tenth Circuit has upheld those decisions.[1]

National security assessments "arise in connection with efforts to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess" and "must often be based on informed judgment rather than concrete evidence." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34-35 (2010) The Court should dismiss Mostafa's claim challenging the national security decision to bar communications with his jihadist sons.

***Grandchildren***. Mostafa's challenge to a supposed restriction on contact with his grandchildren fares no better. He makes no attempt to refute the obvious rational basis for limiting such contacts: that young children are uniquely vulnerable to the influence of a grandfather who has publicly advocated enslaving non-Muslims and selling them "in the market." *United States v. Mustafa*, 753 F. App'x 22, 27 (2d Cir. 2018); *United States v. Mostafa*, 16 F. Supp. 3d 236, 258, 267 (S.D.N.Y. 2014). The powerful effect of Mostafa's rhetoric is indisputable; he has inspired thousands, including terrorists who also wound up at ADX. Mot. 3. In this context, Mostafa has not alleged that officials would have acted irrationally had they chosen to ban all communications with susceptible young children. But no ban has been imposed.

Mostafa's SAMs allow him to communicate with six grandchildren by phone, in-person, and mail. Mot. 9-10; ECF No. 222-2 at 20-25. He objects that he has 11 grandchildren, Rsp. 11, but he has not asked to communicate with the others. If he wants to communicate with them, he can use the established procedure for the SAMs vetting process, and exhaust the issue if the contact

---

[1] *See, e.g.*, *Nicholson v. Brennan*, No. 15-cv-01999-KLM, 2017 WL 4337896, at *5 (D. Colo. Sept. 28, 2017); *Salim v. Sessions*, No. 13-cv-03175-RM-CBS, 2017 WL 11487131, at *5-6 (D. Colo. May 2, 2017); *Abdulmutallab v. Barr*, No. 17-cv-02493-RM-KMT, 2019 WL 1064062, at *5 (D. Colo. Mar. 6, 2019), *adopted*, 2019 WL 4463284 (D. Colo. Sept. 18, 2019); *Ayyad v. Holder*, No. 05-cv-02342-WYD-MJW, 2014 WL 4747451, at *25 (D. Colo. Sept. 24, 2014); *Gowadia v. Stearns*, 596 F. App'x 667, 673 (10th Cir. 2013); *Al-Owhali*, 687 F.3d at 1241.

is denied. At this point, however, because there are no outstanding requests for contacts with grandchildren (and Mostafa does not contend otherwise), the claim is moot.[2]

***Contact with attorneys.*** This claim attacks the SAMs attorney affirmation and vetting protocols, which Mostafa claims prevent him from contacting "foreign" or "prospective" attorneys. ECF No. 199 ("Compl.") ¶ 83. But he does not argue that these rules lack a legitimate, rational basis, nor could he make such a showing. After all, at least one attorney has smuggled communications from a SAMs inmate to other terrorists. *United States v. Stewart*, 590 F.3d 93, 107-08 (2d Cir. 2009); Mot. 10-11 (collecting cases upholding SAMs attorney provisions).

In sum, Mostafa has not alleged that any SAMs restriction lacks a rational relationship to the legitimate penological interest of protecting national security. Claim 4 fails.

***Access to courts.*** Mostafa asserts that he need not allege an actual injury to pursue an access-to-courts claim, Rsp. 11, but the Supreme Court has held otherwise. *Lewis v. Casey*, 518 U.S. 343, 349, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). Mostafa identifies no such injury. Rsp. 11-12. Claim 11 fails.

### B.       Mostafa's religion claims fail (Claims 1 and 2). Mot. 14-18.

#### 1.       The free exercise claims fail.

***Group prayer.*** Mostafa has not alleged a plausible claim for relief. Mot. 14-16. The group prayer policy for SAMs inmates allows them to pray together during "regularly-scheduled outside recreation," in the same manner as inmates in ADX general population units. ECF No. 222-3. The motion explained that Mostafa has failed to allege the absence of a legitimate rational basis for this

---

[2] Mostafa's claim to have "standing" to pursue a claim about his grandchildren because Defendants could change their position on a "whim," Rsp. at 10, misstates the law. Standing requires proof of an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Speculation about a hypothetical future denial of a contact does not confer standing now.

policy, particularly in light of the fact that even a complete prohibition on group religious activities for maximum-security inmates does not violate the Free Exercise Clause. *Williams v. Miller*, 696 F. App'x 862, 863 (10th Cir. 2017). Mostafa's counter-arguments are unavailing.

Mostafa claims that "rational basis … is not the correct standard to use" for free exercise claims, Rsp. 13, but the Tenth Circuit disagrees and places the burden on the prisoner to "show that [the government's] articulated concerns were *irrational*." *Kay v. Bemis*, 500 F.3d 1214, 1218 & n.2 (10th Cir. 2007) (stating that *Turner* applies); *Blair v. Raemisch*, 804 F. App'x 909, 916 n.7 (10th Cir. 2020) (rational basis standard applies to group prayer claims).

***Halal diet/Eid meal/ritual washing.*** These claims fail for lack of jurisdiction. Mot. 16-18. As authorized on a Rule 12(b)(1) motion, *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), Defendants submitted supporting evidence demonstrating Mostafa that lacks standing. ECF No. 222-5 (declaration of Food Services Administrator explaining Mostafa has access to halal food and a meat meal for Eid); ECF No. 222-6 (declaration of Complex Facilities Manager explaining Mostafa's cell is configured to allow him to wash); ECF No. 222-7 (declaration of Health Services Administrator explaining BOP is ready to provide Mostafa new, custom-crafted prostheses). Mostafa submits no rebuttal evidence, Rsp. 13-14, and thus has failed to establish standing.

### 2. The RFRA diet, feast meal, and washing claims fail.

The standing defects that require dismissal of the halal diet, feast meal, and ritual washing components of Mostafa's free exercise claim similarly require dismissal of these claims under RFRA. *See* 42 U.S.C. § 2000bb-1(c). Here, again, Mostafa has submitted no evidence to establish jurisdiction. Rsp. 14-19. In fact, his only substantive argument is about the RFRA group prayer claim, *id.* 17-19, but Defendants did not move to dismiss that claim. Mot. 18 n.10. The Court should dismiss the halal diet, Eid meal, and ritual washing claims brought under RFRA.

### C.        The Rehabilitation Act claims fail (Claims 5 and 6). Mot. 18-22.

*No private right of action*. The first defect in this claim is that Congress created no private right of action against the federal government under Section 504 of the Rehabilitation Act for claims concerning programs or activities conducted by a federal agency. Mot. 19-22. The Act provides no judicial remedy for discrimination "under any program or activity conducted by any Executive agency," *see* 29 U.S.C. 794a(a)(1)-(a)(2). Congress expressly chose to create a remedy against recipients of federal assistance, but no remedy against Executive agencies. *Bacote v. Fed. Bureau of Prisons*, No. 17-cv-03111-RM-NRN, 2021 WL 248808, at *8 (D. Colo. Jan. 26, 2021).

Mostafa does not refute this analysis. He argues that the Rehabilitation Act applies in prisons, Rsp. 20-24, but that is not the issue. Mostafa cites a slew of cases about state prison claims, but there is no dispute that state prisons are recipients of federal assistance or that Congress created a private right of action for claims against recipients of federal assistance.[3] Nor did the Seventh Circuit suggest that 42 U.S.C. § 2000e-5 somehow creates a private right of action against Executive agencies, as Mostafa implies. Rsp. 21 (citing *Jaros v. Illinois Dep't of Corrs.*, 684 F.3d 667 (7th Cir. 2012)). That case merely recognized that the same standards apply to the Rehabilitation Act and the Americans with Disabilities Act, but that has no bearing on whether Congress created a private right of action against Executive agencies. It did not.

Finally, the Tenth Circuit has held that "29 U.S.C. § 794[] does not give plaintiff any substantive rights since the Federal Bureau of Prisons does not fit the definition of 'programs or activities' governed by that section.'" *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).

*No standing*. In any event, Mostafa lacks standing to pursue a Rehabilitation Act claim because he cannot show that BOP refuses to provides him appropriate prostheses. Mot. 21-22. For

---

[3] Not one of Mostafa's case citations involve claims against BOP or another federal agency.

at least two years, BOP has attempted to persuade Mostafa to allow BOP to build him brand new prostheses, or to repair his existing devices, but as the ADX Health Services Administrator explains, Mostafa has thwarted those efforts. ECF No. 227-7 ¶¶ 4-6; *id.* p. 32 (2/20/2021 medical note recording efforts by Certified Prosthetist/Orthotist to persuade Mostafa to accept new prostheses, and observing that "the ultimate decision today is that *we do nothing for him because he will not approve anything to be done*") (emphasis added).

Mostafa presents no evidence in response to this sworn testimony and medical documentation. He just rehashes his complaint, gripes about the prostheses he has, and asserts that BOP has "done nothing." Rsp. 25-28. But the unrefuted evidence stands: BOP "can do nothing for him *because he will not approve anything to be done*." Mostafa cannot establish standing to obtain relief that he has simultaneously foiled BOP's efforts to provide.

**D.      The equal protection claim fails (Claim 3). Mot. 22-24.**

Mostafa's equal protection claim hinges on the contention that the policy allowing group prayer for *all* SAMs inmates at ADX during outdoor recreation, *see* ECF No. 222-3, somehow shows that Muslim inmates are subject to unequal treatment. Defendants explained the defects in Mostafa's pleading, Mot. 22-24, and he has identified no error in that legal analysis. Rsp. 28-29.

Mostafa's response reduces to two points, neither of which plausibly demonstrate an equal protection violation. He claims that "Defendants have institutionalized an animus towards Muslims," and that H Unit (which houses inmates with SAMs) "is used for Muslim prisoners." *Id.* 28 n.17, 29 n.18. But his pleading contains no facts to support this conclusory hyperbole, nor could it. His second point is that, notwithstanding the policy allowing group prayer for SAMs inmates at ADX, "group prayer is totally prohibited in the H Unit of the ADX prison." *Id.* 29. But if group prayer is "totally prohibited"—it is not—that prohibition by definition applies equally across the board and indicates no dissimilar treatment of similarly situated inmates in H Unit.

### E.    The Administrative Procedure Act claim fails (Claim 10). Mot. 25.

This claim challenges Mostafa's placement at ADX, Compl. ¶¶ 211-214, a decision that is specifically exempted from APA review. There is no dispute Congress explicitly shielded this discretionary placement decision from judicial review: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." *Id.* § 3621(b)(5). Nor is there any dispute Congress expressly shields BOP placement decisions from APA review: "The provisions of sections 554 and 555 and 701 through 706 to title 5, United States Code do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625. Mostafa tries to sidestep this jurisdictional bar by asserting that BOP, in making his placement decision, "relied on" DOJ's Office of Enforcement Operations. Rsp. 30. But there is no carveout in the APA when BOP "relies on" information obtained from other entities (including courts) in making a placement decision. Indeed, BOP is likely to rely on outside information in every single placement decision. The Court lacks jurisdiction.

## II.    The individual-capacity claims fail (Claims 7 and 8). Mot. 25-44.

Mostafa has dismissed his *Bivens* claims against Dr. Sterett,[4] Fellows, and Chorosevic. Rsp. 36, 41. The claims against Huddleston, Armijo, and Edwards also should not proceed.

### A.    The excessive force claim fails (Claim 7). Mot. 25-34.

The Tenth Circuit has held that there is no damages remedy for excessive force claims against federal officers. *Silva v. United States*, 45 F.4th 1134, 1140-41 (10th Cir. 2022). The Court should therefore dismiss Claim 7 with prejudice. Defendants are also entitled to qualified immunity.

***Huddleston.*** Huddleston was not part of the use of force incident. He was not present and

---

[4] Mostafa dismissed the claim against Dr. Sterett on grounds that he is "an employee of the U.S. Public Health Service." Rsp. 36. Dr. Sterett did not make that representation. Regardless, the claims against him should be dismissed for the reasons set forth in the motion. Mot. 29-31, 41-43.

used no force at all. Mostafa's suggestions that Huddleston somehow "aided and abetted" those who did use force, or used excessive force by "ignoring" Mostafa's duress button, by trying to obtain a medical sample from Mostafa four days after the incident, or by not trimming his toenails often enough, Rsp. 37-38, are meritless. There is likewise no clearly established law that this specific conduct is illegal. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

***Armijo and Edwards.*** Officers Armijo and Edwards also were not present during the alleged use of excessive force and are likewise entitled to qualified immunity. Mostafa rehashes his complaint. Rsp. 39 (officers "threatened" to use force at a later time, asked another inmate to clean blood in Mostafa's cell, and did not write a report). But he points to no clearly established law that these actions violated the Eighth Amendment. *Id.*

## B.      The deliberate indifference to medical needs claim fails (Claim 8). Mot. 34-44.

The remaining defendants on this claim are Huddleston and Officers Loewe and Naranjo. The claim against Huddleston is about Mostafa's toenails, and the claim against Loewe and Naranjo is about plastic packaging on some of Mostafa's food trays. Neither should proceed.

***No damages remedy.*** There is no *Bivens* remedy for these claims. Mot. 36-38 (discussing new context and special factors analysis). The same rational reason that compels the Court to defer to Congress in refusing a damages remedy for excessive force is likewise present here: the availability of BOP's Administrative Remedy Program, which is sufficient in and of itself to foreclose a *Bivens* remedy. *Silva*, 45 F. 4th at 1142. The Supreme Court has left "no doubt that expanding *Bivens* … is an action that is *impermissible in virtually all circumstances*," *id.* at 1140 (discussing *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022)), and the circumstances here fall easily into that large category of impermissible *Bivens* claims. But even if a *Bivens* remedy were available, Mostafa once again has failed to overcome qualified immunity.

**Huddleston.** Mostafa's claim against Huddleston rests on a single incident: on one occasion, Huddleston "crudely cut" Mostafa's nails, causing "bleeding and some pain." Compl. ¶ 176.[5] This does not come close to alleging that Huddleston subjected Mostafa to conduct so extreme as to deprive him of the minimal civilized measure of life's necessities, or that Huddleston possessed a culpable state of mind amounting to criminal recklessness. Mot. 39-40 (discussing legal standards). Mostafa points to no clearly established law holding otherwise. Mostafa's arguments are all at high level of generality; he identifies no case that would have made it clear beyond debate that the specific conduct was illegal.

**Loewe and Naranjo.** Officers Loewe and Naranjo are also entitled to qualified immunity. They allegedly "effectively deprived" Mostafa of "about 150 evening meals" by not removing plastic wrap from his food tray, Compl. ¶ 192, but only *one time* did Mostafa actually inform the officers that he could not open the meal. *Id.*; *see also* Rsp. 42 (same allegations).[6] These allegations evince neither serious harm nor criminally reckless intent on the part of the officers. Mot. 43-44. Neither has Mostafa identified any clearly established law that would have put every reasonable officer on notice that their specific conduct here violated the Constitution. Rsp. 42 (pointing to cases generally articulating "minimal civilized measure of life's necessities" standard and discussing disabled-access toilets). Loewe and Naranjo are entitled to qualified immunity.

Respectfully submitted on October 21, 2022.  COLE FINEGAN
United States Attorney
s/ *Susan Prose*
Susan Prose, Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
(303) 454-0100; susan.prose@usdoj.gov

---

[5] Mostafa also contends there was a months-long delay in trimming his toenails, but he attributes that delay to Chorosevic, Sterett, and Fellows, who are dismissed from the case. Compl. ¶ 176.

[6] In moving to dismiss the *Bivens* claim against them, the officers have not relied on the declarations that support jurisdiction arguments on other claims. *See* Rsp. 41-42. The claim against the officers fails even if Mostafa's allegations are presumed true.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on October 21, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Paul Wolf, Esq.


s/ *Susan Prose*
U.S. Attorney's Office