# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Civil Action No. 20-cv-00694-PAB-SKC

MOSTAFA KAMEL MOSTAFA,

    Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
TUTOILUMUNDO, ADX Unit Manager, in his official capacity,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her individual capacity,
LOEWE, ADX officer, in his individual capacity,
NORJANO, ADX Officer, in his individual capacity,
CHOROSEVIC, ADX Occupational Therapist, in his individual capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
WILLIAM, ADX Nurse, in his individual capacity,
HUDELSTON, ADX Nurse, in his individual capacity,
STERETT, ADX Doctor, in his individual capacity,
ARMIJO, ADX Lieutenant, in his individual capacity, and
EDWARDS, ADX Officer, in his individual capacity,

    Defendants.

**Plaintiff's Corrected Response in Opposition to Defendants' Early
Motion for Partial Summary Judgment for Failure to Exhaust
and Failure to Comply with Statute of Limitations [Doc. 234]**

### FACTUAL SUMMARY

The Defendants filed their Early Motion for Partial Summary Judgment soon after their Motion to Dismiss, [Doc. 222], and before the parties produced initial disclosures or held a pretrial conference per Rules 16 and 26(f). The Plaintiff responded with a Cross Motion for Early Discovery Pertaining to Defendants' Early Motion for Partial Summary Judgment for

1

Failure to Exhaust and Failure to Comply with Statute of Limitations, seeking the administrative records of his estimated 498 claims.  [Doc 235]  In the Cross Motion, the Plaintiff argued that without access to the parties' correspondence, neither his own counsel nor the Court could determine the precise subject matter of each request, the reasons used by the Defendants to deny them, and whether the responses explained what to do next to exhaust the adminstrative remedies.  Id. Nevertheless, the Court may deny the motion based on the vagueness of the information in support of the motion, drawing all reasonable inferences in the Plaintiff's favor.

## ARGUMENT

The Prison Litigation Reform Act requires exhaustion of "such administrative remedies as are available" prior to filing an action for prison conditions under any federal law. 42 U.S.C. § 1997e(a). Although the exhaustion requirement is mandatory, the Supreme Court has explained that the word "mandatory" in this context does not mean exhaustion must be pled and demonstrated in the complaint.  Jones v. Bock, 549 U.S. 199, 211-12 (2007).  Instead, "it falls ... to the defendant to raise lack of exhaustion as an affirmative defense." Id. at 211.  In order "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules ... that are defined not by the PLRA, but by the prison grievance process itself." Id. at 218 (internal quotation marks and citation omitted).  In Freeman v. Watkins, 479 F.3d 1257 (10th Cir. 2007), the Tenth Circuit held that after Jones, inmates no longer had the duty of pleading exhaustion, "and therefore it [was] no longer appropriate for the district court to require an affirmative showing of exhaustion" in the complaint.  479 F.3d at 1260.  Moreover, "only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse." Id. (internal quotation marks omitted).

This doesn't prevent the Defendants from raising the argument at an earlier stage, in those rare cases where the Court can determine from the face of the complaint that the Plaintiff has failed to exhaust the claims.  In Womble v. Chrisman et al, Case No. 21-7015 (10th Cir. Feb 22, 2022), the defendants, state prison officials in Oklahoma, were found not to have waived their exhaustion argument by not raising it at the 12(b)(6) stage, noting in dicta that nothing in the PLRA prevented the Defendants from making the argument at the 12(b)(6) stage.[1]  Id. at *6.

This isn't one of those rare cases, though.  The admistrative records of the Plaintiff's estimated 498 Administrative Remedy Program requests are in dispute.  Neither the Court, nor counsel for the Plaintiff can read the language used in the requests, or in the responses by the Defendants, who appear not to have properly advised the Plaintiff of any other procedures he needed to follow to exhaust them, particularly with respect to his Rehabilitation Act claims.  So although the Defendants may make the motion, in ruling on it, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  Talley v. Time, Inc., 923 F.3d 878, 893 (10th Cir. 2019) (internal quotation marks omitted).

**1.     The available record shows that the Plaintiff exhausted his administrative remedies with respect to every type of claim the Defendants seek to dismiss.**

A review of the Exhibits to the Defendants' Motion for Partial Summary Judgment shows that the Plaintiff has exhausted his administrative remedies for issues pertaining to the claims in his complaint.  See Declaration of Paula Trujillo, [Doc. 234-1, 234-2 and 234-3].  Ms. Trujillo

---

[1] The plaintiff in the Womble case had a similar problem, in that the prisoners were only allowed to use the prison forms and follow the prison's procedures, whatever their complaints might be about.  The situation is worse for prisoners held under SAMs, whose written communications are strictly controlled.  It is also noteworthy that the Defendants in the instant case aren't making a Rule 12(b)(6) Motion, but a Rule 56 deotion, which is on the merits. This Court should try to extend dicta in Womble to a Rule 56 motion made before discovery.

explains some aspects of the exhaustion process, see Doc. 234-1 at ¶ 10, and that the extensions F1, R1 and A1 are appended to "formal complaints" filed using BOP forms BP-9, BP-10 and BP-11.[2] There are also codes, "REJ," "CLD" and "CLO," in the second to last column of the index, see e.g. [Doc. 234-1 at 37], but Ms. Trujillo doesn't explain what they mean.

The details are provided in Plaintiff's Statement of Material Facts Genuinely in Dispute, which can be found after the legal arguments in this brief, and will not be repeated in this section.  There is really no legal argument to be made.  The record shows numerous that for every category of claim the Defendants seek to dismiss, the Plaintiff has exhausted at least one request, as shown by the "-A1" designation in the file name.  All that can be determined from the information provided by the Defendants are the general categories in the file names, which are the Defendants' characterizations of the claims.  Based on these categories, and the "-A1" designations, the Court can only find that the Plaintiff has exhausted his administrative remedies.[3]  The vagueness of the Defendants' response, and the fact that the motion is being filed at the wrong time, should be held against them.

---

[2] The Defendants' practice of referring to appeals as separate "complaints" doesn't change the fact that they are appeals of decisions made in earlier stages of the same claims.  Although the terminology is confusing, it has no legal significance.  The appeals aren't separate "claims," and must be evaluated in the context of the decisions made in other stages, and whether they are based on sound reasoning, substantial evidence, and the other standards of review in the Administrative Procedure Act.

[3] Even if the Plaintiff did have complete records, Counsel doesn't have any way to obtain them in time for the Defendant's Motion.  Without disclosing the contents of the communication, counsel wrote to the Plaintiff on November 7, 2022.  Even if the Plaintiff were able to photocopy and mail the entire administative record for these claims to counsel, they would not arrive in time to respond to the Defendants' early motion, due to the demonstrated delays in the Defendants handling of mail for SAMs prisoners.

### 2. The Plaintiff had no way to know of any additional exhaustion requirements for Rehabilitation Act claims, and no way to use the Defendants forms to assert them.

The Defendants offer a witness, Richard Toscano, who explains special procedures for Rehabilitation Act claims that must be followed after the Plaintiff has exhausted his administrative remedies with the Administrative Remedy Program. [Doc. 234-4] The witness doesn't say that the Plaintiff was ever advised of these procedures, or how he could follow them using the Defendants' forms while under SAMs restrictions. The Plaintiff had no way of knowing about these procedures and did not know about them. The record shows that the Plaintiff persisted with his complaints related to his disabilities for years, and that his attorneys in New York wrote letters to the Defendant asking for help. The record doesn't suggest that the Plaintiff gave up. Reasonable discovery will show how many disabled prisoners in the federal system have successfully used this procedure, and how they managed to do it. It is noteworthy that the Defendants have also argued in their Motion to Dismiss that the Rehabilitation Act doesn't apply to federal prisoners at all.

The Defendants' responses to the Plaintiffs Administrative Remedy Program requests and appeals should show whether or not the Defendants properly advised the Plaintiff of what he should do if he disagrees with the decision, and the deadline for him to appeal. The Court should presume that, if the final response from the Defendants been that the request was denied because it was a disability claim, and that the Plaintiff needed to initiate another procedure pursuant to 28 CFR § 39.170, the Plaintiff obviously would have done so. His multiple attempts to exhaust these claims, using the procedures and forms available to him, prove this. The Defendants' response suggests there's a problem in the Bureau of Prisons' administrative handling of complaints, that makes it difficult or impossible for disabled prisoners to file disability claims.

5

### 3. The Defendant cannot moot Plaintiff's claims by changing its position, since the policies at the time the incidents occurred are the relevant policies.

The Defendants argue that they have accomodated some of Plaintiffs requests, and that these moot his claims.  See, e.g., Trujillo Declaration at ¶ 31 ("On March 18, 2021, Plaintiff's SAMs were modified to allow him to participate in group prayer with other SAMs inmates…"). The Defendants made the same argument when they modified the Plaintiffs SAMs earlier this year to allow communications to some grandchildren, and argued this separately in their Motion to Dismiss.  This doesn't moot the claims, but the fact that this lawsuit was the catalyst for the Defendants' change in position is a solid basis for the award of attorneys fees.

Undersigned counsel litigated the issue in the Mohammed v. Holder case, yet the Defendant persists in applying a policy held to be arbitrary and capricious, knowing that it is illegal, and of the Court's stinging criticism of FBI Agent Robert Moen in the Mohammed case, which caused him concern that his career would be at risk, and to file a motion for relief, which was denied.  The Defendants know they cannot restrict the communications of SAMs prisoners based on the arbitrary criteria that they still use.

There is another problem with these arguments as well.  The Plaintiff has a right to speak to his grandchildren, and a right to group prayer.  These aren't privileges that can be given or taken away, and aren't supposed to be used as punishments or rewards.  The policy change on group prayer was no doubt due to the fact that the ban on group prayer was clearly proven to be unconstitutional in other cases.  The Plaintiff was harmed by the ban for years before the policy was changed, and this was only recently.  If the Defendants can arbitrarily add grandchildren to the approved contact list as a litigation tactic, there is nothing to prevent them from removing the grandchildren after the case has ended.

**4.      The Court may review the procedures used by the Defendants to deny the Plaintiffs claims under the Adminstrative Procedure Act, as well as on the merits.**

The Defendants argue that the Plaintiff has missed a statute of limitations that applies to one of his claims, regarding his placement in the ADX. [Doc. 234] at 13.[4] First of all, the Plaintiff doesn't want to be transferred out of the ADX, and that is not what Claim 10 in the Plaintiff's Fourth Amended Complaint is about.[5] Claim 10 incorporates by reference all of the previous claims, and makes an additional claim: that they are all reviewable procedurally as well as on the merits. That is the most powerful argument in this case: that the Defendants are supposed to have a grievance process that respects the prisoners' rights. They don't. The Defendants don't have Administrative Law Judges, or anyone else in that role who articulate the bases for their decisions, the facts relied on, and so on, even in the appeals. In the Mohammed case, after the Court *remanded* it back to the BOP with 45 pages of Findings of Fact and Conclusions of Law, see Mohammed v. Holder, 47 F. Supp. 3d 1236 (2014) (Opinion of June 17, 2014), the Defendants simply removed the SAMs from the plaintiff to end the case. Although no one will ever know why, it was presumably easier to do that than to come up with administrative

---

[4] The Defendants argue that "The crux of Claim 10 is that Mostafa's placement at ADX violates the Administrative Procedure Act. ECF No. 199 ¶ 214. This claim first appeared in Mostafa's Third Amended Complaint, filed May 21, 2022. ECF No. 188 p. 49. See 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."). Mostafa was notified on September 9, 2015, that he would be placed in ADX. Fact 2. Mostafa did not file a claim challenging his ADX placement in this Court until May 21, 2022, after the statute of limitations expired in September 2021." [Doc. 234] at 13.

[5] See Plaintiff's Fourth Amended Complaint at ¶ 216. ("The Plaintiff isn't asking to be transferred from the ADX to another prison. This wouldn't necessarily fix the problems. The Defendants should address the ECHR's concerns about the ADX by modifying the Plaintiffs considitions of confinement. The ECHR didn't believe it was even possible that the Defendants would put a disabled prisoner like the Plaintiff in the ADX."); ¶ 217 ("In addition to his placement in the ADX, all of the Plaintiff's other claims requiring exhaustion are reviewable under § 706 of the APA, as well as on the merits. These are standards of review, not separate claims that need to be pled.")

procedures and individuals who could perform as Administrative Law Judges. Even Robert O'Brien, a top DOJ official in charge of the Office of Enforcement Operations at the time of Mr. Mohammed's case, couldn't answer questions at trial about the standards used for SAMs determinations. See id. at 9 n. 7 "Although he bristled at the characterization of OEO as just a 'rubber stamp,' Mr. O'Brien acknowledged that the OEO had never rejected a recommendation by the FBI for approval of a renewal or modification of SAMs for any inmate."

The Defendants argue that the Plaintiff's APA claim for his placement in the ADX is time barred. See [Doc 234] at 13. The Defendants have failed to meet their summary judgment burden because determining when statutes of limitations begin to run, depends entirely on the communications between the parties, since the administrative process should toll the time to file a complaint in federal court. The Defendants are cutting it very close, claiming the Plaintiff missed the deadline for this claim by about eight months. It's not clear which of the Plaintiff's many requests related to solitary confinement relate to this, and the Defendants haven't met their burden to identify one.

### Response to Statement of Undisputed Material Facts

1. Deny. The Plaintiff is incarcerated for his speech in the United Kingdom, which although upsetting to British authorities, didn't advocate imminent violence. The charges of which the Plaintiff was convicted were pretexts to get him off the street, and based on cooperating witnesses and the Defendants' efforts to blame him for incidents caused by other people who may have been motivated by the same ideology as the Plaintiff. Fourth Amended Complaint (hereinafter "Complaint") [Doc. 199] at ¶¶ 1-3, 30-39.

2. Admit. However, this was contrary to the decision of the European Court of Human Rights, which determined it would be "impossible" - a very high legal standard - for the Plaintiff

8

to be placed in the ADX, due to his disabilities and the Defendants' representations to that court. Complaint at ¶ 32.  This is the highest court in the European Union.

3. The Plaintiff admits he is subject to Special Administrative Measures, but denies the reasons given by the Defendants, which are pretexts to hold the Plaintiff <u>incommunicado</u> to prevent his religious speech.  The Plaintiff's family members are not dangerous.  Complaint at ¶¶ 83-87, 90-96.

4. Deny.  The Plaintiff's claims are as stated in the Fourth Amended Complaint, not in this characterization of them.  The Defendant tries to isolate details and disputed facts in the Plaintiffs' complaint and construe them as individual claims that need to be exhausted.  The Defendants try to break the Plaintiff's claims down into the smallest pieces possible, requiring separate claims and administrative procedures for each disputed fact.  This is a matter of Plaintiff autonomy, and the Plaintiff's right to define the causes of action.  Construing each claim as a collection of smaller claims, each of which must be exhausted, is a mistake, because they are only facts, circumstances, and potentially reflective of damages.  The Plaintiff has no burden to exhaust the facts and evidence upon which his claims are based.

**II. Exhaustion requirements under BOP's Administrative Remedy Program.**

5. Admit.

6. Admit.

7. Admit.  However, in this and the next two paragraphs, the Defendants state only the Plaintiffs' obligations and deadlines, and omit their own under 28 C.F.R. §§ 542.10-542.19.

8. Admit.

9. Deny.  The Plaintiff cannot understand the insertion of the phrase "from the inmae's perspective" into what otherwise appears to be a citation from a regulation.

9

10. Deny. This is an abstract legal conclusion, not a fact in dispute. The Plaintiff put the Defendants on notice of the nature of his claims using these forms.

11. Deny. The Plaintiff may also exhaust his administrative remedies if the Defendants fail to respond. The Defendants omit all references to their own obligations during the administrative review phase. In addition, the Defendants' witness states that the suffix "-A1" is added to the claim numbers after the BP-11 form has been denied, [Doc 234-1] at ¶ 10. Therefore, the suffix is prima facie evidence that the claim has been exhausted.

12. Admit.

**III.  Exhaustion requirement for Rehabilitation Act claims under DOJ regulations.**

13. Deny. Reasonable discovery will show that Mr. Toscano is referring to a procedure that is rarely, if ever used, and was never disclosed to the Plaintiff.

14. Deny. The Plaintiff has no way to file a complaint with DOJ's Director of Equal Employment Opportunity other than using the Administrative Remedy Program forms, which do not disclose this procedure. Counsel was unable to locate any examples of the Defendants' final determinations of the Plaintiff's BP-11 appeals in the record, but reasonable discovery will show that these final determinations didn't put the Plaintiff on notice that he must file an additional complaint with DOJ's Director of Equal Employment Opportunity. Instead, the "-11" suffix appended to the file name shows that the administrative remedies for this claim have been exhausted. [Doc 234-1] at ¶10.

15. Deny. Reasonable discovery will show that the procedure isn't used, and that the Defendants' policy is to prevent disabled prisoners from filing disability claims. [Doc 234-1] at ¶10.

16. The Plaintiff can neither admit nor deny the Defendant's legal conclusions, particularly with regard to the tolling of claims during the time of administrative review, as well as equitable tolling based on the Plaintiff's inability to file the claims any earlier using the Defendants' forms. The Plaintiff's communications are limited to certain family members and attorneys. For everything else, he may only use the BP-8, BP-9, BP-10 and BP-11 forms.

17. Deny. The Plaintiff never received notice of any hearing, or of these procedures. The Defendants do not employ any Administrative Law Judges.

**IV.     Unexhausted claims and allegations.**

   **A.     Claim 4: Alleged inability to contact five additional grandchildren.**

18. Deny. The Defendants are citing to the pro se complaint, which is not the operative complaint. [Doc. 199].

19. Counsel cannot admit or deny these facts without seeing the correspondence cited by the Defendants. The Plaintiff has exhausted at least 22 claims about his SAMs, mail and phone calls, including 890762-A1, 862522-A1, 862522-A2, 862522-A3, 862522-A4, 875413-A1 876153-A1, 1005862-A1, 1043247-A1 1069773-A1, 731363-A1, 808135-A1, 808135-A2, 877975-A1, 955150-A1, 1029526-A1, 1073809-A1, 1095104-A1, 1089782-A1, 715487-A1, 792117-A1, and 792117-A2.  See [Doc. 234-1]. In addition, the Plaintiff has no burden to exhaust his remedies for every contact, when one of his complaints was that the Defendants were trying to "sever my family relations with many of my family members and grandchildren." [Doc. 234-1] at ¶ 16.

20. Counsel cannot admit or deny these facts without seeing the correspondence cited by the Defendants. However, the Defendants know that the prior restraint of these types of family

11

contacts is illegal, and restrictions must be based on reasonable security concerns, as set forth in the SAMs.

21.     Counsel cannot admit or deny these facts without seeing the correspondence cited by the Defendants.

        **B.     Claims 4 and 11: Alleged inability to contact attorneys/access to courts.**

22.     Admit.

23.     Admit.  However, the Plaintiff has the right to contact them without making any such request and exhausing his remedies.  The Defendants know they use illegal criteria to restrict the Plaintiff's contacts, which is their policy with all SAMs prisoners.  Complaint at ¶ 90.

24.     Deny.  The Defendants cite to paragraphs 24-27 of [Doc. 43-1], which was a 70 page, hand written, pro se proposed amended complaint, which is not the operative complaint in this case.  Counsel searched through this complaint but was unable to locate the admissions cited by the Defendants.

25.     Deny.  Counsel is unable to verify the Defendants' assertion, who did not identify this admission by using the claim number, as the Plaintiff does, nor by page number.

26.     Deny.   The Plaintiff has exhausted at least one claim that refers to attorney communications in the title.  See [Doc 234] Claim #875413-A1.[6]  In addition, the Defendants do not have the legal authority to prevent prospective attorneys from contacting SAMs prisoners.  In this case, undersigned counsel wasn't provided with the SAMs Affirmation form until the Court ordered it.  [Doc. 160].   The same thing happened in the Mohammed v. Holder case.  In additon, counsel lacks the information necessary to properly respond.  A search for the term "SAMs" in

---

[6] The claims can be most easily located in [Doc. 234-1] by searching the text for the complaint numbers.  Counsel is aware that citations are normally made to page numbers, but this would make this document difficult to read.  Each file with an "-A1" suffix reflects the end of an administrative process involving three appeals, from BP-8 to BP-9, then to BP-10, then to BP-11.

[Doc 234-1] found ten fully-exhausted claims about them, including 890762-A1, 862522-A1, 862522-A2,[7] 862522-A3, 862522-A4, 875413-A1 (attorney contact), 876153-A1, 1005862-A1, 1043247-A1, and 1069773-A1.  Id.  These ten claims have "SAMs" in the title, and the "-A1" designation added to the claim numbers, indicating the BP-11 step - the last one - was complete. The Plaintiff also submitted several requests regarding mail and phone calls, that do not contain the word "SAMs" in the title.  See 731363-A1, 808135-A1, 808135-A2, 877975-A1, 955150-A1, 1029526-A1, 1073809-A1, 1095104-A1, and 1089782-A1.  Id.  Many of these pertain to legal mail.  See also 715487-A1 ("PHONE CALLS (EXCEPT LEGAL CALLS)"); 792117-A1, 792117-A2 ("PHONE CALLS (EXCEPT LEGAL CALLS)"). [Doc. 234-1]  Claim 757757-A1 was about "administrative detention."  The precise nature of these claims, their dispositions, and the reasons for the dispositions, are impossible to discern from the information provided.  For example, see the first one, "REMEDY ID: 890762-A1."[8]

27.  Deny.  Counsel lacks the information to properly respond, although there were about nine claims relating to mail listed in the preceeding paragraph.  The Defendants' position is outrageous, that they may deny prisoners access to the courts or allow them to comply with court orders, such as deadlines to file documents, until the prisoners exhaust their administrative remedies.  The Defendants don't state whether pro se prisoners must do this once per case, or whether they must exhaust their remedies for each and every court filing.  Whatever discretion the Defendants may have in this area, they have abused it, and should be reversed.

---

[7] As can be seen infra, many of the appeals contain -A2, -A3 and -A4 suffixes.  Ms. Trujillo doesn't explain what these mean.  The Court should infer that the Plaintiff has exhausted his administrative remedies with respect to these claims, multiple times.  To decide a Rule 56 motion, any inferences must be made in the light most favorable to the Plaintiff.

[8] In some cases, the Plaintiffs claims were rejected and he was told to start over.  See 890762-F1 "REMARKS..: DURING REVIEW IT WAS DISCOVERED THAT THERE ARE MULTIPLE UNRELATED ISSUES INCLUDED IN THIS BP-9. NEEDS TO BE REJECTED." [Doc 234-1] at 123.

### C.[9]   Claims 1 and 2: Alleged inability to engage in group prayer.

28.   Deny.  The Defendants cite to Plaintiff's pro se complaint, which is not the operative complaint.  [Doc. 199]  This practice is repeated throughout the Defendants' brief.

29.   Deny.  The Plaintiff has exhausted at least one request with the word "recreation" in the title.  See claim # 997005-A1.  [Doc. 234-1] at p. 57.  The title states "CHALLENGES GROUP HAS RECREATION WITH."  The correspondence cited by the Defendants isn't in the record or the possession of Plaintiff's counsel.  Moreover, the Plaintiff disagrees with Defendants' legal arguments about preserving issues for appeal.  The Defendants improperly try to use the administrative review process to narrow the Plaintiff's claims but never disclose the facts relied on or the reasoning used in their decisions.

30.   Deny.  The Defendants' own records suggest that Claim #1030118-A1 was exhausted either on 09-09-2020 or 02-18-2021.  See [Doc. 234-1] at p. 59.  The Defendants captioned this claim as "EID MEAL."  Id.  The Defendants' citation to "Attachment 14, AR 1100054" in ¶ 32 of [Doc. 234-1] is incomprehensible and contradicts the Defendants records.

### C.   Claims 1 and 2: Alleged denial of religious feast meals.

31.   Admit.

32.   Admit.  In this fact, Defendants are also admitting that the "-A1" designation proves that the claim has been exhausted through the Defendants' Central Office.

### D.   Claim 8: Allegations concerning hunger strikes.

33.   Deny.  The pro se complaint cited by the Defendants is not the operative complaint.

---

[9] The Movant's Statement of Undisputed Material Facts contained two sections labeled Section C. [Doc 234] at 6. The error is repeated here so that the parties' statements can be more easily compared.

34. Deny. Although the Defendant claims the Plaintiff never exhausted his remedies for a brutal assault during his hunger strike that left him bleeding and in need of medical attention, [Doc. 234] at 78, this appears to be claim 999324-A1 ("CLAIMS ASSAULT BY STAFF/ RETALIATION/ INTIMIDATION"). In addition, claim 999327-A1 ("CLAIMS BEING DENIED CLOTHING/PROPERTY") appears related.

35. Deny. Plaintiff's counsel doesn't have the correspondence cited by the Defendants, nor was it filed in the record. However, two claims related to the assault have "-A1" suffixes. See ¶ 34 supra.

36. Plaintiffs' counsel has insufficient information to admit or deny this, since only the Defendants have the communications.

    **E. Claim 8: Alleged denial of ability to select his own occupational therapist.**

37. Deny. Throughout its Motion, the Defendants continually cite to the Plaintiff's pro se complaint, which is not the operative complaint. The Court appointed counsel, and the Plaintiff's Fourth Amended Complaint may be found at [Doc. 199].

38. Deny. The Plaintiff has exhausted numerous claims related to his prosthetics. See § 44 infra. The Defendant's failure to provide a qualified occupational therapist, refusal to consider the opinions of other occupational therapists that have examined the Plaintiff, and refusal to let the Plaintiff be examined by an occupational therapist of his choosing, show why the Defendant's administrative procedures are lacking and why many of these claims are best reviewed under the Administrative Procedure Act. The diagnosis by an unqualified person, and refusal to consider any other diagnosis, is a violation of Due Process. The Plaintiff isn't required to file additonal Administrative Remedy Program requests for due process violations in the handling of his claims.

### F. Claim 8: Alleged denial of mask.

39. Admit.

40. Deny. The Plaintiff has exhausted several claims related to covid and masks. See [Doc 234-1] 1043331-A1, 1043247-A1, 1068104-A1, and 1114344-A1. However, only the defendants know the details. The Plaintiff contracted covid-19 and tested positive, but isn't suing the Defendants for that. This is just a fact that shows deliberate indifference to the Plaintiff's medical needs.

### G. Claim 8: Alleged mental health/psychological problems.

41. The Plaintiff denies that he filed a separate claim for mental health issues. The pain and suffering wasn't alleged as a separate claim but as a fact relevant to his claim of deliberate indifference to his medical needs.

42. The Plaintiff doesn't have enough information to either admit or deny, since the Defendants refuse to produce the administrative records. The Plaintiff exhausted several claims related to the noise level in his cell, which he believes is meant to further punish him, or at least reflects a deliberate indifference to his condition. See 924535-A1; 927452-A1; 952270-A1 ("CLAIMS REPEATED BANGING WHEN TRYING TO SLEEP NIGHT")  These are relevant to the Plaintiff's allegations that he has suffered mental pain and suffering, which is a type of damage, not a type of claim.

### H. Claims 5 and 6: Rehabilitation Act claims.

43. Admit.

44. Admit. However, the procedure in 28 CFR 39.170 was not disclosed to the Plaintiff, who had no way to follow it using the Defendants' forms. Reasonable discovery will show that this procedure is not disclosed to disabled prisoners after they receive their final denial using the

16

BP-11 form, after which the Defendants add the "-A1" to the complaint number. See Declaration of Paula Trujillo. [Doc. 234-1]  This is the correspondence that the Defendants wouldn't produce. The Defendants' knowledge that they were disability claims is clearly reflected in the file titles in the Exhibits attached to the Declaration of Paula Trujillo, which are the categorizations of the claims made by the Defendants. See [Doc. 234-1] 854865-A1 ("CLAIMS SPECIAL/DISABILITY BRUSH LOST"); 854866-A1 ("CLAIMS SPECIAL/DISABILITY PROSTHETIC ITEMS LOST"); 877973-A1 ("CLAIMS NOT RCVD ITEMS FOR DISABILITY/PROSTH OVER 1YR"); 887652-A1 ("CLAIMS LEFT PROSTHETIC NOT RETURNED TO DATE"); 877974-A1 ("CELL ACCOMODATIONS/PHYSICAL DISABILITY/ABA[10] VIOLATED"); 882104-A1, 882104-A2 ("CLAIMS TABLE IN CELL DOES NOT ACCOMODATE DISABILITY"); 1011420-A1 ("RQSTS MODIFICATIONS TO HIS SINK DUE TO DISABILITY"); 717096-A1, 717096-A2, 717096-A3 ("I/M REQUESTS HANDICAP-ACCESSIBLE TOILET"); 717094-A1, 717094-A2, 717094-A3 ("I/M REQUESTS HANDICAP-ACCESSIBLE SHOWER"); 1047608-A1 ("REQUESTS DISABILITY ITEMS-PROSTHETICS"); 1047610-A1 ("REQUESTS DISABILITY ITEMS FOR SAFETY/HYGIENE"); 717101-A1 ("I/M REQUESTS HANDICAP-ACCESSIBLE HAIRBRUSH"); 718626-A2 ("WANTS AN ELECTRIC TOOTHBRUSH / BASED ON DISABILITIES"); 1043332-A1 ("REQUESTS APPOINTMENT TO SEE DENTIST"); 1007348-A1, 1007348-A2, 1007348-A3, 1007348-A4 ("CLAIMS DELAY OF NEEDED DENTAL CARE"); 1005862-A1; 877295-A1 ("COMPLAINS OF POOR DENTAL CARE,

---

[10] Since the Defendants refuse to produce this information, the Court should infer that "ABA" is a misspelling of ADA, the Americans with Disabilities Act.  The Plaintiff, proceeding pro se, should have made a Rehabilitation Act claim, but believed that the ADA was the applicable law. The Defendants, who wrote the word "disability" in the title, should have recognized it as a disability claim and advised the Plaintiff of the procedure for them, which it now claims the Plaintiff failed to exhaust.

KEEPS LOSING TEETH"); 1034590-A1; 1094477-A1, 1094477-A2 ("CLAIMS HE IS ENTITLED TO DENTURES/DENTAL CARE"); 1102792-A1 ("CLAIMS DENTAL TREATMENT DENIED, DENIED DENTURES"); 861248-A1 ("COMPLAINS OF TOENAIL CUTTING PROCEDURES"); 977505-A1 ("RQSTS ASSISTANCE CLEANING TO AVOID INJURY TO SELF"); and 1009527-A1 ("CLAIMS NOT RECEIVING MEDS"). In addition, the food trays used for the Plaintiff have also been the subject of numerous requests. See 1020554-A1; 1020543-A1; 1020543-A2; 1032022-A1; 1005228-A1 ("CLAIMS FOOD TRAYS NOT HANDLED PER MDS ORDER"); 1032022-A1, 1032022-A2 ("COMPLAINS ABOUT FOOD TRAY PREP & PACKAGING"); 1049838-A1 ("STAFF MISCONDUCT: MEDICAL DIET FOOD TRAY PACKAGING"); 1081413-A1 ("REQUESTS SURETY THAT FOOD WILL BE IN DIFFERENT TRAYS"); 915978-A1 ("COMPLAINT REGARDING FOOD PACKAGING/UTENSILS"); 1027831-A1 ("OFFICERS NOT FEEDING PROPERLY"); and 1030118-A1 ("EID MEAL").

## Conclusion

For the foregoing reasons, the Court should DENY the Defendant's Early Motion for Partial Summary Judgment [Doc. 234] WITHOUT PREJUDICE. The Court should also GRANT Plaintiff's Cross Motion for Early Discovery Pertaining to Defendants' Early Motion for Partial Summary Judgment for Failure to Exhaust and Failure to Comply with Statute of Limitations. [Doc. 235]

Respectfully submitted,

/s/ Paul Wolf

_____

/s/ Paul Wolf, CO Bar #42107
*Attorney for Mostafa Kamel Mostafa*
P.O. Box 21840
Washington, D.C. 20009

(202) 431-6986
paulwolf@yahoo.com
fax: n/a

November 18, 2022

## Certificate of Service

  I hereby certify that on November 18, 2022, I filed the foregoing document, along with its Exhibit 1, the Declaration of Paul Wolf, Esq., and a Proposed Order with the Clerk of the Court using the Court's Electronic Case Filing (ECF) system, which will send notification to the attorneys of record for all other parties in this litigation.

/s/ Paul Wolf
_____
/s/ Paul Wolf, CO Bar #42107
*Attorney for Mostafa Kamel Mostafa*