IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Civil Action No. 20-cv-00694-PAB-SKC

MOSTAFA KAMEL MOSTAFA,

     Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
TUTOILUMUNDO, ADX Unit Manager, in his official capacity,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her individual capacity,
LOEWE, ADX officer, in his individual capacity,
NORJANO, ADX Officer, in his individual capacity,
CHOROSEVIC, ADX Occupational Therapist, in his individual capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
WILLIAM, ADX Nurse, in his individual capacity,
HUDELSTON, ADX Nurse, in his individual capacity,
STERETT, ADX Doctor, in his individual capacity,
ARMIJO, ADX Lieutenant, in his individual capacity, and
EDWARDS, ADX Officer, in his individual capacity,

     Defendants.

**Plaintiff Mostafa Kamel Mostafa's Response in Opposition to Defendants'
Motion to Strike [Doc. 247] Plaintiff's Pro Se Motion for Leave to File Supplemental
Response to Defendants' Early Motion for Partial Summary Judgment [Doc. 234]**

The Court should GRANT the Plaintiffs' Pro Se Motion for Leave to File Supplemental Response to Defendants' Early Motion for Partial Summary Judgment, which is summarized herein, and reorganized into the categories and sequence set forth in the Defendants' Early Motion for Partial Summary Judgment. [Doc. 234] As undersigned counsel explained in an email before the Defendants filed their Motion to Strike, "I asked Ms. Prose for early discovery of the 'remedy packets' before she filed her motion for summary judgment but she refused, so I

1

had to defend the motion without having any of the correspondence. A day or two after I filed my response, the government agreed to produce the information." See Exhibit 8 attached hereto, conferral among counsel by email, at 2. "I have been working through what I have, which appears to be about 80% of it. I am not sure what my procedural options are, since I have already responded to the motion. It seems like the government should file another motion for summary judgment at the appropriate time, which is after discovery. If you want to send me a draft of your motion, I will take a look at it, but I doubt there is a basis to strike the filing under Rule 11 and will oppose." Id. The Defendants didn't provide a draft of their motion, as required by Rule 11, or cite any case law in favor of their interpretation of Rule 11, which governs the signing of documents filed in Court. It does not prohibit the Plaintiff from directly communicating with the Court, and nor do the SAMs.

When undersigned counsel filed his response to Defendants' Early Motion for Partial Summary Judgment, this informal discovery request for the "Remedy Packets" of adminstrative correspondence was attached as Exhibit 1. See Doc 235-2 at 1. "Dear Susan - I was thinking about how to litigate the exhaustion issues. I understand why you prefer to challenge the claims that way before having to brief potentially complex legal issues. My objection has been that I do not have a complete record of the Plaintiff's Administrative Remedy Program requests and appeals. There are two ways I can think of to satisfy this. One would be for you to do a complete accounting of all of them, and file them all as an exhibit to your motion. I need to read the text of the requests to see whether, for example, he complained that his prosthetics didn't work properly, or that he was unable to wash himself properly. If being unable to wash properly impacts on his religious rights, the plaintiff would only have to complain about the hygiene and is not required to know the legal basis. The Plaintiff does not access to his files generally, so cannot provide

them to me. He made a chart of them in one of his pro se filings, but I would like to take a look

at it, to see if he mentioned the issues you say were not exhausted. A second way would be for

the government to provide me with all of this correspondence in discovery. I would consent to an

early motion for partial summary judgment, and the government would consent to early

discovery of the administrative records for all of the plaintiffs requests." Doc 235-2, September

12, 2022 6:57 AM email from Paul Wolf, Esq. to Susan Prose, Esq.

The Defendants' response to these reasonable requests was to file their Motion for Partial

Summary Judgment, not provide the Remedy Packets, and not respond to the proposed solution

at all.  Id.  Therefore, as explained in the Plaintiffs' Opposition and Cross Motion for Early

Discovery, [Docs. 235, 237], counsel had to respond to the Motion on the basis of the

information provided in a declaration attached to their motion, which was based on top level

summaries of the claims in the Sentry index.  See Declaration of Paula Trujillo, [Doc 234-1] at

36 et seq.

On November 14, 2022, the day *after* the Plaintiff filed his Opposition, the Defendants

agreed to provide the adminstrative records of the claims, called "Remedy Packets."  See Exhibit

8, attached hereto, email from Susan Prose, Esq. to Paul Wolf, Esq. of Nov 14, 2022 "Although

Defendants disagree with Mr. Mostafa's position, after conferring with BOP regarding the Rule

56(d) motion, BOP has authorized me to provide you (1) all remedy packets for Mr. Mostafa

maintained by BOP, and (2) a full administrative remedy index, going back to Mr. Mostafa's

initial designation to BOP custody. I received these materials from BOP late last week and have

just finished bates-numbering them for ease of reference. By providing these materials to you,

Defendants respectfully reserve all arguments that they may make in response to Mr. Mostafa's

Rule56(d) motion." Id. at 4.   A few days later, the Defendants provided a link to a file entitled

3

"Remedy Packets 1-924" and two other files entitled "Mostafa Full Index 10-16-2012 to 10-08-2015 BOP 925-983" and "Mostafa Full Index 10-08-2015 to 11-08-2022 BOP 984-1177.[1]  These appear to be the Defendant's complete records of the administrative correspondence for approximately 498 claims.

Since the Defendants filed their Rule 56 Motion after refusing to provide the administrative correspondence in informal discovery, if Court rules on the Motion as it was briefed, it must make all inferences in the light most favorable to the Plaintiff, based on the Sentry index entries, which refer to disability claims, claims for restrictions on communications with his family, lawyers, and the courts, and all of the other categories set forth in Plaintiff's complaint, as explained in Plaintiff's Opposition. [Doc. 237]   Good cause exists, however, to supplement Plaintiff's response to the Defendants Early Motion for Partial Summary Judgment as set forth herein, allow the Defendants a reply of equal page length, and then rule based on counsel's summary of it herein, denying the pro se motion as moot.  The good cause is that the Court should rule on the record of administrative correspondence, rather than just the Sentry index entries, and it should be in the possession of the Plaintiff as well as the Defendants.  It was the Defendants' deliberate strategy to file a Rule 56 Motion before discovery, and as the conferral among counsel shows.  See Exhibit 8, attached hereto.

There's no reason to strike the pro se filing from the record, which the Plaintiff needed to do to protect his rights.  Undersigned counsel was not in possession of this information, and the Plaintiff was only in possession of some of it.  There was no abuse of the process on the part of the Plaintiff.  On the contrary, it is the Defendants who want the Court to rule on a motion for

---

[1] The numbers in the file titles appear to correspond to the Bates number ranges of the documents in each file.  Counsel had been working through this material, which includes about 500 pages handwritten by the Plaintiff, when the Plaintiff filed his pro se motion.

summary judgment based on administrative correspondence that was only in the possession of the Defendants, and which contradicts their claims at every step.   Therefore the Court should consider these supplemental facts as well:

<h3 style="text-align:center">PLAINTIFFS SUPPLEMENTAL STATEMENT OF FACTS</h3>

The Defendants moved the Court to dismiss Mostafa's claims for failure to exhaust administrative remedies, which defendants put into the following categories: (1) restrictions on contact with five of his grandchildren; (2) restrictions on contacts with attorneys and access to the courts; (3) restrictions on group prayer; (4) restrictions on religious meals; (5) allegations about the excessive use of force when the Plaintiff engaged in a hunger strike; (6) selecting his own occupational therapist; (7) denial of a mask during covid pandemic; (8) mental health and psychological distress; and (9) Rehabilitation Act claims.   [Doc. 241] at 5-13.   This is a complete reorganization and re-characterization of the Plaintiffs' claims, which the Defendants say correspond to claims # 1, 2, 4, 5, 6, 8 and 10 in the Plaintiffs Third Amended Complaint. Nevertheless, the Plaintiff will address the arguments in the order used by the Defendants in their Motion, as well as their paragraph numbers.   See [Doc. 241] at 5-13.[2]

**1.       Claim 4: Alleged inability to contact five additional grandchildren.   ¶¶ 18-21.[3]**

In his Opposition, the Plaintiff provided a list of 22 claims related to his SAMs which have been fully exhausted and received "A1" file designations.   [Doc. 240] at 11.   In his pro se motion, the Plaintiff contends that he doesn't have to exhaust his remedies for every individual grandchild, an argument also made by undersigned counsel in the opposition brief.   See [Doc.

---

[2] The Plaintiff made his pro se arguments in a completely different order as well.   Because it appears to be the easiest for the Court, undersigned counsel is addressing the claims in the order presented by the Defendants, and their characterizations of them.   They are numbered one to nine and include nine new "facts" based on Plaintiff's Pro Se Motion Exhibits.

[3] These paragraph numbers refer to the paragraphs in Defendants Statement of Undisputed Material Facts, [Doc. 234] at pages 5-13.

244] at 35.   The Plaintiff repeatedly requested that his SAMs be modified so that he could

contact his "grandchildren," and cites claim # 964462 as an example.   The Plaintiff provided the

adminstrative record for this claim, which is attached hereto as Exhibit 1.   The Plaintiff's request

for SAMs modification referred to four issues with the SAMs: psychological harm,

grandchildren, contact with lawyers, and disability.   Id. at 1.   The Defendants' final

determination, designated 964462-A1, can be found on page 6 of this Exhibit.   The Defendants

determined that the SAMs were appropriate, and states that the Assistant Attorney General has

determined that the SAMs are appropriate.   Id.   It is doubtful that this individual was involved in

this boilerplate response, though.   The BOP may not have the authority to modify the SAMs, but

it can certainly refer the Administrative Remedy Request to the individual who does. Reasonable

discovery will show that the response was misleading and that the Assistant Attorney General

wasn't contacted.   In addition, the boilerplate response doesn't advise the Plaintiff that he must

make additional requests for each grandchild, so that the Defendants could consider them on an

individual basis.   Id. at 6.   This is only one of more than 20 such requests for SAMs

modifications that the Plaintiff fully exhausted, which were assigned A1 numbers.   See

Opposition [Doc. 240] at 11.

**2.       Claims 4 and 11: Alleged inability to contact attorneys/access to courts. ¶¶ 22-27.**

The Plaintiff has shown that he exhausted his administrative remedies with regard to

contacting prospective attorneys by providing the Defendants final response in claim #875413-

A1.   See Exhibit 2 at 2.   As before, the "A1" designation is proof that the claim has been

exhausted.   The Defendant responded that "[a]s indicated by the Warden and Regional Director,

your request for SAM modification has been forwarded to the appropriate agency for review and

consideration.   It appears further information may be needed regarding this request and you

should follow-up with your Unit Team to receive an update on this specific request.  However, you currently have three attorneys on record that you are approved to communicate with in regards to your pending legal matters.  We encourage you to continue working with staff at ADX Florence to accommodate any of your needs in the future and address any further concerns you may have." <u>See</u> Exhibit 2 at 2.  By receiving this "A1" response, the Plaintiff exhausted his administrative remedies.   The three attorneys the Defendants are referring to are apparently Michael Bachrach, Sam Schmidt, and Lindsay Lewis, who were appointed pursuant to the Criminal Justice Act to defend him in his criminal case in New York.  They are not licensed in Colorado.  In addition to finding counsel for this case, the Plaintiff has been trying to contact his attorneys in the UK, including Gareth Pierce and others.  Reasonable discovery will show that the Plaintiffs' Unit Team has no ability to modify his SAMs, which are controlled by the Office of Enforcement Operations of the Department of Justice.

**3.      Claims 1 and 2: Alleged inability to engage in group prayer. ¶¶ 28-30.**

The Plaintiff has shown that he exhausted two claims for group prayer, in # 862521-A1, and in # 845884-F1.  The Plaintiff avers that the Defendants' Regional Office failed to respond to claim # 845884, which is why it didn't receive that "A1" designation.  In these requests, the Plaintiff had requested a visit by an Imam. The Defendants responded by citing staffing problems, acknowledging a legal duty to provide one. <u>See</u> Exhibit 3, attached hereto, at 5.  "The Chaplaincy Services Department at FCC Florence has made numerous attempts and continues to make great efforts to actively recruit the services of an Imam.  We encourage you to continue working with the institution Chaplaincy Services Department staff to address any religious service needs you may have."  Exhibit 3 at 5.  The second time, the Defendants responded that "The contract Imam has not been in the institution since September 18, 2015.  Upon the contract

Imam's return, and your request in writing to visit him, Religious Services will escort him to your living quarters." Id. at 78.  The requests for an Imam are substantially the same as the claim for group prayer.   The Defendants will never hire an Imam, even though the position has apparently been open for more than seven years.  Four Muslim prisoners could be put in adjacent recreational cages, and allowed to form rows in the direction of Mecca to pray and at one of the designated times, without hiring an Imam.  One of the tenets of this religion is that the followers are part of a community called the *Ummah*.  Lining up in rows in the direction of Mecca to pray at certain times of the day is an important practice of this religion.  The Defendants argue that they have recently instituted a group prayer policy in the ADX, but this doesn't compensate for the decade when the Plaintiffs' rights were violated, and even now, the Plaintiff disputes whether he really has access to it, and he has never observed any group prayer occur in this prison, as he alleged in his Complaint.

**4.      Claims 1 and 2: Alleged denial of religious feast meals. ¶¶ 31-32.**

The discovery shows that that Plaintiff has exhausted this claim on at least one occasion.  See Exhibit 4 attached hereto at 1.  This is the final agency response for one of Plaintiff's *Eid* meal requests.  The "A1" designation in claim 1030118-A1 was added once the claim had been fully exhausted at the highest level.  See Trujillo Declaration [Doc. 241-1] at ¶ 10.  In making this determination, the Defendant relied on Program Statement 4700.06, Food Service Manual, and determined that "No other foods are authorized for ceremonial meals."  Id.  Undersigned counsel already argued this in his opposition brief, but did not have the actual document at the time.  In addition, the Plaintiff provided ten pages of exhibits showing the exhaustion of another *Eid* meal claim designated as 1132971-F2, and his appeal of that.  See Exhibit 4 at 10-11.  The Sentry list provided by the Defendant only shows an F1 designation for this claim, and doesn't

8

show the F2 appeal, which the Plaintiff provides, and doesn't reflect that the Defendants ever responded to Plaintiffs' final appeal, Exhibit 4 at 11, or ever assigned an A1 suffix.  This is why the Court shouldn't be ruling on summary judgment motions before discovery.  Nevertheless, the Plaintiff proved he took the final step, even though the Defendants never responded.  Id. at 11. Therefore the Plaintiff has shown that he exhausted this claim on at least two occasions.

5.        **Claim 8: Allegations concerning hunger strikes. ¶¶ 33-36.**

After the Defendants and their agents force-fed the Plaintiff through his nose during a hunger strike, in which the Plaintiff was engaged to protest his transfer to a "dangerous" dark cell with sharp edges, they physically assaulted him and left him bleeding for hours.  The Plaintiff avers that the Defendants refused to provide him with a BP-8 form so that he could initiate the administrative exhaustion process.  See Pro Se Motion, [Doc. 244] at 39.  The Plaintiff states that when he asked the Unit Manager, he was told to "take us to court."  Id.   By requesting a BP-8 form and not receiving one, the Plaintiff exhausted his adminstrative remedies.

6.        **Claim 8: Alleged denial of ability to select his own occupational therapist. ¶¶ 37-38.**

The Plaintiff never filed any claim for the denial of his "ability to select his own occupational therapist."  This simply reflects the Defendant's strategy of re-characterizing Plaintiffs' claims and urging the Court to rule on the Defendants' characterizations of them, rather than the allegations.  The Defendants' incompetence in caring for disabled prisoners could be remedied by allowing the prisoners to have independent medical examinations by qualified personnel.   The ADX does not appear to have any other prisoners who are double upper amputees, or any staff that have ever treated a double upper amputee before. The provision of a cell designed for a person in a wheelchair is a gross insult to the dignity of the prisoner, and the placement of the Plaintiff in the ADX something the European Court of Human Rights found

would be "impossible," especially after ADX Warden Ron Wiley provided assurances that the Plaintiff would not be held in the ADX. The Plaintiff exhausted numerous claims related to his prosthetics and cell, detailed in § H below, and had no burden to exhaust a claim for an independent occupational therapist, which is a due process issue.

**7.      Claim 8: Alleged denial of mask. ¶¶ 39-40.**

Likewise, although the Plaintiff contracted covid, and prison staff neither provided him with a mask, nor required its own staff to wear them with interacting with prisoners, he did not file a separate claim for contracting covid. This is just another fact supporting his claim of medical neglect, which includes many other things, including dental and vision care, failing to provide his prescription medication, failing to remedy the inflammation caused by the materials from which his prosthetics are made, failing to provide him with nutritious food that includes vegetables, failing to care for his toenails and hair, which he cannot do himself, and other details like this. These facts and circumstances are all related and don't have to be broken down into smaller claims. Nevertheless, the Plaintiff exhausted his remedies with regard to covid masks, in claim # 1047608-A1. See Exhibit 5, attached hereto. This exhibit is a composite of the final response in claim 1047608-A1, id. at 2, and earlier correspondence filed by the Plaintiff with his pro se motion. The response only vaguely refers to "items you contend you need for your disability during the COVID-19 pandemic." Id. The Defendants also responded that "Our succeeding review reveals you were seen by prosethics and orthotics on January 26, 2021. It was noted you refused to consent to the prosethetics recommendations or to consent to the refinishing of your current proesthesis/disability devices; therefore, no changes were made, and no devices ordered." The Defendants don't deny that they failed to provide the Plaintiff, or their staff, with masks during the pandemic.

**8.      Claim 8: Alleged mental health/psychological problems. ¶¶ 41-42.**

Undersigned counsel has already argued that the psychological problems resulting from

his mistreatment are in the nature of damages and were never filed as a separate claim.  That

kind of claim would be for infliction of emotional distress, which the Plaintiff does not make.

Damages cannot be dismissed on the basis of a Rule 56 motion.  Although it is an out of circuit

case, In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 517 F. Supp. 2d 662, 666 (S.D.N.Y.

2007) provides an excellent explanation of the difference between claims and remedies.  The

Defendants shouldn't be filing a Rule 56 Motion before discovery, and a Rule 56 Motion cannot

be used to limit the remedies, which are questions for the jury.  Nevertheless, the Plaintiff

submitted additional evidence showing that he had exhausted any claims with regard to sleep

deprivation and his placement on suicide watch, in claim # 1121999-F1.  See Exhibit 6 attached

hereto at 2.  The Sentry index shows that the Defendant's Regional Office acknowledged receipt

of his appeal and assigned it number 1121999-R1.  Id. at 2.  However, this response was not

produced by the Defendant, and it does not appear that the Defendants ever replied.  Since the

Defendants never responded to Plaintiffs appeal to the Regional Director, he exhausted his

administrative remedies with respect to this claim.  This once again shows why the Court should

not be ruling on summary judgment motions before discovery.

**9.      Claims 5 and 6: Rehabilitation Act claims. ¶¶ 43-44.**

The Plaintiff has exhausted numerous claims related to his disabilities, which includes

both his lack of arms and failing vision.  The Plaintiff provided voluminous correspondence on

this issue in Exhibits 5, 6, 7, 8, and 9 to his pro se motion.  This includes the determination in

claim 877973-A1, see Pro se Motion [Doc. 244] at 82.  "[Y]ou allege you [sic] the disability

items you have are not working, or are dangerous.  In addition, you contend the items suggested

for use are not for a double amputee. … Our succeeding review reveals that on April 26, 2016, the Occupational Therapist wrote a detailed evaluation of your amputee status. They concluded you have the ability to complete your Activities of Daily Living using your current prosthetics and/or modified technique/adaptive equipment.   Therefore, further intervention discussions relating to your adaptive devices will be deferred to Health Services staff at the local level." Nothing in this response suggests that the Plaintiff must take additional steps to exhaust these claims because they are disability claims, or that the additional exhaustion procedure the Defendants claim is required was even known to the Plaintiff.  The Plaintiff has been in solitary confinement since he was extradited to the US, and has limited abilities to do legal research due to restrictions to access to legal materials and lawyers, and had no way to know about these additional exhaustion requirements, which are not even mentioned in the Defendants' final response.  Further, the Plaintiff is only required to exhaust such remedies as are available to him, and he used every communication method available to exhaust these claims.  He completed forms BP-8, 9, 10 and 11 for many claims like this, related to his disabilities.  The Defendants do not have a separate form for disability claims, and there appears to be no way to further exhaust them.   After the BP-11 step there is no other form he can use, and no other means of communication is available to him, other than filing pro se motions in court.   Undersigned counsel listed more than 20 exhausted claims which appear related to disabilities, in his Opposition to Defendants' Motion for Summary Judgment.  The one argued by the Plaintiff in his Pro se Motion [Doc. 244] at 82, #877973-A1, is attached hereto as Exhibit 7.

### Conclusion

The Defendants argue that it is the normal practice of this Court to decide administrative exhaustion issues in prisoner cases in "early" Summary Judgment motions, without providing the

administrative records to the prisoner or his attorney.  If that is true, the Plaintiff can show just how misguided the policy is.  In this case, the Sentry index entries suggest there are exhausted claims that fall into all of the categories of Plaintiff's claims, has he argued in his Opposition Brief.  The Plaintiff himself knows which of these roughly 498 Administrative Remedy Program requests pertain to which of his claims, and a combination of exhibits he provided, and other final determinations produced by the Defendants in discovery, show exhaustion of every category of claim. The Court should allow the Defendants an equal page length to Reply, and an equal amount of time, of seven days.  In addition, the court should award attorneys fees to undersigned counsel for having to do all this extra work to obtain these Remedy Packets, which do not reflect the Defendants' representations about them.

Respectfully submitted,

/s/ Paul Wolf

_____

Paul Wolf, CO Bar #42107
*Attorney for Mostafa Kamel Mostafa*
P.O. Box 21840
Washington, D.C. 20009
(202) 431-6986
paulwolf@yahoo.com
fax: n/a

February 5, 2022

### Certificate of Service

I hereby certify that on February 5, 2022, I filed the foregoing document, along with its Eight (8) Exhibits, with the Clerk of the Court using the Court's Electronic Case Filing (ECF) system, which will send notification to the attorneys of record for all other parties in this litigation.

/s/ Paul Wolf

_____

Paul Wolf, CO Bar #42107
*Attorney for Mostafa Kamel Mostafa*