IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 20-cv-00694-PAB-SKC

MOSTAFA KAMEL MOSTAFA,

     Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
TUTOILUMUNDO, ADX Unit Manager, in his official capacity,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her individual capacity,
LOEWE, ADX Officer, in his individual capacity,
NORJANO, ADX Officer, in his individual capacity,
CHOROSEVIC, ADX Occupational Therapist, in his individual capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
WILLIAM, ADX Nurse, in his individual capacity,
HUDELSTON, ADX Nurse, in his individual capacity,
STERETT, ADX Doctor, in his individual capacity,
ARMIJO, ADX Lieutenant, in his individual capacity, and
EDWARDS, ADX Officer, in his individual capacity,

     Defendants.

_____

**ORDER**
_____

This matter is before the Court on the Motion to Dismiss Pursuant to Rules

12(b)(1) and 12(b)(6) [Docket No. 222].  Plaintiff Mostafa Kamel Mostafa filed a

response, Docket No. 230, and defendants[1] filed a reply.  Docket No. 233.  The Court

has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    BACKGROUND[2]

Mr. Mostafa is a sixty-four year old inmate serving a life sentence at ADX, a

federal Bureau of Prisons ("BOP") facility in Florence, Colorado.  Docket No. 199 at 1-2,

¶¶ 1, 3.  Mr. Mostafa was convicted of terrorism-related offenses, including hostage-

taking; providing material support for al Qaeda; and supplying goods and services to the

Taliban.  *United States v. Mustafa*, 753 F. App'x 22, 27 (2d Cir. 2018) (unpublished).[3]

The defendants in this case are Attorney General Merrick Garland, Federal Bureau of

Investigations ("FBI") Director Christopher Wray, and BOP Director Michael Carvajal, as

well as the following ADX officials: Warden B. True, Unit Manager Tutoilumundo,

Facilities Department Official MacMillan, Medical Department Manager Follows, Officer

Loewe, Officer Norjano, Occupational Therapist Chorosevic, Officer Parry, Officer

---

[1] Defendants state that their motion is filed on behalf of every defendant except "Defendant Williams," Docket No. 222 at 2 n.1, who the Court presumes to be the defendant named as "William, ADX Nurse," in plaintiff's fourth amended complaint, the operative complaint.  *See* Docket No. 199 at 1.  In this order, "defendants" refers to every defendant except defendant "William."

[2] The facts below are taken from plaintiff's fourth amended complaint, Docket No. 199, and are presumed to be true for purposes of ruling on defendants' motion to dismiss.  *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

[3] Defendants argue that the Court may take judicial notice of Mr. Mostafa's conviction.  *See* Docket No. 222 at 2 n.2.  The Court will take judicial notice of this fact. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (holding that a court may take judicial notice of facts which are a matter of public record when considering a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment) (citations omitted).

Averit, Lieutenant Garduno, Nurse William, Nurse Hudelston, Doctor Sterett, Lieutenant

Armijo, and Officer Edwards.  *See* Docket No. 199 at 1, 4-7, ¶¶ 10-27.[4]

Mr. Mostafa is incarcerated in the H Unit of ADX.  *Id*. at 12, ¶ 44.  Mr. Mostafa is

a Muslim.  *Id*. at 14, ¶ 51.  There are many Muslim prisoners in the H Unit.  *Id*. at 15,

¶ 55.  Group prayer is "prohibited in the H Unit."  *Id*. at 14, ¶ 52.  Mr. Mostafa "has never

been allowed to pray with others.  Nor has he observed any other prisoners in the ADX

engaged in group prayer, during recreational time, or at other times."  *Id*. at 16-17, ¶ 60.

Mr. Mostafa has asked to use the recreational time for group prayer.  *Id*. at 15, ¶ 55.

However, recreational time is scheduled between 7:00 a.m. to 11:00 a.m., which does

not include any of the five times per day that Muslims are supposed to pray.  *Id*.

Mr. Mostafa's arms are amputated above the elbows and he has lost sight in one

eye.  *Id*. at 26, 53, ¶¶ 99, 229.  Defendants provided prosthetic arms to Mr. Mostafa.  *Id*.

at 29, ¶ 109.  However, the prosthetic arms are not waterproof and are made of a

material that irritates Mr. Mostafa's arm stumps.  *Id*., ¶¶ 109, 111.  Mr. Mostafa's religion

"requires that he wash himself before praying."  *Id*. at 18, ¶ 65.  Mr. Mostafa "cannot

wash himself after [using the] toilet to pray his minimum 5 times" per day.  *Id*. (internal

quotations and citation omitted).  Mr. Mostafa "needs an upward water stream from the

toilet in order to clean his rectum.  This is required for hygiene as well as the Plaintiff's

religion, which requires its adherents to clean themselves before praying.  The only

water stream in the cell points downward, from a height of about four feet."  *Id*. at 36,

---

[4] In the briefing, defendants spell several of the individual defendants' names
differently from the case caption.  *See* Docket No. 222 at 25-28, 35, 43-44 (using the
spelling "Averitt," "Huddleston," "Sterrett," "Fellows," and "Naranjo").  Throughout the
order, the Court will use the spelling of the defendants' names from the case caption,
which defendants have not moved to amend.

¶ 145.  Furthermore, the shower and sink buttons have "sharp edges" and are too difficult for Mr. Mostafa to push with his prosthetics.  *Id*., ¶ 143.

The consumption of halal food is important for Mr. Mostafa's religion.  *Id*. at 17-18, ¶ 62.  Halal meals are available at ADX; however, Mr. Mostafa had to choose kosher meals because halal food is packaged differently and delivered in a type of tray that Mr. Mostafa is unable to use.  *Id*.  Specifically, the tray used to serve kosher food is half the height of the tray used for halal food and is easier for Mr. Mostafa to scoop from.  *Id*. at 18, ¶ 63.  Defendants have failed to consider an alternative that would accommodate Mr. Mostafa, such as packaging halal meals the same way as kosher meals.  *Id*. at 25, ¶ 95.  Furthermore, Mr. Mostafa's religion requires that he eat feast meals containing meat for Eid.  *Id*. at 18, ¶ 64.  Defendants failed to give Mr. Mostafa a meal with meat on Eid.  *Id*.  However, defendants provided Passover meals to Jewish inmates during Jewish holidays.  *Id*.

Mr. Mostafa is subject to Special Administrative Measures ("SAMs"), which restrict his communication with other inmates, visitors, and attorneys.  *Id*. at 16, ¶ 60.  Mr. Mostafa is not permitted to communicate at all with three of his sons or his stepson.  *Id*. at 22, ¶ 84.  Aside from attorneys, Mr. Mostafa's wife and his daughter are the only individuals who are allowed to visit Mr. Mostafa at ADX.  *Id*. at 23, ¶ 86.  Mr. Mostafa "tried to contact [an] attorney, named Jules Lobel, but the Defendants wouldn't permit the contact.  The Plaintiff then attempted to use the Administrative Remedy Program without success.  The Defendants eventually determined that the Plaintiff was already permitted to contact three attorneys, and the Plaintiff wouldn't be permitted to contact another attorney."  *Id*. at 53, ¶ 230.

On October 19, 2019, Mr. Mostafa engaged in a hunger strike.  *Id*. at 39, ¶ 159.
Three days later, Lieutenant Armijo and Officer Edwards entered Mr. Mostafa's cell and
confiscated his legal, personal, and religious property.  *Id*., ¶ 160.  On October 28,
2019, Lieutenant Garduno, Officer Parry, Officer Averit, and Nurse Hudelston entered
Mr. Mostafa's cell to perform a medical assessment.  *Id*., ¶ 161.  Mr. Mostafa refused
the medical assessment.  *Id*.  Lieutenant Garduno, Officer Parry, and Officer Averit later
returned with Doctor Sterett.  *Id*., ¶ 162.  Doctor Sterett waited outside Mr. Mostafa's cell
while Lieutenant Garduno, Officer Parry, and Officer Averit physically assaulted Mr.
Mostafa for more than seven minutes.  *Id*. at 40, ¶¶ 163-165.  Mr. Mostafa's arm stump
was bleeding, but he did not receive medical assistance for nearly five hours.  *Id*. at 41,
¶ 170.  Nurse Hudelston ignored Mr. Mostafa's duress button for five hours.  *Id*., ¶ 171.
Lieutenant Armijo and Officer Edwards subsequently cleaned the blood from Mr.
Mostafa's cell and failed to write an incident report about the assault.  *Id*., ¶ 168.

Mr. Mostafa cannot trim his own toenails and often suffers from toenail infections.
*Id*. at 42, ¶ 176.  From March 2019 until January 13, 2020, Mr. Mostafa did not receive
any toenail trimmings.  *Id*.  Doctor Sterett, Mr. Chorosevic, and Ms. Follows told Mr.
Mostafa that his toenails would not be trimmed until he ended the hunger strike.  *Id*.  On
January 13, 2020, Nurse Hudelston used a tool to cut Mr. Mostafa's toenails, which
caused "bleeding and some pain."  *Id*.

In response to one of Mr. Mostafa's Administrative Remedy Program grievances,
the BOP's Regional Office decided that Mr. Mostafa's food should be opened before the
food is delivered to Mr. Mostafa's cell.  *Id*. at 44-45, ¶ 190.  However, Officer Loewe and
Officer Norjano deprived Mr. Mostafa of 150 meals by failing to remove the food from

the plastic wrapping.  *Id*. at 45, ¶ 192.  Furthermore, Ms. Follows refused Mr. Mostafa's request for his own independent occupational therapist.  *Id*. at 47, ¶ 202.  In addition, unnamed defendants failed to renew Mr. Mostafa's prescription medications on time and failed to provide Mr. Mostafa with a mask; adequate dental care, including an electric toothbrush; and a proper diet with vegetables.  *Id*. at 44, 46, ¶¶ 185, 189, 193, 198.

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B.  Federal Rule of Civil Procedure 12(b)(1)

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint.  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).  A facial attack assumes that the allegations in the complaint are true.  *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020).  "When a defendant brings a factual

attack, a district court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting *Stuart v. Colo. Interstate Gas Co*., 271 F.3d 1221, 1225 (10th Cir. 2001)).

Ultimately, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because he is "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co*., 518 F.3d 1186, 1189 (10th Cir. 2008).

### C. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).  However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard.  *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v.*

*Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).  When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case."  *Pearson*, 555 U.S. at 236.

## III.    ANALYSIS

Defendants move to dismiss Mr. Mostafa's first, second, third, fourth, seventh, and eighth claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Docket No. 222 at 5-44; *see also* Docket No. 222-1.[5]

### A.  First and Second Claims

Claim one alleges that Attorney General Garland, FBI Director Wray, BOP Director Carvajal, and Warden True violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*.  Docket No. 199 at 14-19, ¶¶ 50-67.  Claim two

---

[5] Defendants also move to dismiss Mr. Mostafa's Rehabilitation Act claims (claims five and six), Administrative Procedure Act claim (claim ten), and First Amendment access to courts claim (claim eleven).  Docket No. 222 at 11-14, 18-22, 25. However, the Court previously dismissed claims five and six without prejudice for failure to exhaust the administrative remedies as outlined in 28 C.F.R. § 39.170; dismissed claim ten with prejudice as barred under the statute of limitations; and dismissed claim eleven without prejudice for failure to exhaust the BOP's Administrative Remedy Program.  *See* Docket No. 257 at 16, 25, 27.  Accordingly, the Court will not consider these arguments.  Defendants do not move to dismiss claim nine, *see* Docket No. 222 at 2 n.1, which alleges an Eighth Amendment deliberate indifference claim against defendant William in his individual capacity.  *See* Docket No. 199 at 48-49, ¶¶ 207-210.

alleges that Attorney General Garland, FBI Director Wray, BOP Director Carvajal, and Warden True violated Mr. Mostafa's First Amendment right to free exercise of religion. *Id*. at 19-20, ¶¶ 68-72.  Defendants argue that the Court should dismiss the portions of Mr. Mostafa's first and second claims alleging the denial of a halal diet, a religious feast meal, and ritual washing pursuant to Fed. R. Civ. P. 12(b)(1) because Mr. Mostafa lacks standing to assert these claims.[6]  Docket No. 222 at 14, 16-18; *see also* Docket No. 233 at 5.  Defendants also argue that the Court should dismiss the portion of claim two alleging an inability to engage in group prayer pursuant to Fed. R. Civ. P. 12(b)(6) because Mr. Mostafa fails to allege that ADX's group prayer policy lacks a rational basis.[7]  Docket No. 222 at 14-16.

To establish Article III standing, a plaintiff must allege "that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision."  *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)).  In order to show the first element of standing, a plaintiff must show he has "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

---

[6] The Court previously dismissed without prejudice the portions of claims one and two alleging the denial of a religious feast meal for failure to exhaust administrative remedies.  *See* Docket No. 257 at 19.  Accordingly, the Court will not address defendants' standing argument for religious feast meals.

[7] The Court previously dismissed without prejudice the portions of claims one and two alleging an inability to engage in group prayer for failure to exhaust administrative remedies.  *See* Docket No. 257 at 20.  Accordingly, the Court will not address this argument.

560-61 (1992) (internal quotations and citations omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("Injury in fact is a constitutional requirement.").  An injury is particularized if it affects the plaintiff in "a personal and individual way." *Spokeo,* 578 U.S. at 339 (citation omitted).  "A 'concrete' injury must be 'de facto'; that is, it must actually exist;" it must be "real," not "abstract."  *Id*. at 340.

### 1)  Halal Diet

Mr. Mostafa's complaint alleges that defendants have failed to provide halal food in an accessible manner, which substantially burdens his practice of religion.  Docket No. 199 at 17-18, ¶ 62.  Although halal meals are available at ADX, Mr. Mostafa had to choose kosher meals because the halal food is packaged differently and delivered in a different type of tray that Mr. Mostafa is unable to use.  *Id*.  Specifically, the tray used to serve kosher food is half the height of the tray used for halal food and is easier for Mr. Mostafa to scoop from.  *Id*. at 18, ¶ 63.  The complaint alleges that defendants have failed to consider an alternative that would accommodate Mr. Mostafa, such as packaging halal meals the same way as kosher meals.  *Id*. at 25, ¶ 95.

Defendants argue that Mr. Mostafa does not have standing to pursue his halal diet subclaim because Mr. Mostafa "cannot show that he has a concrete, actual or imminent injury that can be redressed by a favorable ruling."  Docket No. 222 at 16.  In support of their argument, defendants cite a declaration from T. Mazon, the Assistant Food Services Administrator at ADX.  *See id*.; Docket No. 222-5 at 2-3, ¶ 1. Administrator Mazon states that Mr. Mostafa can request a halal meal and the food services staff will prepare the halal meal in an accessible manner, including removing all packaging.  Docket No. 222-5 at 4, ¶ 8.  As a result, defendants argue that there is, in

fact, no impediment to Mr. Mostafa receiving halal meals at ADX.  Docket No. 222 at 17.

Neither defendants nor plaintiff address whether this is a facial or factual challenge to

Mr. Mostafa's standing.[8]  The Court finds that it is a factual challenge because

defendants "go beyond allegations contained in the complaint by presenting evidence to

challenge the factual basis upon which subject matter jurisdiction rests."  *See Nudell*,

363 F.3d at 1074.

Although the Court may consider declarations on a factual challenge under Rule

12(b)(1), the Tenth Circuit has held that, "[i]f the jurisdictional question is intertwined

with the merits of the case, the issue should be resolved under 12(b)(6) or Rule 56"

instead of Rule 12(b)(1).  *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987); *see

also Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  The jurisdictional

question is intertwined with the merits of the case when "resolution of the jurisdictional

question requires resolution of an aspect of the substantive claim."  *Gabriel v. United

States*, 683 F. App'x 671, 673-74 (10th Cir. 2017) (unpublished) (quoting *Pringle v.

United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)).

The Court finds that whether Mr. Mostafa is being denied access to halal meals

cannot be resolved on a Rule 12(b)(1) motion because defendants' standing argument

is intertwined with the merits of Mr. Mostafa's RFRA and First Amendment claims.  "[A]

plaintiff establishes a *prima facie* claim under RFRA by proving the following three

elements: (1) a substantial burden imposed by the federal government on a (2) sincere

(3) exercise of religion."  *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 746 (10th

---

[8] Defendants do not claim that ADX's willingness to accommodate Mr. Mostafa's request for accessible halal meals has rendered this claim moot, at least in terms of any request for injunctive relief.

Cir. 2019) (unpublished) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001)).  A plaintiff may show a violation of the Free Exercise Clause in numerous ways, including by showing that a "government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'"  *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421-22 (2022) (citation omitted).  In this case, the injury asserted in Mr. Mostafa's RFRA and Free Exercise claims – not receiving halal meals – "mirror[s] the alleged standing injury."  *See Rivera v. Maldonado*, No. 21-cv-01119-CMA-NYW, 2022 WL 870596, at *7 (D. Colo. Mar. 11, 2022), *recommendation adopted*, Docket 51 at 2-3; *see also Montanez v. Future Vision Brain Bank, LLC*, 536 F. Supp. 3d 828, 835 (D. Colo. 2021) ("The Court sees no way in which to resolve the question of. . . an injury-in-fact without getting into the merits of the claim.").  Defendants do not argue that the Court should convert the motion to dismiss to a summary judgment motion or a Rule 12(b)(6) motion, and the Court therefore declines to do so.  *See Rivera*, 2022 WL 870596, at *8.  As a result, at this stage, the Court rejects defendants' argument that Mr. Mostafa's halal diet subclaim should be dismissed for lack of standing.

### 2) *Ritual Washing*

Mr. Mostafa's complaint alleges that his religion "requires that he wash himself before praying."  Docket No. 199 at 18, ¶ 65.  Mr. Mostafa "cannot wash himself after [using the] toilet to pray his minimum 5 times" per day.  *Id*. (internal quotations and citation omitted).  Mr. Mostafa "needs an upward water stream from the toilet in order to clean his rectum.  This is required for hygiene as well as the Plaintiff's religion, which requires its adherents to clean themselves before praying.  The only water stream in the

cell points downward, from a height of about four feet."  *Id.* at 36, ¶ 145.  Furthermore, the shower and sink buttons have "sharp edges" and are too difficult for Mr. Mostafa to push with his prosthetics.  *Id.*, ¶ 143.

Defendants argue that Mr. Mostafa does not have standing to pursue his ritual washing subclaim because he cannot establish a redressable injury.  Docket No. 222 at 17-18.  In support of their argument, defendants cite declarations from D. McMullen, the Complex Facilities Manager at ADX, and S. Hall, the Health Services Administrator at ADX.  *See id.* at 18; Docket No. 222-6 at 2-3, ¶ 1; Docket No. 222-7 at 2-3, ¶ 1. Facilities Manager McMullen states that Mr. Mostafa's cell

> has a larger shower than other ADX cells.  The shower has a bench and [] safety grab bars.  The shower also has two shower heads, each controlled by a separate button, one mounted higher in the shower and the other mounted at a lower level to enable Mostafa to clean the lower half of his body. . . .  The water in Mostafa's shower is programmed to run 3.0 minutes, twice as long as in other ADX cells.  This reduces the number of times that Mostafa must depress the button for water flow.  Mostafa also has his own sink, which is programed to run 1.5 minutes, significantly longer than the 12-26 seconds for other ADX cells. There is no limit to the number of times Mostafa can press the button on his sink and shower.

Docket No. 222-6 at 3-4, ¶¶ 5-6 (footnotes omitted).  Health Services Administrator Hall states that there is no evidence in Mr. Mostafa's medical records "of skin breakdown suggesting an inability to clean himself."  Docket No. 222-7 at 4, ¶ 8.  Defendants argue that Mr. Mostafa cannot establish an "injury related to washing himself, nor would a favorable ruling from this Court redress that non-existent injury."  Docket No. 222 at 18. Neither defendants nor plaintiff address whether this is a facial or factual challenge to Mr. Mostafa's standing; however, the Court finds that it is a factual challenge.  *See Nudell*, 363 F.3d at 1074.

The Court denies this portion of defendants' motion for the same reasons as the halal diet subclaim.  Whether Mr. Mostafa is denied access to ritual washing cannot be resolved on a Rule 12(b)(1) motion because defendants' standing argument is intertwined with the merits of Mr. Mostafa's RFRA and First Amendment claims.  The injury asserted in Mr. Mostafa's RFRA and Free Exercise claims – not being able to wash himself before engaging in prayer – "mirror[s] the alleged standing injury."  *See Rivera*, 2022 WL 870596, at *7.  As a result, at this stage, the Court rejects defendants' argument that Mr. Mostafa's ritual washing subclaim should be dismissed for lack of standing.

### B.  Third Claim

Mr. Mostafa's third claim alleges that Attorney General Garland, FBI Director Wray, BOP Director Carvajal, and Warden True violated the Fifth Amendment's Equal Protection Clause.  Docket No. 199 at 20-21, ¶¶ 73-81.  The third claim alleges that "[r]estrictions on group prayer, food[,] and washing discriminate against Muslims."  *Id.* at 20, ¶ 74.[9]  Defendants argue that the Court should dismiss the portion of claim three alleging that the group prayer policy violates the equal protection clause.  Docket No. 222 at 22-24.[10]

---

[9] Defendants do not address the portion of claim three alleging that the "provision of Passover meals, but not *Eid* meals," discriminates "against Muslims in favor of Jews." *See* Docket No. 199 at 20, ¶ 75.  Accordingly, the Court will not address that portion of plaintiff's third claim.

[10] Furthermore, defendants argue that the Court should dismiss the portions of claim three addressing halal food and ritual washing because Mr. Mostafa lacks standing to litigate these issues for the same reasons as defendants argued with respect to claims one and two.  Docket No. 222 at 22.  The Court denies defendants' standing argument for the same reasons as discussed for claims one and two.  Additionally, defendants cursorily argue that "it does not make sense that an alleged inability to eat halal food, or to wash, based on a disability particularized to Mostafa has

The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. Amend. V.  The Fifth Amendment contains an implicit guarantee of equal protection identical to the Fourteenth Amendment's Equal Protection Clause.  *Sessions v. Morales-Santana*, 582 U.S. 47, 52 n.1 (2017).  The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike."  *Ashaheed v. Currington*, 7 F.4th 1236, 1249 (10th Cir. 2021) (quoting *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016)).  To state an equal protection claim, a plaintiff must first make a "threshold showing" that he was "treated differently from others who were similarly situated to [him]."  *Tenison v. Byrd*, 826 F. App'x 682, 688 (10th Cir. 2020) (unpublished) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)); *see also Rojas v. Heimgartner*, 604 F. App'x 692, 695 (10th Cir. 2015) (unpublished).  A plaintiff must prove the "existence of purposeful discrimination."  *Ashaheed*, 7 F.4th at 1250 (citation omitted).  Additionally, "plaintiffs in a prison context have the burden of demonstrating that 'the difference in treatment was not reasonably related to legitimate penological interests.'"  *Rojas*, 604 F. App'x at 695 (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006)).

Defendants argue that Mr. Mostafa has failed to plead that any similarly situated inmates were treated more favorably than him for group prayer opportunities.  Docket No. 222 at 23.  Defendants also argue that Mr. Mostafa has failed to allege that the

---

an impact on Muslims generally."  *Id*.  The Court declines to address this argument. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (internal quotations and citation omitted).

16

group prayer policy constitutes purposeful discrimination against Muslim inmates or that the group prayer policy is not reasonably related to a legitimate penological interest of protecting ADX staff. *Id*. at 24. Mr. Mostafa responds that he has stated an equal protection claim because "group prayer is totally prohibited in the H Unit of the ADX prison" and the "H Unit is primarily used to house Muslim prisoners." Docket No. 230 at 29 & n.18.

The Court finds that Mr. Mostafa has failed to plead any allegations suggesting that he was "treated differently from others who were similarly situated to [him]." *See Tenison*, 826 F. App'x at 688. The complaint alleges that "group prayer is totally prohibited in the H Unit of the ADX prison, where the plaintiff is housed" and that there are many "Muslim prisoners in the H Unit of the ADX." Docket No. 199 at 14-15, ¶¶ 52, 55. Mr. Mostafa "has never been allowed to pray with others. Nor has he observed any other prisoners in the ADX engaged in group prayer, during recreational time, or at other times." *Id*. at 16-17, ¶ 60. Mr. Mostafa, however, fails to allege that prisoners who practice other religions were allowed to engage in group prayer in the H unit or in other units at ADX. Furthermore, the complaint contains no allegations suggesting the existence of purposeful discrimination. *See Ashaheed*, 7 F.4th at 1250. Accordingly, the Court grants this portion of defendants' motion and will dismiss with prejudice the portion of Mr. Mostafa's third claim alleging that the group prayer restrictions constitute an equal protection violation.

## C. Fourth Claim

Claim four alleges that Attorney General Garland, FBI Director Wray, BOP Director Carvajal, and Warden True violated Mr. Mostafa's First Amendment rights to

freedom of speech and association by restricting his communications with various individuals.  Docket No. 199 at 22-25, ¶¶ 82-96.  Defendants move to dismiss the portions of claim four alleging that Mr. Mostafa is unable to contact his sons and stepson, grandchildren,[11] and prospective attorneys.[12]  Docket No. 222 at 5-11.

Although prisoners do not forfeit their constitutional rights in prison, "prisoners' rights may be restricted in ways that 'would raise grave First Amendment concerns outside the prison context.'"  *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  Supreme Court cases have established that "freedom of association is among the rights least compatible with incarceration.  Some curtailment of that freedom must be expected in the prison context."  *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citations omitted).

In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the Supreme Court held that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  The burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."  *Overton*, 539 U.S. at 132.  Courts use four factors to guide the *Turner* inquiry:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy

---

[11] The Court previously dismissed without prejudice the portion of claim four alleging an inability to contact grandchildren for failure to exhaust administrative remedies.  *See* Docket No. 257 at 15.  The Court therefore will not consider defendants' arguments regarding this sub-claim.

[12] The Court also dismissed without prejudice the portion of claim four alleging an inability to contact attorneys, other than attorney Lobel, for failure to exhaust administrative remedies.  *See* Docket No. 257 at 15-16.  The Court found that the portion of this claim alleging an inability to contact attorney Lobel was properly exhausted and therefore remained in the case.  *Id*.  Accordingly, the Court will consider defendants' argument on this subclaim as it relates to attorney Lobel.

or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (citations omitted).  However, "in ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is 'reasonably related to a legitimate penological interest.'"  *Id*. (quoting *Gee*, 627 F.3d at 1187).  Thus, under *Iqbal* and *Turner*, an inmate must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.  This is not to say that [the inmate] must identify every potential legitimate interest and plead against it.  However, he is required to recite facts that might well be unnecessary in other contexts to surmount a motion to dismiss."  *Id*. (internal quotations, citations, and alterations omitted); *see also Abdulmutallab v. Sessions*, No. 17-cv-02493-RM-KMT, 2019 WL 1064062, at *4 (D. Colo. Mar. 6, 2019), *recommendation adopted in relevant part*, *Abdulmutallab v. Barr*, 2019 WL 4463284 (D. Colo. Sept. 18, 2019).

### 1)  Contact with Sons and Stepson

Defendants argue that Mr. Mostafa fails to allege the absence of a rational basis for the SAMs restrictions barring communications with his sons and stepson.  Docket No. 222 at 7.[13]  Defendants argue that the government has a legitimate penological

---

[13] Defendants request that the Court consider Mr. Mostafa's SAMs document. Docket No. 222 at 2 n.2; *see also* Docket No. 222-2.  Generally, a court should not consider any evidence beyond the pleadings when ruling on a 12(b)(6) motion, *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019), and, if the court considers matters outside the complaint, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the

interest in protecting national security.  *Id*. at 7-8.  Given Mr. Mostafa's convictions for terrorism related offenses and his "ability and willingness to incite others to commit violence, terrorism, and murder," national security officials concluded in the SAMs document that "communications made or received by [Mr. Mostafa] could pose an operational threat, even though he is incarcerated."  *Id*. at 3 (quoting Docket No. 222-2 at 3, 6).  The SAMs prohibit contact with Mr. Mostafa's son and stepson, Mohammed and Mohsin, because Mohammed and Mohsin were involved in the Yemen hostage-taking enterprise.  *Id*. at 4 (citing Docket No. 222-2 at 5).  The SAMs also prohibit contact with Mr. Mostafa's son Sufyan because Sufyan "has been stripped of his British passport . . . [and] has an extremely active presence on social media[,] on which he shares jihadist propaganda."  *Id*. (quoting Docket No. 222-2 at 5).  As a result, defendants contend that the SAMs restrictions are rationally related to protecting national security in light of Mr. Mostafa's and his sons' "shared commitment to violent jihad."  *Id*. at 8-9.  Defendants argue that Mr. Mostafa's pleading fails to rebut the "obvious justifications" for the restrictions.  *Id*. at 7.

---

parties do not dispute the documents' authenticity."  *Waller*, 932 F.3d at 1282; *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").  A court has "broad discretion in determining whether or not to accept materials beyond the pleadings."  *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).  The Court will consider Mr. Mostafa's SAMs, Docket No. 222-2, because the SAMs are referenced in the complaint, central to Mr. Mostafa's fourth claim, and plaintiff does not dispute the authenticity of the exhibit.  *See* Docket No. 199 at 16, ¶ 60; *see also Al-Owhali*, 687 F.3d at 1241 (considering a SAMs exhibit at the motion to dismiss stage).

Mr. Mostafa responds that the SAMs restrictions on contacting his family members are not reasonably related to any legitimate penological interest because the "restrictions appear to be pretexts for punishing the Plaintiff in ways not authorized by law" and the restrictions are an "exaggerated response to the real threat posed by the Plaintiff." Docket No. 230 at 8-9. Mr. Mostafa asserts that his children are "harmless." *Id*. at 8. Mr. Mostafa contends that another case in this district held that restrictions on a prisoner's communications with immediate family members were arbitrary and capricious. *Id*. (citing *Mohammed v. Holder*, 47 F. Supp. 3d 1236, 1239 (D. Colo. 2014)).

The Court finds that Mr. Mostafa has failed to plead any facts suggesting that the SAMs restrictions prohibiting contact with his sons and stepson are not reasonably related to any legitimate penological interest. "The government has a well-established legitimate penological interest in protecting national security." *Abdulmutallab*, 2019 WL 1064062, at *4 (citing *Rezaq v. Nalley*, 677 F.3d 1001, 1014 (10th Cir. 2012) (discussing the "uniquely federal penological interest in addressing national security risks")). Mr. Mostafa's complaint contains no allegations suggesting that "the ban on communicating with" his sons and stepson "did not serve the purpose of preventing future terrorist activity." *See Al-Owhali*, 687 F.3d at 1241. For example, the complaint does not allege that Mr. Mostafa's sons and stepsons have no connections to terrorist activities or organizations. The Tenth Circuit and several courts in this district have dismissed similar claims challenging SAMs restrictions related to communication with family members. *See, e.g.*, *id*. (holding that plaintiff failed to rebut the government's "coherent explanation" that plaintiff's "communications or contacts with persons could

result in death or serious bodily injury to persons"); *Abdulmutallab*, 2019 WL 4463284, at *4 (holding that the complaint failed to plead sufficient facts to infer that the SAMs were not reasonably related to the legitimate penological interest of protecting national security); *Nicholson v. Brennan*, No. 15-cv-01999-KLM, 2017 WL 4337896, at *5-6 (D. Colo. Sept. 28, 2017) (dismissing First Amendment claim "because Plaintiff has not alleged that the communication ban does not serve the legitimate purpose of preventing him from potentially divulging classified information" to his parents or fiancé).[14] Accordingly, the Court grants this portion of defendants' motion and will dismiss with prejudice the portion of claim four alleging an inability to contact Mr. Mostafa's sons and stepson.

### 2)  Contact with Attorney Jules Lobel

Mr. Mostafa's fourth claim alleges that defendants have "severely restricted Plaintiff's communications with his foreign attorneys, and with prospective, un-approved attorneys."  Docket No. 199 at 22, ¶ 83.  Defendants argue that Mr. Mostafa's SAMs do not restrict him from communicating with attorneys, but rather require any prospective attorney to sign an affirmation provision agreeing to abide by the SAMs' rules, including not forwarding any third-party messages to or from Mr. Mostafa.  Docket No. 222 at 10-

---

[14] The Court finds that the *Mohammed* case is distinguishable.  The court in that case found that the inmate demonstrated that there was no rational connection between his SAMs restriction and a legitimate governmental interest in national security because the "Warden of ADX has recommended that Mr. Mohammed be permitted to correspond with more members of his family and community" and there was no evidence that "the persons with whom Mr. Mohammed wishes to communicate pose[d] a particular threat either to the security of the prison or to the public at large."  *Mohammed v. Holder*, No. 07-cv-02697-MSK-BNB, 2011 WL 4501959, at *8 (D. Colo. Sept. 29, 2011).  Here, Mr. Mostafa has not alleged that the Warden provided any such recommendation.  *See Al-Owhali*, 687 F.3d at 1241 (distinguishing *Mohammed's* holding on the same ground); *Nicholson*, 2017 WL 4337896, at *4 (same).

11 n.6.  Defendants argue that Mr. Mostafa fails to plead that the attorney affirmation provision lacks a rational basis to the legitimate penological interest of protecting national security.  *Id*. at 11.  Additionally, defendants argue that Mr. Mostafa has not alleged that the BOP denied a specific request from Mr. Mostafa to contact an attorney.  *Id*. at 10.

The complaint alleges that Mr. Mostafa "tried to contact another attorney, named Jules Lobel, but the Defendants wouldn't permit the contact.  The Plaintiff then attempted to use the Administrative Remedy Program without success.  The Defendants eventually determined that the Plaintiff was already permitted to contact three attorneys, and the Plaintiff wouldn't be permitted to contact another attorney."  Docket No. 199 at 53, ¶ 230.  The Court finds that these allegations plausibly suggest that defendants' decision to prohibit contact with attorney Jules Lobel was not reasonably related to a legitimate penological interest.  Accordingly, the Court denies this portion of defendants' motion.

### D.  Seventh Claim

Mr. Mostafa's seventh claim asserts an Eighth Amendment excessive force claim against Officer Parry, Officer Averit, Lieutenant Garduno, Nurse William, Nurse Hudelston, Doctor Sterett, Lieutenant Armijo, and Officer Edwards in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Docket No. 199 at 39-43, ¶¶ 158-183.  Defendants argue that Mr. Mostafa's excessive force claim should be dismissed because (1) there is no *Bivens* remedy available for this claim and (2) defendants are entitled to qualified immunity.  Docket No. 222 at 25-34.

The Court conducts a two-part inquiry to determine whether a *Bivens* remedy exists.  First, the Court asks "whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the [Supreme] Court has implied a damages action."  *Egbert v. Boule,* 596 U.S. 482, 492 (2022) (internal quotations and alterations omitted) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)).  The Supreme Court has recognized a cause of action under *Bivens* in three cases.  *Id*. at 490-91.  In *Bivens*, the Court recognized a cause of action under the Fourth Amendment when federal agents conducted a warrantless entry and search of a home without probable cause.  *Bivens*, 403 U.S. at 396-97.  In *Davis v. Passman*, 442 U.S. 228, 242-49 (1979), the Court extended *Bivens* to a claim by a former congressional aid against her former employer for sex discrimination in violation of the Fifth Amendment's Due Process Clause.  Finally, in *Carlson v. Green*, 446 U.S. 14, 17-25 (1980), the Court extended *Bivens* to allow a prisoner to bring suit against a prison official who was deliberately indifferent to his medical needs in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause.

Second, "if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert,* 596 U.S. at 492 (citation omitted).  "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy."  *Id*. (citation omitted).  *Egbert* stated that this two-step inquiry "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  *Id*.  *Egbert* noted that recognizing a cause of

action under *Bivens* is "a disfavored judicial activity." *Id*. at 491 (citing *Ziglar*, 582 U.S. at 135); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("we are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity'. . . it is an action that is impermissible in virtually all circumstances."). The Tenth Circuit in *Silva* emphasized that the "the key takeaway from *Egbert* [is] that courts may dispose of *Bivens* claims for 'two independent reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs.'" 45 F.4th at 1141.

Defendants argue that Mr. Mostafa's excessive force claim arises in a new context and the BOP's Administrative Remedy Program is an alternative remedy that forecloses this claim. Docket No. 222 at 26-28. Mr. Mostafa argues that his excessive force claim does not present a new context because it arises under the Eighth Amendment, similar to the plaintiff's claim in *Carlson*. Docket No. 230 at 33. In support of this argument, Mr. Mostafa cites several district court opinions upholding *Bivens* remedies for excessive force claims. *Id*. (citing *Mohamed v. Jones*, No. 20-cv-02516-RBJ-NYW, 2022 WL 523440, at *10 (D. Colo. Feb. 22, 2022); *Smith v. Trujillo*, No. 20-cv-00877-RBJ-NYW, 2021 WL 1799400, at *5 (D. Colo. Mar. 26, 2021), *recommendation adopted*, 2021 WL 1608829 (D. Colo. Apr. 26, 2021)). Furthermore, Mr. Mostafa argues that no alternative remedies exist because he exhausted the excessive force claim using the BOP's Administrative Remedy Program. *Id*. at 35. Mr. Mostafa also appears to argue that the BOP's Administrative Remedy Program is not adequate because it does not provide a legal cause of action. *See id*.

The Court finds that Mr. Mostafa's excessive force claim arises in a new context from *Bivens*, *Passman*, and *Carlson*.  In *Silva*, the Tenth Circuit held that an ADX prisoner's Eighth Amendment excessive force claim against a prison guard "clearly constitutes an expansion of *Bivens* because '[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.'"  45 F.4th at 1137 (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).  The Tenth Circuit found that the "distinction between an excessive force claim like the one Plaintiff brings and a deliberate indifference to medical needs claim—which the Supreme Court recognized as a valid *Bivens* action in *Carlson*—is sufficient to conclude that Plaintiff's claim would require an expansion of *Bivens* to move forward even though it originates under the Eighth Amendment."  *Id*.  The cases that Mr. Mostafa relies on were decided before the Tenth Circuit's decision in *Silva*.  Accordingly, *Silva* dictates that Mr. Mostafa's excessive force claim arises in a new context.

Furthermore, the government has provided an alternative remedy, BOP's Administrative Remedy Program, which forecloses Mr. Mostafa's excessive force claim. The Tenth Circuit in *Silva* specifically held that the "availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose [a] *Bivens* claim."  *Id*. at 1141.[15]  Furthermore, in *Egbert,* the Supreme Court held that

---

[15] Mr. Mostafa contends that his case is distinguishable from *Silva* because "Silva's case was dismissed because he failed to exhaust his administrative remedies," whereas Mr. Mostafa exhausted his remedies using the BOP's Administrative Remedy Program.  Docket No. 230 at 31-32.  The Tenth Circuit in *Silva* did not dismiss the case for failure to exhaust administrative remedies.  *See* 45 F.4th at 1141-42.  Rather, the court found that the availability of the BOP Administrative Remedy Program as a whole

> the question whether a given remedy is *adequate is a legislative determination that must be left to Congress, not the federal courts*.  So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.  That is true even if a court independently concludes that the Government's procedures are "not as effective as an individual damages remedy."

596 U.S. at 498 (emphasis added; citation omitted).  The Court accordingly rejects Mr. Mostafa's argument that the Administrative Remedy Program is not adequate because it fails to provide a legal cause of action.  *See id*.  Because Mr. Mostafa's seventh claim is foreclosed by the availability of the Administrative Remedy Program, *see Silva*, 45 F.4th at 1141-42, the Court grants this portion defendants' motion and will dismiss plaintiff's seventh claim with prejudice.[16]

### E.  Eighth Claim

Mr. Mostafa's eighth claim asserts a *Bivens* claim against Ms. Follows, Nurse Hudelston, Doctor Sterett, Officer Loewe, Mr. Chorosevic, and Officer Norjano in their individual capacities for deliberate indifference to Mr. Mostafa's medical needs in violation of the Eighth Amendment.  Docket No. 199 at 43-48, ¶¶ 184-206.  Claim eight contains various allegations including the failure to trim Mr. Mostafa's toenails, to remove Mr. Mostafa's food from plastic packaging, to provide adequate dental care, to renew Mr. Mostafa's prescriptions, and to provide a specific diet with vegetables, as well as the denial of a mask and an occupational therapist of Mr. Mostafa's choice.[17]  *See id*.

---

foreclosed a *Bivens* claim for excessive force.  *See id*.  As a result, the Court rejects this argument.

[16] The Court therefore will not reach defendants' argument that the individual defendants are entitled to qualified immunity on this claim.  *See* Docket No. 222 at 28-34.

[17] The Court previously dismissed without prejudice the portions of claim eight alleging deliberate indifference due to the alleged denial of a mask and an occupational

at 42-47, ¶¶ 176, 185-187, 189, 192-93, 198, 202.  Defendants argue that (1) Mr.
Chorosevic and Ms. Follows are entitled to absolute immunity; (2) Mr. Mostafa's
deliberate indifference claim should be dismissed because there is no *Bivens* remedy
available; and (3) all defendants are entitled to qualified immunity.  Docket No. 222 at
35-44.

### 1)  Absolute Immunity

As a preliminary matter, defendants argue that Mr. Chorosevic and Ms. Follows
are entitled to absolute immunity from damages suits because they are commissioned
officers in the United States Public Health Service ("PHS").  Docket No. 222 at 35.  The
Supreme Court has held that 42 U.S.C. § 233(a) "grants absolute immunity to PHS
officers and employees for actions arising out of the performance of medical or related
functions within the scope of their employment by barring all actions against them for
such conduct.  By its terms, § 233(a) limits recovery for such conduct to suits against
the United States."  *Hui v. Castaneda*, 559 U.S. 799, 806 (2010); *see also Weeks v.
Barkman*, No. 20-cv-00544-PAB-NYW, 2021 WL 4146001, at *2 (D. Colo. Sept. 13,
2021).  Defendants submit declarations from Mr. Chorosevic and Ms. Follows in support
of this argument.  *See* Docket No. 222-8 at 3, ¶¶ 1-2 (declaring that Mr. Chorosevic is a
commissioned PHS Captain and that all his interactions with Mr. Mostafa occurred "in
the performance of a medical or related function within the scope of [his] employment");
Docket No. 222-9 at 3, ¶¶ 1, 3 (declaring that Ms. Follows is a commissioned PHS

---

therapist of Mr. Mostafa's choice for failure to exhaust administrative remedies.  Docket
No. 257 at 21.

Lieutenant and that all of her interactions with Mr. Mostafa "were done in the performance of a medical or related function within the scope of [her] employment").

Mr. Mostafa agrees that Mr. Chorosevic and Ms. Follows are entitled to absolute immunity as PHS officers and therefore concedes that the claims against them should be dismissed.  Docket No. 230 at 41.  Accordingly, the Court grants this portion of defendants' motion and dismisses claim eight against Mr. Chorosevic and Ms. Follows without prejudice.  *See Weeks*, 2021 WL 4146001, at *2 (dismissing claims against PHS officers without prejudice because the officers were entitled to absolute immunity under § 233(a)).

### 2)  *Bivens Remedy*

Defendants argue that Mr. Mostafa's deliberate indifference claim arises in a new context from *Carlson* because Mr. Mostafa's scattered allegations about inadequate dental care, food packaging, a specific diet, toenail trimmings, and prescription medication are dissimilar in nature and severity to the "gross deprivation of care" that the plaintiff in *Carlson* suffered.  Docket No. 222 at 35-36.  Furthermore, defendants argue that the BOP's Administrative Remedy Program is an alternative remedy that forecloses this claim and Congress is better positioned to create damages remedies in this context.  *Id*. at 37.  Mr. Mostafa did not respond to these arguments.

The Court finds that Mr. Mostafa's deliberate indifference claim arises in a new context from *Carlson*.  As noted earlier, "a claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."  *Silva*, 45 F.4th at 1137 (quoting *Hernandez*, 140 S. Ct. at 743).  In *Carlson*, the defendants failed to give plaintiff "competent medical

attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital," which resulted in plaintiff's death. *Carlson*, 446 U.S. at 16 n.1. Mr. Mostafa's deliberate indifference claim arises in a new context because it has meaningful differences from *Carlson*. First, Carlson involved the denial of medical care in response to acute asthmatic breathing issues, *see id.*, whereas Mr. Mostafa's allegations concern health maintenance issues of inadequate dental care, food packaging, a specific diet, toenail trimmings, and prescription medication. *See* Docket No. 199 at 42-46, ¶¶ 176, 185-187, 189, 192, 198. Second, *Carlson* recognized a *Bivens* remedy in an extreme circumstance, not present here, where the denial of medical care resulted in the plaintiff's death. *See Carlson*, 446 U.S. at 16 n.1. Third, the defendants in *Carlson* administered contra-indicated drugs, whereas the defendants here are not alleged to have provided any contra-indicated medication to Mr. Mostafa. *See id.* Accordingly, the Court finds that Mr. Mostafa's deliberate indifference claim arises in a new context from *Carlson. See Archer v. Alms,* No. 20-cv-01247-PAB-KLM, 2023 WL 8367692, at *3 (D. Colo. Jan. 5, 2023) (finding that an Eighth Amendment deliberate indifference claim arose in a new context from *Carlson* where plaintiff, who suffered from COPD, alleged that correctional officers deployed pepper spray in an adjacent cell and failed to respond to plaintiff's breathing issues, which led to plaintiff's lung damage).

Furthermore, the government has provided an alternative remedy, BOP's Administrative Remedy Program, which forecloses Mr. Mostafa's deliberate indifference

claim. *See Silva*, 45 F.4th at 1141 (the "availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose [a] *Bivens* claim"). Accordingly, the Court grants this portion of defendants' motion and will dismiss plaintiff's eighth claim with prejudice against Nurse Hudelston, Doctor Sterett, Officer Loewe, and Officer Norjano.[18]

## F.  Other Issues

Although plaintiff lists ADX Unit Manager Tutoilumundo and ADX Facilities Department official MacMillian in the case caption, *see* Docket No. 199 at 1, plaintiff's complaint does not appear to assert any claims against these defendants.  None of the titles of the causes of action include these defendants' names.  *See* Docket No. 199 at 14-54.  Neither defendants nor plaintiff address this issue.

Official MacMillian's name is listed in two allegations under claim six.  *See* Docket No. 199 at 38-39, ¶¶ 154, 156.  However, the Court previously dismissed claim six without prejudice for failure to exhaust the administrative remedies as outlined in 28 C.F.R. § 39.170.  *See* Docket No. 257 at 25.  Furthermore, Unit Manager Tutoilumundo's name appears to be listed in one allegation under claim seven, although the name is misspelled as "Tuttoilmundo."  *See* Docket No. 199 at 42, ¶ 177.  However, as discussed above, the Court will dismiss claim seven with prejudice due to the lack of a *Bivens* remedy.  Accordingly, because there are no remaining claims asserted against these defendants, the Court will dismiss defendants Tutoilumundo and MacMillian from the case.

---

[18] The Court therefore will not reach defendants' argument that the individual defendants are entitled to qualified immunity on this claim.  *See* Docket No. 222 at 38-44.

## IV.    CONCLUSION

It is therefore

**ORDERED** that the Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) [Docket No. 222] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that the portion of claim three alleging that restrictions on group prayer discriminate against Muslims is dismissed with prejudice.  It is further

**ORDERED** that the portion of claim four alleging an inability to contact Mr. Mostafa's sons and stepson is dismissed with prejudice.  It is further

**ORDERED** that claim seven is dismissed with prejudice.  It is further

**ORDERED** that claim eight is dismissed against defendants Chorosevic and Follows without prejudice.  It is further

**ORDERED** that claim eight is dismissed against defendants Hudelston, Sterett, Loewe, and Norjano with prejudice.  It is further

**ORDERED** that defendants Chorosevic, Follows, Parry, Averit, Garduno, Hudelston, Sterett, Armijo, Edwards, Loewe, Norjano, Tutoilumundo, and MacMillian are terminated from this case.


DATED January 3, 2024.


BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge