IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 20-cv-00694-PAB-SKC

MOSTAFA KAMEL MOSTAFA,

    Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
TUTOILUMUNDO, ADX Unit Manager, in his official capacity,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her individual capacity,
LOEWE, ADX Officer, in his individual capacity,
NORJANO, ADX Officer, in his individual capacity,
CHOROSEVIC, ADX Occupational Therapist, in his individual capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
WILLIAM, ADX Nurse, in his individual capacity,
HUDELSTON, ADX Nurse, in his individual capacity,
STERETT, ADX Doctor, in his individual capacity,
ARMIJO, ADX Lieutenant, in his individual capacity, and
EDWARDS, ADX Officer, in his individual capacity[1]

    Defendants.

**Plaintiff's Motion for Reconsideration of the Court's Order of January 7, 2024 [Doc. 258]
Granting in Part and Denying in Part Defendants' Motion to Dismiss.**

Comes now the Plaintiff, pursuant to Rules 59 and 60(b), to move the Court to reconsider its Order of January 7, 2024 [Doc. 258] Granting in Part and Denying in Part Defendants' Motion to Dismiss. The Defendants oppose the Motion. A Proposed Order is attached.

---

[1] Although the Order at issue dismissed most of these Defendants, if the Court grants the Motion for Reconsideration, these Defendants would remain in the case, so they haven't been removed from the caption.

1

## ARGUMENT

Rule 60 (a) provides that the Court may correct a "mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Id. Rule 60 (b) provides that "on motion and just terms, the Court may relieve a party from a final judgment, order, or proceeding for (1) mistake, inadvertence, surprise, or excusable neglect ... or (6) any other reason that justifies relief." Id. Rule 59 (e) provides that the Court may alter or amend a judgment any time up to 28 days after it is issued.[2] The issues for reconsideration are best considered as oversights, or mistakes in understanding the nature of the Plaintiff's Administrative Procedure Act claims, which were adequately pled.

**A.    The Court erred by dismissing Count 10, for claims under the Administrative Procedure Act, which includes all of the Plaintiff's Constitutional claims, both procedurally and on the merits.**

All of the Plaintiff's claims were pled as Constitutional claims, including as Administrative Procedure Act ("APA") claims. Bivens provides a type of remedy (money), not a type of claim. Count 10, ¶ 217, states that "In addition to his placement in the ADX, all of the Plaintiff's other claims requiring exhaustion are reviewable under § 706 of the APA, as well as on the merits. These are standards of review, not separate claims that need to be pled." Id. Count 10 ¶ 211 states "Plaintiff incorporates by reference all of the preceding paragraphs as if set forth herein." Id. Even if there is no Bivens remedy for assaults by prison guards on prisoners, Constitutional violations are still reviewable under the APA, even though no money damages are available. The injunctive relief isn't insignificant to the Plaintiff, who has no hands and can barely see, and is in need of medical attention and humane living conditions.

---

[2] This Motion is timely under any of these Rules. A Rule 60(a) motion doesn't have a statutory time limit. A Rule 60(b) motion must be filed within a "reasonable time" no less than one year from the date of the order. F.R.C.P. 60(c). A Rule 59 (e) motion must be filed within 28 days after judgment. The Order in question was made on January 7, 2024, well within any of these deadlines.

Section 702 of the APA, under the heading "Right of Review" states the following: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. 5 U.S.C. § 702. The scope of APA review includes the merits of the underlying Constitutional claims, as well as the fairness and legality of the procedures used to make the administrative determinations, or any lack of a legal basis or factual support in the administrative record on review.[3] 5 U.S.C. § 702. The Court has already partially reviewed this record, to determine whether the Plaintiff exhausted his administrative remedies with respect to these claims. For those that have been exhausted, the Court must review whether the Defendant complied with the Administrative Procedure Act in denying the claims, and whether the Defendant's administrative procedures comply with the requirements of the APA.

---

[3] Section 706 of the APA, under the heading "Scope of Review" states the following: "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall- (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706.

Although the APA may not provide for money damages, it does have a powerful remedy that other types of claims don't have: the remand.  Even though the Defendants may not have employees with the title "Administrative Law Judge," they must still fulfill their obligations under the APA, and have people processing administrative complaints as if they were ALJ's, just like any other federal agency governed by the APA.  Therefore, the Court can find that excessive force was used in a force-feeding incident that left the Plaintiff bleeding, and that his wounds were not treated afterwards, despite the Plaintiff's repeated calls for help.  The Court can find that the Plaintiff needs dental and vision care.  Although these may be "new contexts" under Bivens, they are otherwise actionable Constitutional violations that have been fully exhausted under the Administrative Remedy Program and are now ripe for review under the Administrative Procedure Act.  The Court should Amend its Order to clarify that Count 10 is only dismissed insofar as it applies to Plaintiff's transfer to the ADX, but that any other Claims that were properly pled as Constitutional violations are still reviewable under the APA.  There is no such thing as a Bivens "claim," because Bivens provides only a remedy.

**B.    The Court erred by finding that alternative remedies to Bivens exist through the Defendants' Administrative Remedy Program, when the Court has failed to review the Defendants' denial of those claims under the APA.**

The Court cited a string of cases for the proposition that no Bivens remedy exists in "new contexts" because the Administrative Remedy Program of the BOP provides an alternative. However, if the Court fails to review the denials of the Administrative Remedy Program, which it must do under the APA, then the remedy isn't available.  In a footnote on page 26 of the Order, the Court explained:

> Mr. Mostafa contends that his case is distinguishable from Silva because "Silva's case was dismissed because he failed to exhaust his administrative remedies," whereas Mr. Mostafa exhausted his remedies using the BOP's Administrative Remedy Program. Docket No. 230 at 31-32. The Tenth Circuit in Silva did not dismiss the case for failure to exhaust

4

administrative remedies. See 45 F.4th at 1141-42. Rather, the court found that the availability of the BOP Administrative Remedy Program as a whole foreclosed a Bivens claim for excessive force. See id. As a result, the Court rejects this argument.

Order [Doc. 258] at 26.  Nevertheless, the program "as a whole" isn't available if the Court fails to review the agency's denial of the claims.

**C.     The Court didn't consider the Defendants' failure to treat Plaintiff's injury for five hours after the assault as a claim for deliberate indifference, or his claims for failure to intervene, and over-relied on the magnitude of the harm suffered.**

Courts in this Circuit use the two-step approach set forth in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017).  The court must first determine whether a claim arises in a materially different context than Bivens, Davis, and Carlson—the cases representing the three general contexts in which a Bivens remedy has been recognized.  See 137 S. Ct. at 1859-60 (citing Bivens, 403 U.S. 388 (1971); Davis v. Passman, 442 U.S. 228 (1979); and Carlson v. Green, 446 U.S. 14 (1980)).  If the circumstances at issue present "meaningful differences" from those established contexts, the court then assesses whether any special factors counsel hesitation in implying a remedy. See Silva, 45 F.4th at 1139.  Those factors include the existence of an adequate alternative remedy, absence of judicial guidance for adjudicating putative Bivens claims in that context, or sensitive circumstances such as national security implications. See Egbert, 142 S. Ct. at 1804.

**1.     The Plaintiff has stated a claim for failure to treat his injuries after the hunger strike.**

In Smith v. Trujillo, 2023 WL 5434715, (D. Colo. April 27, 2023), a BOP inmate in Florence, Colorado asserted claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) for violating his Eighth Amendment rights by using excessive force, and for deliberate indifference to his medical needs arising from the excessive force. Id. at *1.  According to the Plaintiff, prison guards entered his cell, handcuffed him, threw him to the ground, and slammed his head against the floor.  Id. Adopting the recommendation of

5

then-Magistrate Judge Wang, Judge Jackson granted defendants' motion to dismiss the deliberate indifference claim, and denied the motion to dismiss the excessive force claim. See ECF No. 106 at 8.1 in Civil Action No. 1:20-cv-00877-RBJ-STV. "However, [the court was] now bound by Silva" and dismissed the claim in summary judgment. Id. at *3, citing 45 F.4th at 1137.[4]

Because the claim arose in a new context, the court proceeded to the second step, considering whether special factors suggest that Bivens should not extend to this context. Id. at 4, citing Silva, 45 F.4th at 1139. It cited Egbert and Silva for two particular "special factors" that may foreclose Bivens relief: (1) the context is such that "Congress is better suited to weigh the costs and benefits of providing a remedy," or (2) alternative remedies that Congress "finds" adequate are available to the plaintiff. Id., citing Silva at 1140. "As to the first factor, I see no binding authority or persuasive rationale that would debilitate the Court from assessing whether to afford a Bivens remedy on this excessive force claim."[5] However, on the second special factor the Court found that plaintiff's Bivens claim was independently "foreclosed by the availability of the

---

[4] "The court in Silva reasoned without elaboration that the distinction between an excessive force claim and the deliberate indifference to medical needs claim recognized as a valid Bivens action in Carlson was 'sufficient to conclude that [p]laintiff's claim would require an expansion of Bivens to move forward' even though both claims originated under the Eighth Amendment. This rationale implies the proposition that all excessive force claims (or at the very least, those factually analogous to Silva) present new Bivens contexts. Therefore, I am bound by Silva to conclude that the excessive force claim here presents a new Bivens context." Id. (footnotes omitted)

[5] The Court explained: "Silva does not provide guidance as to this consideration since it relied solely on another rationale." Id. at *4, citing 45 F.4th at 1141 ("Because the Supreme Court has recognized independent means of disposing of Bivens claims, we focus our analysis on the alternative remedial schemes available to Plaintiff."). "Egbert is likewise not controlling, since it held that Congress was better positioned than the courts to create remedies specifically in the border-security context, and those special national security considerations are not present here. Cf. 142 S. Ct. at 1804. And in Hernandez, the Supreme Court declined to recognize a Bivens action related to conduct occurring at the United States/Mexico border, because 'regulating the conduct of agents at the border unquestionably has national security implications' and imposes a 'risk of undermining border security' that counseled against extending Bivens there. See 140 S. Ct. at 747. That risk of compromising border integrity, which is now well-recognized and which courts accordingly regard with due caution, is not present here." Smith v. Trujillo at *4.

BOP Administrative Remedy Program to address his complaint." Id. at *4, citing 45 F.4th at 1140. The Court relied on Silva and noted that it had "little difficulty concluding that the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions... can be brought to the attention of the BOP and prevented from recurring.' " Id.

The Court can't make such a finding in this case. The Plaintiff exhausted his administrative remedies through the Defendants' Administrative Remedy Program, yet his claim was still dismissed. The Court should review this claim, and Plaintiff's other Constitutional claims, pursuant to the Administrative Procedure Act, which is Claim 10 in Plaintiff's Fourth Amended Complaint. [Doc. 199][6] According to Judge Jackson, the Supreme Court's language from Egbert

---

[6] A review of some of the Plaintiff's allegations about the force-feeding incident show why APA is particularly appropriate, and why the Court must review the administrative procedures used as well as the merits. The Plaintiff alleged that Defendant Armijo didn't make an incident report for this incident, even though he was involved in it, and it involved the use of force. Fourth Amended Complaint, Doc. [199] at ¶166. During the subsequent hunger strike assessment, which was conducted somewhere other than the Plaintiff's cell, Defendants Armijo and Edwards ordered another inmate to clean the blood from the Plaintiff's cell. When the inmate refused, Defendants Armijo and Edwards entered Plaintiff's cell, and cleaned Plaintiff's blood from the floor, walls, and ceiling themselves, and failed to write an incident report about the assault. Id. at ¶168. Dr. Sterett failed to intervene, and subsequently failed to examine the Plaintiff or provide medical care to him. Id. at ¶169. Although Defendant Sterett was present, he didn't check to see if the Plaintiff was OK after the incident. Id. Defendant Sterrett didn't write a report, treat the Plaintiff's injuries, or send a nurse until hours later, while the Plaintiff remained bleeding. Id. The Plaintiff was bleeding from his arm stump and "blood was everywhere," but - despite pressing the "duress button" to get medical help - no help was provided for approximately five more hours. Id. at ¶170. After five hours, bandages were applied to the Plaintiff's bleeding stump, which were not removed until three weeks later. Id. Defendant Hudelston was present for the threats made in the early morning. On information and belief, Defendant Hudelston didn't tell any manager about the incident or make a report. Id. at ¶171. On information and belief, Defendant Hudelston deliberately ignored the alarm from the duress button for five hours. Id. A report made of this incident by another ADX nurse falsely claimed that the Plaintiff's injuries were self-inflicted. Id. at ¶172. Defendant True ignored the Plaintiff's requests for an investigation, and provided only vague, general responses to the Plaintiff's grievances concerning the assault. Id. at ¶173. On information and belief, the Defendants never even investigated the incident. Id. at ¶175. The Defendants not only ignored Plaintiff"s request to investigate and report the incident, but also ignored his attorney's letters about it. Id. at ¶174. This is not the kind of administrative review that would satisfy the requirements of the APA.

instructs that the relevant inquiry is whether Congress would consider the remedial process without Bivens sufficient to secure an adequate level of deterrence. "This inquiry seems implicitly to require some inquiry into the scope of existing remedies and the extent to which those remedies provide a plaintiff redress."  Id. (citations omitted)  This also supports the contention that if the Court doesn't review Plaintiff's claims under Bivens, it must still review them under the APA.[7]

> 2. **The Court failed to consider Plaintiff's claim that Dr. Sterrett and the other Defendants present for the hunger strike failed to intervene to stop the assault.**

Even after the Plaintiff resisted being force-fed, and "blood was everywhere," Defendant Sterett failed to intervene, and subsequently failed to examine the Plaintiff or provide medical care to him.  Fourth Amended Complaint [Doc. 199] at ¶¶ 169-170.  Prior to the assault, the Plaintiff had asked Defendant Sterett for help to protect him from the prison guards, who had threatened the Plaintiff.  Id. at ¶ 162.  Doctor Sterrett didn't help.  He didn't write a report, treat the Plaintiff's injuries, or send a nurse while the Plaintiff remained bleeding.  Id. at 169.  Despite pressing the "duress button" to get medical help, no help was provided for five more hours.  Id. at ¶ 170.  Bandages were then applied to the Plaintiff's bleeding stump, which were not removed until three weeks later.  Id.

---

[7] Judge Jackson also noted that the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. at *5, quoting 42 U.S.C. § 1997e(a) (2013). "This language implies that the legislature considers the administrative grievance process a prerequisite to—not a replacement for—federal claims against the officials." Id., citing Porter v. Nussle, 534 U.S. 516, 524 (2002) (the exhaustion requirements of the PRLA apply to Bivens actions concerning prison conditions). "It seems anomalous for the legislature to require exhaustion before a prisoner may file a Bivens action and simultaneously to consider the exhaustion step to constitute a complete remedial scheme, thereby foreclosing the Bivens remedy."

As Judge Jackson pointed out in a footnote, "Silva does not purport to address -- and the Court is not aware of any controlling precedent that would compel -- the same conclusion as to Eighth Amendment failure to intervene claims." Smith v Trujillo at *3 n 3.  The Court isn't bound by Silva to conclude that the Defendants' failure to intervene presents a new Bivens context.

**3.   Following Carlson and Santisteven, the Court should find that the Plaintiff's amputated arms and near-blindness constitute pre-existing conditions, and that the injury and bleeding was the foreseeable consequence of trying to tie him to a chair for a force-feeding.**

In Mohammed v Santisteven, 2023 WL 6376709 (D. Colo. Sept. 29, 2023) another ADX inmate engaged in a hunger strike and was also force-fed.  Id. at *3.  The plaintiff was restrained for the force-feeding, and experienced "abdomen pain, throat pain, bitterness in mouth, loss of smell and taste, loss of control over urinating, painful swelling in extremities, passing blood, headache, and shortness of breath." Id.  He filed claims for excessive force, deliberate indifference, failure to intervene, and retaliation.  Id.[8]  The plaintiff's excessive force claims were dismissed pursuant to Silva. Id. at *9.  Judge Wang analyzed the plaintiff's claims for deliberate indifference, which pled facts arising from the delay or denial of medical care resulting from serious medical needs created by the Plaintiff's hunger strike, under Ziglar v. Abbassi, 582 U.S. 120, 139–40 (2017). Id. at *10.  She found that the case was distinguishable from Carlson, because the plaintiff "does not allege that he had any chronic medical conditions like Carlson that were ignored or mistreated.  And Carlson did not deal with serious medical issues arising from a voluntarily hunger

---

[8] The plaintiff had argued that the majority of his Bivens claims involved deliberate indifference to his serious medical needs that fell squarely within Carlson, which recognized a viable Bivens action for inadequate medical care under the Eighth Amendment, and doesn't trigger the second step of the inquiry.  Id. at *8.  He also relied on Farmer v. Brennan, 511 U.S. 825 (1994), which recognized a Bivens cause of action for deliberate indifference based on a failure to prevent harm. For his claims presenting a new Bivens context, the plaintiff argued that he should be permitted to pursue the claims under Bivens because an administrative remedy wasn't available to him.  Id.

9

strike. The controlling authority compels this Court to conclude that Claims Three, Seven, and Nine all differ meaningfully from Carlson and present a new Bivens context." Id.[9] Judge Wang also voiced her concern over the implications of a broad application of Egbert and Silva:

> Finally, the Court pauses to voice its concern that broad application of Egbert and Silva will insulate virtually all misconduct within prison walls by federal actors from liability for damages. Cf. McCullon, 2021 WL 877718, at *7 (finding an implied cause of action for excessive force under the Eighth Amendment and Bivens because "[t]o find otherwise would allow individual federal officials to escape liability for the alleged unconstitutional use of force, depending on the timing of the act or so long as they provide adequate medical care afterwards— even with dire consequences");[10] Noe v. United States, No. 21-cv-01589-CNS-STV, 2022 WL 18587706, at *9 (D. Colo. Dec. 14, 2022) (observing that "a federal prison official may sadistically beat an inmate to within an inch of his life and that inmate will not have a civil remedy against that prison official—after all, the inmate may file a grievance pursuant to the BOP Administrative Remedy Program"), report and recommendation adopted, 2023 WL 179929 (D. Colo. Jan. 13, 2023). Of course, not all allegations of abuse are true (though at the motion to dismiss phase, this Court must presume the truth of Mr. Mohamed's factual allegations), but under the case law as it is developing, there will be limited opportunity to pursue that truth through the judicial system.

Mohammed v Santisteven, 2023 WL 6376709 at *10.  The Court should also take Judge Wang's concerns into account before foreclosing Plaintiff's claims over his force-feeding.

In Smith v. U.S., 2023 WL 5280086 (D.Colo., July 10, 2023), the plaintiff, an inmate at the ADX, alleged that correctional officers attempted to slam his head into a table and began choking him, attempted to remove his crutches, and punched and kicked him. Id. at *2.  During a medical assessment the same day, the prison staff noted "tenderness and swelling near his right shoulder, swelling of his right ankle, a knot on his left forearm, and knots on the left side of his head." Id. The plaintiff alleged that the incident constituted a use of excessive force, or that the defendants

---

[9] The Court also found that the Bivens claims weren't viable because the BOP's Administrative Remedy Program offered an independently sufficient ground to foreclose a Bivens claim. Id. In the instant case, the Plaintiff has exhausted his administrative remedies and also filed an APA claim for this as Claim 10, since his administrative claim was ultimately denied.

[10] McCullon v. Parry, No. 18-cv-00469-NYW, 2021 WL 877718, at *7 (D. Colo. Mar. 9, 2021).

were present for the use of force but failed to intervene in violation of the Eighth Amendment. The plaintiff also alleged that certain defendants conspired with the defendants who were involved with the excessive force "to cover up the incident by falsely charging Plaintiff with disciplinary infractions and misrepresenting the facts; failing to document Plaintiff's injuries accurately; and failing to file a Use of Force memo, as required by prison regulations." Id. The plaintiff's second claim alleged that that certain defendants demonstrated deliberate indifference by failing to provide him with appropriate medical treatment and follow-up in violation of the Eighth Amendment. Id. Then-Magistrate Judge Mix recommended dismissing the excessive force claim.[11] Id. at *6. As to the claim for deliberate indifference for failing to treat the injuries afterwards, Judge Mix found that the case arose in a new Bivens context because, "unlike in Carlson, Plaintiff does not suffer from a previously diagnosed chronic condition of which Defendants were aware." Id. at *6. "This is a crucial and persuasive fact that is not in play here." Id.

The Plaintiff's missing arms were a pre-existing condition. The Plaintiff bled from his arm stumps in Claim 9 as well, and it is reasonably foreseeable that trying to restrain him to a bed for a force-feeding, while he is resisting, would result in this kind of injury. Bandages were applied later that weren't removed for three more weeks. [Doc. 199] at ¶ 170.

    **4.    The lack of medical attention to Plaintiff's needs isn't distinguishable from Carlson on the basis that the plaintiff in Carlson died, because the severity of the injury is relevant to the damages, rather than any of the elements of the claim, and cannot be called a new context.**

The Court found that Plaintiff's "allegations about inadequate dental care, food packaging, a specific diet, toenail trimmings, and prescription medication are dissimilar in nature and severity to the "gross deprivation of care" that the plaintiff in Carlson suffered." Order at 29. The same

---

[11] Although reported in Westlaw, this decision is a recommendation of a Federal Magistrate Judge.

can't be said, however, for the failure to treat the Plaintiff's injuries after he was force-fed, when blood was everywhere.

The Court relied on <u>Archer v. Alms</u>, No. 20-cv-01247-PAB-KLM, 2023 WL 8367692, at *3 (D. Colo. Jan. 5, 2023) where the plaintiff, who suffered from COPD, alleged that correctional officers deployed pepper spray in an adjacent cell and failed to respond to plaintiff's breathing issues, leading to the plaintiff's lung damage. <u>See</u> Order at 32. "Mr. Archer states that the Supreme Court in <u>Carlson</u> recognized a new <u>Bivens</u> remedy in an "extreme circumstance" and argues that his circumstances are also extreme, even though he did not die, because his 'quality of life will decrease.'" <u>Archer</u> at *2. The magistrate judge noted that the claim "involves unique allegations regarding, <u>inter alia</u>, prison policies that he asserts were violated, a medical diagnosis not presented in <u>Carlson</u>, and details regarding the secondary effects of an allegedly 'un-tested, homemade' experimental gas delivery system." <u>Id</u>. at *3. The Court found that the case arose in a new context because it involved a different medical condition; the deliberate indifference led to lung damage, rather than death; the defendants administered contra-indicated drugs; and the injuries arose after the correctional officers deployed pepper spray against another inmate. <u>Id</u>. The Court should take the totality of the circumstances into consideration in determining the context, as it did in <u>Archer</u>.

The sole factor of whether the Plaintiff died can't be dispositive. In <u>Straker v Stancil</u>, 2023 WL 4962147 (D.Colo. August 3, 2023), a former prisoner at the U.S.P. Florence - High security prison sued correctional officers and staff for an assault perpetrated on him by his cellmate. Although the prisoner alleged he was knocked unconscious, he didn't die.[12] The plaintiff "was

---

[12] The severity of the Plaintiff's injury is a fact that goes to the issue of the magnitude of the damages, not whether the Plaintiff has stated a claim. Whether the Plaintiff has stated a claim depends on whether he has brought forward sufficient evidence on every element of the claim.

severely beaten, knocked unconscious, and suffered a concussion." Id. at *2. After the assault, the Unit Manager "expressly denied Plaintiff medical care" for four days, and the Medical Supervisor "refused to provide any medical treatment to Plaintiff." Id.[13] Judge Martinez held that a Bivens remedy was available for the plaintiff's Eighth Amendment inadequate medical care claim for failing to treat his injuries after the incident. He also noted the fundamentally unjust legal state of affairs resulting from the slow and steady erosion of Bivens:

> The Court must pause here and reflect on the fact that Plaintiff's allegations discussed above portray a truly reprehensible and malicious course of conduct on the part of Defendants. Had the alleged events in this case occurred in state correctional facilities, Plaintiff would have very strong claims under Section 1983 for significant monetary damages and injunctive relief. The slow and steady evisceration of Bivens by the Supreme Court over the years, coupled with the persistent failure on the part of Congress to provide federal prisoners like Mr. Straker with a statutory remedy to address intentional official misconduct as alleged herein, has created a fundamentally unjust legal state of affairs. Congress must act promptly to rectify this gaping void in the remedies available to federal prisoners subjected to unconscionable misconduct on the part of federal corrections officers.

Id. at *4.[14]

---

[13] The plaintiff argued four theories under which his Eighth Amendment rights had been violated: (1) failure to prevent the assault by his cellmate; (2) actively directing the assault by his cellmate; (3) delaying the investigation of the assault by his cellmate; and (4) deliberate indifference to his serious medical needs. Id. at *3. "The fourth of these theories stands apart, having been explicitly recognized as a viable Bivens action in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Egbert, 142 S. Ct. at 1802 (describing Carlson as fashioning a cause of action under the Constitution "for a federal prisoner's inadequate-care claim under the Eighth Amendment"). The others would require extension of Bivens beyond the three contexts in which the Supreme Court has recognized an implied cause of action under the Constitution." Id. at *3 n 6.

[14] Judge Martinez found that Straker had satisfied the objective component of his inadequate medical care claim, but failed to satisfy the subjective component. "The Second Amended Complaint contains facts plausibly alleging a 'sufficiently serious medical need'—that is, 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' Gee v. Pacheco, 627 F.3d 1178, 1192 (10th Cir. 2010) (quoting Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)). Plaintiff alleges that he was "severely beaten, knocked unconscious, and suffered a concussion as a result" of the assault by his cellmate. (¶ 6.) This allegation satisfies the objective component of Plaintiff's claim. Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980). Id. at *5. "However, the Second Amended Complaint contains no specific allegations regarding what Lindgren and Avalos knew about his medical condition or the risks to his health." Id. The Plaintiff has cited statements

In the instant case, the Plaintiff's lack of arms and poor vision were both diagnosed and treated by doctors, and known by everyone involved in the assault. The blood that "went everywhere" in the room was so obvious that even a layperson could see that the Plaintiff's arm stumps had to be bandaged. 627 F.3d at 1192; 218 F.3d at 1209. Although the Plaintiff's bleeding was treated 5 hours after the injury (with bandages not removed until three weeks later), versus four days in Straker, the Plaintiff's injuries were far more obvious than a possible concussion, which is what Straker may have had. A concussion wouldn't present the same kind of medical emergency as a person who is bleeding and pressing the alarm button. Dr. Sterrett and the other Defendants knew or should have known that the Plaintiff has suffered bone amputations in his arm stumps due to infections, and is always at risk of further amputations if his arm stumps are injured. The statements and actions of the Defendants involved in this incident make a strong showing of the subjective component of the Defendants' subjective intent.

## Conclusion

The Court should clarify its Order, that the Plaintiff's exhausted claims may all be heard as Administrative Procedure Act claims, regardless of whether there is a <u>Bivens</u> remedy available. <u>Bivens</u> provides a *remedy* when there is no other vehicle through which the Plaintiff may bring his Constitutional claims. In other words, the Plaintiff's Eighth Amendment claims are Eighth Amendment claims, not <u>Bivens</u> claims. There is a difference between not expanding <u>Bivens</u>, and cutting it back. Judges Martinez, Jackson, Wang, and Mix have all made rulings in recent cases involving the ADX and USP Florence - High security prisons, that would not require that the

---

like "This is not a hospital;" "Why did you cut your hands?" (belittling Plaintiff's injuries); and "No, see you in court." by the Plaintiff's Unit Manager and others. Fourth Amended Complaint Doc. 199] at ¶206. The Plaintiff has been told on other occasions that his injuries and bleeding are not "life threatening," which is not a standard of care, and shows indifference to his suffering. <u>Id</u>.

prisoner die to have a cause of action for deliberate indifference, and wouldn't consider the failure to intervene, by itself, to be a new context. The Plaintiff's disabilities and injuries were so obvious that the Court's ruling could be used to categorically deny any remedy to prisoners who are beaten by guards, and encourage the mentality that prison guards *are* the law. For these reasons, the Court should clarify that the Plaintiff has stated claims for all of the alleged Constitutional violations under the APA, and that he has stated a <u>Bivens</u> claim for the Defendants' failure to treat his injuries after an assault, and failure to intervene.

Respectfully submitted,

/s/ Paul Wolf
_____
/s/ Paul Wolf, CO Bar 42107
*Attorney for Mostafa Kamel Mostafa*
P.O. Box 60584
Colorado Springs, CO 80960
(202) 431-6986
paulwolf@yahoo.com
fax: n/a

February 5, 2024

### Certificate of Conferral

      I hereby certify that, before filing this Motion, I conferred with counsel for the Defendants as to whether they would consent to the Motion, and the impact on the schedule and discovery if the Motion were granted, by email on February 4, 2024 and by phone on February 5, 2024. Counsel for the Defendants stated that they opposed the Motion.

/s/ Paul Wolf
_____
Paul Wolf

15

## Certificate of Service

I hereby certify that on February 5, 2024, I filed the foregoing document with the clerk of the court through the Court's Electronic Case Filing (ECF) system, which will send notification to the attorneys of record for all other parties in this litigation.

/s/ Paul Wolf
_____

Paul Wolf