**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00694-PAB-SKC

MOSTAFA KAMEL MOSTAFA,

     Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
TUTOILUMUNDO, ADX Unit Manager, in his official capacity,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her individual capacity,
LOEWE, ADX officer, in his individual capacity,
NORJANO, ADX Officer, in his individual capacity,
CHOROSEVIC, ADX Occupational Therapist, in his individual capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
WILLIAM, ADX Nurse, in his individual capacity,
HUDELSTON, ADX Nurse, in his individual capacity,
STERETT, ADX Doctor, in his individual capacity,
ARMIJO, ADX Lieutenant, in his individual capacity, and
EDWARDS, ADX Officer, in his individual capacity,

     Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR RECONSIDERATION (ECF No. 267)**

---

Defendants[1] respond to "Plaintiff's Motion for Reconsideration of the Court's Order of

Jan. 7, 2024 [Doc. 258] Granting in Part and Denying in Part Defendants' Motion to Dismiss,"

---

[1] This Response is not submitted on behalf of Defendant Williams, who did not request
representation from the Department of Justice and has not been served.

ECF No. 267 (the "Motion for Reconsideration").

## LEGAL STANDARD

While this Court has entered an order on Defendants' Partial Motion to Dismiss, ECF No. 258, final judgment has not entered. "Prior to entry of final judgment, district courts have the inherent power" to reconsider their orders. *See Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1255 (D. Colo. 2000); *see also Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1361 (10th Cir. 2024) ("But 'every order short of a final decree is subject to reopening at the discretion of the district judge'") (quoting *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005)). While the Court has discretion to alter or amend its previous orders, a motion to reconsider should not be granted "unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Vandiver v. MG Billing Ltd.*, 653 F. Supp. 3d 884, 887 (D. Colo. 2023) (cleaned up).

## ARGUMENT

### I.   The Court properly granted Defendants' motion for summary judgment on Claim 10.

Plaintiff first argues that the Court erred by dismissing Claim 10 because "[a]ll of the Plaintiff's claims were pled as Constitutional claims, including as Administrative Procedure Act ('APA') claims." ECF No. 267 at 2. However, the Court's Order on Defendants' Motion to Dismiss did not address Claim 10. *See* ECF No. 258. Instead, the Court granted summary judgment in favor of Defendants on Claim 10 in a separate Order on Defendants' Early Motion for Partial Summary Judgment, ECF No. 257. In that Order, the Court found that Claim 10 alleged that Plaintiff's placement at the ADX violates the APA. *Id.* at 25-26. The Court held that such a claim is barred by the statute of limitations. *Id.* at 27.

Plaintiff does not appear to ask the Court to reconsider its conclusion that Claim 10 is barred by the statute of limitations.  Instead, he argues that Claim 10 requested review of *all* the other claims in the Fourth Amended Complaint under the APA and asks the Court to "clarify that Count 10 is only dismissed insofar as it applies to Plaintiff's transfer to the ADX."  *See* ECF No. 267 at 2-4.  But the Court already considered and rejected this argument in the Order on Defendants' Early Motion for Partial Summary Judgment.  Specifically, the Court found that "[t]he plain language of Mr. Mostafa's tenth claim focuses on his placement at ADX."  ECF No. 257 at 26.  The Court further concluded that Plaintiff had provided "no legal authority supporting the proposition that his other claims are reviewable under APA.  The Court therefore rejects Mr. Mostafa's recharacterization of claim ten and will consider claim ten as a challenge to Mr. Mostafa's placement in ADX."  *Id.*  Since Plaintiff merely rehashes arguments the Court already addressed, reconsideration is not warranted.  *See Mantooth v. Bavaria Inn Rest., Inc.*, 360 F. Supp. 3d 1164, 1169 (D. Colo. 2019) ("the motion to reconsider is not at the disposal of parties who want to rehash old arguments") (quotation marks omitted).

Plaintiff's arguments also fail on the merits.  Plaintiff again fails to provide any legal authority supporting his position that all claims in the Fourth Amended Complaint are reviewable under the APA.  Plaintiff relies on two allegations in Count 10 that state that "Plaintiff incorporates by reference all of the preceding paragraphs as if set forth herein," and "all of the Plaintiff's other claims requiring exhaustion are reviewable under § 706 of the APA, as well as on the merits."  ECF No. 267 at 2 (citing ECF No. 199 ¶¶ 211, 217).  However, "Colorado federal courts have strongly criticized the use of 'shotgun pleading,' by which a party pleads several counts or causes of action, each of which incorporates by

reference the entirety of its predecessors." *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1242-43 (D. Colo. 2014) (collecting cases). This practice "places an inordinate burden on the party responding to that pleading, and on the Court interpreting it, requiring them to . . . attempt to independently extract the particular factual averments that are relevant to each individual claim." *Jacobs v. Credit Suisse First Boston*, No. 11-cv-00042-CMA-KLM, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011) (further noting that "the shotgun pleader foists off one of the pleading lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to a given claim—onto the reader"). Indeed, Plaintiff's Fourth Amended Complaint consists of 237 numbered paragraphs asserting eleven claims, many of which contain multiple subclaims. *See generally*, ECF No. 199. It is neither Defendants' nor the Court's burden to sift through those 237 paragraphs to determine which claims Plaintiff intended to alternatively assert as APA claims and which allegations Plaintiff believes support these unspecified APA claims.

This principle is particularly applicable here because it is unclear how Plaintiff's other claims could state a cognizable claim for relief under the APA. Plaintiff argues that "[t]he scope of APA review includes the merits of the underlying Constitutional claims, as well as the fairness and legality of the procedures used to make the administrative determinations . . . ." ECF No. 267 at 3. Plaintiff provides two examples of allegations and/or claims that he believes should be alternatively considered under the APA. First, he argues that "the Court can find that excessive force was used in a force-feeding incident that left the Plaintiff bleeding, and that his wounds were not treated afterwards . . . ." ECF No. 267 at 4. Second, he argues that "[t]he

Court can find that the Plaintiff needs dental and vision care." *Id.* But there are multiple potential reasons why such allegations—as currently pled in the Fourth Amended Complaint in support of other types of claims—would not state a cognizable claim for relief under the APA.

First, 18 U.S.C. § 3625 provides that APA review is not available for certain statutes governing federal imprisonment. Courts have found that this exemption applies to "BOP security classifications and housing determinations, as well as claims with respect to remedies for prison conditions." *Landis v. Moyer*, 610 F. Supp. 3d 649, 655-56 (M.D. Pa. 2022) (collecting cases and holding that prisoner's claims concerning protective custody status, housing assignments, and denial of recreation were exempt from APA review under 18 U.S.C. § 3625). Some or all of Plaintiff's non-APA claims could fall within this exemption.

Second, the APA "does not confer independent jurisdiction . . . Rather, a party seeking APA review in federal court must identify a jurisdictional grant from either the enabling statute or one of the general jurisdiction provisions . . . ." *Hamilton v. Gonzales*, 485 F.3d 564, 568-69 (10th Cir. 2007) (cleaned up). The APA's enabling statute permits a "person . . . adversely affected . . . by agency action" to seek "relief other than money damages." 5 U.S.C. § 702. But this limited waiver of sovereign immunity only permits review of a "final" non-discretionary "agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Plaintiff bears "the burden of identifying specific federal conduct and explaining how it is 'final agency action' within the meaning of" the APA. *Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000) (citations omitted).

The APA defines "agency action" as an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An action is final if it:

(1) marks "the consummation of the agency's decisionmaking process"; and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (cleaned up).  "Simply because an agency action carries consequences—even if allegedly harmful—does not necessarily make that action final." *Glenwood Springs Citizens' All. v. U.S. Dep't of the Interior*, 639 F. Supp. 3d 1168, 1177 (D. Colo. 2022).  It is unclear from the Fourth Amended Complaint how Plaintiff's claims, including the examples of the alleged use of excessive force and alleged lack of medical care, would implicate final agency actions within the meaning of the APA for which there is no other adequate remedy in a court.

Finally, the APA does not permit review of an action "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  APA "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  Plaintiff's claims, including his examples of the alleged use of excessive force and lack of medical care, primarily implicate discretionary agency decisions and thus—without additional explanation or allegations—would likely fail to state claims for relief under the APA.

In light of these overarching concerns with the viability of any APA claims based solely on the current allegations pled in support of other types of claims, Plaintiff should not be permitted to state in conclusory fashion that *all* the claims in the Fourth Amended Complaint should also be construed to assert APA challenges.  The Court properly concluded that Claim 10 *only* challenged Plaintiff's placement in the ADX and that such a challenge was barred by the

statute of limitations.  Plaintiff's Motion for Reconsideration merely rehashes prior arguments and provides no legal authority or persuasive reason for the Court to reconsider its conclusions.

**II.    The Court properly dismissed Plaintiff's *Bivens* claims.**

Plaintiff also argues that the Court should reconsider its decision that there is no *Bivens* remedy "for the Defendants' failure to treat his injuries after an assault, and failure to intervene." ECF No. 267 at 15.  He advances two main arguments.  First, he contends his claims do not present a new *Bivens* context from *Carlson v. Green*, 446 U.S. 14 (1980).  *Id.* at 9, 11-14. Second, he argues that the BOP's administrative remedy program does not preclude his *Bivens* claims.  *Id.* at 4-5, 7, 9.  Neither argument has merit, and the Court should decline to reconsider its order.

**A.    Alternative remedial processes preclude Plaintiff's *Bivens* claims.**

The Court's analysis can begin and end with Plaintiff's second argument, about whether the existence of alternative processes prevent a *Bivens* remedy.  A *Bivens* claim fails—regardless of whether it presents a new context from the Supreme Court's prior *Bivens* cases—if "the Government already has provided alternative remedies that protect plaintiffs." *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (cleaned up).  "[T]he BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions ... can be brought to the attention of the BOP and prevented from recurring.'" *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).  Accordingly, "the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claims." *Id.* (citation omitted).

Plaintiff does not argue that the BOP failed to put in place an alternative remedial structure capable of deterring unconstitutional conduct.  To the contrary, he claims that he exhausted the administrative remedy process.  ECF No. 267 at 4, 7, & 10 n.9.  Plaintiff instead argues that the Court is not bound by *Silva*, ECF No. 267 at 9, but offers no reason why the administrative remedy program should bar some constitutional claims (excessive force claims, as in *Silva*) but not others (deliberate indifference, failure to intervene).  Prisoners can submit *any* grievance related to their confinement through the administrative remedy program.  *See* 28 C.F.R. § 542.10 ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of *an issue relating to any aspect* of his/her own confinement.") (emphasis added).  Because prisoners may submit grievances related to alleged inadequate medical care just as they can for excessive force, the BOP's administrative remedy program prevents the Court from creating a *Bivens* remedy here.  *See Egbert v. Boule*, 596 U.S. 482, 493 (2022) ("a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure" (cleaned up)).

The Tenth Circuit has already applied *Silva*'s holding to a deliberate indifference claim. *See Noe v. U.S. Gov't*, No. 23-1025, 2023 WL 8868491, at *1, *3 (10th Cir. Dec. 22, 2023).  In *Noe*, the Tenth Circuit explained that the administrative remedy program precluded the plaintiff's deliberate indifference claim related to his dental care, regardless of whether the claim presented a new *Bivens* context:

> Read together, *Egbert* and *Silva* direct that where the government has provided an alternative remedy, a court generally should not recognize a *Bivens* claim even if the factual context is not meaningfully different from that in *Bivens*, *Davis*, or *Carlson*.  And here, the [Administrative Remedy Program], which *Silva* says is an adequate alternative remedy, is available to Noe.  Thus, Noe's *Bivens* claim is, as the district court concluded, not cognizable.

*Id.* at \*3.

Plaintiff argues that "if the Court fails to review the denials of the Administrative Remedy Program, . . . then the remedy isn't available."  ECF No. 267 at 4; *see also id.* at 5 ("the program 'as a whole' isn't available if the Court fails to review the agency's denial of the claims").  But the viability of a *Bivens* claim does not depend on an individualized assessment of the adequacy of the administrative process in a particular instance or upon judicial review of the administrative process.  To the contrary, *Egbert* states that federal courts should not engage in such analysis: "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts."  596 U.S. at 498; *see also id.* at 496 ("a court should not inquire . . . whether *Bivens* relief is appropriate in light of the balance of circumstances in the particular case" (cleaned up)).  The Supreme Court's concern in *Egbert* was structural, focusing on separation-of-powers issues inherent in the judicial creation of a cause of action.  *See, e.g.*, *id.* at 491 ("we have come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power" (cleaned up)).  "So long as Congress or the Executive has *created* a remedial process that it finds sufficient to secure an adequate level of deterrence [of unconstitutional acts], the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."  *Id.* at 498 (emphasis added).  The existence of an alternative remedial structure—and, consequently, the viability of a *Bivens* claim—does not depend on whether courts review an agency's decisions stemming from the administrative remedy process, as Plaintiff argues.

This Court correctly applied *Egbert* and *Silva* and dismissed Plaintiff's claims.[2]  *See* ECF No. 258 at 26-27 30-31 & 26 n.15.

**B.      Plaintiff's claims arise in a new context.**

Although no further analysis is necessary, the Court also properly determined that Plaintiff's claims present new *Bivens* contexts.  *See* ECF No. 258 at 26, 29-30.  Plaintiff disagrees, stating that "Plaintiff's missing arms were a pre-existing condition," and the "failure to treat the Plaintiff's injuries after he was force-fed" is similar to the claims in *Carlson*.  ECF No. 267 at 11-12.  These arguments do not demonstrate the lack of a new context.

A case presents a new context if it is "'meaningful[ly]' different from the three cases in which the Court has implied a damages action."  *Egbert*, 596 U.S. at 492 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859-60 (2017)).  A "new context arises when there are potential special factors that previous *Bivens* cases did not consider," including "uncertainty" that "a court likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*."  *Id.* at 492-93 (cleaned up).  Claims that "arguably present almost parallel circumstances or a similar mechanism of injury . . . are not enough to support the judicial creation of a cause of action."  *Id.* at 495 (cleaned up).  "[S]uperficial similarities" to prior *Bivens* cases do not suffice. *Id.*

---

[2] As noted, the Tenth Circuit's *Noe* decision, which was entered after briefing on Defendants' motions was complete, confirms the correctness of the Court's decision.  Another recent Tenth Circuit case does, too.  In *Logdson*, the Tenth Circuit held that the Department of Justice's Office of the Inspector General investigation procedure is another "adequate alternative remed[y]" that separately precludes *Bivens* claims based on conduct by Department of Justice ("DOJ") employees.  *Logsdon*, 91 F.4th at 1359-61.  BOP is a component of the DOJ.  *See* 18 U.S.C. §§ 4041, 4042 (the BOP acts under the direction of the Attorney General).  Therefore, Plaintiff's *Bivens* claims arising from allegations of misconduct by BOP employees fail as a matter of law.

As the Court properly noted, the factual allegations here are dissimilar to those in *Carlson*. ECF No. 258 at 29-30.  In *Carlson*, the plaintiff alleged that:

> [T]he defendants failed to give plaintiff 'competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital,' which resulted in plaintiff's death.

ECF No. 258 at 29-30 (citing *Carlson*, 446 U.S. at 16 n.1).  Plaintiff does not allege similar mistreatment here: that he needed acute medical attention to support a critical life function, like breathing; that the BOP used contra-indicated drugs and inoperative medical equipment to exacerbate his conditions; or that he should have been transferred to an outside hospital sooner. Plaintiff's allegations raise distinct issues.  *See* ECF No. 199 ¶¶ 161-83 (Claim 7, alleging a physical assault after Plaintiff refused a medical assessment, the lack of toenail care, the confiscation of property, and unauthorized force-feedings); *id.* ¶¶ 184-206 (Claim 8, alleging failure to provide adequate dental and foot care, denial of a medical diet, lack of exercise, and the failure to provide meals or masks, among other things); *see also* ECF No. 222 at 35-36 (explaining why Plaintiff's claims present new contexts).

The Court also correctly noted that the severity of the medical conditions alleged and urgency with which they needed to be treated distinguish this case from *Carlson*.  *See* ECF No. 258 at 30; *see also Qazi v. Seroski*, No. 22-cv-00014-PAB-MEH, 2023 WL 3871969, at *6 (D. Colo. May 11, 2023), *recommendation adopted*, 2023 WL 3866406 (D. Colo. June 7, 2023) (approving of the approach that considers the "severity" of the condition alleged in determining whether create a *Bivens* claim, and holding that "a life-threatening medical condition that, when treated inadequately over a short period of time, resulted in the inmate's death" was

meaningfully different from a claim alleging "pain management for a chronic but not life-threatening back condition"); *Archer v. Alms*, No. 20-cv-01247-PAB-KLM, 2023 WL 8367692, at \*3 (D. Colo. Jan. 5, 2023) (distinguishing allegations from those in *Carlson*, in part because the offending conduct did not result in the plaintiff's death).[3]

Finally, a new context arises here because *Carlson* did not consider whether the judiciary was better positioned than Congress to "predict the systemwide consequences of recognizing a cause of action under *Bivens*." *Egbert*, 596 U.S. at 493 (cleaned up). The "uncertainty" that courts are best positioned, in the context of an individual case, to make such a legislative decision "alone is a special factor that forecloses relief." *Id.* (citations omitted). Plaintiff's claims thus arise in new *Bivens* contexts.

Because these claims arise in new contexts, no *Bivens* remedy is available if "special factors indicat[e] that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 492 (cleaned up). As stated above, it is rational to think that Congress is better suited to weigh the costs and benefits of a damages remedy here. Congress is better equipped to investigate and assess the effects that individual liability would have on the functioning of the BOP, including recruitment and retention efforts. Additionally, the creation of a *Bivens* remedy could have unforeseen effects on how the BOP treats hunger-striking inmates, including decisions to force-feed those who need nutrition. The threat of personal liability could encourage BOP staff to delay or forego force-feeding, with unknown consequences. In the face of these uncertainties, no *Bivens* claim may

---

[3]  These citations refute Plaintiff's unsupported claim that the severity of an alleged injury only "goes to the issue of the magnitude of the damages, not whether the Plaintiff has stated a claim," ECF No. 267 at 12 n.12.

proceed.[4]  *See Egbert*, 596 U.S. at 496 (if "there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed," or "if there is the *potential*" that judicial intrusion into a given field "might be harmful or inappropriate," "a court cannot afford a plaintiff a *Bivens* remedy" (cleaned up)); *see also* ECF No. 222 at 37-38 (identifying special factors that preclude a *Bivens* remedy).  The Court should deny Plaintiff's motion.

## CONCLUSION

For the reasons set forth in the briefing on Defendants' Motion to Dismiss, ECF Nos. 222 & 233, and above, the Court should deny the Motion for Reconsideration, ECF No. 267.

Respectfully submitted on February 26, 2024.

COLE FINEGAN
United States Attorney

s/ Thomas A. Isler
**Thomas A. Isler**
Jennifer R. Lake
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0411
thomas.isler@usdoj.gov
jennifer.lake@usdoj.gov

---

[4]  In *Logsdon*, the Tenth Circuit did not conduct the two-step analysis recited in *Egbert*, explaining that "it is hard to see the difference between the analyses conducted in the two steps." 91 F.4th at 1356.  Instead, the Tenth Circuit concluded that "[i]n this case . . .  our analysis should focus on that single question," *id.* at 1357, referring to *Egbert*'s comment that the two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  596 U.S. at 492.  Whether the Court employs the two-step analysis or answers only the single question, the outcome here is the same: Plaintiff cannot pursue a *Bivens* claim for the conduct alleged based on the factors identified above.

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on February 26, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Paul Wolf, Esq.

s/ Thomas A. Isler
**_Thomas A. Isler_**
U.S. Attorney's Office