IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00694-PAB-MDB

MOSTAFA KAMEL MOSTAFA,

     Plaintiff,

v.

PAM BONDI, United States Attorney General, in her official capacity,
KASHYAP PATEL, FBI Director, in his official capacity,
WILLIAM K. MARSHAL III, BOP Director, in his official capacity,
DEANNA BAYSORE, in his official capacity, and
WILLIAM, ADX Nurse, in his individual capacity,

     Defendants.

_____

**ORDER**
_____

Plaintiff Mostafa Kamel Mostafa is incarcerated at the Administrative Maximum Security Prison at USP Florence ("ADX") in Florence, Colorado. *See* Docket No. 199. Mr. Mostafa is a practicing Muslim whose arms have been amputated below the elbow. This case arises from accommodations that defendants have allegedly failed to make to allow Mr. Mostafa to practice his religion. The matter before the Court is Defendants' Motion for Summary Judgment [Docket No. 308]. Mr. Mostafa filed a response, Docket No. 313, and defendants[1] replied. Docket No. 322. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

_____

[1] The Court will use the term defendants to refer to defendants Pam Bondi, Kashyap Patel, William Marshal, and Deanna Baysore. Defendant William has never been served and has not entered an appearance. *See* Docket No. 308 at 1 n.1.

## I. BACKGROUND

### A. **Procedural Background**

Mr. Mostafa filed his fourth amended complaint in this case on July 18, 2022. Docket No. 199. The amended complaint brings eleven claims for relief. *Id.* at 14-54, ¶¶ 50-233. On August 24, 2022, defendants filed a motion to dismiss Mr. Mostafa's claims based on a lack of standing and a failure to state a claim for relief. Docket No. 222. On October 26, 2022, defendants filed a motion for partial summary judgment, arguing that Mr. Mostafa failed to exhaust his administrative remedies and that certain claims were barred by the applicable statute of limitations. Docket No. 234.

On January 3, 2024, the Court granted in part and denied in part defendants' motion for partial summary judgment. Docket No. 257 at 28-29. The Court dismissed Mr. Mostafa's fifth, sixth, and eleventh claims for relief without prejudice because the undisputed facts showed that Mr. Mostafa had failed to exhaust his administrative remedies. *Id.* at 16, 25. Similarly, the Court found that portions of Mr. Mostafa's first, second, and fourth claims were barred by Mr. Mostafa's failure to exhaust his administrative remedies. *Id.* at 15, 20. Next, the Court addressed defendants' argument that the applicable statute of limitations barred Mr. Mostafa's tenth claim. *Id.* at 25. The Court construed Mr. Mostafa's claim as being brought under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706. *Id.* The Court held that Mr. Mostafa's APA challenge was barred because the six-year statute of limitations period ended for Mr. Mostafa's claim in September 2021, but he did not add the APA claim until May 21, 2022. *Id.*

On January 3, 2024, the Court also granted in part and denied in part the defendants' motion to dismiss. Docket No. 258. The Court first found that defendants'

argument regarding Mr. Mostafa's standing to bring claims based on the prison's

packaging of halal meals was intertwined with the merits of Mr. Mostafa's claims and,

therefore, the Court declined to resolve the issue on a Rule 12(b)(1) motion. *Id.* at 11-

13. For the same reasons, the Court denied defendants' motion to dismiss Mr.

Mostafa's claims based on his alleged inability to ritually wash himself in accordance

with the requirements of his religion. *Id.* at 13-15. Next, the Court dismissed part of Mr.

Mostafa's third claim for relief based on alleged violations of the Fifth Amendment. *Id.*

at 15-17. The Court declined to consider whether Mr. Mostafa had plausibly alleged an

equal protection violation based on alleged discrepancies between Jewish prisoners'

meals during Passover and Muslim prisoners' meals during Eid because defendants did

not address the issue. *Id.* at 15 n.9. However, the Court found that Mr. Mostafa's

complaint failed to allege facts that showed defendants' restrictions on group prayer

violated the Fifth Amendment. *Id.* at 15-17. Regarding Mr. Mostafa's fourth claim

brought under the First Amendment, the Court found that Mr. Mostafa had failed to

allege facts that demonstrated the defendants' restrictions on his communications with

his sons were not reasonably related to a legitimate penological interest. *Id.* at 17-22.

However, the Court found that Mr. Mostafa had plausibly alleged that defendants'

restrictions on his communications with attorney Jules Lobel violated his First

Amendment rights. *Id.* at 22-23.

The order next addressed Mr. Mostafa's seventh and eighth claims for relief

based on alleged violations of the Eighth Amendment. *Id.* at 23-31. The Court

analyzed both claims as claims under *Bivens v. Six Unknown Named Agents of Fed.*

*Bureau of Narcotics*, 403 U.S. 388 (1971).  *Id.* at 23, 27.  The Court found that neither of Mr. Mostafa's claims plausibly alleged a *Bivens* claim.  *Id.* at 28-31.

On February 5, 2024, Mr. Mostafa filed a motion to reconsider those portions of the Court's orders dismissing Mr. Mostafa's seventh, eighth, and tenth claims for relief. *See* Docket No. 267.  The Court denied the motion to reconsider on September 6, 2024. Docket No. 288.

Based on the Court's resolution of defendants' motion to dismiss and motion for summary judgment, Mr. Mostafa has five remaining claims.  Mr. Mostafa's ninth claim is brought against defendant William, who has never been served.  *See* Docket No. 199 at 48-49, ¶¶ 207-10.  Mr. Mostafa has four other remaining claims: a claim under the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb, *et seq.*, *id.* at 17-18, ¶¶ 61-65; a claim under the Free Exercise Clause of the First Amendment, *id.* at 19, ¶ 70; a claim for violation of the Fifth Amendment's guarantee of equal protection, *id.* at 20, ¶¶ 74-75; and a claim under the Free Speech clause of the First Amendment. *Id.* at 53, ¶ 230.  Three of Mr. Mostafa's claims are divided into subclaims by subject matter.  In one subclaim, Mr. Mostafa alleges that defendants violated the First Amendment, the Fifth Amendment, and RFRA by failing to provide Mr. Mostafa with halal meals in an accessible form.  *Id.* at 17-20, ¶¶ 61-63, 70, 74.  In another subclaim, Mr. Mostafa alleges that defendants violated the First Amendment, the Fifth Amendment, and RFRA by inadequately accommodating his need to ritually wash himself before praying.  *Id.* at 18-20, ¶¶ 65, 70, 74.  Finally, Mr. Mostafa alleges that defendants violated the Fifth Amendment by failing to provide him with feast meals on an equal basis with Jewish inmates.  *Id.* at 20, ¶ 75.

4

On January 24, 2025, defendants filed a motion for summary judgment on Mr. Mostafa's remaining claims.  Docket No. 308.  On March 13, 2025, Mr. Mostafa responded.  Docket No. 313.  Defendants replied on April 17, 2025.  Docket No. 322.

### B. Undisputed Facts[2]

Mr. Mostafa is incarcerated at ADX.  Docket No. 308 at 4, ¶ 1.  Mr. Mostafa is currently housed in H-unit, the most secure unit within ADX.  *Id.*, ¶ 3.  Both of Mr. Mostafa's hands were amputated mid-arm, between the elbow and fingers.  *Id.*, ¶ 4.

Before Mr. Mostafa was imprisoned, he worked as an imam in a mosque in the United Kingdom.  Docket No. 313 at 25, ¶ 26.  According to Mr. Mostafa's Muslim faith, Mr. Mostafa must make himself clean and presentable before praying.  *Id.*, ¶ 27.  Mr. Mostafa spent over eight years in Belmarsh Prison in the United Kingdom before his incarceration in the United States.  *Id.* at 20, ¶ 1.  When he was in Belmarsh Prison, Mr. Mostafa had someone to help him with his activities of daily living and adjust his prostheses.  *Id.*

ADX has two cells adapted for Mr. Mostafa's use, cells 300 and 511.[3]  Docket No. 308 at 4, ¶ 5.  ADX has a policy that requires inmates to rotate cells.  *Id.*, ¶ 6.  Mr. Mostafa is currently housed in cell 300.[4]  Mr. Mostafa is the only double upper extremity

---

[2] The following facts are undisputed unless indicated otherwise.

[3] Defendants maintain that the cells were adapted for Mr. Mostafa, while Mr. Mostafa claims that the cells were originally adapted for use by a person in a wheelchair.  Docket No. 308 at 4, ¶ 5; Docket No. 313 at 14, ¶ 5.  Whether Mr. Mostafa's cell was first modified to accommodate Mr. Mostafa is immaterial to the Court's resolution of the summary judgment motion.  Moreover, it is undisputed that defendants have made certain modifications for Mr. Mostafa to both of his cells, such as installing two shower heads.  Docket No. 308 at 8, ¶¶ 39-43.

[4] In their statement of undisputed facts, defendants assert that Mr. Mostafa is currently housed in cell 511 and that he has refused to move to cell 300.  Docket No. 308 at 5, 7, ¶¶ 10, 30-32.  In his response, Mr. Mostafa states that he has since been moved to cell 300.  Docket No. 313 at 15, 25, ¶¶ 9, 24.  In reply, defendants agree that

amputee incarcerated at ADX.  *Id.* at 5, ¶¶ 11-12.  Mr. Mostafa is unaware of any other

Bureau of Prisons ("BOP") inmate who shares his confinement conditions, impairments,

and disabilities.  *Id.*, ¶ 13.

     The BOP has a four-tiered administrative remedy program for inmate grievances.

*Id.*, ¶ 14.  On the BP-8 form for Remedy No. 862521, Mr. Mostafa wrote that he could

not "perform my worshipping & clean obligation (body, beard, and clothing) according

to . . . Islamic faith."  *Id.* at 6, ¶ 17.  Mr. Mostafa did not mention his cleaning difficulties

or request assistance with ritual washing in either his BP-9 form or BP-10 form for

Remedy No. 862521.  *Id.*, ¶¶ 18, 20.  However, in his BP-11 form, Mr. Mostafa states

that he is not able to "purify [his] body & clothing; essential for my 5 prayers daily."[5]  *Id.*,

¶ 22.

     The only part of ritual washing that Mr. Mostafa asserts he cannot routinely

accomplish is cleaning himself after using the toilet.[6]  *Id.*, ¶ 25.  Mr. Mostafa's lack of

---

Mr. Mostafa is currently housed in cell 300.  Docket No. 322 at 2, ¶ 30 ("Undisputed that
Plaintiff was moved to Cell 300 after Defendants filed Doc. 308.").

   [5] Defendants assert that Mr. Mostafa "did not completely exhaust his ritual
washing claims at all administrative levels before filing this action."  Docket No. 308 at 5,
¶ 15.  Mr. Mostafa denies this fact, citing his reference to ritual washing in his BP-8 and
BP-11 forms.  Docket No. 313 at 15, ¶ 15.  Mr. Mostafa argues that these references
are sufficient as a matter of law to preserve his ritual washing claims.  *Id.* at 10-14.  The
Court finds that the parties' dispute over the significance of Mr. Mostafa's failure to
include references to ritual washing in his BP-8 and BP-10 forms presents a mixed
question of law and fact.  *Ahmad v. Furlong*, 435 F.3d 1196, 1200 (10th Cir. 2006)
("Whether an affirmative defense has been waived is a mixed question of law and
fact.").  Because defendants' assertion is a legal conclusion, not a fact, the Court finds
that it is not an undisputed fact that Mr. Mostafa failed to exhaust his administrative
remedies.  The Court will address the parties' legal arguments below.

   [6] Mr. Mostafa denies this fact.  Docket No. 313 at 16, ¶ 25.  Mr. Mostafa states
that he "needs to wash himself before praying, whether or not he has used the toilet."
*Id.*  Mr. Mostafa's denial is unresponsive to defendants' assertion that the only part of
ritual washing that Mr. Mostafa cannot perform is cleaning himself after using the toilet.
Therefore, the Court deems this fact undisputed.  In his response, Mr. Mostafa asserts

hands causes him difficulty while cleaning himself.  *Id.* at 7, ¶ 26.  During his deposition,

Mr. Mostafa stated that his problem with ritual washing would be solved if he had an

upward stream of water installed on his toilet, i.e., a bidet.[7]  *Id.*, ¶ 27.  ADX has

---

that his religion requires that his toenails be cut every forty days.  *Id.* at 28, ¶ 41.  He
also asserts that he is unable to cut and brush his hair.  *Id.* at 25, ¶ 27.  Although Mr.
Mostafa's complaint references his inability to cut his toenails as part of his ADA and
Eighth Amendment claims, the complaint nowhere indicates that this is a basis for his
faith-based claims.  *See* Docket No. 199 at 31, 42, ¶¶ 122, 176.  Mr. Mostafa's attempt
to expand the scope of his First Amendment and RFRA claims through his response to
defendant's motion for summary judgment is improper.  *See Fuqua v. Lindsey Mgmt.
Co.*, 321 F. App'x 732, 734 (10th Cir. 2009) (unpublished) ("a claim or theory that is not
adequately raised in the complaint will not be considered").  For the same reasons, the
Court will not consider Mr. Mostafa's assertion that his faith requires him to be provided
with an electric toothbrush or a hairbrush.  Docket No. 313 at 20, 21, 28, ¶¶ 4, 8, 43-44.

[7] Defendants assert that it is an undisputed fact that "Plaintiff claims that his
problem with ritual washing would be solved if he had an upward stream of water
installed on his toilet."  Docket No. 308 at 7, ¶ 27.  Defendants rely on portions of Mr.
Mostafa's deposition testimony in which he states that his issues would be resolved with
a bidet.  Docket No. 308-3 at 14, 117:24-118:2 (Q "what is the solution?  The solution is
an upward stream of water?  A That's it.  Just a pipe. $20 pipe, 1 1/2 hour's work.").  Mr.
Mostafa denies this fact.  Docket No. 313 at 16, ¶ 27.  In his response, Mr. Mostafa
argues that he "needs both an upward stream of water, and functioning prosthetics, in
order to clean himself.  An upward stream of water alone is not a reasonable
accommodation of his disability."  *Id.*  To support his denial, Mr. Mostafa relies on his
own declaration, in which he says the same thing.  Docket No. 313-1 at 8, ¶ 21 ("When I
said in my deposition . . . Just a pipe. $20 pipe, 1 1/2 hour's work[ ] I did not mean to
suggest that an upward stream of water would fully accommodate my disabilities.  I still
need new prosthetics to reach my anal area and should not have to rely on water
pressure alone for washing.").  Defendants maintain that Mr. Mostafa's denial is
ineffective because his declaration is insufficient to create a dispute of material fact as
to whether a bidet is sufficient for his ritual washing.  Docket No. 322 at 2, ¶ 27.  "A
district court may not disregard a declaration solely because it conflicts with prior sworn
statements."  *Gabaldon v. New Mexico State Police*, 139 F.4th 1207, 1211 (10th Cir.
2025).  "But a district court can disregard a contrary declaration if it constitutes an
attempt to create a sham fact issue."  *Id.*  Courts "employ a three-part test to determine
whether a declaration creates a sham fact issue, considering whether (1) the affiant was
cross-examined during his earlier testimony; (2) the affiant had access to the pertinent
evidence at the time of his earlier testimony or whether the declaration was based on
newly discovered evidence; and (3) the earlier testimony reflects confusion which the
declaration attempts to explain."  *Id.* (citation and quotation omitted).  Defendants argue
that Mr. Mostafa's declaration fails on all three prongs.  Docket No. 322 at 10-11.
Specifically, defendants maintain that counsel for Mr. Mostafa declined to cross-

installed a bidet attachment in cell 300.[8]  *Id.*, ¶ 28.

As a general practice, ADX does not provide bidets to inmates.[9]  *Id.*, ¶ 33.  No

inmate at the ADX other than Mr. Mostafa has a bidet in his cell.  *Id.*, ¶ 34.  ADX's

practice of not providing bidets to prisoners applies to inmates regardless of religion.[10]

---

examine him, that the declaration cites no new evidence, and that the earlier testimony
does not reflect confusion.  *Id.*  The Court agrees.  Just before Mr. Mostafa testified that
he requires only a bidet, he testified that BOP provided him a brush to clean his anus
and that the brush was ineffective.  *See* Docket No. 308-3 at 14, 116:4-117:5.  This
suggests that Mr. Mostafa's testimony regarding his need for a prosthesis to clean
himself may have been ambiguous.  However, elsewhere in his testimony, Mr. Mostafa
unambiguously states that he requires only a bidet.  *See id.* at 7-8, 30:9-31:18 ("But it
does not have a -- an upward direction that would help me . . . because I cannot use
toilet paper, but if I use the upward direction, it will compensate for using the paper.  It
does the two jobs, . . . if I leave it for longer time. . .  if there is no toilet paper, then . . .
the longer I leave it in water, it will do the two jobs properly.");  *id.* at 9, 40:2-8 ("Like I told
you, the pipe -- I done that in my -- in my home . . . I had another toilet which I just
bought a pipe and a valve and it did work.").  Moreover, the Court agrees that Mr.
Mostafa had the opportunity to be cross-examined.  *Id.* at 24, 157:24 ("Nothing from
me.").  Finally, Mr. Mostafa's declaration relies on no new evidence.  *See* Docket No.
313-1.  Therefore, the Court will disregard that portion of Mr. Mostafa's declaration
contradicting his testimony that a bidet will allow him to properly clean himself after
using the toilet.  For the same reasons, the Court finds that Mr. Mostafa's assertion in
his statement of additional undisputed facts that an "upward stream of water alone is not
a reasonable accommodation of his disability" is not properly supported.  Docket No.
313 at 25, ¶ 28.  The assertion relies on the same portions of Mr. Mostafa's declaration
that the Court has found are incapable of raising a dispute of material fact.

[8] In its reply, defendants state that the "BOP has requested funds to install a
bidet in Cell 511 and intends to complete installation before Plaintiff moves back to Cell
511."  Docket No. 322 at 2, ¶ 30.  Defendants cite the declaration of M. Howard, the
general foreman at USP Florence, who states that he has requested funds to install a
bidet in cell 511.  Docket No. 322-2 at 3.  Because this fact is included in defendants'
reply, it is not undisputed.

[9] Mr. Mostafa denies this fact on the basis that ADX does not house any other
amputees, and therefore the general practice is inapplicable to the circumstances of this
case.  Docket No. 313 at 16, ¶ 33.  Mr. Mostafa's denial is not responsive to defendants'
assertion of fact.  Moreover, Mr. Mostafa agrees that it is undisputed that no other
inmates have bidets, which is sufficient to establish that prisoners do not generally have
access to a bidet.  *Id.*, ¶ 34.

[10] Defendants state that the "ADX's no-bidet policy or practice applies to inmates
regardless of religion."  Docket No. 308 at 8, ¶ 35.  Mr. Mostafa denies that the BOP
has a written policy regarding bidets.  Docket No. 313 at 16, ¶ 35.  The Court finds that

*Id.* at 8, ¶ 35.  The practice is based on concerns about misuse of water, the possibility

of the components being fashioned into weapons or tools for self-harm, and the fact that

bidets are generally unnecessary for inmates and therefore an unnecessary expense.[11]

*Id.*, ¶ 36.

    Cells 300 and 511 have each been outfitted with two shower heads, which Mr.

Mostafa can operate with or without prostheses.[12]  *Id.*, ¶ 39.  Mr. Mostafa can use his

shower as frequently as he needs.  *Id.*, ¶ 40.  The showers in cells 300 and 511 have

been adapted to run for longer than typical showers at the ADX.  *Id.*, ¶ 41.  The water

---

it is unnecessary to resolve the parties' dispute regarding a written BOP policy.  Mr.
Mostafa does not address defendants' practice of denying bidets to prisoners.  *Id.*
Moreover, Mr. Mostafa has conceded facts consistent with the practice.  *Id.*, ¶ 34.

    [11] Mr. Mostafa denies this fact on the basis that it is not properly supported.
Docket No. 313 at 16-17, ¶¶ 36-38.  He claims that, if there "is no written policy, the
Declarant cannot possibly know what the object of it would be."  *Id.*, ¶ 37.  Mr. Mostafa
provides no support for the proposition that the Court cannot consider the objectives of
an established practice without a formal policy.  As such, the Court finds that
defendants have properly supported their assertion of fact.  It is therefore undisputed
that the practice furthers concerns of avoiding prisoner misuse and expense.

    [12] Mr. Mostafa denies this fact.  Docket No. 313 at 17, ¶ 39.  He states that
"Plaintiff's expert, Jay Sciortino, recommended that levers be installed on the controls
so that Mostafa could operate them."  *Id.*  Mr. Mostafa cites his own declaration in which
Mr. Mostafa states that Mr. Sciortino "said that some of my problems would be better
solved by putting larger levers on the sink and toilet controls."  Docket No. 313-1 at 5,
¶ 13.  First, Mr. Mostafa's declaration does not address shower controls.  Second, Mr.
Mostafa's declaration is hearsay as to Mr. Sciortino's out-of-court statements.
Accordingly, Mr. Mostafa's denial is not properly supported, and the Court deems this
fact undisputed.  *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1210 (10th Cir.
2010) (while "the *form* of evidence produced by a nonmoving party at summary
judgment may not need to be admissible at trial, the *content or substance* of the
evidence must be admissible" (citation and quotations omitted)).  Moreover, although
Mr. Mostafa does not cite Mr. Sciortino's expert report in his denial, Mr. Mostafa does
attach the report to his response.  *See* Docket No. 313-3.  Even if the Court considered
Mr. Sciortino's report on the ground that Mr. Sciortino would testify in person at trial, Mr.
Sciortino's opinion that "[c]ontrols involving use of long levers instead of dials or hard to
push buttons would allow for a more baseline level of independence," *id.* at 5, does not
support the proposition that Mr. Mostafa cannot operate his showers.

stream from the lower shower head in each shower hits Mr. Mostafa in the belly button

area.  *Id.*, ¶ 43.  Mr. Mostafa has previously cut himself in Cell 300.[13]  Docket No. 313 at

25, ¶ 24.

The prostheses made by the defendants do not operate correctly or fit Mr.

Mostafa.  *Id.* at 20, ¶ 2.  The prostheses made by the defendants are unusable.[14]  *Id.*

Mr. Mostafa does not use the prostheses made by defendants and continues to use the

prosthesis made in the United Kingdom.  *Id.*, ¶ 3.  Mr. Mostafa does not have a

functioning prosthetic device that can be operated with the harness and cable that

opens and closes the terminal device.  *Id.* at 21, ¶ 9.  It is difficult for Mr. Mostafa to use

the hooks on the United Kingdom prosthesis to perform tasks that require precise

control, such as holding a pen or using toilet paper.  *Id.* at 22, ¶ 12.  There are no

---

[13] Mr. Mostafa includes various other facts regarding the safety features, or lack thereof, in cell 300, as well as the BOP's policy of rotating Mr. Mostafa between cell 300 and cell 511.  *See* Docket No. 313 at 27, ¶¶ 35-40.  However, Mr. Mostafa's complaint refers to the safety issues in cell 300 only in claims that the Court has already dismissed.  *See*, *e.g.*, 199 at 35, ¶ 141.  These facts are therefore not material to any of Mr. Mostafa's remaining claims, and any attempt by Mr. Mostafa to raise a new theory of liability at this stage is improper.  *See Fuqua*, 321 F. App'x at 734.

[14] Defendants deny this fact, citing facts from Mr. Mostafa's statement of additional undisputed facts that allegedly involve Mr. Mostafa using these prostheses. Docket No. 322 at 3, ¶ 2 (citing Docket No. 313 at 21-22, ¶¶ 9-11).  However, the undisputed facts relied on by defendants involve Mr. Mostafa using the prosthesis provided to him in the United Kingdom.  Docket No. 313 at 21-22, ¶ 11 ("Although Mostafa is missing both hands, he only has one prosthetic that he can use, which was made in the UK before he came to the U.S.").  Moreover, defendants admit that the BOP has tried and failed to make Mr. Mostafa a functioning prosthesis.  Docket No. 313 at 22, ¶ 13; Docket No. 322 at 4, ¶ 13 ("Undisputed that BOP made prostheses in 2013, but they do not currently work." (internal citation omitted)).  Defendants therefore have failed to support their denial of the fact that the prostheses provided to Mr. Mostafa by defendants are unusable.

substitute joints, like wrist and finger hinges, that would allow him to position the hooks in different directions.[15]  *Id.*[16]

Mr. Mostafa twice refused to have casts taken so that ADX could provide him with new prostheses.  Docket No. 308 at 9, ¶ 47.  On February 13, 2021, Mr. Mostafa met with a BOP officer who wanted to replace the United Kingdom prosthetic with a new one.  Docket No. 313 at 23, ¶ 17.  The officer asked him to sign a document stating that further medical complications could arise if he did not agree to the new prosthetic.  *Id.* The document also purported to release the BOP from liability.  *Id.*  Mr. Mostafa did not want the BOP to take away his United Kingdom prosthesis.  *Id.*  He also did not want to sign documents releasing the defendants from liability during litigation.  *Id.*

Mr. Mostafa allowed a prosthetist to measure him and take casts for a new prosthesis in August 2024.  Docket No. 308 at 9, ¶ 48.  During the August 2024 visit

---

[15] Mr. Mostafa supports this assertion with his own declaration.  Docket No. Docket No. 313-1 at 3-4, ¶ 7 ("It is very difficult for me to use the hooks to hold a pen to write, to hold toilet paper, or do anything else that requires precise control.  There are no substitute joints like a wrist and finger hinges that would allow me to position the hooks in different directions.").  Defendants claim that Mr. Mostafa's statements are impermissible expert testimony.  Docket No. 322 at 4, ¶ 12.  The condition of Mr. Mostafa's prosthesis, including the absence of wrist and finger hinges, is within Mr. Mostafa's personal knowledge.  Moreover, Mr. Mostafa does not express an opinion and does not rely on expertise.  The statements in his declaration are therefore admissible.  Accordingly, Mr. Mostafa has properly supported his assertion of fact.  Because defendants provide no other basis to deny this fact, the Court finds that it is undisputed that Mr. Mostafa's prosthetic has neither wrist nor finger hinges.

[16] Mr. Mostafa includes several more detailed facts regarding why none of his prostheses function properly or allow him to clean himself.  Docket No. 313 at 20-21, ¶¶ 5-11.  Some of these facts are disputed.  *See*, *e.g.*, Docket No. 322 at 4, ¶ 11.  The Court finds that it is unnecessary to resolve the parties' disputes of fact on these issues because it is undisputed that Mr. Mostafa does not have a properly functioning prosthesis.  However, none of Mr. Mostafa's remaining claims are based on the fact that Mr. Mostafa does not have a functioning prosthesis.  Rather, Mr. Mostafa's lack of a functional prosthesis is only material to the extent that it prevents him from ritually washing himself or from eating halal meals.

with the prosthetist, Mr. Mostafa did not inform the prosthetist that he needed his new prosthesis to assist him with cleaning after using the toilet.[17]  *Id.*, ¶ 49.  ADX provided Mr. Mostafa with a brush to aid in cleaning after using the toilet.  *Id.*, ¶ 50.  Mr. Mostafa claims that he cannot use the brush effectively.  *Id.*, ¶ 51.  Mr. Mostafa has not identified to ADX other tools he wants to assist with cleaning himself.[18]  *Id.*, ¶ 52.

ADX does not provide any inmates with personal attendants for the purpose of washing them after using the toilet.  *Id.* at 8-9, ¶ 45.  Doing so would place a substantial burden on ADX staff or require additional staff at a substantial expense to the BOP.[19]

---

[17] Mr. Mostafa denies this fact without explanation or citation to the record. Docket No. 313 at 18, ¶ 49.  The Court therefore deems this fact undisputed.  Fed. R. Civ. P. 56(e)(2)-(3) (if a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it"); Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, §§ III.F.3.b.iv., ix.

[18] Mr. Mostafa denies this fact.  Docket No. 313 at 18, ¶ 52.  He states that "Plaintiff and his expert have both told the Defendants on many occasions what kinds of tools he needs.  He needs prosthetics with a joint at the elbow so that he can reach his anal area, and a terminal device like a claw or pincers that can open and close when tension is applied to a control cable."  *Id.*  Mr. Mostafa cites his declaration, in which he describes the type of prostheses he would like.  Docket No. 313-1 at 3-4, ¶ 7 ("There are no substitute joints like a wrist and finger hinges that would allow me to position the hooks in different directions.").  The declaration does not support Mr. Mostafa's assertion that either he or his expert has told defendants what other tools Mr. Mostafa requires.  Therefore, the Court finds that it is undisputed that Mr. Mostafa has not identified to defendants other tools he requires to clean himself after using the toilet.

[19] Defendants claim that providing a personal attendant also poses security risks. Docket No. 308 at 8-9, ¶ 45.  Mr. Mostafa claims that whether providing Mr. Mostafa with an attendant would involve substantial expense to the BOP or would pose a security risk are questions of fact for the jury.  Docket No. 313 at 17, ¶ 45.  He asserts that Mr. Mostafa has "never attacked anyone, has no hands, and is in prison because of the controversial nature of his sermons, not because he has ever committed any act of violence."  *Id.*  The Court finds that Mr. Mostafa has created a dispute of fact as to the security risk he poses to an attendant.  However, Mr. Mostafa provides no evidence regarding the expense to BOP for accommodating Mr. Mostafa with an attendant. Therefore, the Court finds that it is undisputed that providing Mr. Mostafa with a personal attendant would place a substantial burden on ADX staff and resources.

*Id.* Mr. Mostafa is unaware of other Muslim inmates who cannot engage in ritual washing before prayer at the ADX. *Id.* at 9, ¶ 46.

The halal, kosher, and vegetarian meals served at ADX are all compatible with Mr. Mostafa's Muslim faith.[20] *Id.*, ¶ 53. However, during Eid, Mr. Mostafa is required to eat halal meat. Docket No. 313 at 26, ¶ 31. Halal meals were first made available to Mr. Mostafa in 2022. *Id.* ADX now serves Mr. Mostafa halal meals when he requests them. Docket No. 308 at 10, ¶ 55. Mr. Mostafa says that he initially could not open the halal food packaging because he was unable to use his hands and had problems with his teeth. *Id.*, ¶ 56. ADX's usual practice is to serve all meals, including religious fare meals, in the sealed trays provided by the vendor. *Id.*, ¶ 57. The practice serves the penological interest of administrative efficiency, reducing the burden on staff, promoting food safety, and minimizing accusations by inmates that the food has been tampered with. *Id.*, ¶ 58. ADX did not purposefully put halal meals in packaging or choose trays for halal meals because they were difficult for Mr. Mostafa to use or because Mr. Mostafa is Muslim. *Id.*, ¶ 59.

In 2021, the Complex Food Service Administrator issued a memorandum directing ADX staff to remove all food items from packaging and place them in a covered hard tray for Mr. Mostafa. *Id.*, ¶ 60. ADX staff open Mr. Mostafa's food

---

[20] Mr. Mostafa denies this fact, arguing that meat must be eaten during Eid. Docket No. 313 at 18, ¶ 53. Mr. Mostafa's assertion that meat must be eaten on Eid does not indicate that Mr. Mostafa cannot eat halal or kosher meals during Eid or that Mr. Mostafa does not always have a food option that is consistent with his faith. Therefore, the Court deems this fact undisputed.

packaging and serve his food on trays that he can use, regardless of the menu he

selects.  *Id.* at 11, ¶ 64.[21]

_____

[21] Defendants assert that Mr. Mostafa no longer receives meals in closed packaging or on the halal trays that are taller than kosher trays.  Docket No. 308 at 10, ¶ 61.  Mr. Mostafa denies this fact, stating that "[n]ormally the food packages are opened, but not always resulting in the Plaintiff missing about 150 meals."  Docket No. 313 at 19, ¶ 61.  Therefore, the Court finds that it is undisputed that defendants normally do not serve Mr. Mostafa meals in closed packaging or on the halal trays that are taller than kosher trays.  Mr. Mostafa claims that it is an undisputed fact that food service staff do not always comply with opening Mr. Mostafa's food packaging.  Docket No. 313 at 26, ¶ 33.  He asserts that he often must open the packages with his teeth, which has damaged his teeth.  *Id.*  Mr. Mostafa claims that he is occasionally unable to open these packages and estimates that he has missed approximately 150 meals over the years due to staff not opening his food packaging.  *Id.*  Defendants deny Mr. Mostafa's assertions of fact regarding staff not opening his food packaging.  Docket No. 322 at 6, ¶ 33.  Defendants claim that there is "[n]o evidence that food packages aren't currently being opened" and that the "estimate of 150 meals missed hasn't increased in 3 years."  *Id.*  Defendants cite Mr. Mostafa's amended complaint filed on May 21, 2022, in which Mr. Mostafa claims that, "[f]or about ten months, the Kitchen Manager, Officer Kunduf, didn't comply with the decision of the Regional Office, and the food was still delivered wrapped in plastic, despite the note on the Plaintiff's cell.  The Plaintiff has been unable to eat approximately 150 meals because of difficulties in opening the packaging."  Docket No. 188 at 45, ¶ 191.  Defendants also rely on Mr. Mostafa's deposition testimony.  At his deposition, when asked, "are you receiving meals with food that is in closed packaging?" Mr. Mostafa responded, "[n]o, because I changed my diet to vegetable."  Docket No. 322-1 at 7, 124:2-4.  The meaning of Mr. Mostafa's statement is ambiguous.  *See id.* at 123:23-126:25.  Mr. Mostafa testified that he changed his diet to vegetarian pursuant to a recommendation made by then Magistrate Judge Michael Hegarty in 2020.  *Id.* at 123:23-125:6.  He states that BOP kitchen staff did not begin complying with the policy of opening his food packaging until 2022.  *Id.* at 125:7-126:8.  Moreover, he states that, when BOP staff began opening the packaging, they would not put the meals on an accessible tray.  *Id.* at 125:18-19.  He claims that sharp fragments of plastic trays were left in his food and that prison staff began mixing incompatible foods together on his tray, such as fruit and sardines.  *Id.* at 125:19-126:25.  The Court finds that Mr. Mostafa's declaration is not attempting to create a sham fact issue as to whether Mr. Mostafa continues to receive food in sealed packaging.  It is unclear what Mr. Mostafa's prior testimony was and whether the declaration may be an appropriate attempt to clarify Mr. Mostafa's statements.  As such, the *Gabaldon* factors do not weigh in favor of disregarding Mr. Mostafa's declaration.  *See Gabaldon*, 139 F.4th at 1211.  Moreover, defendants provide no argument as to why Mr. Mostafa's declaration is not competent evidence of the fact that he continues to receive food in sealed packaging.  *See* Docket No. 322 at 6, ¶ 33.  Therefore, the discrepancies between Mr. Mostafa's deposition testimony and his declaration create a

Current BOP policy allows inmates belonging to each religious group to select a meal from the certified diet master menu to be served on a religious holiday.  *Id.*, ¶ 65.  The practice of providing feast meals from the master menu enhances administrative efficiency and helps BOP maintain low food procurement costs.  *Id.*, ¶ 66.  Each religious group receives one feast meal per calendar year.[22]  *Id.*, ¶ 67.  No inmates receive feast meals in observance of religious holidays that contain food that is not already on the institutional master menu.[23]  *Id.*, ¶ 68.  A Jewish inmate told Mr. Mostafa that he receives twenty-four feast meals for Passover.  *Id.*, ¶ 69.  Mr. Mostafa claims

_____

dispute of material fact as to whether Mr. Mostafa has been provided with meals still in their packaging after 2022.  *See id.*

[22] Mr. Mostafa denies this fact.  Docket No. 313 at 19, ¶ 67.  He states that, "[a]t least for some of the relevant time period, Jewish prisoners received special meals on every day of Passover."  *Id.*  Similarly, in his statement of additional undisputed facts, Mr. Mostafa asserts that it is his "understanding and observation, based on conversations with a Jewish prisoner and personal observation, that the BOP provides special meals for Jewish prisoners on every day of Passover."  *Id.* at 26, ¶ 32.  Mr. Mostafa relies on his own declaration asserting the same.  Docket No. 313-1 at 8, ¶ 23.  However, as discussed below, Mr. Mostafa admits that it is undisputed that he did not personally observe the food that Jewish prisoners received and that he does not know what food Jewish inmates allegedly received for feast meals.  Docket No. 308 at 11-12, ¶¶ 71-72; Docket No. 313 at 19, ¶¶ 71-72.  Mr. Mostafa's deposition testimony confirms his lack of personal knowledge of what food Jewish inmates receive.  *See* Docket No. 308-3 at 24, 155:4-6.  Statements made to Mr. Mostafa by the unidentified Jewish prisoner are hearsay.  Mr. Mostafa's declaration fails to support his denial of the fact that each prisoner receives one feast meal per year or to support his assertion that Jewish prisoners receive feast meals every day of Passover.  *See Johnson*, 594 F.3d at 1210 ("Rule 56 expressly prescribes that a summary judgment declaration must be made on personal knowledge." (quotations and citation omitted)); *see also* Fed. R. Civ. P. 56(c)(4).  Therefore, the Court finds that it is an undisputed fact that prisoners receive one feast meal per year.  For the same reasons, the Court rejects Mr. Mostafa's assertions that Jewish prisoners had access to numerous special Passover meals.  *See* Docket No. 313 at 26, ¶ 32.

[23] Mr. Mostafa denies this fact on the basis that halal meals have only been available to him since 2022.  Docket No. 313 at 19, ¶ 68.  Mr. Mostafa's denial is unresponsive to defendants' assertion that feast meals must contain food that is already on the master menu.  Therefore, the Court deems this fact undisputed.

that this fact was confirmed by an imam who worked at ADX.  *Id.*, ¶ 70.  Mr. Mostafa did

not personally see the food that he claims constituted Jewish feast meals.  *Id.* at 11-12,

¶ 71.  Mr. Mostafa does not know what food Jewish inmates allegedly received for feast

meals.  *Id.* at 12, ¶ 72.

When questioned in discovery, Mr. Mostafa did not identify any evidence of

"purposeful discrimination" by the government related to his ritual washing or meal

service claims.  *Id.*, ¶ 74.[24]

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying a lack of

---

[24] The remainder of the parties' assertions of undisputed fact are not material to
Mr. Mostafa's remaining claims, either because they are not relevant or because they
rely on theories of liability that are not present in Mr. Mostafa's complaint.  *See*, *e.g.*,
Docket No. 313 at 28, ¶ 45 (Mr. Mostafa "cannot put on socks on his arms or feet
because the only tool he has is a sharp hook"); *see also Fuqua*, 321 F. App'x at 734
(theories of liability not asserted in the complaint will not be considered).

evidence for the nonmovant on an essential element of the nonmovant's claim."
*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations
omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving
party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of
Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The
nonmoving party may not rest solely on the allegations in the pleadings, but instead
must designate "specific facts showing that there is a genuine issue for trial." *Celotex
Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary
judgment, the nonmovant must establish, at a minimum, an inference of the presence of
each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a
motion for summary judgment, a court must view the evidence in the light most
favorable to the non-moving party. *Id.*

## III.    ANALYSIS

As a preliminary matter, the parties stipulate that Mr. Mostafa is no longer
pursuing his fourth claim for relief, namely, his claim that defendants violated the First
Amendment by interfering with his ability to communicate with his attorney. Docket No.
308 at 12, ¶ 73 ("The parties have stipulated that the remaining portion of Claim 4,
concerning Plaintiff's ability to contact prospective attorney Jules Lobel, is no longer in
dispute and Plaintiff is no longer pursuing Claim 4."); Docket No. 313 at 19, ¶ 73.
Defendants attach a stipulation signed by both parties stating that "Claim 4 of the Fourth
Amended Complaint . . . is no longer in dispute." Docket No. 308-10 at 2. The
stipulation states that "Plaintiff is no longer pursuing Claim 4 because Defendants have
authorized Plaintiff to contact attorney Lobel." *Id.* In light of the parties' stipulation, the
Court will dismiss Mr. Mostafa's fourth claim.

However, the parties' stipulation is ambiguous.  Generally, summary judgment entails a dismissal with prejudice.  *McNeal v. Found. Radiology Grp., PC*, 670 F. Supp. 3d 430, 434 (E.D. Mich. 2023) ("summary judgment 'is a final adjudication on the merits' warranting prejudice, even if a party does not explicitly request dismissal *with prejudice*" (quoting *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992); citing *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194-95 (5th Cir. 2011); *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1722, (2020))).  However, the parties' stipulation indicates that the reason for the dismissal is that Mr. Mostafa's claim is now moot.  Docket No. 308-10 at 2 ("Plaintiff is no longer pursuing Claim 4 because Defendants have authorized Plaintiff to contact attorney Lobel.").  A dismissal on mootness grounds is generally without prejudice. *Cartwright v. Ringgold*, 2008 WL 686244, at *1 n.4 (W.D. Okla. Mar. 6, 2008) ("The Tenth Circuit Court of Appeals has held that dismissals for mootness should be without prejudice." (citing *Beierle v. Colorado Dep't of Corr.*, 79 F. App'x 373, 376 (10th Cir. 2003) (unpublished); *Bulgier v. Soc. Sec. Admin.*, 124 F.3d 216, 1997 WL 556281 at *1 (10th Cir. 1997) (table decision)))).  Because Mr. Mostafa's stipulation states that the basis for the parties' resolution of his claim is that it is moot, the Court will dismiss Mr. Mostafa's fourth claim without prejudice.

### A.  <u>Failure to Exhaust</u>

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). "This requirement reaches 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force

or some other wrong.'"  *Galindo v. Gentry*, 643 F. App'x 807, 808 (10th Cir. 2016)

(unpublished) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  An inmate's

obligation to exhaust administrative remedies is mandatory.  *See Ross v. Blake*, 578

U.S. 632, 639 (2016); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no

question that exhaustion is mandatory under the PLRA.").  The exhaustion doctrine is

an affirmative defense.  *Jones*, 549 U.S. at 211-12.  As a result, the defendant bears the

burden of asserting and proving failure to exhaust.  *See Tuckel v. Grover*, 660 F.3d

1249, 1254 (10th Cir. 2011).  "Because the prison's procedural requirements define the

steps necessary for exhaustion, an inmate may only exhaust by properly following all of

the steps laid out in the prison system's grievance procedure."  *Little v. Jones*, 607 F.3d

1245, 1249 (10th Cir. 2010) (citations omitted).  "An inmate who begins the grievance

process but does not complete it is barred" from pursuing his federal claim.  *Id*.

Defendants argue that Mr. Mostafa failed to exhaust his administrative remedies

for his grievances regarding his ability to ritually wash himself before praying.  Docket

No. 308 at 12-13.  Specifically, defendants assert that it is an undisputed fact that Mr.

Mostafa did not reference his need to ritually wash himself in either his BP-9 form to the

warden or his BP-10 form appealing the warden's decision to the BOP Regional Office.

*Id*. at 13.  They maintain that, because Mr. Mostafa was required to raise his issues with

ritual washing at each stage of the administrative process, Mr. Mostafa failed to exhaust

his administrative remedies.  *Id*.  Accordingly, defendants argue that they are entitled to

summary judgment on Mr. Mostafa's First Amendment, Fifth Amendment, and RFRA

claims to the extent that they are based on Mr. Mostafa's inability to wash himself.  *Id*. at

14.

Mr. Mostafa responds that defendants have waived this defense.  Docket No. 313 at 13-14.  Mr. Mostafa asserts that defendants previously raised his failure to exhaust his administrative remedies in their first motion for partial summary judgment.  *Id.* at 13; *see also* Docket No. 234 at 10.  He maintains that, because the Court has already ruled on defendants' argument as to his other claims, they cannot now raise the same issue as to his ritual washing claims.  Docket No. 313 at 14.

The Supreme Court recently reaffirmed that "PLRA exhaustion is a standard affirmative defense"; it "is not jurisdictional."  *Perttu v. Richards*, 145 S. Ct. 1793, 1801 (2025) (citation and quotations omitted).  The Tenth Circuit has held that, when administrative exhaustion is an affirmative defense, and not a jurisdictional prerequisite, the defense is "subject to the same waiver and estoppel principles that govern other affirmative defenses."  *Rohwedder v. Rocky Mountain Pies, LLC*, 2021 WL 5458598, at *3 (10th Cir. Nov. 23, 2021); *see also Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1182 (10th Cir. 2018).  "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right."  *Donnell v. Caley*, No. 21-cv-01372-RBJ, 2022 WL 622001, at *12 (D. Colo. Mar. 3, 2022) (citing *Womble v. Chrisman*, 2022 WL 334107, at *2 (10th Cir. Feb. 4, 2022) (unpublished); *United States v. Dahda*, 853 F.3d 1101, 1117 (10th Cir. 2017), *aff'd sub nom. Los Rovell Dahda v. United States*, 584 U.S. 440 (2018) ("Waiver is the intentional relinquishment or abandonment of a known right." (citation and quotations omitted)).

"Generally, an affirmative defense is forfeited if not raised in a defendant's answer or in an amendment thereto."  *Donnell*, 2022 WL 622001, at *12 (citing *Wood v. Milyard*, 566 U.S. 463, 473 n.4 (2012)).  However, courts in this circuit have found that

affirmative defenses may be raised for the first time in motions for summary judgment if

the opposing party is not prejudiced. *Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir.

2006) ("we have held that an affirmative defense was not waived for trial purposes when

it had first been raised in a motion for summary judgment three months earlier"); *Blay v.

Reilly*, No. 01-cv-01917-REB-MJW, 2008 WL 2020286, at *1 n.1 (D. Colo. May 9, 2008)

("the law of this circuit allows a party to raise an affirmative defense by way of a

summary judgment motion if the purposes of Rule 8 are otherwise served and the

standards for granting a motion to amend would otherwise be met"); *Watkins v. Hous.

Auth. of the City of Hugo*, 2025 WL 551862, at *3 (E.D. Okla. Feb. 19, 2025) ("But this

Circuit is clear that an affirmative defense is not necessarily waived if raised for the first

time in a motion for summary judgment." (citation and quotations omitted)); *see also

Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 573 (6th Cir. 2014)

(unpublished) ("A district court may, in its discretion, allow a defendant to raise an

affirmative defense for the first time in a motion for summary judgment if doing so does

not result in surprise or prejudice to the plaintiff.").  Moreover, "the failure to raise an

affirmative defense by motion will not result in a waiver as long as it is interposed in the

answer." *Amgen Inc. v. Sandoz Inc.*, 877 F.3d 1315, 1325 (Fed. Cir. 2017) (quoting 5

C. Wright & A. Miller, Federal Practice and Procedure § 1277 (3d ed. 2017)); *see also

Phillips v. Walker*, 443 F. App'x 213, 215 (7th Cir. 2011) (unpublished) ("Phillips first

contends that the district court should have accepted his contention that the defendants

waived the affirmative defense of nonexhaustion by waiting to raise it in their answers to

his complaint instead of in their earlier motions to dismiss.  We disagree. . . .  Here the

defendants raised the nonexhaustion defense in their answers and pressed it in their motions for summary judgment, so the defense could not have been waived.").

Mr. Mostafa provides no support for the proposition that, because defendants raised the affirmative defense of administrative exhaustion for some but not all of his claims in their prior motions, defendants have waived the affirmative defense as to Mr. Mostafa's remaining claims. *See* Docket No. 313 at 14. Defendants did not waive the defense on this basis. *See Amgen Inc.*, 877 F.3d at 1325. However, the Court finds that defendants' answer waived their administrative exhaustion defense.

Defendants did not answer Mr. Mostafa's complaint until after the Court ruled on defendants' motion to dismiss and motion for partial summary judgment. *See* Docket No. 263. In the answer, defendants state that

> The Court ruled on Defendant's Early Motion for Partial Summary Judgment for Failure to Exhaust and Failure to Comply with Statute of Limitations. Therefore, no response is required to the claims on which the Court ruled. With respect to the claims that Defendants did not move for summary judgment for failure to exhaust administrative remedies, Defendants admit that Plaintiff exhausted those claims.

*Id.* at 9, ¶ 47 (internal citation omitted). In the "defenses" section of the answer, defendants do not reference administrative exhaustion. *See id.* at 16.

Because "an affirmative defense is forfeited if not raised in a defendant's answer," defendants have forfeited the administrative exhaustion defense. *Donnell*, 2022 WL 622001, at *12. Moreover, despite some courts finding that affirmative defenses may be raised for the first time in a motion for summary judgment, the Court finds that this case is distinguishable. Cases permitting an affirmative defense to be raised in a summary judgment motion rely on the fact that defendants received fair notice of the defense. *See, e.g., Watkins*, 2025 WL 551862, at *3 ("where the matter is

raised in the trial court in a manner that does not result in unfair surprise technical

failure to comply with Rule 8(c) is not fatal"); *Lauderdale*, 552 F. App'x at 573 (raising

the affirmative defense in a motion for summary judgment is permissible where "doing

so does not result in surprise or prejudice to the plaintiff").  Here, the answer

affirmatively pleads that Mr. Mostafa has exhausted his administrative remedies.

Docket No. 263 at 9, ¶ 47.  Defendants' pleading is an "intentional relinquishment or

abandonment of a known right," *Dahda*, 853 F.3d at 1117, and they have waived the

defense that Mr. Mostafa failed to exhaust his administrative remedies.

### B. Mootness

Defendants argue that Mr. Mostafa's First Amendment, Fifth Amendment, and

RFRA claims should be dismissed to the extent that Mr. Mostafa asserts that he does

not receive halal meals in an accessible form.  Docket No. 308 at 15.  Defendants

maintain that the undisputed facts show that ADX changed its policy in 2021 to require

that all of Mr. Mostafa's meals, including halal meals, be removed from their packaging

and placed on Mr. Mostafa's preferred type of tray.  *Id.* at 10-11, 15, ¶¶ 61, 64.  As

such, defendants assert that Mr. Mostafa's claims no longer present an "actual

controversy."  *Id.* at 14 (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67

(1997)).

Mr. Mostafa responds that, even if it is undisputed that he has received halal

meals in an accessible form since 2022, Mr. Mostafa has demonstrated that there are

disputes of fact as to whether he was denied accessible halal meals from 2014 to 2022.

Docket No. 313 at 9-10.  Mr. Mostafa maintains that he is entitled to monetary damages

for these past violations of his constitutional rights, and that his claims are therefore not

moot.  *Id.* at 2-4, 9-10 (citing *Tanzin v. Tanvir*, 592 U.S. 43, 52 (2020) ("We conclude

that RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities."); *Uzuegbunam v. Preczewski*, 592 U.S. 279, 293 (2021) (finding that "it is undisputed that Uzuegbunam experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him.  Because every violation of a right imports damage, nominal damages can redress Uzuegbunam's injury even if he cannot or chooses not to quantify that harm in economic terms." (internal quotations, alterations, and citation omitted)).

Defendants reply that Mr. Mostafa cannot pursue monetary or nominal damages in this case, not because those are not possible remedies for his alleged constitutional violations, but because Mr. Mostafa cannot receive those remedies when he sues federal officials in their official capacities.  Docket No. 308 at 29-30; Docket No. 322 at 17.  Although Mr. Mostafa's complaint brought claims against some federal officials at ADX in their individual capacities, *see* Docket 199 at 5-7, ¶¶ 16-27, defendants maintain that Mr. Mostafa's remaining claims are brought against them only in their official capacities.[25]  Docket No. 308 at 29.  Because claims against federal officials in their official capacities are considered claims against the United States, and because the United States has not waived sovereign immunity against money damages in this case, defendants maintain that Mr. Mostafa's claims are moot.  *See id.* at 15, 29.

When suing federal officials for violations of a constitutional right, plaintiffs like Mr. Mostafa have two options.  A "plaintiff may choose to sue defendants in their official

---

[25] Defendants are correct; the claims brought against the defendants sued in their individual capacities were dismissed by the Court.  *See* Docket Nos. 257, 258.

or individual capacity.  In an individual-capacity suit, money damages are available but injunctive relief is not, whereas in an official-capacity suit, injunctive relief is available but money damages are not."  *MacDonald v. Haaland*, 2024 WL 5848356, at *4 (D. Alaska Jan. 25, 2024).  Specifically, if "a federal prisoner incarcerated in a Bureau of Prisons . . . facility alleges a constitutional deprivation, a *Bivens* claim may lie against the individual officer, subject to the defense of qualified immunity."  *Magluta v. Daniels*, No. 15-cv-02203-RM-KLM, 2019 WL 1002936, at *5 (D. Colo. Mar. 1, 2019), *report and recommendation adopted as modified*, 2019 WL 1349711 (D. Colo. Mar. 26, 2019), *aff'd*, 816 F. App'x 280 (10th Cir. 2020).  "However, such a claim may not lie against the officer in his or her official capacity."  *Id.* (citing *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005)).  Moreover, a "*Bivens* action is, by definition, a damages action."  *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1167 (D. Colo. 2010). "Another possibility is a claim for an injunction, based on the federal courts' equity jurisdiction, to enforce the dictates" of the Constitution.  *Simmat*, 413 F.3d at 1231. "Federal courts have long exercised the traditional powers of equity, in cases within their jurisdiction, to prevent violations of constitutional rights."  *Id.*  Such claims are brought against federal officials in their official capacities and are, in effect, suits against the United States.  *Id.* at 1232 ("Although nominally brought against the prison dentists, Mr. Simmat's claim is in reality against the United States.").  However, these claims do not support a claim for money damages.[26]  *See Dep't of Agric. Rural Dev. Rural Hous.*

---

[26] Mr. Mostafa's RFRA claims against federal officials in their official capacities are similarly limited to non-monetary relief.  *Hayford v. Fed. Bureau of Prisons*, 2023 WL 1927267, at *4 (D. Kan. Feb. 10, 2023) (neither "RFRA nor RLUIPA include waivers of the federal government's sovereign immunity for actions requesting money damages" (quoting *The Cherokee Nation W. v. U.S. Army Corps of Eng'rs*, 2016 WL 4548441, at

*Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) ("the United States, as sovereign, is generally immune from suits seeking money damages").

Mr. Mostafa's claims are brought against defendants only in their official capacities. *See* Docket No. 199 at 1. Mr. Mostafa cannot recover monetary damages on these claims. *See Simmat*, 413 F.3d at 1233 (Congress waived sovereign immunity "in most suits for nonmonetary relief" (citing 5 U.S.C. § 702)). Because Mr. Mostafa's only response to defendants' mootness argument is that he can receive money damages based on past conduct, Mr. Mostafa fails to demonstrate that his claims based on inaccessible halal meals are not moot. Nevertheless, the Court will consider whether Mr. Mostafa's requests for injunctive and declaratory relief have been mooted by defendants' change in policy regarding Mr. Mostafa's meals.

"The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (citation omitted). "Where a plaintiff requests equitable relief, a mere showing that he maintains a personal stake in the outcome of the controversy is insufficient." *Id.* at 1024. "Rather, a plaintiff must *additionally* demonstrate 'an adequate basis for equitable relief'—that is, '[a] likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.'" *Id.* (quoting *O'Shea v. Littleton,* 414 U.S. 488, 499, 502 (1974)). "Where a plaintiff

---

*4 (N.D. Okla. Aug. 31, 2016)); *see also Tanzin*, 592 U.S. at 52 ("We conclude that RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their *individual capacities*." (emphasis added)).

seeks an injunction, his susceptibility to *continuing* injury is of particular importance." *Id.*

Past "exposure to illegal conduct does not in itself show a present case or controversy

regarding injunctive relief . . . if unaccompanied by any continuing, present adverse

effects." *Id.* (quoting *O'Shea*, 414 U.S. at 495-96). A "plaintiff's continued susceptibility

to injury must be reasonably certain; a court will not entertain a claim for injunctive relief

where the allegations take it into the area of speculation and conjecture." *Id.* (citation,

quotation, and alterations omitted). Similarly, in the context of an action for declaratory

relief, "a plaintiff must be seeking more than a retrospective opinion that he was wrongly

harmed by the defendant."[27] *Id.* at 1025. When courts "apply the mootness doctrine in

the declaratory judgment context, '[i]t is well established that what makes a declaratory

judgment action a proper judicial resolution of a case or controversy rather than an

advisory opinion is the settling of some dispute which affects the behavior of *the*

*defendant toward the plaintiff.*'" *Id.* (quoting *Rio Grande Silvery Minnow v. Bureau of*

*Reclamation*, 601 F.3d 1096, 1109-10 (10th Cir. 2010)).

"An exception to mootness applies to wrongs capable of repetition yet evading

review." *Burnett v. Fallin*, 785 F. App'x 546, 552 (10th Cir. 2019) (unpublished) (citing

*Jordan*, 654 F.3d at 1034). "The capable-of-repetition exception to the mootness

doctrine is a narrow one, and should only be used in exceptional situations." *Id.*

(citation, quotations, and alterations omitted). "Two circumstances must combine for

---

[27] As part of the relief Mr. Mostafa seeks in his fourth amended complaint, he
asks the Court to "declare that Defendants have violated the Plaintiffs' rights and the
laws of the United States." Docket No. 199 at 55. The Court has a "duty to decide the
appropriateness and the merits of the declaratory request irrespective of its conclusion
as to the propriety of the issuance of an injunction." *Jordan*, 654 F.3d at 1025
(alternation omitted).

the exception to apply: '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" *Id*. (quoting *Jordan*, 654 F.3d at 1035). "The party asserting that the exception applies bears the burden of establishing both prongs." *Id*. (citation and alterations omitted).

The Court finds that Mr. Mostafa's claims regarding his halal meals are moot. Construing the evidence in the light most favorable to Mr. Mostafa, the Court has found that Mr. Mostafa's deposition testimony is sufficient to create a dispute of fact as to whether BOP staff have occasionally failed to provide Mr. Mostafa with meals in an accessible form. *See* Docket No. 313 at 26, ¶ 33. However, it is undisputed that the BOP changed its policy and that Mr. Mostafa now receives any meal of his choice on his preferred tray. Docket No. 308 at 10-11, ¶¶ 60-61, 64. Mr. Mostafa's ambiguous testimony that he changed to a vegetarian diet in 2020 and that prison staff now mix the food on his tray in an unappealing way is insufficient to demonstrate that it is "reasonably certain" that Mr. Mostafa's food packaging will be unopened in the future. *Jordan*, 654 F.3d at 1024. Considering the BOP's change in policy, Mr. Mostafa fails to identify what further relief an injunction could afford him.[28] Therefore, regardless of

---

[28] Even if BOP staff do occasionally fail to open Mr. Mostafa's food packaging, Mr. Mostafa seeks injunctive relief that would only require the BOP to comply with its own policies, and such injunctions are generally disfavored. *See Haney v. United of Omaha Life Ins. Co.*, No. 21-cv-02566-RMR-KLM, 2022 WL 2158985, at *5 (D. Colo. June 15, 2022), *report and recommendation adopted*, 2022 WL 3099201 (D. Colo. July 1, 2022) ("an injunction that essentially requires a party to obey the law in the future is not encouraged" (quoting *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987)); *see also In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 221 (D. Conn. 2007) (granting motion to dismiss prayer for injunctive relief "enjoining Defendants from continuing to violate their fiduciary duties under ERISA and the plan documents").

whether Mr. Mostafa can demonstrate that defendants' past conduct violated Mr.

Mostafa's constitutional rights, he has not shown that there is a future "likelihood of

substantial and immediate irreparable injury." *Id.*

Furthermore, the capable-of-repetition exception does not apply in this case. Mr.

Mostafa claims that defendants failed to provide him with halal meals in an accessible

form from 2014 to 2022. Docket No. 313 at 9-10. Eight years is a sufficient duration to

have fully litigated Mr. Mostafa's claims prior to BOP's cessation of the alleged

constitutional violation. *See Burnett*, 785 F. App'x at 552. Moreover, Mr. Mostafa

provides no support for the proposition that "there is a reasonable expectation" that

BOP intends to alter its new policy regarding Mr. Mostafa's meals. *Id.* Therefore, the

Court finds that Mr. Mostafa's claims for injunctive relief regarding receiving halal meals

in an accessible form are moot.

The Court finds that Mr. Mostafa's claims for a declaratory judgment on this basis

are also moot. Mr. Mostafa presents no argument as to why a declaratory judgment in

this case would be anything other than a "retrospective opinion that he was wrongly

harmed by the defendant." *Jordan*, 654 F.3d at 1025. Because Mr. Mostafa's First

Amendment, Fifth Amendment, and RFRA claims based on the BOP denying Mr.

Mostafa access to halal meals are moot, the Court is without jurisdiction to adjudicate

his claims.[29] *Rio Grande*, 601 F.3d at 1109 ("Without a live, concrete controversy, we

---

[29] Mr. Mostafa presents no support for the proposition that he can bring a claim
for nominal damages against defendants in their official capacities. *See Griffith v. State
of Colo., Div. of Youth Servs.*, 17 F.3d 1323, 1327 (10th Cir. 1994) ("We are persuaded
that the district court was correct in ruling that nominal damages are compensatory in
nature and since Title VII provides for equitable, not legal relief, nominal damages must
not be awarded under Title VII."); *Platt v. Moore*, 15 F.4th 895, 910 (9th Cir. 2021)

lack jurisdiction to consider claims no matter how meritorious." (citation omitted)).

Accordingly, the Court will dismiss these claims.[30]

### C. **RFRA**

A "plaintiff establishes a *prima facie* claim under RFRA by proving the following

three elements: (1) a substantial burden imposed by the federal government on a (2)

sincere (3) exercise of religion." *Hale*, 759 F. App'x at 746. (quoting *Kikumura v. Hurley*,

242 F.3d 950, 960 (10th Cir. 2001)).  A religious exercise is substantially burdened

under RFRA "when a government (1) requires participation in an activity prohibited by a

sincerely held religious belief, or (2) prevents participation in conduct motivated by a

sincerely held religious belief, or (3) places substantial pressure on an adherent either

not to engage in conduct motivated by a sincerely held religious belief or to engage in

---

("sovereign immunity protects state officer defendants sued in federal court in their
official capacities from liability in damages, including nominal damages").

[30] Even if the Court were to consider the merits of Mr. Mostafa's claims based on
his access to halal meals, the Court would still dismiss them.  As discussed below, to
prove Mr. Mostafa's RFRA claim and First Amendment claim, Mr. Mostafa must prove
that defendants occasionally giving Mr. Mostafa food in packaging places a "substantial
burden" on the exercise of his religion.  *Kay v. Bemis*, 500 F.3d 1214, 1218, 1221(10th
Cir. 2007) (First Amendment); *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 746
(10th Cir. 2019) (unpublished) (RFRA).  The Tenth Circuit has found that a plaintiff must
prove that his inability to access halal food happens with such frequency that it is a
substantial burden, and more than de minimus violation of his rights.  *Abdulhaseeb v.
Calbone*, 600 F.3d 1301, 1320-22 (10th Cir. 2010) (citing *Rapier v. Harris,* 172 F.3d
999, 1006 n.4 (7th Cir. 1999)) (finding that a single instance of having contaminated
jello products on plaintiff's tray was not a substantial burden).  Here, Mr. Mostafa's
evidence is insufficient to show that, after 2022, any violation by defendants of the
policy requiring Mr. Mostafa's food to be taken out of its packaging was more than de
minimus.  To prove his equal protection claim, Mr. Mostafa must prove other similarly
situated prisoners were given access to food that complied with their religious beliefs
when Mr. Mostafa was not.  *See Tenison v. Byrd*, 826 F. App'x 682, 688 (10th Cir.
2020).  The undisputed facts show that Mr. Mostafa is the only double upper extremity
amputee at ADX.  Docket No. 308 at 5, ¶¶ 11-12.  As such, he is unable to prove that
other prisoners who were similarly situated to him in all material respects were treated
differently.

conduct contrary to a sincerely held religious belief, such as where the government

presents the plaintiff with . . . an illusory choice where the only realistically possible

course of action trenches on an adherent's sincerely held religious belief."

*Abdulhaseeb*, 600 F.3d at 1315.[31]  "At a minimum[,] the substantial burden test requires

that a [RFRA] plaintiff demonstrate that the government's denial of a particular religious

item or observance was more than an inconvenience to one's religious practice."

*Robertson v. Biby*, 647 F. App'x 893, 896 (10th Cir. 2016) (unpublished) (citation

omitted)).  Whether "a burden is 'substantial' under RFRA is a question of law, not a

question of fact."  *Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867

F.3d 338, 356 (3d Cir. 2017); *Singh v. McHugh*, 185 F. Supp. 3d 201, 210 (D.D.C.

2016) ("Whether a government action substantially burdens a plaintiff's religious

exercise is a question of law for a court to decide." (citing *Priests for Life v. U.S. Dep't of

Health & Human Servs.*, 772 F.3d 229, 247 (D.C. Cir. 2014)); *Livingston Christian Sch.

v. Genoa Charter Twp.*, 858 F.3d 996, 1001 (6th Cir. 2017) ("[F]or the substantial-

burden inquiry, the ultimate decision on whether the [defendants'] actions imposed a

substantial burden . . . is a question of law" for the court to decide); *Roman Catholic*

---

[31] The claims in *Abdulhaseeb* were brought against state actors under the
Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which is the state
equivalent of RFRA.  *See Abdulhaseeb*, 600 F.3d at 1312; *see also Johnson v. Martin*,
2005 WL 3312566, at *5 (W.D. Mich. Dec. 7, 2005) ("Save for the inserted
congressional limitations and stylistic changes, 42 U.S.C. § 2000cc-1 (RLUIPA) and 42
U.S.C. § 2000bb-1 (RFRA) are functional equivalents."); *Henderson v. Elsinger*, 2022
WL 21808247, at *2 (W.D. Wis. Aug. 19, 2022) ("the Religious Freedom Restoration Act
(RFRA ) [is] the federal equivalent of RLUIPA").  RLUIPA uses the same substantial
burden standard.  *See Abdulhaseeb*, 600 F.3d at 1312; *Hobby Lobby Stores, Inc. v.
Sebelius*, 723 F.3d 1114, 1138 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby
Stores, Inc.*, 573 U.S. 682 (2014) ("the Religious Land Use and Institutionalized Persons
Act (RLUIPA) [is] a statute that adopts RFRA's 'substantial burden' standard").

*Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 93 (1st Cir. 2013) (explaining

that the existence of a substantial burden is a question of law because "the corollary

question of whether the government's interest is compelling is generally treated as a

question of law"); *see also United States v. Friday*, 525 F.3d 938, 949 (10th Cir. 2008)

("whether a governmental interest is compelling within the meaning of RFRA is a

question of law").

 If Mr. Mostafa establishes a prima facie claim under RFRA, the burden then

"shifts to the government to show that the 'compelling interest test is satisfied through

application of the challenged law "to the person" – the particular claimant whose sincere

exercise of religion is being substantially burdened.'" *Chesser v. Dir. Fed. Bureau of

Prisons*, No. 15-cv-01939-NYW, 2018 WL 3729511, at *10 (D. Colo. Aug. 6, 2018)

(quoting *Hobby Lobby*, 723 F.3d at 1126 (quoting *Gonzales v. O Centro Espirita

Beneficente Uniao do Vegetal*, 546 U.S. 418, 420 (2006))).  The government must also

establish that the substantial burden "is the least restrictive means" of furthering that

interest.  *Id.* (quoting *Yellowbear v. Lampert*, 741 F.3d 48, 56 (10th Cir. 2014)).

 The Court finds that Mr. Mostafa's RFRA claim raises three issues: (1) whether

defendants have substantially burdened the exercise of Mr. Mostafa's religion by not

providing him with a means of cleaning himself after using the toilet, (2) whether

defendants have substantially burdened the exercise of Mr. Mostafa's religion by limiting

him to use a bidet to clean himself, and (3) whether installing a bidet in one but not both

of Mr. Mostafa's cells has mooted his claim.

 As to the first issue, defendants argue that Mr. Mostafa's RFRA claim based on

his inability to clean himself after using the toilet should be dismissed because

defendants had no obligation to accommodate Mr. Mostafa's ritual washing.  Docket No.
308 at 18-19.  Defendants assert that "RFRA prohibits a prison from restricting an
inmate's exercise of religion but does not require a prison to affirmatively subsidize or
facilitate that exercise."  *Id.* at 18 (citing *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th
Cir. 1995) ("the Act need not drive a prison to employ clergy from every sect or creed
found within its walls"); *Chesser*, 2018 WL 3729511, at *20 ("RFRA does not require
[the government] to subsidize Plaintiff's religious beliefs by building new institutions . . .
or overhauling its operations"); *Hamlin v. Smith*, No. 07-cv-01058-CBS-KMT, 2010 WL
2740119, at *8 (D. Colo. July 12, 2010) ("prisons do not have an affirmative duty to
provide religious materials or other religious articles free of charge to inmates")).
Defendants maintain that, to "the extent Plaintiff contends that RFRA requires the ADX
to affirmatively modify his cell, to provide him with accessories that enable him to
exercise his religion, or to employ attendants to help him complete ritual washing, his
claim fails."  *Id.* at 19.  Mr. Mostafa does not respond to defendants' first argument.  *See*
Docket No. 313 at 7-10.

 The Court rejects defendants' argument that they had no obligation under RFRA
to provide Mr. Mostafa with a means of cleaning himself because doing so was nothing
more than subsidizing a religious practice.  Although Mr. Mostafa attributes religious
significance to his cleanliness after using the toilet, a bidet, a brush, and toilet paper are
not "religious materials or other religious articles"; they are tools for personal hygiene.
*Hamlin*, 2010 WL 2740119, at *8.  Furthermore, providing Mr. Mostafa with a means of
cleaning himself does not require the defendants to "build[ ] new institutions . . . or
overhaul[ ] its operations."  *Chesser*, 2018 WL 3729511, at *20.  This is evidenced by

the fact that defendants have installed a bidet in cell 300. Docket No. 308 at 7, ¶ 28.
Although defendants demonstrate that providing Mr. Mostafa with a bidet was a
deviation from their standard practice, *id.*, ¶¶ 33-34, Mr. Mostafa provided a unique
situation as a double upper extremity amputee, and the accommodation did not require
an overhaul of ADX operations. *See id.*, ¶ 34.

The Tenth Circuit has found that failing to provide prisoners with certain
essentials in a manner that does not require them to violate their religious beliefs can
violate RFRA. *Abdulhaseeb*, 600 F.3d at 1317 (failing to provide halal meals placed a
substantial burden on plaintiff); *Beerheide v. Suthers*, 286 F.3d 1179, 1189 (10th Cir.
2002) (noting that prisoners had to pay for "essentials such as station[e]ry, telephone
calls, medication, medical visits, and clothing" and stating that "[f]orcing prisoners to
decide between communicating with family and legal representatives, seeking medical
treatment, and following religious tenets constitutes a Hobson's choice rather than a
true alternative"); *see also Gambino v. Cassano*, 2021 WL 1186794, at *5 (D.N.J. Mar.
30, 2021) ("Plaintiff has sufficiently alleged that not being able to wash before praying
substantially burdened his religious beliefs"). Therefore, the Court rejects defendants'
argument that Mr. Mostafa cannot pursue a RFRA claim based on the fact that his claim
requires defendants to affirmatively provide him with tools for self-hygiene. Even if the
tools Mr. Mostafa claims he needs for self-cleaning are used for religious purposes, the
Tenth Circuit has indicated that failing to provide prisoners with such items is not always
immune from scrutiny under RFRA. *See Khan v. Barela*, 808 F. App'x 602, 616 (10th
Cir. 2020) (unpublished) ("And in refusing to allow him to access or possess a clock,
prayer schedule, and Muslim calendar, defendants may have prevented his participation

in conduct motivated by a sincerely held religious belief, namely, the ability to pray at the required times on a daily basis and to identify when to observe Ramadan." (citation, quotation, and alterations omitted)).

The undisputed facts show that, when Mr. Mostafa is in cell 511, he lacks a means of cleaning himself after using the toilet. Although it is undisputed that cell 511 has a shower with two shower heads, one of which hits Mr. Mostafa at the belly button, it is also undisputed that Mr. Mostafa lacks a functional prosthesis that allows him to reach his anus with either a brush or toilet paper. Docket No. 308 at 8-9, ¶¶ 39-42, 50-51; Docket No. 313 at 22, ¶ 12. Instead, Mr. Mostafa claims that, without an upward stream of water, he is unable to sufficiently clean himself before praying. Docket No. 308 at 7, ¶ 27. It is undisputed that Mr. Mostafa's faith requires him to clean himself before praying. Docket No. 313 at 25, ¶ 27.

The Court finds that the undisputed facts show that the government has substantially burdened the exercise of Mr. Mostafa's religion. Every day that Mr. Mostafa is housed in cell 511, he is forced to choose between praying while soiled or not praying. RFRA does not require Mr. Mostafa to make this choice. *See Gambino*, 2021 WL 1186794, at *5 ("Plaintiff has sufficiently alleged that not being able to wash before praying substantially burdened his religious beliefs"); *Abdulhaseeb*, 600 F.3d at 1317 (failing to provide halal meals places a substantial burden on plaintiff); *Beerheide*, 286 F.3d at 1189 ("[f]orcing prisoners to decide between communicating with family and legal representatives, seeking medical treatment, and following religious tenets constitutes a Hobson's choice rather than a true alternative").

Although the government indicates that it has a compelling interest in not allowing prisoners access to a bidet, Docket No. 308 at 7, ¶¶ 33-34, the fact that Mr. Mostafa is not subject to those policies and the fact that Mr. Mostafa has a bidet in one of his two cells demonstrate that the government's interest is not sufficiently compelling under the circumstances of this case. *Id.*, ¶ 28. These same facts show that denying Mr. Mostafa a bidet in cell 511 is not the least restrictive means of furthering any other interest the government may have.[32] *Id.* Therefore, the Court finds that defendants are not entitled to summary judgment on Mr. Mostafa's RFRA claim based on the fact that he does not have a means of cleaning his anus in cell 511.

The Court will next consider whether Mr. Mostafa is under a substantial burden while he is housed in cell 300 and whether installing a bidet in cell 300 has mooted Mr. Mostafa's claims. It is undisputed that cell 300 has been modified to install a bidet. *Id.* Defendants argue that Mr. Mostafa's RFRA claim should be dismissed because defendants have accommodated Mr. Mostafa. *Id.* at 19. Specifically, defendants maintain that Mr. Mostafa cannot show that the government is substantially burdening

_____

[32] Defendants appear to argue that Mr. Mostafa's claim should be dismissed because he is, in part, responsible for his current circumstances by refusing to allow defendants to measure Mr. Mostafa for new prostheses, refusing to move to a cell where defendants have installed a bidet, and failing to inform defendants of other tools he may need to clean himself. *See* Docket No. 308 at 19. However, defendants provide no support for the proposition that RFRA incorporates a good-faith exception to burdening a prisoner's exercise of religion. Neither have defendants presented a developed argument that Mr. Mostafa is equitably estopped from arguing that defendants have violated RFRA. Rather, it is incumbent on defendants to prove that the present limitations imposed on Mr. Mostafa by defendants are pursuant to a compelling government interest and are the least restrictive means of furthering that interest. *Chesser*, 2018 WL 3729511, at *10. Defendants' assertions that they are in the process of installing a bidet in cell 511 and providing Mr. Mostafa with a new prosthesis demonstrate that Mr. Mostafa's present condition is not the least restrictive means of furthering the interests of the government. *See* Docket No. 308 at 19-20.

the exercise of his religion because they have provided him with adequate accommodations to clean himself after using the toilet.  *See id.* at 19-20.  Defendants also appear to argue that Mr. Mostafa's RFRA claim based on his inability to wash himself has been mooted by defendants installing a bidet in cell 300.  *See id.*

Mr. Mostafa argues that defendants have placed a substantial burden on the exercise of his religion because Mr. Mostafa "still needs new prosthetics to reach his anal area and should not have to rely on water pressure alone for washing."  Docket No. 313 at 9.  Mr. Mostafa maintains that the "installation of an upward stream of water in one of the two cells in which the Plaintiff is housed doesn't moot his claims."[33]  *Id.* at 7.

The Court finds that Mr. Mostafa has failed to demonstrate that the government has placed a substantial burden on his ability to ritually wash himself after providing him with a bidet.  As discussed above, the Court finds that the statements in Mr. Mostafa's declaration that "I still need new prosthetics to reach my anal area and should not have to rely on water pressure alone for washing" are an attempt to create a sham fact issue. Docket No. 313-1 at 8, ¶ 21.  Although Mr. Mostafa now argues that he never said "that an upward stream of water would be a reasonable accommodation of his disability," Docket No. 313 at 10, Mr. Mostafa's deposition testimony was that a bidet would adequately accommodate his inability to use toilet paper.  Docket No. 308-3 at 7-8, 30:9-31:18 ("But it does not have a -- an upward direction that would help me . . . because I cannot use toilet paper, but if I use the upward direction, it will compensate

---

[33] Mr. Mostafa also argues that he can pursue his RFRA claim for monetary damages based on previous violations.  *See* Docket No. 313 at 2.  For the reasons discussed above, the Court rejects Mr. Mostafa's argument that he can maintain a claim against the defendants in their official capacities for monetary damages based on past RFRA violations.

for using the paper.  It does the two jobs, . . . if I leave it for longer time. . .  if there is no

toilet paper, then . . . the longer I leave it in water, it will do the two jobs properly.").

Therefore, the Court will not consider Mr. Mostafa's statements in his declaration.

*Gabaldon*, 139 F.4th at 1211.  Without Mr. Mostafa's declaration, the only evidence in

the record of the burden on Mr. Mostafa is Mr. Mostafa's statements that a bidet would

allow him to properly clean himself.  Docket No. 308-3 at 7-8, 30:9-31:18.  Given that

Mr. Mostafa has conceded that the bidet would allow Mr. Mostafa to wash himself, and

because it is an undisputed fact that Mr. Mostafa is now housed in a cell with a bidet,

the Court finds that Mr. Mostafa cannot demonstrate that the government has prevented

Mr. Mostafa from participation in conduct motivated by a sincerely held religious belief.

Even if the Court were to consider Mr. Mostafa's declaration, the Court finds that

it is insufficient to show that he is under a substantial burden.  As the Supreme Court

has noted, "it is not the Government's obligation to prove that an asserted burden is

*in*substantial.  Instead, it is incumbent upon plaintiffs to demonstrate, in support of a

RFRA claim, the substantiality of the alleged burden."  *Burwell*, 573 U.S. at 759 n.20.

Here, Mr. Mostafa's only support is his conclusory assertion that he "should not have to

rely on water pressure alone for washing."  Docket No. 313-1 at 8, ¶ 21.  Mr. Mostafa

provides no explanation as to why a bidet will not allow him to clean himself adequately,

such that he is not "presentable and clean before praying."  *Id.* at 7, ¶ 18.  Mr. Mostafa

also makes no argument that washing with a bidet is otherwise inconsistent with his

faith.  Instead, Mr. Mostafa's deposition testimony indicates that he previously used a

bidet both during his incarceration in the United Kingdom and at his home, and that, if

Mr. Mostafa uses the bidet for a long enough period, he will be "properly" clean.  Docket

No. 308-3 at 7, 9, 30:9-31:18, 40:1-41:11.  The Court finds that Mr. Mostafa no longer

faces a Hobson's choice between praying without cleaning himself or not praying.

Rather, in cell 300, Mr. Mostafa must choose between not praying and using a bidet to

clean himself.  The Court concludes that this is not the kind of illusory choice that places

a substantial burden on Mr. Mostafa's exercise of religion.  Therefore, the Court finds

that defendants are entitled to summary judgment on Mr. Mostafa's RFRA claim to the

extent that it is based on the inadequacy of a bidet to ritually clean himself.

Finally, the Court addresses the fact that defendants have installed a bidet in cell

300 but not in cell 511.  Docket No. 308 at 7, ¶ 28.  As noted earlier, the fact that the

defendants are in the process of installing a bidet in cell 511 is not undisputed because

defendants included this fact in their reply.  *See* Docket No. 322 at 2, ¶ 30.  Even if the

Court were to consider this fact, it is undisputed that cell 511 does not currently have a

bidet.  Mr. Mostafa has demonstrated that forcing him to be housed in a cell where he

lacks a means of ritually cleaning himself places a substantial burden on the exercise of

his religion.  It is an undisputed fact that Mr. Mostafa is subject to a policy that requires

him to rotate between cells 300 and 511.  Docket No. 308 at 4, ¶ 6.  Therefore, the

Court finds that Mr. Mostafa has demonstrated that there is a "likelihood of substantial

and immediate irreparable injury."  *Jordan*, 654 F.3d at 1024.  Thus, until defendants

install a bidet in both of Mr. Mostafa's cells, his claim is not moot.

### D.  First Amendment

To prove "a constitutional violation based on a free exercise claim, a prisoner-

plaintiff must survive a two-step inquiry."  *Kay*, 500 F.3d at 1218.  The plaintiff must first

show that a government action "substantially burdened sincerely-held religious beliefs."

*Id.* (alterations omitted) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007));

*Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1300 (D. Colo. 2025) ("Under the First

Amendment, the free exercise inquiry asks whether government has placed a

substantial burden on the observation of a central religious belief or practice." (citation

and quotations omitted)). "Second, prison officials-defendants may identify the

legitimate penological interests that justified the impinging conduct." *Kay*, 500 F.3d at

1218 (citation and quotation omitted). The "substantial burden" analysis is the same

under RFRA, RLUIPA, and the First Amendment. *See Hobby Lobby*, 723 F.3d at 1138

(RLUIPA adopts RFRA's "substantial burden" standard); *McKinley v. Maddox*, 493 F.

App'x 928, 933 n.4 (10th Cir. 2012) (unpublished) ("our discussion of substantial burden

in *Abdulhaseeb* applies as well to a First–Amendment free-exercise claim"); *Williams v.

Hansen*, 5 F.4th 1129, 1133-34 (10th Cir. 2021) ("The defendants point to language in

*Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2010), saying that the RLUIPA

standards differ from those under the First Amendment's Free Exercise Clause. But

this difference lies in the type of government interest needed to justify a substantial

burden, not what constitutes a substantial burden." (internal citation omitted)); *Orwig v.

Williams*, No. 16-cv-00781-PAB-SKC, 2019 WL 4751775, at *8 (D. Colo. Sept. 30,

2019) ("To determine whether plaintiff has made an initial showing of a substantial

burden on religious exercise, courts use the same test under the First Amendment as is

used under RLUIPA."); *see also Navy Seal 1 v. Biden*, 574 F. Supp. 3d 1124, 1138

(M.D. Fla. 2021) ("if a service member's RFRA claim fails, the service member's First

Amendment claim necessarily fails"); *Holt v. Hobbs*, 574 U.S. 352, 357 (2015)

("Congress enacted RFRA in order to provide greater protection for religious exercise

than is available under the First Amendment.").

For the reasons discussed above, the Court finds that Mr. Mostafa has
demonstrated that defendants have substantially burdened the exercise of his religion
while he is housed in cell 511, but not when he is housed in cell 300. Therefore,
defendants are entitled to summary judgment on Mr. Mostafa's First Amendment claim
to the extent that it is based on the conditions of his confinement in cell 300.
Accordingly, the burden shifts to defendants to demonstrate a "legitimate penological
interest" that is served by denying Mr. Mostafa access to a bidet in cell 511, but not in
cell 300. *Boles*, 486 F.3d at 1181 ("When a prison regulation impinges on inmates'
constitutional rights, the regulation is valid if it is reasonably related to legitimate
penological interests." (alterations omitted) (quoting *Turner v. Safley,* 482 U.S. 78, 89
(1987)). The Court finds that defendants have failed to do so in regard to this part of
Mr. Mostafa's claim. Defendants have presented evidence that their practice of not
allowing prisoners to have access to a bidet furthers the interests of avoiding misuse of
water, unnecessary expense, and the possibility of the components being fashioned into
weapons or tools for self-harm. Docket No. 308 at 8, ¶ 36. These are legitimate
penological interests regarding inmates generally and Mr. Mostafa in particular.
However, defendants have installed a bidet in cell 300, *id.* at 7, ¶ 28, and are in the
process of installing a bidet in cell 511. Docket No. 322 at 2, ¶ 30. Accordingly,
defendants have not shown that Mr. Mostafa is more likely to misuse water or fashion
bidet components into weapons or tools for self-harm in cell 511, as opposed to cell
300. Moreover, defendants have already committed to the expense of installing a bidet
in cell 511. Therefore, although the Court "must accord substantial deference to the
professional judgment of prison administrators, who bear a significant responsibility for

defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them," *Toevs v. Reid*, 685 F.3d 903, 910 (10th Cir. 2012) (citation omitted), prison officials in this case have determined that installing a bidet in both cells 300 and 511 is an appropriate means of accomplishing the goals of ADX. As such, the Court finds that defendants have not shown that they are entitled to summary judgment on Mr. Mostafa's First Amendment claim to the extent that it is based on the lack of a bidet in cell 511. The Court also finds that Mr. Mostafa's claim is not moot, at least until such time as a bidet has been installed in cell 511.

### E. Fifth Amendment

The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. The Fifth Amendment contains an implicit guarantee of equal protection identical to the Fourteenth Amendment's Equal Protection Clause. *Sessions v. Morales-Santana*, 582 U.S. 47, 52 n.1 (2017). The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *Ashaheed v. Currington*, 7 F.4th 1236, 1249 (10th Cir. 2021) (quoting *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016)). To prove an equal protection claim, a plaintiff must first make a "threshold showing" that he was "treated differently from others who were similarly situated to [him]." *Tenison*, 826 F. App'x at 688 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)); *see also Rojas v. Heimgartner*, 604 F. App'x 692, 695 (10th Cir. 2015) (unpublished). "A plaintiff is 'similarly situated' to other individuals 'only if they are alike in all relevant respects.'" *Shash*, 770 F. Supp. 3d at 1303 (quoting *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018)); *see also Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, 819 F. Supp. 2d 1179, 1189 (D. Colo. 2011) ("To be 'similarly situated' the

42

individuals 'must be prima facie identical in all relevant respects or directly comparable in all material respects; although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed.'" (quoting *United States v. Moore*, 543 F.3d 891, 897-98 (7th Cir. 2008))). A plaintiff must also show the "existence of purposeful discrimination." *Ashaheed*, 7 F.4th at 1250 (citation omitted). Additionally, "plaintiffs in a prison context have the burden of demonstrating that 'the difference in treatment was not reasonably related to legitimate penological interests.'" *Rojas*, 604 F. App'x at 695 (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006)).

In the amended complaint, Mr. Mostafa alleges that defendants have discriminated against him as a Muslim by failing to provide him halal meals, but not kosher meals, in an accessible form. Docket No. 199 at 20, ¶ 75. As discussed above, the Court finds that Mr. Mostafa's Fifth Amendment claim on this basis is moot because he now receives halal meals in an accessible form.

Mr. Mostafa next claims that the "poor level of hygiene provided to the Plaintiff means that he is unable to properly clean himself before he prays." *Id.* He claims that defendants' failure to provide him with an adequate means of washing himself "has a disparate impact on Muslims because other religions don't require their adherents to wash themselves before praying." *Id.*

Defendants maintain that Mr. Mostafa's Fifth Amendment claim based on his inability to ritually wash himself should be dismissed because he cannot demonstrate that he has been treated differently from other individuals who are similarly situated to him in all material respects. Docket No. 308 at 26-27. Specifically, defendants maintain

that Mr. Mostafa's different treatment by the government is based on the fact that Mr. Mostafa is a double amputee. *Id.* at 27. Because it is an undisputed fact that Mr. Mostafa is the only double upper extremity amputee at ADX, defendants assert that Mr. Mostafa cannot show that he is similarly situated to other prisoners. *Id.* at 5, 27, ¶¶ 11-12. Moreover, defendants argue that Mr. Mostafa cannot show that they have purposefully discriminated against him because of his religious beliefs, given that it is an undisputed fact that Mr. Mostafa is aware of no other Muslim prisoners who are unable to wash themselves before praying. *Id.* at 9, 27, ¶ 46.

Mr. Mostafa does not respond to defendants' arguments that his equal protection claim should be dismissed. *See* Docket No. 313 at 1-14. The Court agrees with defendants. Mr. Mostafa has failed to demonstrate that he has been treated differently from another prisoner who is similarly situated. Instead, the undisputed facts show that Mr. Mostafa is the only double upper extremity amputee at ADX and that his difficulties with ritual washing arise from this condition. Docket No. 308 at 5, ¶¶ 11-12. The Court also agrees that Mr. Mostafa cannot show purposeful discrimination based on Mr. Mostafa's religion. Mr. Mostafa has produced no evidence that other Muslim inmates are unable to wash themselves. Furthermore, defendants have accommodated Mr. Mostafa's need to wash himself before praying by modifying Mr. Mostafa's shower to include two shower heads, by permitting Mr. Mostafa's showers to run for an extended period, and by installing a bidet in one of Mr. Mostafa's toilets. *Id.* at 7, 8, ¶¶ 28, 39-42. Therefore, the Court will dismiss Mr. Mostafa's equal protection claim based on inability to ritually wash himself.

Defendants argue that the Court should dismiss Mr. Mostafa's Fifth Amendment claim based on alleged differences between Passover meals given to Jewish prisoners and Eid meals given to Muslim prisoners. *Id.* at 27-28. Defendants assert that it is undisputed that all prisoners receive only one feast meal per year and that this meal can include only food available on the master menu. *Id.* at 11, 28, ¶¶ 65-68. They maintain that Mr. Mostafa has produced no admissible evidence to substantiate his claim that Jewish prisoners receive more feast meals than Muslim prisoners. *Id.* at 28. Mr. Mostafa does not respond to these arguments. *See* Docket No. 313 at 1-14.

The Court finds that Mr. Mostafa has failed to show a dispute of material fact as to whether he, as a Muslim, receives feast meals on a less frequent basis than Jewish prisoners. As discussed above, Mr. Mostafa's only support for this claim is the hearsay of another prisoner, which is not sufficient to create a dispute of material fact. *See* Docket No. 313-1 at 8, ¶ 23; Docket No. 308 at 11-12, ¶¶ 71-72; Docket No. 313 at 19, ¶¶ 71-72. Therefore, defendants are entitled to summary judgment on Mr. Mostafa's Fifth Amendment claim. Accordingly, the Court will grant in part and deny in part defendants' motion for summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 308] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that plaintiff's first, second, and third claims for relief, to the extent that these claims are based on defendants' provision of halal meals in an inaccessible form, are **DISMISSED as moot**. It is further

**ORDERED** that plaintiff's first and second claims, to the extent that these claims are based on defendants' failure to provide Mr. Mostafa with a means of washing himself after using the toilet in cell 300 are **DISMISSED with prejudice**.  It is further

**ORDERED** that plaintiff's third claim for relief is **DISMISSED with prejudice**.  It is further

**ORDERED** that plaintiff's fourth claim for relief is **DISMISSED without prejudice** by stipulation of the parties.  It is further

**ORDERED** that, on or before October 13, 2025, plaintiff shall show cause why the Court should not dismiss his ninth claim for relief under Federal Rule of Civil Procedure 4(m) for failure to prosecute.

DATED September 25, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge